**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re: | Chapter 9 |
| CITY OF CHESTER, PENNSYLVANIA, | Case No. 22-13032 |
| Debtor. | |

**MOTION OF DEBTOR FOR ENTRY OF AN ORDER APPOINTING DONLIN, RECANO & COMPANY, INC. AS CLAIMS AND NOTICING AGENT PURSUANT TO 28 U.S.C. § 156(c), SECTION 105(a) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 2002**

The City of Chester ("Chester" or the "City"), as the debtor in the above-captioned chapter 9 case, hereby moves the Court, pursuant to Section 156(c) of tile 28 of the United States Code, Section 105(a) of title 11 of the United States Code (the "Bankruptcy Code"), and Rule 2002 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for the entry of an order appointing Donlin, Recano & Company, Inc. as claims and noticing agent (the "Noticing Agent") in this chapter 9 case. In support of this Motion, the City respectfully represents as follows:

### I. Jurisdiction and Venue

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

3. Venue for this matter is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1408 and 1409.

## II.     Background

4. Chester is the oldest city in Pennsylvania, first incorporated as a borough in 1701 and then as a city in 1866. The City is a city of the Third Class under Pennsylvania law[1] and operates under a Home Rule Charter.[2]

5. During World War I and World War II, the City thrived as an industrial and manufacturing community. However, since the mid-1950s, the City has been experiencing economic difficulties and facing several challenges, including, (i) a decreasing population, (ii) declining revenues, and (iii) high municipal expenditures. In 1995, faced with multi-million dollar deficits and past due obligations, the City was designated as a distressed city under the Municipalities Financial Recovery Act of July 10, 1987, P.L. 246, No. 47 ("Act 47") and subjected to financial oversight by the Commonwealth of Pennsylvania. The City's financial challenges were severely exacerbated by the onset and continuing impact of the coronavirus disease 2019 ("COVID-19") pandemic.

6. On April 13, 2020, shortly after the devastating onset of COVID-19, Pennsylvania Governor Thomas Wolf declared a fiscal emergency in the City under Act 47.

---

[1] Under Pennsylvania law, there are four classes of cities, the determination of a city's class is based on its population. Act of June 25, 1895, P.L. 275, No. 188. Third class cities are those "containing a population under two hundred and fifty thousand and which have not elected to become a city of the second class A." *Id.*

[2] All Pennsylvania municipalities, except for cities and counties of the first class, can adopt a home rule charter, which is "a written document defining the power, structure, privileges, rights and duties of the municipal government and limitations thereon." 53 Pa. Cons. Stat. §§ 2901, 2902. The Pennsylvania Constitution also recognizes that "[m]unicipalities shall have the right and power to frame and adopt home rule charters… . A municipality which has a home rule charter may exercise any power or perform any function not denied by the Constitution, by its home rule charter or by the General Assembly at any time." Pa. Const. art. IX, §2.

7. On June 22, 2020, the Commonwealth Court of Pennsylvania (the "Commonwealth Court") determined that a fiscal emergency as defined by Section 602(A) of Act 47 continued to exist in the City and put the City in Receivership under Section 702(c)(2) of Act 47. The same day, the Commonwealth Court appointed Michael Doweary (the "Receiver") as receiver for the City. Pursuant to an order entered by the Commonwealth Court on December 28, 2021, the City's Receivership and Receiver's appointment were extended for up to two years.

8. In August 2020, the Receiver submitted an initial Recovery Plan (the "Recovery Plan"), which was confirmed by the Commonwealth Court on October 19, 2020. The Recovery Plan represented the City's first steps towards an exit from financial distress and the stable provision of critical services to the City's residents. On June 7, 2021, the Commonwealth Court approved the Amended Recovery Plan (the "Amended Recovery Plan") that the Receiver submitted in April 2021. The Receiver worked diligently to implement the Amended Recovery Plan and improve the City's financial position by taking steps to reduce its expenditures, including making a significant reduction of its workforce, restricting overtime, implementing a hiring freeze and limiting discretionary purchases.

