# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | Chapter 9 |
| CITY OF CHESTER, PENNSYLVANIA, | : | Case No. 22-13032 |
| Debtor. | : | |

**MOTION FOR AN ORDER FINDING THAT 11 U.S.C. § 362 DOES NOT OPERATE AS A STAY OF THE RECEIVER'S MODIFICATION OF AMENDED RECOVERY PLAN PENDING BEFORE THE COMMONWEALTH COURT OF PENNSYLVANIA, OR ALTERNATIVELY, FOR RELIEF FROM THE AUTOMATIC STAY**

The City of Chester ("Chester" or the "City"), as the debtor in the above-captioned chapter 9 case, hereby files this motion (the "Motion"), pursuant to Section 362 of title 11 of the United States Code[1] (the "Bankruptcy Code"), for the entry of an order clarifying that 11 U.S.C. § 362(a) does not operate as a stay of the Modification of the Amended Recovery Plan (the "Modification") filed by Michael Doweary, the receiver for the City of Chester (the "Receiver"), currently pending before the Commonwealth Court of Pennsylvania (the "Commonwealth Court"), or alternatively, granting relief from the automatic stay to allow the Modification to proceed. A true and correct copy of the Modification is attached to the Kapoor Declaration (defined below) as Exhibit H. In support of this Motion, the City respectfully represents as follows:

## I. Jurisdiction and Venue

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

3. Venue for this matter is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] Applicable to cases under chapter 9 pursuant to 11 U.S.C. § 901(a).

4. The statutory predicates for the relief sought herein are Sections 362(a), (b) and (d) of the Bankruptcy Code and Bankruptcy Rule 4001.

## II.     Background

### A.    History of the City

5. Chester is the oldest city in Pennsylvania, first incorporated as a borough in 1701 and then as a city in 1866. The City is a city of the Third Class under Pennsylvania law, with a population of approximately 33,000, and operates under a Home Rule Charter. Under the City's Home Rule Charter form of government, the legislative power to create ordinances, rules and regulations for the City is held by the city council (the "City Council"). The City Council consists of the mayor of the City (the "Mayor") and four elected council members. Members of the City Council serve a term of four years and serve as a department head for one of the City's five municipal departments.

6. During World War I and World War II, the City thrived as an industrial and manufacturing community. However, since the mid-1950s, the City has been experiencing economic difficulties and facing several challenges, including, (i) a decreasing population, (ii) declining revenues, and (iii) high municipal expenditures. In 1995, faced with multi-million dollar deficits and past due obligations, the City was designated as a distressed city under the Pennsylvania Municipalities Financial Recovery Act, Act of 1987, P.L. 246, No. 47 ("Act 47") and subjected to financial oversight by the Commonwealth of Pennsylvania. The City's financial challenges were exacerbated by the onset and continuing impact of the coronavirus disease 2019 pandemic. Additional details regarding the City and the events leading to the commencement of this chapter 9 case are set forth in the *Declaration of Michael Doweary in Support of the City of Chester, Pennsylvania's Statement of Qualifications Pursuant to Section 109(c) of the Bankruptcy Code and First Day Pleadings* (the "Doweary Declaration") and the *Declaration of Vijay Kapoor*

*in Support of the City of Chester, Pennsylvania's Statement of Qualifications Pursuant to Section 109(c) of the Bankruptcy Code and First Day Pleadings* (the "Kapoor Declaration") filed contemporaneously herewith.

**B.    The Appointment of the Receiver**

7.    On April 13, 2020, Governor Tom Wolf issued a Declaration of Fiscal Emergency as to the City (the "Declaration"). The following day the Mayor issued a statement in support of the Declaration. In accordance with the Declaration, the Pennsylvania Department of Community and Economic Development (the "DCED") prepared an emergency action plan (the "EAP") detailing cost saving measures. The City, in cooperation with the DCED, began to implement the EAP.

