## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | Chapter 9 |
| | : | |
| CITY OF CHESTER, PENNSYLVANIA | : | Case No.:  22-13032 |
| | : | |
| Debtor. | : | |
| | : | |

## OBJECTION OF THE ELECTED OFFICIALS TO THE
## MOTION FOR RELIEF FROM THE AUTOMATIC STAY

Thaddeus Kirkland, as Mayor of the City of Chester, and the members of city council of the City of Chester (the "Elected Officials") object to the Motion for an Order Finding that 11 U.S.C. § 362 does not Operate as a Stay of the Receiver's Modification of Amended Recovery Plan Pending Before the Commonwealth Court of Pennsylvania, or Alternatively, for Relief from the Automatic Stay (the "Motion")[1] filed by Michael Doweary (the "Receiver") on behalf of the debtor, the City of Chester (the "City"). The Elected Officials do not intend to interfere with the reorganizational efforts.[2]

## I.    INTRODUCTION

This matter involves a governance dispute between the Receiver and the Elected Officials which should be mediated instead of litigated.[3]

The Receiver, purportedly acting on behalf of the City, requests relief from the automatic stay, or a determination the stay does not apply, so the Receiver can return to Commonwealth

---

[1]    ECF No. 10

[2]    The Elected Officials reserve the right to challenge the authority of the Receiver to commence this bankruptcy proceeding. Although the action might be facially authorized pursuant to the Pennsylvania Municipalities Financial Recovery Act, Act of 1987, P.L. 246, No. 47 ("Act 47"), that authorization may contravene the protections afforded to the City's Home Rule Charter pursuant to Article IX, Section 2 of the Pennsylvania Constitution.

[3]    The Elected Officials attempted to reach a resolution of this matter with the Receiver by suggesting changes to the Receiver's proposed modifications to the Act 47 recovery plan. These changes were designed to accommodate the Receiver's concerns as much as possible while maintaining the integrity of the City's form of government, self-governance and home rule charter. However, the Receiver appears entrenched in his desire to take complete control over the City. See, https://www.delcotimes.com/2022/11/10/chester-receiver-moves-to-take-over-administration-of-city/

Court and seek to, *inter alia*,: a) strip the Elected Officials of all administrative powers and functions with the City; b) give the Receiver sole control over the operation of City government; and c) give the receiver sole authority to sell assets of the City without approval by the Elected Officials.

In other words, the Receiver is seeking to put himself in sole control of the City even though the Receiver does not have these powers under Act 47. If this works, the Receiver will not be answerable to anybody, particularly the voters. The residents will be disenfranchised. There will be no, or insufficient, checks and balances and the Receiver will effectively be the absolute ruler of the City even though he does not reside there.

Section 904 of the Bankruptcy Code deprives this Court of jurisdiction to grant relief to the Receiver to take control of the City and disenfranchise the residents. It prevents the Court from doing anything to interfere with the political or governmental powers of the City or the City's use or enjoyment of income producing property without the consent of the City. 11 U.S.C. §904. As explained later, the Receiver does not have the authority to consent to the relief from the stay on behalf of the City.

Granting relief from the automatic stay will only perpetuate counterproductive litigation between the Receiver and the Elected Officials. The Commonwealth Court held a status conference on November 17, 2022 and tentatively scheduled a trial for the week of December 19, 2022 if relief from the stay is granted by this Court. The Commonwealth Court anticipates a three to four day trial and the losing party will almost assuredly appeal to the Pennsylvania Supreme Court.

In other words, there will be months, or more, of continued litigation and uncertainty when the Receiver and the City Officials would be better served by working cooperatively to monetize

2

assets[4] and effectuate a financial recovery for the City. As a result, the Elected Officials respectfully request that the Motion for relief from the automatic stay be denied or, at the very least, the Court defer ruling on the Motion and instruct the parties to mediate their disputes.[5]

## II.    BACKGROUND

### The City and Form of Government.

The City of Chester is located in Delaware County and has a population of about 34,000. It is a city of the third class under Pennsylvania law and it is governed by a Home Rule Charter[6] which incorporates the City's Administrative Code.[7] The City is governed by a five-member elected council, including the Mayor who has equal voting rights to other council members.[8] The Mayor also serves as chief executive of the City and supervises City officers.[9]

### Financial Distress
### Exacerbated Covid-19.

The City has been the subject of financial oversight Act 47 since 1995. In other words, the City's financial problems predate the involvement of the current Elected Officials.

On April 13, 2020, following the onset of COVID-19, the governor of the Commonwealth declared a fiscal emergency in the City. Unsurprisingly, the pandemic further impaired the City's fiscal condition resulting in decreased revenues and the curtailment of some critical services.

### The Receiver.

The Receiver was appointed as the Act 47 receiver for the City on June 22, 2020.

