IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: : <br> : <br> CITY OF CHESTER, PENNSYLVANIA, : <br> : <br> : <br> Debtor. : <br> : <br> : <br> : | Chapter 9 <br><br> Case No. 22-13032-amc <br><br> Related to Docket No. 16, 50 <br><br> Hearing Date & Time: <br> December 15, 2022 at 10:00 a.m. |

**CHESTER WATER AUTHORITY'S RESPONSE TO DEBTOR'S MOTION
FOR AN ORDER (I) APPOINTING A JUDICIAL MEDIATOR,
(II) REFERRING CERTAIN MATTERS TO MANDATORY
MEDIATION, AND (III) GRANTING RELATED RELIEF**

Chester Water Authority ("CWA" or the "Authority") submits this limited response to the Debtor's Motion for Entry of an Order (I) Appointing a Judicial Mediator, (II) Referring Certain Maters to Mandatory Mediation, and (III) Granting Related Relief (the "Debtor's Motion") (Doc. 16):

The Authority is a party to this proceeding as a *creditor* of the Debtor and embraces referral of this matter to mediation in that capacity. The Authority is also willing to discuss in mediation the ways that it can assist the Debtor with its financial situation. However, the Authority is *not* the Debtor's asset and the Authority *does* contest what the Debtor's Motion refers to as "Monetization of the Water Assets"—by which the Debtor means the assets *of the Authority*. Motion at ¶ 18(a). In the same vein, the Authority also contests the Debtor's false statement that it can "repossess the Water Assets." *Id*. at ¶ 21. The Authority adamantly opposes these characterizations because the Debtor does not and has never owned the Authority, which

serves hundreds of thousands of Pennsylvania residents who live and work across two counties (Delaware and Chester).[1]

Neither the Authority nor *its* assets have *ever* been possessed by the Debtor and therefore, obviously cannot be "repossess[ed]." The Debtor's misleading language to the contrary ignores that the Pennsylvania Supreme Court "has consistently held that municipal authorities"—such as the CWA—"are not the creatures, agents or representatives of the municipalities which organize them, but rather are independent agencies of the Commonwealth, and part of its sovereignty." *Com. v. Erie Metro. Transit Auth.*, 281 A.2d 882, 884 (Pa. 1971) (internal quotation marks omitted). The Debtor therefore cannot "repossess" the Authority, which it never possessed in the first place.[2]

The Authority also reserves its right to challenge, at the appropriate time, the jurisdiction of this Court to determine whether (or not) the City has the right to seize and sell the assets of the

---

[1] The early financing and infrastructure development of the Authority is recited in detail in *Rankin v. Chester Municipal Authority*, 68 A.2d 458 (Pa. Super. 1949). *Rankin* explains that when the Authority was created in 1939, "it purchased the properties and franchises of the Chester Water Service Company." *Id*. at 461. "The Authority possessed no taxing power. It could not pledge its assets to secure a loan; it could offer to prospective bondholders only the security of future net revenues. To finance this purchase, the Authority issued water revenue bonds in the amount of $5,910,000[.]" *Id*. The Authority acquired and constructed a "small pumping station and the pertinent water rights, in Pine Grove, on the Octoraro Creek, Chester County . . . forty miles distant from the City;" and "dam, spill way, and a two billion gallon reservoir on the Octoraro Creek, a filtering plant and pumping station at Pine Grove and a large transmission main to carry the water to Chester[.]" *Id*. at 462. This acquisition and construction was financed *by the Authority* through "the issuance of additional water revenue bonds in the amount of $3[,]670,000" along with water rates paid by the Authority's ratepayers. *Id*.

[2] Even if the Pennsylvania Supreme Court had not so held, in Pennsylvania, along with every other jurisdiction of which the Authority is aware, a party cannot "repossess" a piece of property without title or some other legally-recognized property interest (like a security interest). *Cf.*, *Porter v. Hayes*, 142 A. 282, 283 (Pa. 1928) (in ejectment action "[n]o one but the equitable owner . . . can challenge the right of the [title holder] to recover possession of the property."); *Brandywine Lanes, Inc. v. Pittsburgh Nat. Bank*, 284 A.2d 802, 806 n.7 (Pa. Super. 1971) (While "plaintiff in a replevin action need not set up title good against the whole world, [it] must show good title as against the defendant in possession.").

