# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | Chapter 9 |
| CITY OF CHESTER, PENNSYLVANIA, | Case No. 22-13032-amc |
| Debtor. | |

**CITY OF CHESTER'S REPLY TO U.S. BANK AND
PHCC LLC'S LIMITED OBJECTION TO CITY OF
CHESTER'S MOTION CONCERNING MEDIATION**

Debtor, the City of Chester (the "Debtor" or the "City") files this Reply to the Limited Objection of U.S. Bank Trust Company, National Association ("U.S. Bank"), and PHCC LLC d/b/a Preston Hollow Community Capital ("Preston Hollow," together with U.S. Bank, the "Bond Parties") (ECF 99) to the City's Motion for Entry of an Order (I) Appointing a Judicial Mediator, (II) Referring Certain Matters to Mandatory Mediation, and (III) Granting Related Relief (ECF 16) in these proceedings (the "Mediation Motion").[1]

## I. INTRODUCTION

1. The Bond Parties' Objection seeks to limit and deprive the judicial Mediator of the power he or she needs to pursue a successful, consensual resolution of the City's debt obligations. This request should be squarely rejected. The issues presented by this bankruptcy case are wide-ranging, but fundamentally involve the allocation of one pool of money. A single judicial Mediator is best situated to wade through those issues and facilitate the efficient and comprehensive creation of a plan of

---

[1] Unless otherwise defined herein, all capitalized terms have the meaning assigned to them in the Mediation Motion and the Bond Parties' Limited Objection to the Mediation Motion.

adjustment from that single pool. To execute that role effectively, the judicial Mediator must enjoy maximum discretion to determine the Mediation's procedures. Despite this necessity, the Bond Parties make three related attempts seeking to deprive the judicial Mediator of the discretion that role requires. Each attempt fails.

2. *First*, the Bond Parties assert that "a separate mediator should be appointed to address matters affecting the Series 2017 Bonds and other funded debt of the City." ECF 99 at ¶ 3(i). But providing for parallel mediations where the Bond Parties and other interested parties seek access to the same pool of money will only lead to inefficiency and confusion in the mediation process. Likewise, the Bond Parties have not (and cannot) show that a judicial Mediator selected by this Court will be unable to adequately consider the funded debt issues.

3. *Second*, the Bond Parties contend that "each Mediation Issue should be addressed in distinct Mediation Sessions[.]" ECF 99 at ¶ 3(i). But it is the judicial Mediator, not the parties, who will be best positioned to determine whether separate Mediation Sessions is most likely to lead to an efficient and consensual resolution of the City's debt obligations.

4. *Third*, the Bond Parties argue that "the Proposed Mediation Procedures should recognize the Mediation Parties' rights to participate in planning matters relating to the Mediation Sessions." ECF 99 at ¶ 8. Again, however, it is the judicial Mediator's role to facilitate the negotiations that the City hopes will lead to an appropriate and confirmable plan of adjustment. This Court should provide the judicial Mediator with the discretion he or she requires to effectively discharge that role.

## II. ARGUMENT

### A. A Separate Mediator Should Not Be Appointed to Address the Funded Debt Issues.

5. The Bond Parties oppose the City's request that a single Mediator be appointed to lead a "global mediation," ECF 16 ¶¶ 7, 18, instead asking that "a separate mediator … be appointed to address matters affecting the Series 2017 Bonds and other funded indebtedness." ECF 99 at ¶ 5. The Bond Parties are incorrect.

6. The Bond Parties first assert that a separate mediator should be appointed to address the funded debt issues because "[t]he circumstances affecting the Bond Parties are unique." ECF 99 at ¶ 5. This argument ignores that there is a limited pool of money from which both the bondholders and the other interested parties in this action may be paid. To the extent money from the City's budget is used to pay the Bond Parties, it will not be available for other critical needs, such as providing essential services, and funding pension obligations and retiree health obligations, and vice versa. Requiring both the parties and multiple mediators to determine the proper division of that pool of money not only across multiple parties, but also across parallel mediations, will sew inefficiency and confusion into the mediation process.

7. Nor have the Bond Parties shown that the "unique" nature of their claims mandates the imposition of a separate mediator. The Bond Parties have not (and cannot) show that this Court's selected judicial Mediator will be unable to adequately consider the bond documents and related legal issues. These issues can be appropriately mediated by a judicial Mediator.

8. Moreover, imposition of additional mediators, particularly private mediators, instead of a single judicial mediator, would impose significant costs, which

3

the City cannot bear. And it would be inappropriate for a single party to pay for the appointment of a mediator to address specific issues, such as the funded debt issues relating to the Bond Parties.

