**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | : | |
|---|---|---|
| In re: | : | Chapter 9 |
| | : | |
| CITY OF CHESTER, PENNSYLVANIA, | : | Case No. 22-13032 |
| | : | |
| Debtor. | : | Related to Docket No. 7 |
| | : | |
| | | Judge Ashely M. Chan |

**OBJECTION TO THE ELIGIBILITY OF THE CITY OF CHESTER, PENNSYLVANIA TO BE A DEBTOR UNDER CHAPTER 9 OF THE BANKRUPTCY CODE**

PHCC LLC d/b/a Preston Hollow Community Capital ("Preston Hollow"), files this objection to the City of Chester, Pennsylvania's (the "City") eligibility for relief under chapter 9 of the Bankruptcy Code and response to the arguments set forth in the City's *Memorandum of Law in Support of Statement of Qualifications Pursuant to Section 109(c) of the Bankruptcy Code* [Docket No. 7] (the "Eligibility Motion").[1] In support of this objection, the Preston Hollow states as follows:

**PRELIMINARY STATEMENT**

1. As set forth herein, the City failed to engage in good faith negotiations with Preston Hollow prior to the commencement of the above-captioned bankruptcy case (the "Chapter 9 Case"). In the six months prior to the commencement of the Chapter 9 Case, the Receiver sent only two written communications to Preston Hollow and participated in only one phone call. The discussions were initiated solely by Preston Hollow. Over the course of those discussions, which primarily occurred only in the one month period prior to the City filing the Chapter 9 Case, the Receiver did not engage in any meaningful discussions with Preston Hollow and, contrary to

---

[1] Unless otherwise defined herein, all capitalized terms have the meaning given such terms in the Eligibility Motion.

1

statements made in the Eligibility Motion, the Receiver did not provide Preston Hollow with a proposal for the treatment of the Bonds (as defined below). To the extent the City argues that negotiations with Preston Hollow were impracticable, such impracticably was the result of the Receiver's conduct, not Preston Hollow. Accordingly, the City cannot demonstrate that it satisfies the requirements of section 109(c)(5) of the Bankruptcy Code.

2. Additionally, Preston Hollow requests that the Court enter an order setting certain deadlines to allow parties to conduct discovery as to whether the City satisfies the insolvency requirement of section 109(c)(3).

3. In support of this objection, Preston Hollow relies on the *Declaration of Charles Visconsi in Support of Objection to Eligibility of the City of Chester, Pennsylvania to be a Debtor Under Chapter 9 of the Bankruptcy Code* (the "Visconsi Declaration") filed contemporaneously herewith.

## BACKGROUND

**A.   The Bonds are Issued to Provide the City with Emergency Access to Cash**

4. In August 2017, "to address a portion of its outstanding liabilities," the City issued its Guaranteed Revenue Bonds, Series A of 2017, and Guaranteed Revenue Bonds, Series B of 2017 (collectively, the "Bonds") in the aggregate principal amount of $19,210,000. *See Doweary Declaration*, ¶ 14; *see also Amended Recovery Plan*, p. 13. The Bonds were issued pursuant to that certain *Indenture of Trust*, dated as of August 1, 2017, between the City and the Bond Trustee (the "Indenture") and an *Ordinance* enacted by the City on July 26, 2017 (the "Ordinance" and collectively with the Indenture and any and all other documents evidencing or securing the Bonds, the "Bond Documents"). As set forth in the Indenture, the City's obligations in connection with the Bonds are secured by the "Revenues" (as defined therein) and all moneys, securities, and funds

2

held in any "Fund," "Account," or subaccount created by the Indenture (collectively, the "Collateral").

5. At the time the Bonds were issued, the City indicated it was facing a cash deficit, and the proceeds from the Bonds provided the City with immediate access to almost $20 million. *See Amended Recovery Plan*, p. 13. Such funding, in addition to an emergency loan from DCED in January 2017, was "[t]he only reason the City did not have a general fund deficit in 2017[.]" *Doweary Declaration*, ¶ 15. According to the City's most recent available audits, 2017 was the only year between 2013 and 2019 that the City did not run a general funds deficit. *Id.*

**B.    The Receiver's Pre-Petition "Discussions" with Preston Hollow**

6. On June 10, 2022, Preston Hollow sent an unsolicited email (the "June 10 Email") to the Receiver requesting an opportunity to discuss a proposal regarding the treatment of the Bonds (the "Preston Hollow Proposal"). *Visconsi Declaration*, ¶ 4. Prior to this communication, the Receiver had stated in a presentation to the Municipal Financial Recovery Advisory Committee ("MFRAC") on May 24, 2022 that the City had received $30,357,628 under the American Rescue Plan Act ("ARPA") and that he was developing a plan for the use of such funds (the "APRA Funds"). *Id.*

