**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| In re: | Chapter 9 |
| CITY OF CHESTER, PENNSYLVANIA, | Case No. 22-13032 |
| Debtor. | Judge Ashely M. Chan |

**REPLY IN SUPPORT OF OBJECTION TO THE ELIGIBILITY OF THE CITY OF CHESTER, PENNSYLVANIA TO BE A DEBTOR UNDER CHAPTER 9 OF THE BANKRUPTCY CODE**

PHCC LLC d/b/a Preston Hollow Community Capital ("Preston Hollow"), files this reply to the *Response of the City of Chester, Pennsylvania to PHCC LLC's Objection to the Eligibility of the City of Chester to be a Debtor Under Chapter 9 of the Bankruptcy Code* [Dkt. No. 189] (the "Response") and in further support of its *Objection to the Eligibility of the City of Chester, Pennsylvania to be a Debtor Under Chapter 9 of the Bankruptcy Code* [Dkt. No. 147] (the "Objection").[1] In support of this reply, Preston Hollow states as follows:

**A.   The Response Fails to Demonstrate that Negotiations with Preston Hollow were Impracticable**

1.  The City argues that its inability to negotiate with its "other creditors," including unions and other creditors related to the Pension Plans (collectively, the "Pension Creditors"), is sufficient to support its position that negotiations with Preston Hollow were impracticable. *See Response*, ¶¶ 41, 52, 57. While the City's inability to address the "financial crisis" caused by the Pension Plans was undoubtedly impeded by the number of related creditors (*see Response*, ¶ 47)[2],

---

[1] Unless otherwise defined herein, all capitalized terms have the meaning given such terms in the Objection.

[2] At a December 28, 2022 Meeting of the Council of the City of Chester, Mayor Thaddeus Kirkland, responding to a comment about "the reason why [the City] is in the spot that [it is]," said "It's a pension problem that have [sic] been happening for some 70 years. That's why we are in the state that we are. It's a pension problem." A copy of the minutes from the December 28 meeting are available on the City's website and can be found here –

1

the City has not demonstrated how or why "a comprehensive and viable long-term plan" with respect to such creditors was necessary for negotiations with Preston Hollow. As compared to the City's outstanding and future pension related obligations, the City's debt service obligations on the Bonds are relatively minor. In 2023, for example, the City's total debt service obligations related to its outstanding funded debt obligations, including the Bonds, is approximately $3.8 million (of which $3,014,000 relates to the Bonds), which equates to less than 10% of the City's almost $40 million in outstanding MMO obligations alone. Additionally, of the almost $168 million in liabilities identified by the City, over $127 million (or 75%) relate to the City's pension obligations, while approximately $15 million (or 9%) relate to the Bonds.[3] *See* City's *List of Creditors Holding 20 Largest Unsecured Claims* [Dkt. No. 1-2].[4] Given the relatively minor nature of the City's obligations on the Bonds as compared to the City's obligations related to the Pension Plans, the City's inability to negotiate with, *e.g.*, the Pension Creditors should not have materially influenced the Receiver's ability to negotiate with Preston Hollow.

2.      The City also argues that negotiations were impracticable absent either the Receiver or Preston Hollow being willing to move from their respective positions. *See Response*, ¶ 58. Such argument places the cart before the horse. Whether negotiations are "infeasible" should not be informed by either the parties' beginning or final positions, but, rather, by whether the parties engaged in a meaningful discussion. As detailed herein, as well as in the Objection *and the City's Response*, the Receiver did not engage in any meaningful discussions with Preston Hollow. The

---

https://www.chestercity.com/wp-content/uploads/2023/01/COUNCIL-CHAMBERS-12-28-2022-Budget-Hearing.pdf

[3] By comparison, in *Valley Health System*, which the City cites in support of its position, the total amount of claims scheduled on that debtor's *Amended List of Creditors Holding 20 Largest Unsecured Claims* was $8.7 million, while the total principal and interest outstanding on the bonds at issue in that case was $84 million.

[4] Preston Hollow disputes that the City's payment obligations on the Bonds are "unsecured."

2

inability to reach "a mutually acceptable arrangement" (*Response*, ¶ 58) because the Receiver refused to engage in good faith negotiations should not allow the City to satisfy the impracticability element under section 109(c)(5)(B).

**B.     The Response Demonstrates a Pattern of Stonewalling**

3.     The Response details Preston Hollow's attempts in 2020 and 2021 to negotiate with the Receiver regarding the City's debt service obligations with respect to the Bonds. Indeed, the Response includes the detailed term sheets (the "PH Term Sheets") that Preston Hollow prepared and provided to the Receiver in connection with such efforts. The Response provides that each offer was rejected because there was "no reduction of the Bond's principal." *See Response*, ¶¶ 66, 75. Notably absent from the Response, however, is any indication that the Receiver ever made such request or even provided any counteroffer. Instead, as the Response notes, the Receiver in each instance "declined to move forward." *Response*, ¶¶ 68, 75. Contrary to the City's assertions, the discussion in the Response regarding the PH Term Sheets does not support the Receiver's argument that he engaged in negotiations – much less good faith negotiations – with Preston Hollow. Rather, these demonstrate a pattern by the Receiver of refusing to engage in any material discussions with Preston Hollow since 2020.

