IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| In re: | : | Chapter 9 |
| | : | |
| CITY OF CHESTER, PENNSYLVANIA, | : | Case No. 22-13032 |
| | : | |
| Debtor. | : | Judge Ashely Chan |
| | : | |

**MOTION OF DEBTOR PURSUANT TO SECTION 362 OF THE BANKRUPTCY
CODE FOR ENTRY OF AN ORDER ENFORCING THE AUTOMATIC
STAY OF PROCEEDINGS PENDING BEFORE THE PENNSYLVANIA
PUBLIC UTILITIES COMMISSION**

The City of Chester ("Chester" or the "City"), as the debtor in the above-captioned chapter 9 case, hereby moves the Court (the "Motion"), pursuant to Section 362 of title 11 of the United States Code[1] (the "Bankruptcy Code"), for entry of an order, substantially in the form attached hereto as **Exhibit A**, enforcing the automatic stay against proceedings pending before the Pennsylvania Public Utilities Commission (the "PUC") related to the proposed sale of certain assets by the Delaware County Regional Water Quality Control Authority ("DELCORA") to Aqua Pennsylvania Wastewater, Inc. ("Aqua") in disregard of the City's reversionary interest in those assets, which are property of the City's bankruptcy estate. The continuation of the PUC proceeding and any decision by the PUC regarding the proposed sale would affect the City's reversionary interest and, thus, the City's bankruptcy estate. As a result, the continuation of the PUC proceeding violates the automatic stay as an act to obtain possession of or from, or exercise control over, the City's property. In support of this Motion, the City respectfully represents as follows:

**I.    Jurisdiction and Venue**

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

---

[1] Applicable to cases under chapter 9 pursuant to 11 U.S.C. § 901(a).

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

3. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## II. Background

4. Pursuant to the authority granted by the Secretary of the Pennsylvania Department of Community and Economic Development to file a municipal debt adjustment action on behalf of the City under the Bankruptcy Code and the Pennsylvania Municipalities Financial Recovery Act, Act of 1987, P.L. 246, No. 47, on November 10, 2022 (the "Petition Date"), Michael Doweary, the Receiver for the City (the "Receiver") commenced this case on behalf of the City under chapter 9 of the Bankruptcy Code.[2]

5. On the Petition Date, the City filed a *Motion for an Order (I) Appointing a Judicial Mediator, (II) Referring Certain Matters to Mandatory Mediation, and (III) Granting Related Relief* (the "Mediation Motion") [Docket No. 16]. The Mediation Motion sought to have certain issues mediated, including the monetization of the City's reversionary interest in the Sewer System (as hereinafter defined) and the multiparty litigation pending in Pennsylvania state courts relating to these assets—the resolution of which represent an important part of the City's efforts to formulate and confirm a plan of adjustment. *See* Mediation Motion, ¶¶ 23-24.

6. Several parties, including Aqua, filed responses to the Mediation Motion [Docket Nos. 93, 94, 95, 97, 99, 117, 119, 122, and 125].

7. On December 15, 2022, the Court held a hearing on the Mediation Motion and on December 16, 2022, the Court entered an order granting the Mediation Motion (the "Mediation

---

[2] The factual background regarding the City, including the events precipitating the chapter 9 filing, is set forth in detail in the *Declaration of Michael Doweary in Support of the City of Chester, Pennsylvania's Statement of Qualifications Pursuant to Section 109(c) of the Bankruptcy Code and First Day Pleadings* [Docket No. 5] and the *Declaration of Vijay Kapoor in Support of the City of Chester, Pennsylvania's Statement of Qualifications Pursuant to Section 109(c) of the Bankruptcy Code and First Day Pleadings* [Docket No. 6], which were filed on the Petition Date.

Order") [Docket No. 139] and appointed the Honorable Mary F. Walrath (the "Mediator") to determine the mediation issues, establish a process and procedure for mediation, and to conduct mediation (collectively, the "Mediation").

8. Shortly after the Mediation Order was entered, the parties to the Mediation, including DELCORA, met with the Mediator and began the mediation process, which is ongoing.