9. Notwithstanding the Receiver's and the City's efforts to reduce spending and increase efficiencies, the magnitude of the City's financial problems caused the Receiver to request authorization to commence a chapter 9 case on behalf of the City on January 14, 2022, from Dennis M. Davin, then the Secretary (the "Secretary") of the Pennsylvania Department of Community and Economic Development (the "DCED"). By letter dated February 8, 2022, the Secretary provided the Receiver with written authorization to file a municipal debt adjustment action on behalf of the City under the Bankruptcy Code and Act 47 (the "Bankruptcy Authorization").

10. In accordance with the Bankruptcy Authorization on November 10, 2022 (the "Petition Date"), the City commenced a case under chapter 9 of the Bankruptcy Code. Additional details regarding the City and the events leading to the commencement of this chapter 9 case are set forth in the Declaration of Michael Doweary in Support of the City of Chester, Pennsylvania's Statement of Qualifications Pursuant to Section 109(c) of the Bankruptcy Code (the "Doweary Declaration") and the Declaration of Vijay Kapoor in Support of the City of Chester, Pennsylvania's Statement of Qualifications Pursuant to Section 109(c) of the Bankruptcy Code (the "Kapoor Declaration"), filed contemporaneously herewith.

### III.     Relief Requested

11. By this Motion, the City seeks an order pursuant to Section 156(c) of title 28 of the United States Code, Section 105(a) of the Bankruptcy Code, and Bankruptcy Rule 2002 appointing the Noticing Agent as claims and noticing agent in the City's chapter 9 case to, among other things: (i) serve as the Court's agent to mail notices to creditors of the City and other parties in interest; (ii) provide claims processing service on behalf of the Court; and (iii) provide computerized claims database services, including maintaining the official claims register in this case.

### IV.     Basis for Relief

12. Bankruptcy Rule 2002, which governs the notices that must been provided to creditors and other parties in interest in bankruptcy cases, authorizes the Court to direct that some person other than the Office of the Clerk of this Court (the "Clerk's Office") give notice of matters arising in the City's chapter 9 case. *See, e.g.*, Fed. R. Bankr. P. 2002(a), (b), (d), & (f) (requiring in each case that notices be given by "the clerk, or some other person as the court may direct").

13. Section 156(c) of title 28 of the United States Code provides:

> Any court may utilize facilities or services, either on or off the court's premises, which pertain to the provision of notices, dockets,

4

> calendars, and other administrative information to parties in cases filed under the provisions of title 11, United States Code, where the costs of such facilities or services are paid for out of the assets of the estate and are not charged to the United States. The utilization of such facilities or services shall be subject to such conditions and limitations as the pertinent circuit council may prescribe.

28 U.S.C. § 156(c).

14. The number of parties that may file claims and require noticing in this chapter 9 case is substantial. For example, the City has identified in excess of 1,000 potential creditors in its List of Creditors Pursuant to Section 924 of the Bankruptcy Code and Bankruptcy Rule 1007, filed contemporaneously with this Motion. This potential creditor pool includes, among others, numerous employees, retirees, bondholders, insurers, vendors, contract counterparties, and parties to litigation involving the City. In addition, the City anticipates that many other parties will request service of papers filed in this chapter 9 case.

15. Given the number of parties interested in the City's chapter 9 case and the size of the City's creditor body, it would be impracticable and inefficient for the City or the Clerk's Office to undertake the task of sending notices to these entities. Moreover, appointing the Noticing Agent to maintain a claims register and process claims will greatly decrease the costs and burdens of administering the City's case and will improve the accuracy and efficiency of the noticing, claims allowance, and solicitation processes.

### V.     The Noticing Agent's Qualifications

16. The City solicited bids for third-party vendors to serve as claims and noticing agent in its chapter 9 case. Through this process, the City has selected and authorized the engagement of the Noticing Agent.