8.    On June 1, 2020, the DCED filed with the Commonwealth Court a *Petition for Appointment of Receiver for the City of Chester and Related Relief Pursuant to Subsection 702 of Pennsylvania Municipalities Financial Recovery Act, Act of 1987* (the "Receiver Petition"). The City Council did not respond or otherwise oppose the Receiver Petition. On June 15, 2020, the Commonwealth Court held a hearing on the Receiver Petition at which the parties, including the City Council, stipulated that the conditions precedent to the appointment of the Receiver under Act 47 had been met. The City Council further stipulated that it had no objections to the relief sought in the Petition and that the Receiver was qualified under Act 47.

9.    On June 22, 2020, the Commonwealth Court entered an order (the "Receiver Order") finding, among other things, that the City Council failed to adopt a consent agreement pursuant to Section 607 of Act 47 and that a fiscal emergency under Section 602(a) of Act 47 continued to exist in the City. The Receiver Order granted the Receiver Petition, declaring the City to be in receivership pursuant to Section 702(e)(2) of Act 47 and appointed the Receiver.

10. The Receiver Order directed the Receiver to develop a recovery plan for submission to the Commonwealth Court, the Secretary for the DCED, the City Council, and the Mayor. The Receiver Order also required and empowered the Receiver to implement the EAP until he developed a recovery plan. The Receiver Order also provided that during the fiscal emergency, the City Council and Mayor shall continue to carry out their duties, subject to and consistent with the provisions of the EAP and any recovery plan. On December 28, 2021, the Commonwealth Court entered an order extending the City's receivership and the Receiver's appointment for up to two years.

**C.   The Receiver's Efforts**

11. In August 2020, the Receiver submitted an initial Recovery Plan (the "Recovery Plan"). The Recovery Plan represented the City's first steps towards an exit from financial distress and the stable provision of critical services to the City's residents, based on the information then available to the Receiver. Further, the Recovery Plan set forth certain initiatives that the Receiver would implement to address the City's financial circumstances. On October 19, 2020, the Commonwealth Court issued a Memorandum & Order approving the Recovery Plan (the "Recovery Plan Order"). A copy of the Recovery Plan Order is attached to the Kapoor Declaration as Exhibit C. The Recovery Plan Order noted that the Recovery Plan contemplated further amendment and the Commonwealth Court's assurance that the City Council would make efforts to obtain current financial information for use in modifying the Recovery Plan.

12. The Receiver worked diligently to formulate and implement the Recovery Plan and improve the City's financial position and provide vital and necessary services to its residents by taking steps to reduce its expenditures, including, making a significant reduction of its workforce, restricting overtime, implementing a hiring freeze and limiting discretionary purchases. The

Receiver made great efforts to work with the City Council to implement the Recovery Plan and obtain the information necessary to amend the Recovery Plan. Despite the Receiver's efforts to implement the Recovery Plan cooperatively, it became necessary for the Receiver to seek the assistance of the Commonwealth Court.

13. Soon after his appointment, the Receiver learned that the City's circumstances were more dire than he anticipated. To facilitate the implementation of the Recovery Plan, the Receiver sought to hire a chief operating officer (the "COO") and discussed the same with the Mayor. Approximately three weeks after the COO began her position, the Mayor, without consulting the Receiver, terminated the COO and refused to reinstate her. The City Council also opposed the Receiver's organizational changes to the City's departments. The Receiver brought these issues before the Commonwealth Court for resolution, in particular the issue of whether Act 47 gave the Receiver the authority to require the City Council to take action to implement the Recovery Plan, including the hiring of the COO. Attached to the Kapoor Declaration as Exhibit D is a copy of the Stipulation of Fact Filed Pursuant to Court's December 16, 2020 Order (the "Stipulation") filed on behalf of the Receiver and the City relating to the issues presented to the Commonwealth Court.

14. On December 23, 2020, the Commonwealth Court entered a Memorandum & Order (the "COO Order"), finding that the Recovery Plan did not define the role of the COO. The Commonwealth Court encouraged the Receiver and the City Council to collaborate to resolve the COO duties and create a proposed budget that incorporated the Recovery Plan, pending modifications to the Recovery Plan. A copy of the COO Order is attached to the Kapoor Declaration as Exhibit E.