---

[4]      From a practical perspective, the Receiver will probably not be able to sell any significant asset without approval by the Elected Officials because it is likely any buyer would require city council approval as a condition of sale in order to avoid title issues which may arise if council does not approve the sale.
[5]      The automatic stay will not terminate 30 days after the filing of the motion pursuant to 11 U.S.C. §362(e)(1) because that sub-section only applies to lift the stay for actions against property of the estate.
[6]      A copy of the Home Rule Charter is attached as Exhibit A
[7]      See examples, Home Rule Charter, Sections 211, 213 and 215. A copy of the Administrative Code is attached as Exhibit B
[8]      Home Rule Charter, Article II
[9]      Home Rule Charter, Article III

**The Amended Recovery Plan.**

On April 7, 2021, the Receiver filed, and the Commonwealth Court approved on June 7, 2021, an Amended Recovery Plan which is the operative recovery plan and replaces a prior plan filed shortly after the beginning of the receivership.[10]

**The Mandamus Petition in the Commonwealth Court.**

On March 4, 2022, after working together with the Elected Officials for nearly two years, the Receiver filed a petition in the Commonwealth Court seeking a writ of *mandamus* to compel the City and Elected Officials to *inter alia*,:

a.     to reduce the Elected Officials' salaries by $10,000 as provided in the Amended Recovery Plan;

b.     rescind a resolution which supported an application by a private party for a liquor license; and

c.     strip one of the Elected Officials of duties and authority as director of the City's Accounts and Finance Department and the Human Resources Department and to require the Elected Officials to take direction from an accounting temp from the Robert Half temporary staffing agency.

Although not required under the City's Home Rule Charter, the City and Elected Officials sought the consent of the Receiver to retain counsel to defend the *mandamus* petition. The Receiver responded by issuing an order precluding the City from incurring counsel fees in excess of $7,500. The City and the Elected Officials retained counsel to defend the *mandamus* proceeding which

---

[10]     The recovery plans are available on the Receiver's website: https://www.chesterreceivership.com/documents

involved an evidentiary hearing and pre-and post-hearing briefing. Perhaps unsurprisingly, counsel fees exceeded $7,500.

On March 22, 2022, the Commonwealth Court issued a Memorandum and Order[11] which granted, in part, and denied, in part, the *mandamus* petition. First, the Court did not grant the Receiver's request to roll back the salaries of the Elected Officials in the middle of their terms. The Court recognized this relief was prohibited by the Pennsylvania Constitution. Instead, the Court ordered the Elected Officials to pass an ordinance to reduce the salaries effective as of the next new term of the officials.

Second, the Commonwealth Court denied the Receiver's request to order the rescission of the resolution supporting the liquor license application of the private party. The Commonwealth Court noted the liquor license does not conflict with the stated goals or initiatives in the Amended Recovery Plan and it may promote several goals including increasing jobs and economic opportunities in the City, attracting commercial development to the City, and improving the quality of life for City residents and workers.

Finally, the Commonwealth Court denied the Receiver's request to prohibit a council person from performing his duties as the head of the Finance and Human Resources Departments. Instead, the Court ordered more narrow relief including: a) prohibiting the council person from interfering with the interim chief financial officer; b) requiring the interim chief financial officer have access to records and equipment; c) requiring the council person to comply with procedures implemented by the interim chief financial officer; and d) requiring the City officials to take directives from the interim chief financial officer from the Robert Half temporary staffing agency.

---

[11]     A copy of the Memorandum and Order is attached as Exhibit C

On March 25, 2022, the City filed applications for reargument and to stay the Memorandum and Order addressing discrete aspects of the Memorandum and Order. Specifically, the City sought relief solely with respect to the provisions of the Memorandum and Order which required the Elected Officials to take directives from the interim chief financial officer. The City asserted this aspect of the order violated the City's Home Rule Charter, Act 47 and the Pennsylvania Constitution by changing the form of government.

On April 11, 2022, the Commonwealth Court modified the original order to address the issues raised by the City.[12] In particular, the Court added a caveat to the original order making it effective to the extent that the directives are lawful and do not change the form of government.[13]

Since then, the Receiver and the City have been litigating the validity of the Receiver's order limiting the City's counsel fees to $7,500. That matter is presently pending before the Commonwealth Court.