Authority; the Authority's consent to mediation should not be construed as consent to this Court determining the Debtor's right to do so. This question is squarely before the Pennsylvania Supreme Court in consolidated appeals by allowance, which are fully briefed and were set to be argued on November 30, 2022 (prior to the Debtor's Bankruptcy). *See* Nos. 46-53 MAP 2020 (Pa.); Motion at ¶ 21. In those appeals, the Pennsylvania Supreme Court accepted the following question for review:

> Does the City of Chester have a right to seize the assets of the Chester Water Authority pursuant to Section 5622(a) of the Municipality Authorities Act, 53 Pa.C.S. § 5622(a), and sell those assets to address its own unrelated financial distress, while overriding the representational rights granted by Act 73 of 2012, 53 Pa.C.S. §§ 5610(a.1), 5612(a.1), to Delaware and Chester Counties?

Exhibit A at 3, April 11, 2022 Order Granting Allowance of Appeal in Nos. 519-522 & 569-572 MAL 2021 (Pa.).

While not a matter to be addressed through the Debtor's mediation motion or at this time, the Authority wants to be abundantly clear that although it embraces mediation, agreeing to mediate is in no way a waiver of the Authority's position that ultimately this Court lacks jurisdiction to determine the relationship between the Debtor and the Authority, which are, as a matter of Pennsylvania law, two separate legal entities. *See Erie*, *supra*. This Court would violate fundamental concepts of federalism if it were to override the Commonwealth's sovereign decision as to how its government should be organized and how powers within different arms of that government should be distributed. Chapter 9 of the Bankruptcy Code, as well as the U.S. Constitution, necessarily limit the power of the Court to determine the relationship between the Authority and the City because "[a]lthough Congress has the sole power to establish 'uniform Laws on the subject of Bankruptcies throughout the United States' (U.S. Const. art. I, § 8), where federal bankruptcy law intersects with the rights of states to regulate the activities of political

subdivisions created by the state, principles of dual sovereignty as defined by the Tenth Amendment must be considered." *In re City of Harrisburg, PA*, 465 B.R. 744, 753 (Bankr. M.D. Pa. 2011); *c.f.*, *In re Ozark Mountain Solid Waste Dist.*, 2014 WL 7494926, at *2 (Bankr. W.D. Ark. Aug. 5, 2014) ("When a debtor's eligibility for chapter 9 relief is questioned, bankruptcy courts must exercise jurisdiction cautiously." (citing *Harrisburg*)). Chapter 9 respects these sovereign rights through Section 903 ("Reservation of State power to control municipalities"), which states that Chapter 9 "does not limit or impair the power of a State to control, by legislation or otherwise, a municipality of or in such State in the exercise of the political or governmental powers of such municipality[.]" 11 U.S.C. § 903. Pennsylvania has exercised its sovereign power to organize the City of Chester and the Chester Water Authority separately and to grant the two separate entities separate powers and responsibilities. This Court must respect those sovereign decisions.

      With these arguments preserved, the Authority does not object to—and, indeed, it embraces—a referral of this matter to mediation.

[SIGNATURE FOLLOWS ON NEXT PAGE]

| | |
|---|---|
| Dated: November 30, 2022 | CLARK HILL, PLC |
| | */s/ William C. Price* |
| | William C. Price (Pa. I.D. No. 90871)<br>301 Grant Street, 14th Floor<br>Pittsburgh, PA 15219<br>Telephone: (412) 394-7776<br>Facsimile: (412) 394-2555<br>wprice@clarkhill.com |
| | Kevin Dooley Kent (Pa. I.D. No. 85962)<br>2001 Market Street, Suite 2620<br>Philadelphia, PA 19103<br>Telephone: (215) 640-8531<br>Facsimile: (215) 640-8501<br>kkent@clarkhill.com |
| | Megan A. Guernsey (Pa. I.D. No. 202065)<br>2001 Market Street, Suite 2620<br>Philadelphia, PA 19103<br>Telephone: (215) 640-8522<br>Facsimile: (215) 640-8501<br>mguernsey@clarkhill.com |
| | Ronald A. King (MI Bar No. P45088)<br>215 South Washington Square, Suite 200<br>Lansing, MI 48933<br>Telephone: (517) 318-3015<br>Facsimile: (517) 318-3099<br>rking@clarkhill.com<br>(*Pro Hac Vice* pending) |
| | Jennifer K. Green (MI Bar No. P69019)<br>151 S. Old Woodward, Suite 200<br>Birmingham, MI 48009<br>Telephone: (248) 988-2315<br>Facsimile: (248) 642-2174<br>jgreen@clarkhill.com<br>(*Pro Hac Vice* pending) |
| | *Counsel for Chester Water Authority* |