9. The Bond Parties nevertheless assert that the imposition of a separate mediator is necessary because "[i]t is customary ... for courts to appoint more than one mediator in Chapter 9 proceedings." ECF 99 at ¶ 5 (citing *In re City of Detroit, Michigan*, Bankr. E.D. Mich., Case No. 13-53846, *Detroit Chapter 9 Mediation Team Announced* [ECF 542]; *In re The Financial Oversight and Management Board for Puerto Rico*, D. P.R., *Order Appointing Mediation Team* [ECF 430]).

10. But the cases the Bond Parties rely on involved billions of dollars more in debt—and cities with many more citizens—than the instant case. This action is instead far more analogous to the Stockton and San Bernardino bankruptcies, which involved narrower monetary issues and fewer citizens than the Puerto Rico and Detroit bankruptcies. *See In re City of San Bernardino, California,* Bankr. C.D. Cal., Case No. RS 12-28006 MJ [ECF 1880 at 41] (noting that the size of the municipality was 213,993 in 2015); *In re City of Stockton, California*, Bankr. E.D. Cal., Case No. 12-32118 [ECF 1215 at 17] (noting that the City's population was approximately 300,000). Consistent with the City's proposed approach in *this* proceeding, the courts in the San Bernardino and Stockton bankruptcies determined that the appointment of a single judicial mediator for all issues would best support the parties' attempts to efficiently create a comprehensive plan of adjustment. *See In re City of San Bernardino, California,* Bankr. C.D. Cal., Case No. RS 12-28006 MJ [ECF 786]; *In re City of Stockton, California*, Bankr. E.D. Cal., Case No. 12-32118 [ECF 384]. This Court should follow that approach

4

here, and "appoint[] a [single] judicial Mediator to lead a global mediation between the City and the Mediation Parties[.]" ECF 16 at ¶ 7.[2]

### B. Separate Sessions Should Not Be Required for Each Mediation Issue.

11. The Bond Parties next take issue with the City's proposal that the Mediator have discretion to "determine, among other things, the 'issues to be addressed in each mediation session.'" ECF 99 at ¶ 7 (quoting ECF 16 at ¶ 17(c)). The Bond Parties instead "believe it is imperative that each of the Mediation Issues be addressed at distinct Mediation Sessions to avoid unnecessary confusion and to promote candid discussion." ECF 99 at ¶ 7.

12. To be sure, it may be appropriate, or even necessary, to hold separate mediation sessions focused on specific Mediation Issues involving select parties. But it is at least equally likely that it will be necessary and appropriate to hold Mediation Sessions that involve multiple issues and most or all of the parties, including the Bond Parties. The impartial judicial Mediator—not the parties—is best equipped to determine which Mediation Issues should be addressed in each Mediation Session.

13. In order for the Mediator to fulfill his or her role, this Court should provide the judicial Mediator with maximum discretion to do just that, and should enter an order allowing the Mediator to "determine the … issues to be addressed in each mediation session." ECF 16 at ¶ 17(c).

---

[2] For the reasons described above, this Court should also reject the Bond Parties' assertion "that at a minimum, the court should consider a mediator panel approach that offers parties the option of more than one judicial mediator." ECF 99 at ¶ 6.

5

### C. The Mediator Should Have Maximum Discretion to Determine the Role of Each Mediation Party.

14. Finally, the Bond Parties' take issue with the City's proposal that the Mediator be entitled to "determine the order, timing [and] participants … to be addressed in each mediation session." ECF 16 at ¶ 3. The Bond Parties instead assert that "the Proposed Mediation Procedures should recognize the Mediation Parties' rights to participate in planning matters relating to the Mediation Sessions." ECF 99 at ¶ 8.

15. But it is the judicial Mediator—not the Mediation Parties—whose primary role is to ensure for the efficient and comprehensive negotiation of a plan of adjustment. Although it may be appropriate for the Mediator to involve the Bond Parties or other parties in planning of the mediation, this Court should grant the Mediator the broadest discretion to determine whether to do so.

16. The City respectfully submits that the Court should enter an order providing that "[t]he Mediator, in consultation with the City and its counsel, shall determine the order, timing, participants and issues to be addressed in each mediation session." ECF 16 at ¶ 17(c).

### III. CONCLUSION

For the foregoing reasons, the City respectfully requests that the Court grant the relief requested in the Mediation Motion and enter an order in the form proposed by the

City appointing a judicial Mediator, referring the Mediation Issues to mandatory mediation, and granting such further relief the Court may deem just and proper.

Respectfully submitted,

HANGLEY ARONCHICK SEGAL PUDLIN
& SCHILLER

Dated: December 13, 2022

By: /s/ Matthew A. Hamermesh
Matthew A. Hamermesh (I.D. No. 082313)
Jackson D. Teague (admitted *pro hac vice*)
One Logan Square, 27th Floor
Philadelphia, PA 19103-6933
(215) 568-6200
(215) 568-0300 (facsimile)
mhamermesh@hangley.com
jteague@hangley.com

*Counsel for The City of Chester*