7. In the Preston Hollow Proposal, Preston Hollow suggested that a portion of the ARPA Funds, in combination with certain monies held by the Bond Trustee, be used to retire the Bonds prior to their stated maturities. *Visconsi Declaration*, ¶ 5. In exchange, Preston Hollow would agree to waive the contractually bargained for call premium, which would by itself result in a $369,600 savings to the City. *Id.* The Preston Hollow Proposal would have also resulted in a net positive impact of almost $3,000,000 to the City's budget for fiscal years 2023 through 2027 as a result of eliminating the City's future debt service payments on the Bonds. *Id.* In fiscal year

3

2023 alone, the Preston Hollow Proposal would have reduced the City's debt service obligations by $924,000. *Id.*

8.  On June 22, 2022, the Receiver responded to the June 10 Email and rejected the Preston Hollow Proposal. *Visconsi Declaration*, ¶ 6. The Receiver stated, among other things, that he did not believe the ARPA Funds could be used to satisfy the City's debt obligations. *Id.* The Receiver did not acknowledge the significant savings offered by the Preston Hollow Proposal and did not offer any alternative or counter-proposal. *Id.* Instead, the Receiver said he would contact Preston Hollow "in the coming weeks" to schedule a time to speak. *Id.* Following the Receiver's June 22 email, however, Preston Hollow never received any such communications. *Id.*

9.  On September 13, 2022, the Receiver made a presentation entitled *Chester's Financial Situation, Options for Recovery, and Bankruptcy* (the "September Presentation"). *Visconsi Declaration*, ¶ 7. During that presentation, the Receiver stated his position that the City must eliminate or substantially reduce its debt service payments with respect to the Bonds in order to address its budget deficits. *Id.* The September Presentation was the first time any member of Preston Hollow had heard any discussion from the Receiver regarding any proposed treatment of the Bonds – and the treatment offered was the elimination of the bond debt. *Id.* Despite Preston Hollow being the sole holder of the Bonds, no member of Preston Hollow was aware that such a proposal would be made during the September Presentation or had previously received any communications from the Receiver with respect to his position. *Id.*

10.  Following the MFRAC meeting on September 13, 2022, Preston Hollow did not receive any communication from the Receiver with respect to the September Presentation and the Receiver's comments regarding the City's intended treatment of the Bonds. *Visconsi Declaration*, ¶ 8.

11. On October 11, 2022 – less than one month prior to the Petition Date – Preston Hollow received a letter from the Receiver (the "October Letter") in which he stated that the Bonds did "not hold a perfected security interest and are unsecured with respect to [the Collateral]." *Visconsi Declaration*, ¶ 9. The Receiver offered to speak with Preston Hollow "to discuss the status and potential treatment of the [Bonds]," but offered only two days – and only a two-hour window on one of those days – less than a week from the October Letter on which he would be available. *Id.* The October Letter did not offer a proposal for the treatment of the Bonds and the City's related debt service obligations. *Id.*

12. On October 17, 2022, Preston Hollow attended a call with the Receiver. *Visconsi Declaration*, ¶ 10. During that call, the Receiver repeated the statements made in the October 11 Letter that Preston Hollow did not hold a perfected security interest, as well as his intention to eliminate or substantially reduce the City's debt service payments on the Bonds. Preston Hollow attempted to engage in a meaningful discussion with the Receiver; however, the Receiver expressed no willingness to compromise. *Id.* The Receiver did not offer any proposal for resolving the issues related to the City's debt service obligations on the Bonds – other than to repeat his position as stated in the October Letter that the Bonds were unsecured and his statements from the September Presentation that he would either eliminate or substantially reduce the City's debt service payments on the Bonds with the only available details showing a complete elimination of the Bond debt. *Id.*

13. On November 4, 2022, Preston Hollow sent a letter to the Receiver (the "November Letter") to "correct the record regarding the City's obligations on the bonds." *Visconsi Declaration*, ¶ 11. Preston Hollow again expressed its interest in working with the Receiver "to

5

find solutions so long as those do not attempt to unilaterally erode [Preston Hollow's] interests." *Id.*

14. Preston Hollow did not receive a response to the November Letter. *Visconsi Declaration*, ¶ 12. Instead, on November 10, 2022 (the "Petition Date"), Preston Hollow received notice that the Receiver had commenced the Chapter 9 Case and had contemporaneously sued Preston Hollow. *Id.*