**C.     The Response Does Not to Dispute that the Receiver Failed to Engaged in any Meaningful Negotiations with Preston Hollow**

4.     The City notes that "[j]ust as it takes two dancers to tango, good faith negotiations contemplate reciprocity." *Response*, ¶ 101 (quoting *In re City of Stockton*, 493 B.R. 772, 793 (Bankr. E.D. Cal. 2013). Again, notably absent from the Response, however, is any support for the position that the Receiver engaged in any "reciprocity" with Preston Hollow. Rather, the Response confirms that the Receiver never provided any offer of compromise with Preston Hollow in response to Preston Hollow's three attempts to negotiate the treatment of the Bonds, stating that

the Receiver simply "declined to move forward" in discussions with Preston Hollow. The Response further confirms that the Receiver's only position with respect to the Bonds was his assertion that "the Bonds are unsecured," (*Response*, ¶ 92). Additionally, while the City repeatedly references a desire that the principal amount of the Bonds be reduced (*see Response*, ¶¶ 8, 58, 66 and 98), neither the Response nor the supporting declaration provide any indication that the Receiver ever made such a request to Preston Hollow. If the Receiver wanted "real concessions," it was incumbent on him – not, as the City suggests, Preston Hollow – to make the request, which he did not do. Statements that the Receiver made "repeated efforts to communicate the City's financial condition," do not satisfy the basic requirement of negotiations that a party must *ask* for what it wants. The Response does not establish that the Receiver asked anything from Preston Hollow other than a full concession of its rights under the Bond Documents, a position that, as set forth in the Objection, does not support a finding of good faith.

5.      In light of the foregoing, the City has failed to present any support for its position that it engaged in good faith negotiations with Preston Hollow – and, if fact, the Response supports and confirms the arguments in the Objection.

**D.      Preston Hollow has not Engaged in a "No-Holds-Barred Attack" Against the City**

6.      Far from engaging in a "no-holds-barred attack" against the City, the record is clear that Preston Hollow has repeatedly approached the Receiver in an attempt to negotiate a consensual resolution. And far from Preston Hollow being a "stonewall," it is the Receiver who has failed to engage in any meaningful negotiations. The rationale for such conduct is unclear given that Preston Hollow is in the business of providing liquidity to municipalities and has provided the City with much needed liquidity in the past. *See, e.g., Objection*, ¶ 5. Indeed, it is a mystery why Preston Hollow serves as the City's and Receiver's primary target in the City's restructuring efforts. While

4

Preston Hollow is compelled to defend itself against attacks launched by the City and the Receiver, which include the commencement of an adversary proceeding on the very first day of the Chapter 9 Case and allegations that it is "seeking to strangle the City" and "hold its employees and residents hostage by chocking off access to critically needed funds", it remains willing and able to see if a creative solution can be reached with respect to the City's funded debt. However, in the meantime, Preston Hollow is compelled to protect its legal position and contractually agreed-to rights.

7.     Moreover, and despite attempts by the City to convince the Court otherwise, Preston Hollow is not standing between the City and its ability to provide basic services to its citizens. For example, the City was granted $30 million in ARPA funds, yet, under the City's *final* budget for 2023[5], the City is only utilizing approximately $7.6 million of those funds – of which only $473,000 are being transferred to the "General Fund" to be used as revenue replacement to fund operations. It is unclear why the City cannot use any portion of the remaining $22 million in ARPA funds to fill any shortfall in the City's operations. Indeed, absent any justification for not utilizing such funds, it would appear that the City is withholding monies so as to use its citizens as pawns in the Receiver's crusade against Preston Hollow and other bond parties – the repercussions of which could impact the City's, as well as other borrowers' in the Commonwealth, ability to access the bond market for future capital needs.

[*REMAINDER OF PAGE INTENTIONALLY LEFT BLANK*]

---

[5] A copy of the City's final 2023 budget is available on the City's website and can be found here - https://www.chestercity.com/wp-content/uploads/2022/12/Deliberative-Agenda-122722.pdf. To date, the City has only provided the Court a *draft* of its budget for 2023. *See Kapoor Declaration*, ¶ 27.

5

## **CONCLUSION**

For the foregoing reasons, Preston Hollow requests that the Court enter an Order sustaining the Objection and granting any further relief that the Court may deem just and proper.

Dated: January 31, 2023

                MINTZ, LEVIN, COHN, FERRIS, GLOVSKY
                AND POPEO, P.C.

                */s/ William W. Kannel*
                William W. Kannel (admitted *pro hac vice*)
                Ian A. Hammel (admitted *pro hac vice*)
                Timothy J. McKeon (admitted *pro hac vice*)
                One Financial Center
                Boston, Massachusetts 02111
                Telephone: (617) 542-6000
                Facsimile: (617) 542-2241
                Email: WKannel@mintz.com
                        IAHammel@mintz.com
                        TJMckeon@mintz.com

                     -and-

                HOGAN LOVELLS US LLP
                Kevin Carey
                1735 Market Street
                Floor 24
                Philadelphia, Pennsylvania 19103
                Telephone: (267) 675-4600
                Facsimile: (267) 675-4601
                Email: kevin.carey@hoganlovells.com

                *Counsel to U.S. Bank Trust Company, National Association, as indenture trustee and PHCC LLC, d/b/a Preston Hollow Community Capital*