9. The factual basis for this Motion is contained in the *Declaration of Vijay Kapoor in Support of the Motion of Debtor Pursuant to Section 362 of the Bankruptcy Code for Entry of an Order Enforcing the Automatic Stay of Proceedings Pending Before the Pennsylvania Utilities Commission* (the "Kapoor Declaration"), filed contemporaneously herewith.

A. **The City's Relationship with DELCORA**

10. Prior to 1973, the City owned and operated certain facilities and property used for the collection, transportation, and treatment of sewage (the "Sewer Services") within the City and certain adjacent areas, where it served private users. Kapoor Dec. ¶ 5. Additionally, the City received sewage from municipal systems located in Delaware County, Pennsylvania for treatment. *Id.*

11. On February 12, 1973, the City entered into an Agreement of Sale and Service (together, with all amendments thereto, the "1973 Agreement") with DELCORA, a copy of which is attached to the Kapoor Declaration as Exhibit A. *Id.* at ¶ 6.

12. DELCORA is a municipal authority incorporated by Delaware County on October 20, 1971, under the Pennsylvania Municipal Authorities Act for the purpose of collecting, conveying, and treating wastewater generated by residents and businesses located in Delaware County. *Id.* at ¶ 7. DELCORA owns and operates sewer collection systems serving eight municipalities, including the Sewer System as defined in paragraph 13, and is governed by a nine

3

member board entirely appointed by Delaware County. *Id.*

13. Pursuant to the 1973 Agreement, DELCORA purchased the property constituting the City's sewer system, including, *inter alia*, the sewage treatment plant and all the land at the location of the plant, the sewer mains, the interceptors, the force mains, the collection systems, the valves, the pumps, the machinery, the equipment, the inventory, the franchises, the licenses, the permits, and the accounts receivable, as well as certain related property (as defined in the 1973 Agreement, the "Sewer System") and agreed to provide Sewer Services to areas identified in the 1973 Agreement and exhibits thereto. *Id.* at ¶ 8.

14. Section 15 of the 1973 Agreement provides DELCORA with the exclusive right and duty to provide the Sewer Services to the specified service areas. 1973 Agreement at § 15.1. Under the 1973 Agreement, this exclusive right and duty continued until November 17, 2022 and thereafter, for a term as long as DELCORA remains in existence, unless the City or DELCORA provided notice of termination one year in advance. *Id.* at § 15.6. Neither the City nor DELCORA has provided a notice of termination. *See*, Kapoor Dec. ¶ 8.

15. The 1973 Agreement also provides:

> If at any time in the future during the term of this Section 15 or at the end thereof [DELCORA] ceases to operate the system being purchased by it hereunder, then the fixed assets and the Real Property, other than the Treatment Plant and those facilities in the Collection System described in Section 2(d) shall revert to [the City's] ownership rather than to the County of Delaware or any other agency.

1973 Agreement at § 15.7. Accordingly, the City maintains a reversionary interest in the Sewer System (except as to the Treatment Plant) if DELCORA ceases to operate the Sewer System, as DELCORA will if the proposed sale to Aqua discussed *infra*, is approved by the PUC and closes. The 1973 Agreement also prohibits the City and DELCORA from assigning their rights and obligations under the 1973 Agreement. *Id.* at § 16.3.

4

16. On November 26, 2014, DELCORA and the City entered into the Agreement between the Delaware County Regional Water Quality Control Authority (DELCORA) and City of Chester (City) Containing an Easement to Permit DELCORA to Operate and Maintain a Pipeline On, Under, and as Part of Property of the City (Facilities Easement) (the "Easement"), , related to use of a 48-inch force main and related facilities located underneath real property within the City. *See*, Kapoor Dec. ¶ 9  Pursuant to the Easement, DELCORA is obligated to pay ten percent (10%) of any proceeds it received from the sale or lease of the Easement to a third party. *Id.*

**B.     The Proposed Aqua Sale, PUC Approval, and Litigation**

17. DELCORA and Aqua entered into an Asset Purchase Agreement dated September 17, 2019, as amended by a First Amendment to Asset Purchase Agreement dated February 24, 2020 (collectively, the "APA"), a copy of which is attached to the Kapoor Declaration as Exhibit B. *Id.* at ¶ 10.  Pursuant to the APA, Aqua seeks to purchase, among other things, the Sewer System, the 1973 Agreement, the Easement, and various other service agreements with the City. *Id.*  Additionally, the APA purports to transfer the capital contributions made by the City to Aqua. *Id.*

18. Pursuant to the APA, the purchase price for the Sewer System and DELCORA's additional wastewater system assets is $276.5 million[3].  *Id.* at ¶ 11.