17. The Noticing Agent is one of the leading bankruptcy administrators in this country, with experience in noticing, claims administration, and facilitating other administrative aspects of

numerous cases of substantial size and complexity in this and other districts, including by way of example, the following: *In re Museum of American Jewish History, d/b/a National Museum of American Jewish History*, Case No. 20-11285 (MDC) (Bankr. E.D. Pa. 2020); *In re Wordsworth Academy, et al*, Case No. 17-14463 (AMC) (Bankr. E.D. Pa. 2017); *In re Matheson Flight Extenders, Inc., et al.*, Case No. 22-21148 (Bank. E.D. Cal. 2022); *GWG Holdings, Inc., et al.*, Case No. 22-90032 (Bank. S.D. Tex. 2022); *Ector County Energy Center LLC*, Case No. 22-10320 (Bank. D. Del. 2022); *In re Activa Resources, LLC*, Case No. 22-50117 (Bankr. W.D. Tex. 2022); *In re The Prospect-Woodward Home*, Case No. 21-10523 (Bankr. D.N.H. 2021); *In re Adara Enterprises Corp.*, Case No. 21- 10736 (Bankr. D. Del. 2021); *In re Castex Energy 2005 Holdco LLC, et al.*, Case No. 21-30710 (Bankr. S.D. Tex. 2021); *In re Lutheran Social Service Housing, Inc., et al.*, (Receivership), Case No. 09-2021-CV-200 (Bankr. D.N.D. 2021); *In re EHT US1, Inc., et al.*, Case No. 21-10036 (CSS) (Bankr. D. Del. 2021); *In re Tea Olive I, LLC d/b/a Stock+Field*, Case No. 21-30037 (WJF) (Bankr. D. Minn. 2021); *In re Professional Financial Investors, Inc., et al.*, Case No. 20-30604 (Bankr. N.D. Cal. 2020); *In re Wave Computing, Inc., et al.*, Case No. 20-50682 (Bankr. N.D. Cal. 2020); *In re Elevate Investments, LLC*, (Receivership), Case No. 20-02398 (JVS) (Bankr. C.D. Cal. 2020); *In re Girardi Keese*, Case No. 20-21022 (BR) (Bankr. C.D. Cal. 2020); *In re Asaig, LLC, et al.*, Case No. 20-35600 (MI) (Bankr. S.D. Tex. 2020); *In re YouFit Health Clubs, LLC, et. al.*, Case No. 20-12841 (MFW) (Bankr. D. Del. 2020); *In re Cred Inc., et. al.*, Case No. 20-12836 (JTD) (Bankr. D. Del. 2020); *In re Gorham Paper and Tissue, LLC, et. al.*, Case No. 20-12814 (KBO) (Bankr. D. Del. 2020); *In re FIC Restaurants, Inc., et. al.*, Case No. 20-12807 (CSS) (Bankr. D. Del. 2020); *In re Studio Movie Grill Holdings, LLC, et al.*, Case No. 20-32633-11 (SGJ) (Bankr. N.D. Tex. 2020); *In re Memory Care America LLC*, Case No. 19-51385 (RBK) (Bankr. W.D. Tex. 2019); *In re Imperial Toy LLC,* Case No. 19-52335 (Bankr. N.D.

Cal. 2019); *In re Ruby's Diner, Inc.*, Case No. 18-13311 (Bankr. C.D. Cal. 2018); *In re: First River Energy, LLC*, Case No. 18-50085 (CAG) (Bankr. W.D. Tex. 2018); *In re Peek, Aren't You Curious*, Case No. 16-30146 (Bankr. N.D. Cal. 2016); *In re Ruby's Diner, Inc.*, Case No. 18-13311 (Bankr. C.D. Cal. 2018); *In re Freedom Commc'ns, Inc.*, Case No. 15-15311 (Bankr. C.D. Cal. 2015). In addition, certain members of the Noticing Agent's staff have experience performing claims and noticing services in the context of chapter 9, as certain members of the staff were involved in the chapter 9 cases of *In re Jefferson County, Alabama*, Case No. 11-5736 (Bankr. N.D. Ala. 2011); *In re City of San Bernardino, California*, Case No. 12-28006 (Bankr. C.D. Cal. 2012); and *In re County of Orange, California*, Case No. 94-22272 (Bankr. C.D. Cal. 1994).

18. The Noticing Agent specializes in providing comprehensive bankruptcy administrative services. The Noticing Agent has developed effective and cost-efficient methods to handle properly the voluminous mailings associated with large bankruptcy cases to ensure the orderly and fair treatment of creditors and other parties in interest. Moreover, the Noticing Agent has experience working with, and will continue to work with, the Clerk's Office to ensure that the services provided conform to all of the Court's procedures, the Local Bankruptcy Rules, and the provisions of any orders entered by this Court.