15. In April 2021, the Receiver submitted an Amended Recovery Plan (the "Amended Recovery Plan" and together with the Recovery Plan, the "Recovery Plans"), which the

5

Commonwealth Court approved on June 7, 2021. Although the City Council did not object to the Commonwealth Court's approval of the Amended Recovery Plan, challenges in implementing the Recovery Plans persisted.

16. On March 4, 2022, the Receiver filed a Petition for Mandamus (the "Mandamus Petition") requesting that the Commonwealth Court issue a writ of mandamus upon the Mayor and the City Council mandating that they comply with the terms of the Amended Recovery Plan and orders issued by the Receiver pursuant to the Recovery Plans. A copy of the Mandamus Petition and corresponding Memorandum of Law without exhibits are attached to the Kapoor Declaration as Exhibit F. In formulating the Amended Recovery Plan, the Receiver negotiated salary reductions with the City Council members as one of the terms of an agreement to pass the 2021 budget for the City. The City Council did not object to this provision prior to the Commonwealth Court's approval of the Amended Recovery Plan. Accordingly, pursuant to the Amended Recovery Plan, the City Council was required to change City ordinances to reflect the salary reductions. However, following the approval of the Amended Recovery Plan, the Mayor and City Council passed a budget that did not reflect the agreed salary reductions.

17. Additionally, the Mandamus Petition sought to prevent the City Council from continuing to take actions that impeded the Receiver's ability to implement the Amended Recovery Plan. For example, the City Council authorized payments that were not included in the budget or formally authorized without informing the Receiver. Additionally, the interim chief financial officer (the "Interim CFO"), appointed pursuant to an order issued by the Receiver in connection with the Amended Recovery Plan, was denied access to the buildings, financial system, and meetings, impeding her ability to perform her duties. The City Council also informed the Receiver that it would not comply with all of the provisions of the Receiver's orders.

18. On March 22, 2022, the Commonwealth Court issued a Memorandum and Order granting the Mandamus Petition, in part (the "Mandamus Order"). A copy of the Mandamus Order is attached to the Kapoor Declaration as Exhibit G. The Commonwealth Court concluded that certain City Council members and City employees had engaged in conduct that impeded the Receiver's ability to implement the Amended Recovery Plan. Accordingly, the Mandamus Order, in relevant part, requires the City Council to refrain from interfering with the Interim CFO's performance of her duties and to comply with all programs, policies, procedures, audit recommendations, and monetary and financial controls implemented by the Interim CFO. Further, the Mandamus Order requires the City Council to immediately share information relating to the City's finances with the Receiver and the Interim CFO.

### D. The Modification

19. Following the entry of the Mandamus Order, the challenges that the Receiver faced in working with the City Council continued. In general, there remains confusion among City employees regarding to whom they report and what direction to follow when faced with conflicting directions. Unfortunately, Act 47, the Recovery Plans, and existing orders of the Commonwealth Court do not always provide clear guidance regarding such conflicting directions.

20. Further, on October 21, 2022, a member of the City Council informed the Receiver of an alleged "phishing" incident in which the councilmember caused a wire in the approximate amount of $400,000 to be transferred to someone posing as the City's insurance broker. Although the councilmember informed the Receiver of the phishing incident in October 2022, the incident actually occurred in July 2022—more than three months prior. Despite the direction of the Mandamus Order to immediately share financial information with the Receiver, the

councilmember delayed disclosure, without providing a reason for doing so. Further, it is unclear what steps, if any, were taken to remedy the incident.

21. In response to these challenges, among others, on November 8, 2022, the Receiver filed the Modification with the Commonwealth Court, seeking to further amend the Amended Recovery Plan. Through the Modification, the Receiver seeks to add or amend initiatives in the Amended Recovery Plan to address the challenges he continues to face. These initiatives are more fully described in the Modification and, among other things, purport to provide clearer guidance to all parties as to the implementation of the Amended Recovery Plan to ensure the provision of vital and necessary services to the City's residents.

**E.    The Chapter 9 Proceedings**

22. On February 8, 2022, the Receiver received written authorization to file a municipal debt adjustment action on behalf of the City under the Bankruptcy Code and Act 47 (the "Bankruptcy Authorization") from the Secretary of the DCED.