**The Pending Commonwealth Court Motion
to Modify the Amended Recovery Plan Seeking
to Strip the Elected Officials of their Duties.**

On November 8, 2022, two days before the petition date, the Receiver filed a motion (the "Modification Motion") in the Commonwealth Court seeking to modify the Amended Recovery Plan. The Receiver is the movant and the City is the respondent. The Receiver filed the present Motion for relief from the automatic stay[14] to proceed with the Modification Motion in the Commonwealth Court although the relief from stay motion was ostensibly filed by the City.[15]

---

[12]      A copy of the April 11, 2022 Order is attached as Exhibit D
[13]      Exhibit D
[14]      ECF 10
[15]      Perhaps recognizing the proper party to seek relief from the stay is the Receiver, the Receiver filed a suggestion of bankruptcy in the Commonwealth Court stating the Receiver filed the relief from stay motion. A copy of the suggestion of bankruptcy is attached as Exhibit E.

The Modification Motion seeks modifications to the Amended Recovery Plan to effectuate changes to the City's Home Rule Charter which are not permissible under Article IX, Section 2 of the Pennsylvania Constitution without a voter referendum.[16]

For example, the Receiver seeks to modify the Amended Recovery Plan to suspend the administrative duties of the Elected Officials with respect to day-to-day operations of the City and transfer the duties to the Chief Operating Officer selected by the Receiver. The proposed modification provides that the Chief Operating Officer shall report to the Receiver and the Elected Officials may contact the Chief Operating Officer for the purposes of inquiry, but the Elected Officials shall not direct the Chief Operating Officer relating to any matter in the line of his responsibilities. The proposed modification provides City employees are to take directives from the Chief Operating Officer and not the Elected Officials as required by the Home Rule Charter.

In other words, the proposed modifications to the Amended Recovery Plan remove the Elected Officials from their roles with respect to the operation of the City government and replaces the Elected Officials with a Chief Operating Officer solely responsible to the Receiver. If approved, the Receiver will be in complete control of the operation of the City, even though this is not contemplated by Act 47 or permitted by the City's Home Rule Charter, and the incorporated Administrative Code, which vests the Elected Officials with day-to-day operational powers and duties.[17]

The Receiver also seeks to prohibit the City from hiring or firing personnel and to give the Receiver the sole hiring and firing authority even though the Elected Officials ultimately have that

---

[16]     "Referendum" means "approval of a question placed on the ballot, by initiative or otherwise, by a majority vote of the electors voting thereon." Pa. Constitution, Article IX, Section 14.

[17]     See example, Home Rule Charter, Article III (The Mayor serves as chief executive of the City and supervises City officers).

Document      Page 8 of 24

authority.[18] The proposed modifications also include a prohibition on overtime except for police and fire departments. In other words, if there is a health and safety issue which must be addressed immediately by non-first responder personnel, the Mayor must track the Receiver down, wherever he may be, before City personnel may be used on an overtime basis. Under this proposal, a delay could cost lives.

The Receiver's proposed modifications seek to skip the constitutional requirement that modifications of the Home Rule Charter be amended by voter referendum. See, Pa. Constitution, Article IX, Section 2. The most obvious example is the proposed modification of section 903(c) of the Home Rule Charter which provides "Where special skills are required, Council may at its discretion, employ qualified non-residents of the City in such cases where there are no qualified City residents available for the particular position involved." The Receiver's proposed modification substitutes "the Receiver" for "Council" in this provision of the Home Rule Charter without seeking approval of the modification by voter referendum.

There are other proposed modifications which impermissibly encroach on the form of the City's government and the role of the Elected Officials like providing the Receiver with the right to develop ethics rules which have no bearing on the financial recovery. But one more proposal deserves special attention. The Receiver proposes a modification which gives the Receiver "authority to direct the City or Authority to remove items from their Council or Board agenda." In other words, the Receiver is seeking the right to effectively veto any legislation before it comes to vote by the Elected Officials.

---

[18]      See Administrative Code, Section 111.03 providing that the department heads act as agents of council who have the right to review, approve and revoke the actions of the department heads.

**The Elected Officials Attempt to Resolve the Dispute.**

The Elected Officials submitted two possible proposals[19] to the Receiver, via the debtor's bankruptcy counsel, in an effort to resolve the disputes. The first proposal reflects the view of one member of council who generally supports the Receiver's proposed modifications to the Amended Recovery Plan with a few exceptions. One of these exceptions is the council member's proposal that the Elected Officials retain the ability to review all contracts and agreements and have the opportunity to discuss them without giving the Receiver blanket authority.

The second proposal, submitted by the Mayor and other council members, generally attempts to accommodate the Receiver's concerns as much as possible but also seeks to preserve the City's form of government, Administrative Code and Home Rule Charter.

**The Dispute Concerning the Right of the
Elected Officials to be Represented by Special Counsel.**

There is a dispute between the Elected Officials and the Receiver concerning whether the Elected Officials may retain and compensate special counsel to represent them in this bankruptcy proceeding and the Act 47 proceeding in the Commonwealth Court. The Receiver rejected the request of the Elected Officials to retain special counsel in this bankruptcy case and the Receiver has only authorized $35,000 in professional fees to defend the Modification Motion in the three or four day trial before the Commonwealth Court.