## OBJECTION

15. A debtor is eligible for relief "if and only if" it satisfies all of the requirements under section 109(c) of the Bankruptcy Code. 11 U.S.C. § 109(c). The debtor "bears the burden of establishing eligibility" to seek relief under chapter 9. *In re Ravenna Metropolitan District*, 522 B.R. 656, 667 (Bankr. D. Colo. 2014). "Thus, if the [debtor] fails to establish even one of the necessary elements, it will be deemed ineligible." *Id.*; *see also In re Ozark Mountain Solid Waste District*, Case No. 14-70015, 2014 WL 7494926, at *2 (Bankr. W.D. Ark. Aug. 5, 2014) ("A debtor seeking chapter 9 relief must satisfy each of the mandatory provisions of § 109(c)(1)-(4), and one of the requirements under § 109(c)(5) to be eligible for relief under the Code.") (internal citations omitted); *In re Ellicott School Bldg. Authority*, 150 B.R. 261, 266 (Bankr. D. Colo. 1992) ("A debtor must meet each of these requirements to qualify for Chapter 9 relief.").

16. Petitions filed under chapter 9 should be reviewed "with a jaded eye" and "scrutinized" by bankruptcy courts. *In re New York City Off-Track Betting Corporation*, 427 B.R. 256, 264-65 (Bankr. S.D.N.Y. 2010) (internal citations omitted).

**A.** **The City Has Failed to Satisfy the Requirement of Negotiating with Creditors**

17. The City contends it satisfied the negotiation requirement with respect to Preston Hollow contained in 11 U.S.C. § 109(c)(5) either because (i) it conducted negotiations in good

6

faith or (ii) negotiations were impracticable. The City cannot demonstrate that it met either prong of the test.

      **i.**      **The City Did Not Negotiate in Good Faith**

18.      "Section 109(c)(5)(B) requires a debtor to have 'negotiated in good faith with creditors and ha[ve] failed to obtain the agreement of creditors holding at least a majority in amount of the claims of each class that such entity intends to impair under a plan in a case under such chapter.'" *Off-Track Betting*, 427 B.R. at 273 (quoting *Int'l Ass'n. of Firefigherts, Local 1186 v. City of Vallejo (In re City of Vallejo)*, 408 B.R. 280, 297 (9th Cir. BAP 2009)). In order to satisfy this requirement, a debtor "must 'be prepared to demonstrate that it engaged in good faith negotiations with its creditors concerning the possible terms of a plan to be effected pursuant to section 941 of the Bankruptcy Code." *Ellicott School*, 150 B.R. at 266. As the City acknowledges, a party cannot "adopt[] the posture of a stone wall by refusing seriously to negotiate[.]" *In re City of Stockton, California*, 493 B.R. 772, 786 (Bankr. E.D. Cal. 2013); *see also Eligibility Motion*, ¶ 103.

19.      In *Ellicott School*, for example, the bankruptcy court found that the would-be debtor failed to satisfy the eligibility requirement under section 109(c)(5)(B) where the "economic provisions" of a proposed plan were presented to bondholder as "not negotiable." *Ellicott School*, at 266. The court noted that "[i]t is difficult to imagine that any true negotiations could take place in an environment where substantive terms of a proposal were not open to discussion." *Id.* The court's ruling was also based on its findings that the plan was presented to bondholders "as a 'take it or leave it' proposal" and that the debtor "expressed unwillingness to compromise." *Id.*

20.      An additional "extremely useful indicium of whether parties negotiated in good faith" is whether creditor parties were presented with "some outline or term sheet of a plan which

7

designates classes of creditors and their treatment." *In re Mendocino Coast Recreation and Park District*, Case No. 13-02591, 2013 WL 5423788, at *6 (Bankr. N.D. Cal. Sept. 27, 2013). As the court in *Mendocino* noted, "[w]ithout knowing how other creditors will be treated in a bankruptcy plan, a creditor is in a double-blind, trying to navigate its way out of a prisoner's dilemma." *Id.* "To negotiate in good faith, the municipality must put on the table how its proposed bankruptcy plan would treat creditor classes, so that creditors know whose ox, overall, is being gored." *Id.*

21. Here, the City has not, and cannot, demonstrate that it (i) engaged in any meaningful discussions with Preston Hollow, (ii) offered any proposal other than the Receiver's position that Preston Hollow would receive nothing on its claim, or (iii) provided Preston Hollow even an outline of its proposed plan for this Chapter 9 Case. As noted above, the Receiver did not present Preston Hollow with any meaningful proposal regarding the treatment of the Bonds other than to simply state his view that the Bonds are unsecured and that the City would eliminate or substantially reduce its debt service payments on the Bonds. *See Visconsi Declaration*, ¶¶ 9-10. Similar to *Ellicott*, no true negotiations were able to take place because the Receiver's position was "not open for discussion." *Id.*; *see also Ellicott School*, at 266. Indeed, the Receiver was a "stone wall" in the discussions. *Stockton*, 493 B.R. at 786. Moreover, the Receiver only made himself available to speak with Preston Hollow *one month prior to filing the Chapter 9 Case*. Even then, the Receiver did not present Preston Hollow with an outline or term sheet for the City's proposed bankruptcy plan; rather, he simply threatened that Preston Hollow would receive nothing in the event of a bankruptcy filing.