19. The proposed sale to Aqua requires approval of the PUC. *Id.* at ¶ 12.  Prior to execution of the APA, in December 2019, Aqua filed a Letter/Notice of Licensed Engineer and

---

[3] In 2019, Aqua obtained an appraisal of DELCORA's assets, including the Sewer System.  That appraisal concluded the value of DELCORA's assets was in a range between $387,754,301 and $438,377,696, with a weighted estimated fair market value of $408,883,000—significantly more than Aqua's $276.5 million proposed purchase price.  *Id.*

5

Utility Valuation Expert Engagement Concerning Acquisition of the DELCORA, Delaware and Chester Counties Sanitary Wastewater Collection and Treatment System (the "Notice Letter"). *Id.* On or about March 3, 2020, Aqua filed a formal application with the PUC (together with the Notice Letter and any related filings, the "Application") initiating a proceeding for approval of the proposed sale (the "Application Proceeding"). *Id.* Specifically, the Application seeks approval of, among other things: (a) Aqua's acquisition of the Sewer System and other wastewater system assets located in Delaware and Chester Counties; (b) Aqua's provision of the Sewer Services to areas in Delaware and Chester Counties; (c) assignment of 163 municipal contracts from DELCORA to Aqua; and (d) approval of a ratemaking base value of the DELCORA assets of $276.5 million. *Id.*

20. On November 9 and 10, 2020, the PUC held a public hearing on the Application. *Id.* at ¶ 13. Despite the public hearing and Application Proceeding, neither DELCORA, Aqua, nor the PUC notified the Receiver about the impact of the proposed transaction on the City's reversionary interest in the Sewer System (other than the Treatment Plant) or the proposed assignment of the Easement. *Id.*

21. On or about April 7, 2022, the Receiver filed a letter with the PUC, notifying DELCORA, Aqua, and the PUC of the City's reversionary interest in the Sewer System and asserting that the proposed transaction could not be completed without a resolution of the City's reversionary interest. A copy of the letter date April 7, 2022 is attached to the Kapoor Declaration as Exhibit C. *Id.* at ¶ 14.

22. On June 2, 2022, the Receiver attempted to intervene in the Application Proceeding. *Id.* at ¶ 15. On August 3, 2022, the PUC denied the Receiver's petition to intervene on procedural grounds. *Id.* On August 9, 2022, the PUC held a prehearing conference, from which the Receiver

6

was excluded. *Id.* Nonetheless, the Bureau of Investigation and Enforcement of the PUC (the "BIE") submitted a Prehearing Memorandum for Remand of Proceeding, which noted that the PUC, DELCORA, and Aqua were disregarding the City's reversionary interest and that DELCORA was attempting to transfer assets that it does not own as a result of such reversionary interest. *Id.* Testimony by the BIE also indicates that similar reversion provisions exist in DELCORA's contracts with five additional municipalities. *Id.* Despite the conclusions of the BIE, the Receiver remains excluded from the Application Proceeding before the PUC. *Id.*

23. Thereafter, on August 17, 2022, the Receiver filed a Complaint in the Court of Common Pleas of Delaware County seeking, among other things, a declaratory judgment, specific performance, and injunctive relief determining that ownership of the Sewer System (other than the Treatment Plant) reverts to the City and that any transfer of the Sewer System must address the value of the City's reversionary interest, a copy of which is attached to the Kapoor Declaration as Exhibit D. *Id.* at ¶ 16. The Complaint also seeks a determination that the City is entitled to payment of a portion of the proceeds attributed to the Easement. *Id.*