19. As set forth in the Declaration of Nellwyn Voorhies attached hereto as **Exhibit B** (the "Voorhies Declaration"), the Noticing Agent has represented, among other things, that it does not have any relationship that would preclude it from fulfilling its proposed role in this case and that it will comply with all requests of the Clerk's Office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c). To the best of the Noticing Agent's knowledge and except as disclosed in the Voorhies Declaration, the

7

Noticing Agent neither holds nor represents any interest materially adverse to the City in connection with any matter on which it would be employed.

### VI.     Services to Be Provided By the Noticing Agent

20.     This Application pertains only to the work to be performed by the Noticing Agent under the Clerk's Office's delegation of duties permitted by 28 U.S.C. § 156(c). Any work to be performed by the Noticing Agent outside of this scope is not covered by this Application or by any Order granting approval hereof.[3]

21.     The tasks anticipated to be performed by the Noticing Agent in its role as noticing agent and claims agent (the "Noticing and Claims Services") include the following as well as all quality control relating thereto:

> a.  prepare and serve required notices and documents in the chapter 9 case in accordance with the Bankruptcy Code and the Bankruptcy Rules in the form and manner directed by the City and/or the Court, including, among others (i) notice of the commencement of this chapter 9 case; (ii) notices of objections to claims and objections to transfers of claims; (iii) notices regarding any plan of adjustment filed by the City; (iv) notice of the effective date of any plan of adjustment; and (v) all other notices, orders, pleadings, publications, and other documents as the City or the Court may deem necessary or appropriate for an orderly administration of this chapter 9 case;
>
> b.  maintain (i) list of all potential creditors and other parties in interest in this case and (ii) the general and special service lists for which the City

---

[3] The City anticipates that Donlin, Recano & Company, Inc. will provide other services to the City in connection with this case, including solicitation and balloting services and other administrative and consulting services. Consistent with Section 904 of the Bankruptcy Code; however, no Court approval of any such additional services is required or permitted, and none is sought herein. *See, e.g.*, *In re E. Shoshone Hosp. Dist.*, 226 B.R. 430, 431 (Bankr. D. Idaho 1998) (holding that a chapter 9 debtor was not required to obtain court approval for the employment of counsel because §§ 327, 328, 330, and 331 are not incorporated into chapter 9 by Section 901 of the Bankruptcy Code); *In re County of Orange*, 179 B.R. 195, 200 (Bankr. C.D. Cal. 1995) (holding that the court had no authority to order the payment of interim compensation to professional without the chapter 9 debtor's consent because Section 331 of the Bankruptcy Code, which governs interim payments of professionals, is not incorporated into chapter 9).

8

  has requested approval, and update these lists and make them available upon request by a party-in-interest or the Clerk's Office;

c.  furnish a notice to all potential creditors of the last date for the filing of proofs of claim (the "Claims Bar Date") and a form for the filing of a proof of claim, after such notice and form are approved by the Court, and notify potential creditors of the existence, amount and classification of their respective claims as set forth in any list of claims to be filed by the City consistent with Section 925 of the Bankruptcy Code (the "List of Claims"), which may be effected by inclusion of such information (or the lack thereof, where the List of Claims indicates no debt due to the subject party) on a customized proof of claim form provided to potential creditors;

d.  maintain a post-office box or address for the purpose of receiving claims and returned mail, and process all mail received;

e.  for all notices, motions, orders or other pleadings or documents served, prepare and file or cause to be filed with the Clerk's Office an affidavit or certificate of service that includes (i) either a copy of the notice served or the docket number(s) and title(s) of the pleading(s) served, (ii) a list of persons on who it was served (in alphabetical order) with their addresses, (iii) the manner of service, and (iv) the date served;

f.  process all proofs of claim received, including those received by the Clerk's Office, check such processing for accuracy and maintain the original proofs of claim in a secure area;

g.  maintain the official claims register for the City (the "Claims Register") on behalf of the Clerk's Office and, on the request of the Clerk's Office, provide the Clerk's Office was certified, unofficial copies of the Claims Register and specify in the Claims Registers the following information for each claim docketed: (i) the unique claim number assigned, (ii) the date received, (iii) the name and address of the claimant and agent, if applicable, who filed the claim, (iv) the amount asserted, (v) the asserted classification(s) of the claim (e.g., secured, unsecured, priority, etc.), and (vi) any disposition of the claim;

h.  implement necessary security measures to ensure the completeness and integrity of the Claims Register and the safekeeping and the original claims;

i.  record all transfers of claims and provide any notices of such transfers that are required to be sent by the Clerk's Office by Bankruptcy Rule 3001(e);

j.  relocate, by messenger or overnight delivery, all of the Court-filed proofs of claims to the offices of the Noticing Agent, not less than weekly;