23. Pursuant to the authority granted by the Bankruptcy Authorization, on November 10, 2022 (the "Petition Date"), the City commenced this case under chapter 9 of the Bankruptcy Code, intending to propose a plan of adjustment (the "Plan") to adjust the City's immense debts.

24. Given the preexisting lack of clarity relating to the operations of the City, the Receiver is concerned that the persisting issues may be further exacerbated by the bankruptcy filing. Accordingly, a ruling by the Commonwealth Court on the Modification is necessary to facilitate a bankruptcy process that enables the City to propose and implement a Plan to allow a successful exit from chapter 9 and to provide vital and necessary services to the residents of the City.

### III.     Relief Requested and Basis for Relief

25. Section 362(a) of the Bankruptcy Code imposes an automatic stay of, among other things, "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title . . . ." 11 U.S.C. § 362(a)(1).

26. The City does not believe that the automatic stay pursuant to Section 362 of the Bankruptcy Code applies to the relief sought in the Modification. Nonetheless, by this Motion, the City seeks the entry of an order confirming that the automatic stay does not apply to the Modification and allow the Commonwealth Court to exercise its jurisdiction to consider and approve the Modification, without any concern of violating the automatic stay. Alternatively, in the event that the automatic stay applies to the relief sought by the Modification, the City requests that the Court grant limited relief from the automatic stay for cause pursuant to Section 362(d)(1) of the Bankruptcy Code.

### A.     The Automatic Stay Does Not Apply to the Modification.

27. "Although the scope of the automatic stay is broad, the clear language of Section 362(a) indicates that it stays only proceedings *against* a 'debtor' . . . .'" *Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1204 (3d Cir. 1991) (quoting *Assoc. of St. Croix Condominium Owners v. St. Croix Hotel Corp.*, 682 F.2d 446, 448 (3d Cir. 1982)). *See also Slobodian v. Adams Cty. (In re Mann Realty Assocs.)*, 608 B.R. 408, 426 (M.D. Pa. 2019) (noting that the automatic stay only applies to actions against the debtor or property of the estate); *Mitchell v. Fukuoka Daiei Hawks Baseball Club* (*In re Mitchell*), 206 B.R. 204, 212 (Bankr. C.D. Cal. 1997) ("The Section 362 stay does not apply where, as here, the debtor is the plaintiff in a lawsuit"); *Gordon v. Whitmore (In re Merrick)*, 175 B.R. 333, 337 (9th Cir. BAP 1994) ("It is clear that § 362 does not

stay the hand of the trustee from continuing to prosecute a pre-bankruptcy lawsuit instituted by the debtor."). Where the automatic stay does not apply to actions initiated by the debtor, defendants in such actions are permitted to defend themselves so long as they do not assert counterclaims without first seeking relief from the automatic stay. *See Merrick*, 175 B.R. at 338 ("Given this freedom for the debtor or the trustee to prosecute the debtor's claims, an equitable principle of fairness requires a defendant to be allowed to defend himself . . . .").

28. Section 706(9) of Act 47 empowers the Receiver "[t]o file a municipal debt adjustment action under the Bankruptcy Code . . . and to act on the municipality's behalf in the proceeding" upon written authorization of the secretary. Act 47 § 706(9). Therefore, pursuant to Section 706(9) of Act 47, the Receiver is authorized to act on behalf of the City in this chapter 9 case.

29. The Receiver, who acts on the behalf of the City in this case, is also seeking the relief set forth in the Modification before the Commonwealth Court. The Receiver believes that the relief requested in the Modification will enable the Receiver to navigate the City through the chapter 9 proceeding and minimize the operational challenges previously experienced in implementing the Recovery Plans.

30. Indeed, the caption of the Commonwealth Court receivership proceeding identifies the City as the defendant. But the caption is merely a snapshot or a brief explanation of the receivership proceeding and the City urges this Court to look beyond mere titles to the substantive and legal positions of the parties participating in the Commonwealth Court case and this bankruptcy case. Because the Receiver is acting on behalf of the City in seeking relief before the Commonwealth Court and in this chapter 9 case, the Modification was asserted *on behalf of the City* and not *against the City* within the meaning of Section 362(a)(1).