The Elected Officials contend they maintain the right to retain and compensate special counsel pursuant to the Home Rule Charter and the Administrative Code. The Receiver maintains the Receiver has the right to approve the retention and compensation of counsel pursuant to the Amended Recovery Plan which requires Receiver approval of "discretionary purchases" of

---

[19]      These are non-binding proposals. Any official action may need to be considered and approved by the Elected Officials at a City council meeting.

9

"materials, supplies, and equipment" in excess of $5,000.[20] The Receiver previously issued an order prohibiting payment of counsel fees in excess of $7,500 in the prior Commonwealth Court *mandamus* action in which the City and Elected Officials were substantially the prevailing party.

Fundamental fairness and the need to preserve the City's self-governance for the voters requires adequate representation of the Elected Officials without artificially low limits on professional compensation.

## II.     APPLICABLE NON-BANKRUPTCY LAW

Pennsylvania's Act 47[21] authorizes the Receiver to commence and prosecute this bankruptcy proceeding on behalf of the City[22] but the Receiver's authority is not without limit. It is subject to, at least, three caveats: (1) the Receiver must comply with the City's Home Rule Charter and the Administrative Code; (2) the Receiver may not change the form of the City's government; and (3) the Elected Officials retain the right to exercise any power or perform any function not denied by the Pennsylvania Constitution, the Home Rule Charter or by any qualifying Pennsylvania law.

**State Constitution protection of home rule.**

These caveats arise from Article IX, Section 2 of the Pennsylvania Constitution which provides, in pertinent part:

> § 2.    Home rule. Municipalities shall have the right and power to frame and adopt home rule charters. ***Adoption, amendment or repeal of a home rule charter shall be by referendum***. The General Assembly shall provide the procedure by which a home rule charter may be framed and its adoption, amendment or repeal presented to the electors. If the General Assembly does not so provide, a home rule charter or a procedure for framing and presenting a home rule charter

---

[20]    Professional services to preserve self-governance and the Home Rule Charter are not discretionary. They are a necessity. They also do not constitute "materials, supplies and equipment."
[21]    The Pennsylvania Municipalities Financial Recovery Act, Act of 1987, P.L. 246, No. 47
[22]    53 P.S. § 11701.706(a)(9)

> may be presented to the electors by initiative or by the governing body of the municipality. ***A municipality which has a home rule charter may exercise any power or perform any function not denied by this Constitution, by its home rule charter or by the General Assembly at any time.*** (emphasis added)

Pa. Constitution, Article IX, section 2

Part of this constitutional provision is incorporated, nearly verbatim, into the Pennsylvania Home Rule Charter Act which emphasizes the scope of a home rule municipalities power is to be liberally construed in favor of the municipality: "A municipality which has adopted a home rule charter may exercise any powers and perform any function not denied by the Constitution of Pennsylvania, by statute or by its home rule charter. All grants of municipal power to municipalities governed by a home rule charter under this subchapter, whether in the form of specific enumeration or general terms, shall be ***liberally construed in favor of the municipality***." 53 Pa.C.S. § 2961 (emphasis added).

Addressing Article IX, Section 2 of the Pennsylvania Constitution, the Pennsylvania Supreme Court recognized the "home rule municipality's exercise of power is presumed to be valid absent a specific constitutional or statutory limitation." *In re Petition to Recall Reese*, 665 A.2d 1162, 1164 (Pa. 1995). Any power which the General Assembly does not forbid is extended to the municipality. *Pa. Rest. & Lodging Ass'n v. City of Pittsburgh*, 653 Pa. 596, 211 A.3d 810 (2019). If there is ambiguity in the scope of municipal authority or the limitations imposed on the authority, the ambiguity must be resolved in the municipality's favor. *Pa. Rest. & Lodging Ass'n v. City of Pittsburgh*, 653 Pa. 596, 211 A.3d 810 (2019) citing *Nutter v. Dougherty*, 595 Pa. 340, 938 A.2d 401, 411 (Pa. 2007).

**Act 47 does not eliminate home rule.**

Act 47 is not the type of a statute which may deny a municipality the authority to exercise power and perform functions provided in the home rule charter. There is no specific constitutional or statutory provision which gives the Receiver the authority to strip the City and City officials of the right of self-governance.

In order for a statute to deny a municipality the authority to exercise powers and perform functions provided in the home rule charter, the statute must be "applicable in every part of the Commonwealth" and involve substantive matters of statewide concern. *Devlin v. City of Philadelphia*, 580 Pa. 564, 578-579, 862 A.2d 1234 (2004) citing *Ortiz v. Commonwealth*, 545 Pa. 279, 286, 681 A.2d 152 (1996). Matters "of statewide concern" include matters involving "the health, safety, security and general welfare of all the inhabitants of the State," but do not include "matters affecting merely the personnel and administration of the offices local to [the municipality] and which are of no concern to citizens elsewhere." *Devlin v. City of Philadelphia*, 580 Pa. 564, 579, 862 A.2d 1234 (2004).