22. Thus, the City cannot satisfy its burden under section 109(c)(5)(B).

### ii. Negotiations with Preston Hollow Were Not Impracticable

23. "Whether negotiations with creditors is impracticable depends upon the circumstances of the case." *In re Pierce County Housing Authority*, 414 B.R. 702, 713 (Bankr. W.D. Wash. 2009) (quoting *Vallejo,* 408 B.R. at 298). "'Impracticable' means 'not practicable; incapable of being performed or accomplished by the means employed or at command; infeasible.' In the legal context, 'impracticability' is defined as 'a fact or circumstance that excuses a party from performing an act, esp. a contractual duty, because (though possible) it would cause extreme and unreasonable difficulty.'" *Id.*

24. Here, the City argues that negotiations with respect to the Bonds are impracticable because it "cannot practically negotiate a consensual restructuring" with the holders of the Bonds "in an out-of-court setting" and it "has received no substantive counter proposals[.]" *Eligibility Motion*, ¶ 103. That is the exact opposite of what happened with respect to the Bonds.

25. As an initial matter, the Bonds are held entirely by Preston Hollow, and, thus, the City cannot demonstrate impracticability with respect to the Bonds. Additionally, Preston Hollow initiated – to no avail – negotiations with the Receiver and the City regarding the Bonds in June 2022 and repeatedly expressed a willingness to discuss a consensual restructuring. *See Visconsi Declaration*, ¶¶ 4, 11.

26. The Receiver, on the other hand, did not engage in any meaningful negotiations with Preston Hollow. The October Letter – which was delivered almost one month prior to the Petition Date – was the first direct communication that Preston Hollow received from the Receiver with respect to the Bonds. Even then, and in the subsequent call, the Receiver simply presented his view that the Bonds were unsecured and that the City would eliminate or substantially reduce its debt service payments on the Bonds. *See Visconsi Declaration*, ¶¶ 10-11. The Receiver did not

engage in any meaningful discussions with Preston Hollow. *Id*. To the extent negotiations were impracticable, such impracticability was caused by the Receiver, not Preston Hollow.

27. Accordingly, the City cannot satisfy its burden under section 109(c)(5)(C).

B. **Discovery is Needed to Determine Whether the City was Insolvent Under 11 U.S.C. § 109(c)(3)**

28. Preston Hollow reserves its rights with respect to any arguments as to whether the City has or can satisfy its burden under section 109(c)(3) to demonstrate that it was insolvent as of the Petition Date. In light of the importance of this issue, and given the limited time available to parties following the filing of the Eligibility Motion and the objection deadline, and the fact that the only record with respect to insolvency is solely controlled by the Receiver and has not been subject to examination by any party, Preston Hollow requests that the Court enter an order to establish certain deadlines to allow the parties to conduct the necessary discovery on this issue. A similar ordered was entered by the court in *Stockton*, a copy of which is attached hereto as **Exhibit A**. Preston Hollow submits that a similar approach is necessary in this case.

## Reservation of Rights

29. Preston Hollow reserves all rights to supplement or amend this opposition.

[*REMAINDER OF PAGE INTENTIONALLY LEFT BLANK*]

## **CONCLUSION**

WHEREFORE, the Preston Hollow requests that the Court enter an Order either sustaining this objection, finding that the City is not eligibility for relief under chapter 9 of the Bankruptcy Code, dismissing the Chapter 9 Case, and granting any further relief that the Court may deem just and proper.

Dated: December 19, 2022

    HOGAN LOVELLS US LLP

    /s/ *Kevin J. Carey*
    Kevin J. Carey
    1735 Market Street
    Floor 23
    Philadelphia, Pennsylvania 19103
    Telephone: (267) 675-4600
    Facsimile: (267) 675-4601
    Email: kevin.carey@hoganlovells.com

    MINTZ, LEVIN, COHN, FERRIS, GLOVSKY
    AND POPEO, P.C.

    William W. Kannel (admitted *pro hac vice*)
    Ian A. Hammel (admitted *pro hac vice*)
    Timothy J. McKeon (admitted *pro hac vice*)
    One Financial Center
    Boston, Massachusetts 02111
    Telephone: (617) 542-6000
    Facsimile: (617) 542-2241
    Email: WKannel@mintz.com
          IAHammel@mintz.com
          TJMckeon@mintz.com

    *Counsel to U.S. Bank Trust Company, National Association, as indenture trustee and PHCC LLC, d/b/a Preston Hollow Community Capital*