24. To date, the PUC has not yet approved Aqua's acquisition of DELCORA's assets and the Receiver's Complaint remains pending before the Court of Common Pleas. *Id.* at ¶ 17. The PUC is scheduled to conduct a hearing on the proposed sale on February 14 and 15, 2023. *Id.*

### III. Relief Requested and Basis for Relief

25. Section 362(a) of the Bankruptcy Code, made applicable to the City's bankruptcy case by section 901 of the Bankruptcy Code, imposes an automatic stay of, among other things, "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Section 902 of the Bankruptcy Code provides that "'property of the estate,' when used in a section that is made applicable [in a chapter 9 case], means property of the debtor." 11 U.S.C. § 902(1); *see also In re Jefferson County*, 484

7

B.R. 427, 446 n.9 (Bankr. N.D. Ala. 2012).

26. The automatic stay is intended to protect the estate. As the United States Supreme Court has explained, "[t]he automatic stay serves the debtor's interests by protecting the estate from dismemberment, and it also benefits creditors as a group by preventing individual creditors from pursuing their own interests to the detriment of the others." *City of Chicago v. Fulton*, 141 S. Ct. 585, 589 (2021).

27. Property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The term "property" has been broadly interpreted to include "all kinds of property, including causes of action, disputed, contingent ***or reversionary interests***, and all other forms of property." *Feiler v. Sims (In re Feiler)*, 218 F.3d 948, 956 (9th Cir. 2000) (emphasis added) (citing S. REP. No. 989 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5868; H.R. REP. No. 595 (1978), reprinted in 1978 U.S.C.C.A.N. 5963, 6323 (footnote omitted)). *See also PNC Bank v. Spring Ford Indus. (In re Spring Ford Indus.)*, 338 B.R. 255, 260 (E.D. Pa. 2006) (explaining that the "definition of 'property' is broad enough to encompass reversionary interests"); *Morton v Kievit (In re Vallecito Gas, LLC)*, 440 B.R. 460, 477 (Bankr. N.D. Tex. 2010) (citing *Weinman v. Graves (In re Graves)*, 609 F.3d 1153 (10th Cir. 2010) ("Even a contingent reversionary interest is included in a debtor's estate.") (internal citations omitted)); *Murphy v. Wray (In re Wray)*, 258 B.R. 777, 785 n.8 (Bankr. D. Idaho 2001) (noting that a reversionary interest in real property constituted property of the estate). Moreover, where a debtor's interest in property is the subject of litigation, the automatic stay applies to that property. *In re Manley Toys Ltd.*, Case No. 16-15374 (JNP), 2018 Bankr. LEXIS 429 at, *16 (Bankr. D.N.J. Feb. 14. 2018).

28. In the chapter 9 case of *In re Jefferson County*, the court held that a lawsuit

8

regarding the provision of inpatient and emergency care for indigent residents of the debtor municipality was stayed pursuant to Section 362(a)(3) of the Bankruptcy Code as an attempt to exercise control over the debtor's property. 484 B.R. at 433, 447.

29. The Bankruptcy Code's broad definition of "property of the estate" includes the City's reversionary interest in the Sewer System (other than the Treatment Plant), which reversionary interests constitutes property of the City's estate. The Application Proceedings seek approval of a sale that would eliminate or terminate the City's reversionary interest without any consideration being paid to the City. Likewise, the continued pursuit of PUC approval of the proposed sale in the Application Proceedings, constitutes an attempt by Aqua and DELCORA to take property of or from the City, or to exercise control over, the City's property.

30. DELCORA and Aqua's disregard of the City's reversionary interest in the Sewer System and attempts to proceed with the Application Proceeding, if successful, would eliminate a valuable asset of the estate. *City of Chicago*, 141 S. Ct. at 589. The monetization of the Sewer System, which is a matter referred to Mediation, will be an important element in any plan of adjustment proposed by the City and is essential to the City's efforts to restructure.