9

      k.      following the Claims Bar Date and the docketing of any claims filed by the Claims Bar Date, at the request of the Clerk's Office, turn over to the Clerk's Office for review copies of the Claims Register;

      l.      monitor the Court's docket for all notices of appearance, address changes and claims-related pleadings and orders filed and make necessary notations on and/or changes to the claims register;

      m.      thirty days prior to the closing of this case, to the extent practicable, request that the City submit to the Court a proposed Order dismissing the Noticing Agent and terminating the services of such agent upon completion of its duties and responsibilities and upon the closing of this case;

      n.      within seven days of notice of the Noticing Agent of entry of an order closing this case, provide to the Court the final version of the Claims Register as of the date immediately before the close of the case;

      o.      provide such other related noticing and claims processing services as may be requested from time to time by the City or the Clerk's Office and agreed to by the Noticing Agent; and

      p.      at the close of the case (i) deliver the Claims Register, claims, and supporting documentation to the Clerk's Office in electronic format, (ii) deliver all other original documents in the format and to the location provided by the Clerk's Office, and (iii) retain and not destroy or deliver to the Clerk of the Court the Claims Register, claims, and supporting documentation, unless and until specifically authorized to do so by order of the Court.

22.     The Noticing Agent will make the Claims Register available to the public for examination without charge during regular business hours and may be made available on a case-specific website maintained by the Noticing Agent.

### VII.   Compensation

23.     The City intends to compensate and reimburse the Noticing Agent for all services rendered and expenses incurred in connection with this chapter 9 case in accordance with the terms of the agreement between the parties. Pursuant to Section 904 of the Bankruptcy Code, no further review or approval of the Court is required.

10

### VIII.  Conclusion and Reservation of Rights

24. For the foregoing reasons, the City believes that authorizing the Noticing Agent to provide the Noticing and Claims Services in this chapter 9 case is appropriate and in the best interests of the City, its creditors and the Court.

25. The City files this Motion without prejudice to or waiver of its rights pursuant to Section 904 of the Bankruptcy Code, and nothing herein is intended as or shall be deemed to constitute the City's consent pursuant to Section 904 of the Bankruptcy Code to this Court's interference with (a) any of the political or governmental powers of the City, (b) any of the property or revenues of the City, or (c) the City's use of enjoyment of any income-producing property.

### IX.  Notice

26. Notice of this Motion has been given to the following (or their counsel if known): (a) the City's largest unsecured creditors as identified on the list filed under Bankruptcy Rule 1007(d), (b) the Office of the United States Trustee, and (c) any party that has requested notice pursuant to Federal Rule of Bankruptcy Procedure 2002. The City submits that no other or further notice need be provided.

### X.  No Prior Request

27. No prior request for the relief sought in this Motion has been made to this or any other Court.

WHEREFORE, the City respectfully requests that this Court: (a) enter an order substantially in the form attached hereto as **Exhibit A**, granting the relief sought herein; and (b) grant such other and further relief to the City as the Court may deem proper.

November 10, 2022

Respectfully submitted,

*[signature]*

Tobey M. Daluz (PA Bar No. 60685)
Margaret A. Vesper (PA Bar No. 329793)
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Tel: (215) 864-8148
Email: daluzt@ballardspahr.com
  vesperm@ballardspahr.com

and

Matthew G. Summers*
Laurel D. Roglen*
Chantelle D. McClamb*
Ballard Spahr LLP
919 N. Market Street, 11th Floor
Wilmington, DE 19801
Tel: (302) 252-4465
Email: summersm@ballardspahr.com
  roglenl@ballardspahr.com
  mcclambc@ballardspahr.com

(*Pro Hac Vice motions to be submitted)

*Attorneys for the City of Chester*