10

31. Moreover, the focus of the Modification is on issues that affect the day-to-day operations of the City and circumstances that have impeded the Receiver's ability to do his job and implement the Recovery Plans, issues over which this Court may lack jurisdiction absent consent of the City. Section 901 of the Bankruptcy Code is careful in incorporating a limited number of provisions under title 11. The clear intent of chapter 9 is to limit bankruptcy court oversight over the governmental powers of the City and avoid any interference in the politics of operating the City, absent the express consent of the City. 11 U.S.C. § 904. Moreover, under Pennsylvania law, it is Act 47 that dictates the rights and duties of the Receiver, elected officials, and employees in operating a city under financial management or oversight. Pursuant to Act 47, the Commonwealth Court has jurisdiction to hear and decide the issues raised by the Receiver in the Modification. 11 U.S.C. § 904.

32. Finally, the automatic stay does not apply to the Modification and allowing it to proceed in the Commonwealth Court will not prejudice parties that may be affected by the Modification. The automatic stay only prohibits claims against the City and does not restrict affected parties from filing pleadings in response to the Modification. Historically, the City Council, the City Solicitor, and other intervening parties have filed responsive pleadings related to the Receiver's Amended Recovery Plan. Such parties will also be able to participate and object to the Modification, so long as they do not assert claims against the City.

33. For these reasons, Section 362 of the Bankruptcy Code does not operate as a stay of the Receiver's Modification that is currently pending before the Commonwealth Court. Understanding, however, that state courts are often reluctant to proceed upon the commencement of a bankruptcy case by one of the litigants in a matter, the Receiver respectfully requests entry of

an order that will provide the Commonwealth Court the comfort and guidance to allow it to proceed.

    **B.**    **Alternatively, If the Automatic Stay Applies, Cause Exist to Grant Relief from the Automatic Stay to Allow the Modification to Proceed.**

    34.    Section 362(d)(1) of the Bankruptcy Code provides that "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying or conditioning such stay (1) for cause . . . ." 11 U.S.C. § 362(d)(1). Because "cause" is not defined in the Bankruptcy Code, whether "cause exists to modify the automatic stay is determined on a case-by-case basis. *See, e.g.*, *In re Rexene Prods. Co.*, 141 B.R. 574, 576 (Bankr. D. Del. 1992). *See also In re the SCO Group, Inc.*, 395 B.R. 852, 856 (Bankr. D. Del. 2007) ("Cause is a flexible concept and courts often conduct a fact intensive, case-by-case balancing test, examining the totality of the circumstances to determine whether sufficient cause exists to lift the stay."); *Mooney v. Gill*, 310 B.R. 543, 546-47 (N.D. Tex. 2002) ("Cause is an intentionally broad and flexible concept.").

    35.    The party requesting relief from the automatic stay bears the initial burden of demonstrating "cause" and the party opposing the relief bears the burden of disproving the existence of "cause." *Rexene Prods.*, 242 B.R. at 577; 11 U.S.C. § 362(g).

    36.    Congress has recognized that cause may exist to grant relief from the automatic stay to permit an action to proceed in a non-bankruptcy forum. "[I]t will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere." H.R. Rep. No. 95–595, 95th Cong., 1st Sess. 343–44 (1977), 1978 U.S. Code Cong. & Admin. News, p. 6300.

37. Accordingly, courts have found that allowing an action to proceed in a non-bankruptcy forum may establish sufficient "cause" to grant relief from the automatic stay. *See, e.g.*, *In re ABC Learning Centers Ltd.*, 445 B.R. 318 (Bankr. D. Del. 2010) (granting relief from the automatic stay to allow litigation against the debtor to proceed in non-bankruptcy forum); *In re Tribune Co.*, 418 B.R. 116, 126 (Bankr. D. Del. 2009) (same). Other factors that courts have considered include (a) whether relief would result in partial or complete resolution of the issues; (b) whether litigation in another forum would prejudice the interests of other creditors; (c) the interests of judicial economy and the expeditious and economical resolution of the litigation; and (d) the impact of the stay on the parties and the balance of harms. *See In re Indian River Estates*, 293 B.R. 429 (Bankr. N.D. Ohio 2003).