The receivership provisions of Act 47 do not satisfy this test. They are not matters of statewide concern applicable in all parts of the Commonwealth. They only apply in distressed communities. 53 P.S. § 11701.712(a) ("This chapter shall apply only to distressed municipalities"). They also do not involve "the health, safety, security and general welfare of all the inhabitants of the State," and are only "matters affecting merely the personnel and administration of the offices local to [the municipality] and which are of no concern to citizens elsewhere." Only the residents

of City have an interest in the affairs of City. Residents of other municipalities are not concerned with the administrative function of the City.

Act 47 is drafted to avoid unconstitutionally usurping a home rule charter municipality's authority by expressly prohibiting a recovery plan from being construed as authorizing a change in the form of government[23] or affecting powers and duties of elected and appointed officials except that it may: a) impose a duty on officials to undertake the acts set forth in the Plan; and b) suspend the authority of officials to exercise power which interferes with the powers granted to the Receiver or the goals of the Plan. 53 P.S. § 11701.708.

In other words, the Elected Officials still run government and retain all of their authority except to the limited extent the authority interferes with the Receiver's enumerated powers or the goals of the Amended Recovery Plan in which case the Receiver has the authority to issue an order compelling compliance with the Amended Recovery Plan and seek *mandamus* relief if the officials do not comply with the order. 53 P.S. §§ 11701.708 and 11701.709.

**Voter referendum required to amend Home Rule Charter.**

Perhaps most importantly, the citizens of the City of Chester retain their constitutional right to amend the home rule charter by referendum. Pa. Constitution, Article IX, Section 2 (providing "amendment or repeal of a home rule charter shall be by referendum"). Neither the Receiver, nor any court, has the power to amend the Home Rule Charter. That power rests exclusively with the voters.

---

[23]    The Pennsylvania Supreme Court defines "form of government" as "the organization, placement, or relationship   of basic elements," and "the structure, organization,   or essential character of something, as opposed to its matter." *Harrisburg Sch. Dist. v. Zogby*, 828 A.2d 1079, 1092 (Pa. 2003).

**Act 47 receiver has limited powers**

An Act 47 receivership is not a traditional receivership. An Act 47 receiver has limited powers defined by the statute including the power: (1)  to require the distressed municipality or authority to take actions necessary to implement the recovery plan; (2)  to modify the recovery plan as necessary to achieve financial stability of the distressed municipality; (3) to require the distressed municipality or authority to negotiate intergovernmental cooperation agreements to eliminate and avoid deficits, maintain sound budgetary practices and avoid interruption of municipal services; (4)  to submit quarterly reports to the governing body; (5) to require the distressed municipality or authority to cause the sale, lease, conveyance, assignment or other use or disposition of the distressed municipality's or authority's assets; (6) to approve, disapprove, modify, reject, terminate or renegotiate contracts and agreements except to the extent prohibited by the Constitutions of the United States and Pennsylvania; (7) to direct the distressed municipality or authority to take any other action to implement the recovery plan; (8) To attend executive sessions of the governing body of the distressed municipality or authority and make reports to the public on implementation of the recovery plan; (9) to file a Chapter 9 proceeding and to act on the municipality's behalf in the bankruptcy; (10) To meet and consult with the advisory committee under section; (11) to employ financial or legal experts deemed necessary to develop and implement the recovery plan. Notwithstanding any law to the contrary, the employment of such experts shall not be subject to contractual competitive bidding procedures; and (12) to make a recommendation to the Commonwealth that the municipality be disincorporated. 53 P.S. § 11701.706(a).

Because an Act 47 receiver has limited statutory authority, which does not include authority to govern or run the municipality, an Act 47 receiver does not take possession or control

of assets and does not run the government. There is no receivership estate. In other words, the Receiver does not have *carte blanche* authority in the receivership or in this bankruptcy case. The Receiver cannot take action which contravenes the Home Rule Charter, and the Elected Officials retain their governance and administrative rights. Depending on the nature of the transaction, the Elected Officials may need to adopt ordinances or resolutions to aid these bankruptcy proceedings in order to comply with the Home Rule Charter. To the extent a contemplated action contravenes the Home Rule Charter, the citizens of the City may have to approve it in a referendum. See example, 11 U.S. Code § 943(b)(6)(contemplating electoral approval may be required to confirm a plan).