31. Pursuant to the 1973 Agreement, if DELCORA ceases to operate the Sewer System, the City's reversionary interest is triggered and ownership will revert to the City—not the County of Delaware or any other Agency. 1973 Agreement at § 15. DELCORA and Aqua entered into the APA, without providing any notice to the City, despite its revisionary interest in the Sewer System. And now, pursuant to the APA, Aqua seeks to purchase—at a significantly below market price—among other things, the Sewer System, the 1973 Agreement, the Easement, and various other service agreements with the City. Kapoor Dec. ¶¶ 10-11. As recognized by the BIE, DELCORA and Aqua, in their efforts to have the APA approved and pursue the sale, are

9

disregarding the City's reversionary interest and are attempting to transfer assets—which should properly revert to the City—without paying any amount to the City on account of the reversionary interest. *Id.* at ¶ 15.

32. This Court has determined that the Mediation is the proper vehicle to assist the City in its efforts to value and monetize the Sewer System. Allowing the Application Proceeding to proceed directly impedes the City's ability to formulate and negotiate a viable plan of adjustment in this case.

33. Section 362(a) of the Bankruptcy Code prohibits the PUC, DELCORA, and Aqua from continuing to pursue approval of the sale because such effort is an attempt to take property of or from the City, or to exercise control over, the City's property.

34. Therefore, Section 362(a)(3) of the Bankruptcy Code stays the Application Proceeding. Because of this, the automatic stay should be enforced to prohibit DELCORA and Aqua from continuing to prosecute the Application Proceeding before the PUC and prohibit the PUC from taking any further action with respect to the Application Proceeding[4].

### III. Reservation of Rights

35. The City files this Motion without prejudice to or waiver of its rights pursuant to Section 904 of the Bankruptcy Code, and nothing herein is intended to, shall constitute, or shall be deemed to constitute the City's consent, pursuant to Section 904 of the Bankruptcy Code, to this Court's interference with (a) any of the political or governmental powers of the City, (b) any

---

[4] Because any decision by the PUC violates the stay, such decision would be void. *In re Siciliano*, 13 F.3d 748, 750 (3d Cir. (recognizing the "general principal that any creditor action taken in violation of an automatic stay is void *ab initio*."); *In re Jester*, 344 B.R. 331, 338 (Bankr. E.D. Pa. 2006) (explaining actions in "violation of the stay [are] void *ab initio*").

of the property or revenues of the City, or (c) the City's use or enjoyment of any income-producing property.

### IV. Notice

36. Notice of this Motion will be provided to the following (or their counsel, if known) (a) the Office of the United States Trustee; (b) DELCORA; (c) Aqua; (d) the PUC; (e) Bureau of Investigation and Enforcement of the PUC; (f) the City's largest unsecured creditors as identified on the list filed under Bankruptcy Rule 1007(d); and (g) any party that has requested notice pursuant to Federal Rule of Bankruptcy Procedure 2002. The City submits that, in light of the nature of the relief requested herein, no other or further notice is required.

### V. No Prior Request

37. No prior request for the relief sought in the Motion has been made to this or any other Court.

WHEREFORE, the City respectfully requests the entry of an order substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and:

1. Enforcing the automatic stay provided by Section 362(a) of the Bankruptcy Code against the Application Proceedings;

2. Barring DELCORA and Aqua from pursuing, taking, or continuing any further action in the Application Proceeding without first obtaining stay relief from this Court;

3. Barring the PUC from taking any further action with respect to the Application Proceeding, including, without limitation, taking evidence, requesting briefing, and issuing a decision with respect to the Application Proceeding; and

4. Granting such other and further relief the Court may deem just and proper.

February 3, 2023

Respectfully submitted,

*/s/ Tobey M. Daluz*
Tobey M. Daluz (PA Bar No. 60685)
Margaret A. Vesper (PA Bar No. 329793)
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Tel: (215) 864-8148
Email: daluzt@ballardspahr.com
vesperm@ballardspahr.com

and

Matthew G. Summers*
Laurel D. Roglen*
Ballard Spahr LLP
919 N. Market Street, 11th Floor
Wilmington, DE 19801
Tel: (302) 252-4465
Email: summersm@ballardspahr.com
roglenl@ballardspahr.com

(*Admitted *pro hac vice*)

*Attorneys for the City of Chester*