38. Granting relief from the automatic stay to permit the Commonwealth Court to decide the Modification will not prejudice the interests of the City's creditors. Instead, granting the relief from the automatic stay will permit the Receiver to obtain the clarity needed to navigate the City through the chapter 9 proceedings with minimal complications and ensure the provision of vital and necessary services to the City's residents, to the benefit of the City and its creditors.

39. Moreover, granting relief from the automatic stay will promote the interests of judicial economy as the clarity sought through the Modification will enable the Receiver to implement the Recovery Plans and formulate the Plan with a clearer understanding of the scope of his authority. While the Receiver acknowledges that Act 47 and the Recovery Plans do not address every possible question of the Receiver's authority under the law of the Commonwealth of Pennsylvania, the Receiver reserves the right to seek additional relief from stay to bring such questions before the Commonwealth Court.

40. Litigants regularly appearing in proceedings before the Commonwealth Court will not be prejudiced in appearing before such court, which is arguably more convenient and the state court with appropriate jurisdiction to hear these important issues. Furthermore, the Commonwealth Court has presided over the receivership proceedings for over two years and is deeply familiar with the Receiver's arguments as presented in the Mandamus Petition and the Modification.

41. Accordingly, granting relief from the automatic stay to allow the Commonwealth Court to rule on the Modification and approve the implementation of the amendments to the Amended Recovery Plan will not harm the parties involved, but will promote judicial economy and a more efficient path through the chapter 9 proceeding.

### III.    Reservation of Rights

42. The City files this Motion without prejudice to or waiver of its rights pursuant to Section 904 of the Bankruptcy Code, and nothing herein is intended to, shall constitute, or shall be deemed to constitute the City's consent, pursuant to Section 904 of the Bankruptcy Code, to this Court's interference with (a) any of the political or governmental powers of the City, (b) any of the property or revenues of the City, or (c) the City's use or enjoyment of any income-producing property.

### IV.    Notice

43. Notice of this Motion will be provided to the following (or their counsel if known) (a) the U.S. Trustee; (b) the City Solicitor for Chester; (c) the City's largest unsecured creditors as identified on the list filed under Bankruptcy Rule 1007(d); and (d) any party that has requested notice pursuant to Federal Rule of Bankruptcy Procedure 2002. The City submits that, in light of the nature of the relief requested herein, no other or further notice need be given.

## V. No Prior Request

44. No prior request for the relief sought in the Motion has been made to this or any other Court.

WHEREFORE, the City respectfully requests that the Court grant the relief requested herein, enter an order substantially in the form attached hereto as **Exhibit A** (i) confirming that the automatic stay is not in effect solely with respect to the Modification, (ii) alternatively, granting relief from the automatic stay to allow the Commonwealth Court to hear and rule on the Modification and approve the implementation of the amendments to the Amended Recovery Plan, (iii) waiving the imposition of the 14-day stay imposed by Bankruptcy Rule 4001(a)(3), and (iv) any granting further relief the Court may deem just and proper.

[*Remainder of page intentionally left blank*]

November 10, 2022

Respectfully submitted,

*[signature]*

Tobey M. Daluz (PA Bar No. 60685)
Margaret A. Vesper (PA Bar No. 329793)
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Tel: (215) 864-8148
Email: daluzt@ballardspahr.com
vesperm@ballardspahr.com

and

Matthew G. Summers*
Laurel D. Roglen*
Chantelle D. McClamb*
Ballard Spahr LLP
919 N. Market Street, 11th Floor
Wilmington, DE 19801
Tel: (302) 252-4465
Email: summersm@ballardspahr.com
roglenl@ballardspahr.com
mcclambc@ballardspahr.com

(**Pro Hac Vice* motions to be submitted)

*Attorneys for the City of Chester*