### Self-governance preserved by chapter 9.

The Bankruptcy Code implicitly recognizes a chapter 9 debtor's self-governance rights by denying the Court jurisdiction to interfere with any of the political or governmental powers of a Chapter 9 debtor without the consent of the debtor. 11 U.S. Code § 904(1). Because this provision protects the political and governmental powers, and because the Pennsylvania Constitution establishes the supremacy of the Home Rule Charter, the Receiver may not consent to interference with the powers of the Elected Officials under the Home Rule Charter or the reserved rights of the voters to approve amendment of the Home Rule Charter.

In short, state law and chapter 9 create a separation of powers which should be workable to achieve the joint goals of the Receiver and the Elected Officials in a financial recovery for the City. But, in this process, the parties and the Court should be cognizant of the separation of powers. The Receiver and the Elected Officials must respect the other's powers and they must work together towards the common goal.

Because the goal should include an economically stable and independent City with self-governance, the Elected Officials need to be involved in the bankruptcy process. This is particularly important because the Elected Officials will likely be asked to exercise their legislative and operational functions to approve items from the mundane, like payment of publication and claims agent fees, to the potential monetization and sale of assets. But most importantly, the Elected Officials are the representatives of the residents who would be without a voice in this bankruptcy proceeding if the Elected Officials are denied meaningful participation.

The litigation between the Receiver and the Elected Officials should stop so the parties may move forward together for the benefit of the City and its residents.

## III.    <u>OBJECTIONS</u>

### A.    **The motion for relief from the automatic stay was filed by the wrong party and is not properly authorized by the Elected Officials.**

It is unusual for a debtor to file a motion for relief from the automatic stay to permit another party to pursue litigation against the debtor.[24] In this case, the Receiver is seeking relief from the automatic stay on behalf of the City so the Receiver can take adverse action against the City. This is a blurring of the Receiver's roles and capacities which are in conflict.

The Receiver should not be permitted to use his statutory authority to act on the City's behalf in this bankruptcy proceeding to further the Receiver's separate and distinct role as Act 47 receiver. In that role, the Receiver is both technically and practically adverse to the City. The City is a respondent in the Act 47 case and the Receiver is seeking usurp the City's authority and independence with the Modification Motion.

---

[24]    If it happens at all, it would be in the context of an agreement between the debtor and the third-party which limits the recovery to proceeds of insurance. That is not the case in this matter.

The Receiver does not have unfettered authority under Act 47 to act on the City's behalf in this bankruptcy case. This is especially true in connection with the relief from stay Motion in which the Receiver is seeking to exercise authority to the City's detriment. *Amquip Crane Rental, LLC v. Crane & Rig Servs., LLC*, 199 A.3d 904, 913 (Pa. Super. Ct. 2018) (agent precluded from acting when the agent's interests conflict with the principal).

Act 47 provides generic authority to the Receiver to "act on behalf of" the City in the bankruptcy case. 53 P.S. § 11701.706(a)(9). It does not state that this authority supplants the City's Home Rule Charter or the role of the Elected Officials. It does not give the Receiver authority to abrogate or modify the requirements of the Home Rule Charter which may not be amended without a voter referendum. Pa. Const. Article IX, Section 2. To the contrary, the Receiver's authority is circumscribed by Act 47 and is limited to the powers enumerated in 53 P.S. §§ 11701.706(a) and 11701.708. None of those powers give the Receiver *carte blanche* authority to make decisions for the City instead of the elected officials.

The "on behalf of" language of § 11701.706(a)(9) does not trump the Home Rule Charter or displace the Elected Officials. In order for a statute to deny a municipality the authority to exercise power and perform functions provided in the home rule charter, it there must be a specific constitutional or statutory limitation. *In re Petition to Recall Reese*, 665 A.2d 1162, 1164 (Pa. 1995). The "act on behalf" language does not specifically eliminate retained authority of the City or Elected Officials.

The receivership provisions of Act 47 do not modify the self-governance rights because they are not "applicable in every part of the Commonwealth" or involve substantive matters of statewide concern. *Devlin v. City of Philadelphia*, 580 Pa. 564, 578-579, 862 A.2d 1234 (2004) citing *Ortiz v. Commonwealth*, 545 Pa. 279, 286, 681 A.2d 152 (1996). In particular, the

17

receivership provisions of Act 47 only apply in distressed communities and do not apply on a statewide basis. 53 P.S. § 11701.712(a) ("This chapter shall apply only to distressed municipalities").

To the extent there is ambiguity about whether the "act on behalf" of language in Act 47 gives the Receiver unfettered authority, that ambiguity must be resolved in favor of the City maintaining self-governance rights in this bankruptcy case. *Pa. Rest. & Lodging Ass'n v. City of Pittsburgh*, 653 Pa. 596, 211 A.3d 810 (2019) citing *Nutter v. Dougherty*, 595 Pa. 340, 938 A.2d 401, 411 (Pa. 2007).

As a result, the Receiver may not unilaterally seek, or consent to, to relief from the automatic stay on behalf of the City so the Receiver can take adverse action against the City. The City, and the Elected Officials, must have a say in this bankruptcy proceeding and must be able to defend against actions by the Receiver which are adverse to the City, the Elected Officials and the voters.

**B.    The automatic stay applies.**

The Bankruptcy Code automatically stays "the commencement or continuation…of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title." 11 U.S.C. § 362(a)(1). There is no legitimate question that the Modification Motion is stayed.

The Modification Motion involves a judicial proceeding which was filed by the Receiver before the commencement of this case. The Receiver's argument that the City is really the movant with respect to the Modification Motion is facially wrong and highlights the Receiver's blurred and conflated roles. The movant is the Receiver and the respondent is the City. The Receiver seeks relief in the Modification Motion which is adverse to the City and the City's self-governance.

18

As a result, there is no legitimate doubt that the Modification Motion is subject to the automatic stay.

### C.      There is no cause for relief from the automatic stay.

Relief from the automatic stay can only be granted for cause. 11 U.S.C. § 362(d). Determining "cause" is a matter of the Court's discretion and is done by examining the totality of the circumstances. *In re Dunlop*, 378 B.R. 85, 91-92 (Bankr. E.D. Pa. 2007) (citations omitted). Cause is a flexible concept and courts often conduct a fact intensive, case-by-case balancing test, examining the totality of the circumstances to determine whether sufficient cause exists to lift the stay." *In re SCO Group, Inc.*, 395 B.R. 852, 856 (Bankr. D. Del. 2007).

Courts have developed a three-prong balancing test to determine whether to grant relief from the stay: (1) whether any great prejudice to either the bankrupt estate or the debtor will result from continuation of the civil suit; (2) whether the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the debtor; and (3) the probability of the [movant] prevailing on the merits." *Id.* at 857. The factors considered include the impact of the stay on the parties and the balance of the harms. *Id.*

These considerations and policies weigh in favor of finding no cause to lift the automatic stay.  The Receiver wants to interfere with the City's self-governance by divesting the Elected Officials of authority to govern the City and make decisions concerning the sale of the City's assets.

The Receiver will not suffer any prejudice of relief from the stay is not granted.  The worst-case scenario is that the Receiver will need to consider the opinions of the Elected Officials who are interested parties in this case. Because the Elected Officials speak for the residents, and because

there is no official committee of residents, this is not prejudicial. It is what should happen in any chapter 9 case.

On the other hand, granting relief from the stay may permit the Receiver to take control of the City and deny the residents of their right to choose who governs the City and their constitutional right to approve any amendment of the Home Rule Charter by voter referendum. Pa. Constitution, Article IX, Section 2. The residents will be harmed by the disenfranchisement contemplated by the Modification Motion.

The voters are not parties to the Commonwealth Court case and will not be adequately represented in this bankruptcy case if the Elected Officials denied meaningful participation. The residents are the most important, but potentially weakest voices, in this case and, by necessity, must rely on the Elected Officials to protect their rights from disenfranchisement. If relief from the stay is granted, and the Modification Motion is approved, the citizens of the City will be the only people in Pennsylvania, perhaps the United States, who are governed by somebody who is not elected and not accountable to the people. In other words, the citizens of Chester will lose again.

In short, the hardship to the residents far outweighs any inconvenience to the Receiver.

Finally, the Receiver is not likely to prevail. The proposed modifications to the Amended Recovery Plan facially violate Article IX, Section 2 of the Pennsylvania Constitution and deprive the voters of their constitutional right to approve changes to the Home Rule Charter by referendum. Similar issues were litigated in connection with the *mandamus* motion and the Receiver lost. He is not likely to prevail this time.

As a result, relief from the stay should never be granted to permit the disenfranchisement of voters.

**D.    The Court lacks jurisdiction to grant relief from the stay.**

Section 904 of the Bankruptcy Code prohibits the Court from exercising jurisdiction to interfere with: (1) any of the political or governmental powers of the City; (2) any of the property or revenues of the City; or (3) the City's use or enjoyment of any income-producing property without the consent of the City. 11 U.S.C. § 904.

**The Receiver may not consent for the City.**

As explained earlier, the Receiver does not have the authority to consent to relief from the stay so the Receiver could take action adverse to the City. The Receiver's authority in this bankruptcy case is statutorily limited to acting on behalf of the City. 53 P.S. § 11701.706(a)(9). In other words, the Receiver is effectively acting as the City's agent in this bankruptcy proceeding. As an agent, the Receiver is required to take directives from the principal (i.e., the City) and is precluded from acting when the agent's interests conflict with the principal. *Amquip Crane Rental, LLC v. Crane & Rig Servs., LLC*, 199 A.3d 904, 913 (Pa. Super. Ct. 2018).

**Granting relief from the stay would constitute prohibited interference.**

The Receiver is seeking authority to violate the clearest bright line rule in a chapter 9 bankruptcy. He is seeking to take control of the City government and assets even though chapter 9 was designed to avoid this result by excluding the property of the estate provisions of the Bankruptcy Code from application in chapter 9.[25]

Chapter 9 is designed to permit a debtor to retain full title and control over its property and operations. *In re Jefferson County*, 484 B.R. 427, 462-63 (Bankr. N.D. Ala. 2012) (citing *In re New York City Off-Track Betting Corp.*, 434 B.R. 131, 142 (Bankr. S.D.N.Y. 2010)). Chapter 9

---

[25]    If the property of the estate provisions been included in chapter 9, the Receiver would not be permitted to take maintain control of the City's property because 11 U.S.C. § 543 would have required him to turn over the property to the City.

(by virtue of Section 904) is meant to protect municipalities from having their fundamental governmental and political powers challenged during a municipal debt adjustment action.

Where a movant seeks relief from stay to advance a proceeding in state court for which the bankruptcy court does not have authority to rule by virtue of Section 904 of the Bankruptcy Code, lifting the stay would be fundamentally at odds with chapter 9 policy. *In re City of Stockton, Cal.*, 478 B.R. 8, 25 (Bankr. E.D. Cal. 2012). Further, where such relief sought to be pursued in a state court proceeding seeks to affect the debtor's property, as in this case, there is a serious jurisdictional dilemma, as the chapter 9 debtor's property comes under the exclusive jurisdiction of the bankruptcy court upon commencement of a chapter 9 case. *Id.* at 26 (citing 28 U.S.C. Sections 151 and 1334(e)(1)).

The starting point is that the Debtor's property and operations remain in control of its city council pursuant to the governmental and political power vested in that body under the Home Rule Charter and the Pennsylvania Constitution. Lifting the stay to allow the Receiver to move forward with the Modification Motion in the Commonwealth Court would be inconsistent with the purpose of Chapter 9.

In *Stockton*, the court dismissed an adversary proceeding because the Court determined that the relief sought was beyond the jurisdiction of the court due to Section 904. The plaintiffs suggested that if the bankruptcy court did not have authority to interfere with the City's property, then they should be permitted to bring their claims before a court that had such authority (i.e., a state court, following relief from stay). The *Stockton* court disagreed, holding that lifting the stay to allow plaintiffs to proceed in such a manner, in light of Section 904, would be "fundamentally at odds with basic policy underlying chapter 9." *In re City of Stockton*, 478 B.R. at 25.

22

Unlike chapter 11, there is no concept of a debtor in possession in chapter 9.  Section 541, which defines "property of the estate," is not incorporated into chapter 9.  Nor is § 363, which regulates the use, sale or lease of property, applicable to a chapter 9 case. *See* 11 U.S.C. § 901(a). By virtue of § 904, a debtor in chapter 9 retains title to, possession of, and complete control over its property and its operations, and is not restricted in its ability to sell, use, or lease its property. *In re Valley Health System*, 429 B.R. 692, 714 (Bankr. C.D. Cal. 2010) (citing 11 U.S.C. § 904) . To allow stay relief for a party to challenge the Debtor's "complete control over its property and operations" would undermine Section 904.

As of the filing of this Chapter 9 case, the Receiver has authority and power as vested in him by Act 47, and the Elected Officials retain power and authority vested by the Home Rule Charter which is protected from modification by the Pennsylvania Constitution.  To condone a challenge to this authority as it existed as of the petition date, by lifting the automatic stay to allow the Receiver to dismantle this division of power would undermine Section 904.  It would further endorse the Receiver's idea that he can control the City without input from the Elected Officials.

The Elected Officials respectfully request the Court decline to exercise jurisdiction to permit the Receiver to seek modification of the Home Rule Charter in violation of the state constitution. The self-governance rights of the City and the residents must be preserved in this case.

## IV.    <u>CONCLUSION</u>

The Elected Officials respectfully request that the motion for relief from the automatic stay be denied or, at a minimum, be deferred until: a) the parties mediate their disputes; and b) an official committee of residents is appointed to protect the residents from disenfranchisement.

Date:   November 21, 2022                **BUCHANAN INGERSOLL & ROONEY PC**

*/s/ Mark Pfeiffer*

23

Mark Pfeiffer, Esq. (Pa. Id. No. 76245)
50 S. 16th Street, Suite 3200
Philadelphia, PA 19102
Phone: (215) 665-8700
Facsimile: (215) 665-8760
E-mail: mark.pfeiffer@bipc.com
*Counsel for the Elected Officials*