## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | |
| | : | |
| CITY OF CHESTER, PENNSYLVANIA, | : | Chapter 9 |
| | : | |
| | : | Case No. 22-13032-amc |
| | : | |
| Debtor. | : | |

## REPLY IN SUPPORT OF MOTION BY CHESTER WATER AUTHORITY PURSUANT TO RULE 2004 FOR DISCLOSURE OF COMPENSATION OF LEGAL PROFESSIONALS REPRESENTING DEBTOR'S ELECTED OFFICIALS

Chester Water Authority ("CWA") respectfully submits this brief reply in support of its motion for an order pursuant to Fed. R. Bank. P. 2004 directing that the Debtor, the City's Elected Officials and their counsel, as well as all other persons or entities with information and documents, disclose how counsel for the City's Elected Officials are being compensated, by whom, and on what basis in this proceeding and the "Receivership Proceeding" (*Weaver v. City of Chester*, No. 336 MD 2020 (Pa. Comm. Ct.)). Doc. 216.

Three responses have been submitted to the CWA's motion: one from the Debtor, one from Aqua, and one from the Elected Officials. At the Court's direction, both Aqua and the Elected Officials have submitted affidavits.[1] Each of the responses, as well as the Elected Officials' affidavit, in their own way, show why the CWA's motion should be granted:

---

[1] The Court's February 28, 2023 email directed that "Aqua [] file an affidavit in two (2) weeks stating whether it has paid, or agreed to pay, any fees of the Elected Officials and directing the Elected Officials to file an affidavit in two (2) weeks stating who has paid and/or agreed to pay the Elected Officials' attorneys' fees in this case and the amounts/dates that counsel for the Elected Officials has been paid during this bankruptcy proceeding." It also directed that the CWA inform the Court "in 3 weeks whether it still would like its motion to be heard and, at that time," the Court would "give a new hearing date." The CWA is respectfully requesting a new hearing date.

**The Debtor's response.** Very importantly, the Debtor, which does not oppose the CWA's motion, *confirms* that the Receiver, who asserts that he is statutorily authorized to conduct this bankruptcy proceeding on behalf of the Debtor, "has not authorized the Elected Officials to retain counsel to represent them in the bankruptcy case, and to the Receiver's knowledge, *the City has not paid* any amounts to any professionals engaged by the Elected Officials to represent them in the bankruptcy." Doc. 242 at 2 (emphasis added).[2] The Debtor states that if the Court grants the CWA's motion, it "will produce to the CWA the limited non-privileged documents it has identified related to the Elected Officials' efforts to "engage professionals to represent them in the bankruptcy case." *Id*. at 1-2. Quite understandably, the Debtor would also like to know just who is paying for the Elected Officials' counsel and asks that "to the extent that any of the Elected Officials are deposed or produce documents, counsel to the City should be permitted to participate in such depositions and receive those documents produced by the Elected Officials." *Id*. at 2. The CWA agrees that the Debtor is entitled to the financial information it has requested about the nature and source of the Elected Officials' counsel's compensation and therefore does not oppose this request.

**The Elected Officials' objection and affidavit.** The Elected Officials' objection makes a number of puzzling statements and offers nothing upon which the CWA and other creditors and interested parties can discern a monetary source for payments for the Elected Officials representation in this matter made by some person or entity in February 2023. Doc. 241. For instance, the Elected Officials contend that their counsel "was retained, on an hourly basis, directly by the City." *Id*. at 1-2. If this is true—and it would appear to be news to the Receiver—

---

[2] As noted below, the Elected Officials' affidavit states that some person or entity *did*, in fact, make payments in February 2023 for the Elected Officials representation in this matter.

ClarkHill\L5215\455064\270999622.v3-3/21/23

it confirms that the CWA's Motion should be granted. As a substantial Creditor—one of the

City's top twenty as identified by the Debtor itself in its Bankruptcy Petition (*See* Voluntary

Petition, "List of Creditors Holding 20 Largest Unsecured Claims")—the CWA has an

indisputable interest in information about how the assets of the Debtor may be being committed

to, *inter alia*, legal representation of the Elected Officials.[3] Any reasonable creditor would expect

an explanation of a significant post-petition additional liability such as this. But with the

additional circumstances claimed here, and the very close ties between the Elected Officials and

Aqua, CWA is well-within its rights to seek this information.

The Elected Officials' affidavit, Doc. 265, is grossly insufficient and raises more

questions than it answers. The affiant, Mayor Thaddeus Kirkland, repeats the statement in the

Elected Officials' objection that the law firm representing them has been "retained" "on an

hourly basis to: a) represent the City, Mayor and City Council, as a body, in the [Receivership

Proceeding] . . . and b) the Mayor and City Council, as a body, in this bankruptcy case." *Id*. at ¶

3. The **one new piece of information** provided by Mayor Kirkland's affidavit is that "[o]n or

about February 10, 2023, [the law firm] received the following payments of $4,672.00 and

$3,625.00." *Id*. at ¶ 5. Amazingly, this sentence does not even state *from whom* the law firm

"received" payments. If it came from the City's funds, one would expect the Receiver to know.

But the Debtor's response—filed on February 22, 2023, **over ten days after these payments

were "received"**—states that "to Receiver's knowledge, *the City has not paid* any amounts to

---

[3] The assertion by the Elected Officials that the CWA is not a creditor is astonishing in that they are apparently (1) unaware that it is the CWA that is providing one of the City's most vital services – fire hydrant supply, and (2) do not appear to have a grasp of to whom the City owes money or in what amount.

3

any professionals engaged by the Elected Officials to represent them in the bankruptcy." Doc. 242 at 2 (emphasis added).

The Elected Officials' affidavit also fails to disclose (a) their counsel's hourly rate, (b) the number of hours worked (both pre and post-petition), and (c) whether the Elected Officials expect their counsel to be paid out of a "monetization", directly or indirectly. [4] These questions remain a mystery, and without answers it is impossible to judge what impact the Elected Officials' post-petition expenditures are having on the finances of the Debtor. The Court gave the Elected Officials an opportunity to provide clarity with an affidavit, but the affidavit the Elected Officials filed fails to do so.

**Aqua's objection and affidavit.** Aqua asks to be dismissed from the disclosure sought by the CWA (and not opposed by the Debtor) on the basis of an affidavit it seeks to (and ultimately did) proffer to the effect that it has not funded the Elected Officials' counsel. Doc. 233-1, 264. Aqua insists that the CWA has conjured a "vast Commonwealth-wide conspiracy[[5]]"

---

[4] The Court should be aware that at least one Investor Owned Utility has sought to incentivize prior offers by, *inter alia*, offering paid advisory board positions in connection with an initial purchase offer made directly to the CWA's Board, which the Board rejected. Exhibit 1, 5/8/17 Letter from Aqua CEO C. Franklin to CWA Board Chairwoman C. Leitzell at 4 ("Continuing Board Roles: We envision establishing a compensated, nine-member advisory board to assist Aqua management on matters related to the utility currently operated by the Authority.)"

[5] The veracity of Aqua's allegations and intimations of CWA's purported hysteria in this regard must be scrutinized. CWA is certain Aqua is aware that there has in fact been discussion at the highest levels of the Commonwealth government regarding the implementation of a program that would promote the very action Aqua seeks to take with CWA; namely promoting the sale of municipal authorities to remedy pension and other deficits in financially distressed communities. *See*, *e.g*., Exhibit 2, Redacted email chain from September and October, 2020 between and amongst individuals from the Department of Community and Economic Development and, *inter alia*, Governor Wolf's Chief of Staff Elena Cross, referencing municipal debt, ownership and use of water and sewer systems and an associated "pilot program." Indeed, these discussions post-date communications between the Governor's office and Aqua's lobbyist around the time of the Declaration of Fiscal Emergency and consideration of appointment of a Receiver. *See* Exhibit 3, 4/23/20 Redacted email from D. Kralle to B. Phillips.

ClarkHill\L5215\455064\270999622.v3-3/21/23

and calls the CWA's request for discovery about the potentially-substantial obligations being

incurred for legal representation "seeming[ly] pointless[.]" Doc. 233-1 at 1-2. Aqua ignores that

the same counsel representing the Elected Officials in this matter and the Receivership

Proceeding also represent Aqua not only in litigation arising out of Aqua's efforts to privatize the

system in Willistown Township, as cited in CWA's Motion, but in multiple other pending

privatization transactions as well. *See*, *e.g*, Application of Aqua Pennsylvania Wastewater, Inc.

pursuant to Sections 1102, 1329 and 507 of the Public Utility Code for approval of the

acquisition of the wastewater system assets of the Delaware County Regional Water Quality

Control Authority, Docket No. A-2019-301-5173 (the DELCORA acquisition); *Cicero v.

Pennsylvania Public Utility Commission,* 910 CD 2022 (Pa. Commw. Ct. 2022) (representing

Intervenor, Aqua Wastewater Pennsylvania, Inc. with regard to the East Whiteland Township

acquisition).

The Elected Officials have formally expressed their desire to force a dissolution of the

CWA, followed by a forced sale of CWA's assets to Aqua, with the net proceeds to go

exclusively to the City, and the City officials and Aqua parrot each other's arguments.[6] Aqua's

---

[6] The CWA reemphasizes that this Court lacks subject matter jurisdiction to determine
the relative powers of two state political subdivisions. Accordingly, questions about the merits
debate about the relative powers of the CWA and the Debtor, each separate political
subdivisions, are reserved to the Commonwealth of Pennsylvania. Any attempt by this Court to
make such a determination would represent an unacceptable intrusion into those sovereign
powers and violate core concepts of federalism/dual sovereignty. *See*, *e.g.*, *In re City of
Harrisburg, PA*, 465 B.R. 744, 753 (Bankr. M.D. Pa. 2011) ("Although Congress has the sole
power to establish 'uniform Laws on the subject of Bankruptcies throughout the United States'
(U.S. Const. art. I, § 8), where federal bankruptcy law intersects with the rights of states to
regulate the activities of political subdivisions created by the state, principles of dual sovereignty
as defined by the Tenth Amendment must be considered."); 11 U.S.C. § 903 (Chapter 9 "does
not limit or impair the power of a State to control, by legislation or otherwise, a municipality of
or in such State in the exercise of the political or governmental powers of such municipality[.]");
11 U.S.C. § 904 (limiting power of bankruptcy court to interfere with "any of the political or

mere representation that it has not funded, is not funding, and will not fund these fees (directly) does not satisfy CWA's inquiry as there may well be an arrangement (or arrangements) in place, or discussions that have occurred about the potential, for fees to ultimately be paid out of any forced dissolution and sale, proceeds paid to the City from Aqua, or from any other source, including those that may have a relationship to Aqua. It is clear from the Elected Officials' affidavit that their counsel is not working *pro bono* in this very complicated litigation.

* * *

In view of the liberal standards for discovery under Rule 2004, it is clear that the CWA is entitled to more.[7] For all of the foregoing reasons, the CWA respectfully requests that the Court grant its motion.

[SIGNATURE FOLLOWS ON NEXT PAGE]

---

governmental powers of the debtor"); *see also United States v. Bekins*, 304 U.S. 27, 51 (1938) (quoting with approval joint Congressional Judicial Committee report distinguishing prior municipal bankruptcy law previously held unconstitutional and addressing federalism concerns over subsequent statute on basis that, *inter alia*, "[n]o interference with the fiscal or governmental affairs of a political subdivision is permitted. . . . No involuntary proceedings are allowable, and no control or jurisdiction over that property and those revenues of the petitioning agency necessary for essential governmental purposes is conferred by the bill." (internal quotation marks omitted)); *c.f.*, *In re Ozark Mountain Solid Waste Dist.*, 2014 WL 7494926, at *2 (Bankr. W.D. Ark. Aug. 5, 2014) ("When a debtor's eligibility for chapter 9 relief is questioned, bankruptcy courts must exercise jurisdiction cautiously." (citing *Harrisburg*)). Therefore, the Authority is *not* asking the Court to determine whether or not the City can force a sale of the CWA's assets.

[7] Rule 2004 even "permits a party invoking it to undertake a broad inquiry . . . in the nature of a fishing expedition." *In re Valley Forge Plaza Associates*, 109 B.R. 669, 674 (Bankr. E.D. Pa. 1990) (internal quotation marks omitted).

ClarkHill\L5215\455064\270999622.v3-3/21/23

Dated:  March 21, 2023

CLARK HILL, PLC

*/s/ William C. Price*

William C. Price (Pa. I.D. No. 90871)
301 Grant Street, 14th Floor
Pittsburgh, PA 15219
Telephone: (412) 394-7776
Facsimile:  (412) 394-2555
wprice@clarkhill.com

Kevin Dooley Kent (Pa. I.D. No. 85962)
2001 Market Street, Suite 2620
Philadelphia, PA 19103
Telephone: (215) 640-8531
Facsimile: (215) 640-8501
kkent@clarkhill.com

Megan A. Guernsey (Pa. I.D. No. 202065)
2001 Market Street, Suite 2620
Philadelphia, PA 19103
Telephone: (215) 640-8522
Facsimile: (215) 640-8501
mguernsey@clarkhill.com

Ronald A. King (MI Bar No. P45088)
215 South Washington Square, Suite 200
Lansing, MI 48933
Telephone: (517) 318-3015
Facsimile: (517) 318-3099
rking@clarkhill.com
(*Pro Hac Vice*)

Jennifer K. Green (MI Bar No. P69019)
151 S. Old Woodward, Suite 200
Birmingham, MI 48009
Telephone: (248) 988-2315
Facsimile: (248) 642-2174
jgreen@clarkhill.com
(*Pro Hac Vice*)

*Counsel for Chester Water Authority*

ClarkHill\L5215\455064\270999622.v3-3/21/23

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: | : | |
| | : | |
| CITY OF CHESTER, PENNSYLVANIA, | : | Chapter 9 |
| | : | |
| | : | Case No. 22-13032-amc |
| | : | |
| Debtor. | : | |
| | : | |
| | : | |

### CERTIFICATE OF SERVICE

I, hereby certify that on the date set forth below I caused a true and correct copy of the foregoing *Reply in Support of Motion by the Chester Water Authority Pursuant to Rule 2004 for Disclosure of Compensation of Legal Professionals Representing Debtor's Elected Officials* to be served upon all interested parties registered for ECF notification.

Dated:  March 21, 2023         CLARK HILL, PLC


*/s/ William C. Price*

William C. Price (Pa. I.D. No. 90871)
301 Grant Street, 14th Floor
Pittsburgh, PA 15219
Telephone: (412) 394-7776
Facsimile:  (412) 394-2555
wprice@clarkhill.com

*Counsel for Chester Water Authority*

# EXHIBIT 1



**Christopher Franklin,** President & Chief Executive Officer

O: 610.645.1081   •   F: 610.645.1081   •   CHFranklin@AquaAmerica.com

May 8, 2017

Cynthia F. Leitzell, Chair
Chester Water Authority
P.O. Box 467
Chester, PA 19016

Re: Proposal for the Acquisition of the Water System Assets of Chester Water Authority

Dear Ms. Leitzell:

As your neighboring water utility immediately to the north and west of your service area, Aqua
Pennsylvania ("Aqua") has long respected the Chester Water Authority (the "Authority"), its
well-run operations, management team, and employees.  In addition, Aqua has enjoyed a
partnership with the Authority on regional water issues through our numerous interconnects.
We are well aware of the Authority's long history and outstanding reputation in southeast
Pennsylvania, and we applaud the regional leaders for having the foresight to secure the water
supply, develop the Octoraro Reservoir, and construct the water supply infrastructure during
the first half of the last century.

As members of the governing bodies of our respective utilities, we are responsible to constantly
search for options that benefit our customers.  For the reasons we list below, we believe
combining our assets will help improve service to our customers.  In this regard, we are pleased
to present Aqua's proposal (the "Proposal") for the acquisition of the Water Utility Assets of the
Authority (the "Water Utility Assets").

Based upon publicly-available records, Aqua believes the Water Utility Assets of the Authority
may be worth **$320,000,000,** in accordance with recently adopted legislation establishing a fair
market valuation methodology.  This estimate should serve as a starting point for our
discussions with the Authority and is subject to our due diligence and final Aqua America Board
of Directors and Authority approval.  This Proposal has the full support of the Aqua America
Board of Directors.

**We are requesting that we enter into a six-week, non-binding discussion period.  During this
time, both Aqua and the Authority would fully vet this conceptual proposal, advance the
valuation process, perform due diligence, and weigh the implications of a combination on the
various constituencies.  At the conclusion of this period, a mutual determination would be
made as to whether this combination is value-creating for both parties and whether to
proceed forward with the transaction.**

762 W. Lancaster Avenue, Bryn Mawr, PA 19010   •   AquaAmerica.com

Letter to Chester Water Authority
May 8, 2017
Page 2 of 8

We believe that a sale to Aqua would provide the following:

- Full value compensation for the Water Utility Assets;
- Aqua's proximity/interconnections with the Authority creates an opportunity to expand Authority access to Aqua's water supplies to address regional challenges;
- A transfer of risk to a best-in-class, regulated utility with deep operating experience and a strong balance sheet;
- Exceptional and proven customer service;
- Infrastructure investment programs to more aggressively replace aging water lines, rehabilitate aging facilities, and increase the reliability of the water supply;
- Continued employment for the Authority staff and management;
- New opportunities for advancement of the Authority staff and management;
- A reliable and sustainable company with which the municipalities can partner on economic development, educational programs, job training and community matters;
- An opportunity for the City of Chester to reduce or eliminate other existing financial obligations, thereby achieving a structurally balanced operating budget; and,
- Financial assistance with the City's efforts to emerge successfully from Act 47 status in a timely manner.

We further expound on these benefits below.

Aqua envisions the principal terms of any proposed relationship would be substantially as follows:

- ***Preliminary Terms, Conditions and Options:*** We recognize there are many factors to consider when evaluating the Proposal. Though all terms and conditions will be finalized upon completion of due diligence and negotiation with the Authority Board, we believe we can offer a variety of flexible frameworks to meet your needs. These include:

  - Cash payment for assets currently associated with the Water Utility Assets. As previously stated, our preliminary assessment indicates the value of the Water Utility Assets could be $320,000,000. After netting out the approximately $70,000,000 in long-term debts associated with the Water Utility Assets as noted in the Authority's December 31, 2015 financial statements, this would result in net proceeds of approximately $250,000,000;

  - Aqua's commitment to a smooth and seamless transition of the Authority's operations, customers and its employees. While Aqua has extensive experience

in these transitions, we recognize the expertise of the Authority and, as such, the transition would be completed in consultation with the Authority management and its employees;

- Aqua's commitment to a capital spending plan to maintain compliance and ensure reliability. Because we recognize the expertise of the Authority and its employees, this plan will be created in consultation with the Authority; and,

- Aqua's commitment to creating an "Aqua – Chester Water Authority tariff" that applies to the Authority's customers. We commit to keeping the Authority's rates below Aqua's state-wide rate for at least a decade. Aqua would further commit to a period of unchanged rates beginning at closing.

- **_Value and Consideration:_** Subject to our confirmatory due diligence, entering into an agreement of sale upon customary terms and conditions, and Aqua America Board of Director's approval, Aqua is prepared to take responsibility for and obtain ownership of the Water Utility Assets used in connection with the provision of water utility service to the residents, businesses, and wholesale customers now served by the Authority, including:

  - All Authority facilities, equipment and land related to the collection, distribution, and treatment of water;

  - Fee parcels or permanent easements, and any and all Authority structures and facilities related to the system;

  - All vehicles, equipment, services, meters, buildings and the associated easements and/or occupancy rights;

  - All customer accounts for the Authority services;

  - All permits, licenses, and other rights to provide such service in the current and anticipated future service territory; and,

  - Future Commonwealth, Federal, and other regulatory compliance costs and liabilities.

- **_No Requirement for a Bidding Process:_** Based on our legal review of the Municipality Authorities Act (53 Pa. C.S.A. Ch. 56), the Authority does not need to run a broad sale or procurement process in order to select a buyer for the Water Utility Assets. Instead, the Authority can make the decision based on a combination of (i) the value received, (ii)

the long-term benefits for the customers, and (iii) the benefits for the customers, employees and management of the Authority.

- ***Assurance of a Fair and Appropriate Purchase Price:*** To ensure that the purchase price constitutes fair value, we are proposing that the purchase price be determined utilizing the fair market value appraisal methodology outlined in the Public Utility Code (Act 12 of 2016) – Valuation of Acquired Water and Wastewater Systems for Ratemaking Purposes.  Under this approach, separate valuation experts are retained by Aqua and the Authority, and Aqua and the Authority perform their respective valuation modeling independently, but concurrently.  The ultimate purchase price is then calculated as the average of the two appraisals or as otherwise negotiated.  This methodology, now being used throughout Pennsylvania, ensures that the Authority is receiving the appropriate value for the Water Utility Assets.

- ***Employee Matters:*** We understand and agree that the welfare of employees is of significant concern. We also recognize the level of commitment, professionalism, and knowledge of employees is critical to all stakeholders to ensure success.  Aqua is committed to working with the Authority to keep all of the current water system employees and management, addressing any existing labor agreements, and maintaining competitive benefits and other arrangements.

- ***Continuing Board Roles:*** We envision establishing a compensated, nine-member advisory board to assist Aqua management on matters related to the utility currently operated by the Authority. This advisory board would be in place for a negotiated period of time to solicit local insights, provide continuity, and ensure optimal results for all constituents – customers, employees, and municipal officials.

- ***Government Stakeholder Benefits:*** The City of Chester and both Chester and Delaware Counties would benefit from this transaction in the following ways:

  - Based on Act 12 of 2016 (referenced above), realization of full value for the Authority's assets;

  - A sale would provide the City and the Counties with a meaningful share of net proceeds allowing each of them to reduce long term financial obligations, reduce or maintain the present level of taxation, or to otherwise invest in the future of the municipality;

Letter to Chester Water Authority
May 8, 2017
Page 5 of 8

- Aqua, a best-in-class operator, would provide additional sources of water, system redundancies, and operational economies of scale;

- Aqua would be a long-term owner and partner, supporting local initiatives and preferences regarding open space and economic development. We already serve municipalities in 32 counties in the Commonwealth and have a longstanding track record of supporting the mission and vision of those local governments;

- Aqua's holdings would provide a new source of property taxes;

- A sale would provide for a transfer of the risks of owning and operating a multi-municipality water system (e.g. contamination, service interruptions, lead services, security, increasing stringency of environmental regulations, etc.) to a regulated utility with deep, local operating experience and a strong balance sheet, and;

- Finally, a sale would allow the City of Chester to emerge from Act 47 status.

- **_Partnership with the City of Chester:_** We expect that our proposal will be attractive to the City of Chester for the following reasons:

    - The proceeds of the purchase price would help the City emerge from Act 47 status and would provide funding for identified economic development projects;

    - Partner with the City of Chester on economic development;

    - Aqua would continue to operate from the Authority's existing facilities within the City;

    - Aqua would partner with the Mayor's office and local institutions on student education and awareness about utility careers, internships, as well as contributing to vocational and STEM training, as we do in our current service territories; and

    - Aqua is committed to using local contractors for infrastructure projects within the City, where feasible.

Letter to Chester Water Authority
May 8, 2017
Page **6** of **8**

- *__Constituent Benefits:__* We expect that our proposal will be attractive to the Authority for a number of reasons:

  - Given our relative proximity of operations and existing interconnections, we are uniquely positioned to reinforce water supply in areas currently served by the Authority.  Aqua has rights to source water from the Delaware and Schuylkill Rivers which, when combined with the Authority's Susquehanna River and Octoraro sources supplies, create a water supply portfolio that improves reliability and overall customer service;

  - Along with the expanded portfolio of sources of supply, our best-in-class operations offer enhanced customer service support, with prompt local field response to service inquires, electronic payment options, automated outbound emergency communication alerts by phone, text or e-mail, and a customer assistance program;

  - The acquired system and rates charged to the customers would be regulated by the Pennsylvania Public Utility Commission ("PUC") for economic and service matters and the Pennsylvania Department of Environmental Protection ("DEP") for health and environmental matters, which is consistent with the manner in which Aqua is currently regulated;

  - Customer availability to Aqua PA's Helping Hand Program - a program designed to assist low-income customers with managing monthly payments of their water account;

  - Accelerated infrastructure investment to upgrade water treatment plants and related facilities to ensure compliance with current and future water quality regulations, replacing old pipe lines, improving or replacing as appropriate aged facilities, and ensuring compliance with all regulatory requirements;

  - Continued employment and additional opportunities for advancement of the Authority staff and management.  Aqua invests in training and development of our employees to prepare them for potential advancement opportunities anywhere in the Aqua America family of companies. Where possible, we will use local contractors to assist with this work; and,

  - Finally, Aqua is committed to serve as one of the pillars in the communities served by the Authority.  As you are aware, Aqua invests hundreds of thousands of dollars and countless hours every year within the communities it serves to

Letter to Chester Water Authority
May 8, 2017
Page 7 of 8

support and sponsor local events, schools, charitable organizations and service organizations. We appreciate the privilege and importance of being the water provider for the communities the Authority currently serves.

- ***Due Diligence Review:*** We are prepared to move quickly and are committed to an efficient and expedited process. We expect to be able to complete our due diligence and negotiate a mutually-agreeable purchase agreement within approximately six weeks. Of course, any information obtained by us as a result thereof will be maintained by us in confidence subject to the terms of a Confidentiality Agreement.

- ***Definitive Purchase Agreement:*** All of the terms and conditions of the proposed transaction would be stated in a purchase agreement, as mutually negotiated, agreed to and executed.

- ***Authorizations and Approvals:*** Following confirmatory due diligence, Aqua America's Board will have to approve the acquisition and the final purchase price.

- ***Regulatory Approvals:*** Aqua has a longstanding history of working with its regulators on the regulatory approval process and has successfully received over 300 approvals on similar transactions over the last 25 years.

- ***Principal Contacts***:

  Christopher H. Franklin
  President and Chief Executive Officer
  Aqua America, Inc.
  762 W. Lancaster Avenue
  Bryn Mawr, PA  19010
  (O) 610.645.1081
  (C) 610.324.3179
  chfranklin@aquaamerica.com

  Daniel J. Schuller
  EVP, Strategy & Corp. Development
  Aqua America, Inc.
  762 W. Lancaster Avenue
  Bryn Mawr, PA 19010
  (O) 610.645.4266
  (C) 917.376.2875
  djschuller@aquaamerica.com

  Marc A. Lucca
  President
  Aqua Pennsylvania, Inc.
  762 W. Lancaster Avenue
  Bryn Mawr, PA  19010
  (O) 610.645.1059
  (C)  610.883.3295
  malucca@aquaamerica.com

Letter to Chester Water Authority
May 8, 2017
Page 8 of 8

This Proposal is intended as an expression of interest. It is not intended to and does not create an obligation to negotiate (in good faith or otherwise). The Proposal should not be considered or deemed a binding offer by Aqua, nor a contract between Aqua and the Authority. A binding commitment shall be created only upon execution and delivery of a definitive asset purchase agreement.

We look forward to meeting with you and the Authority Board in the near future to present our thoughts on how we can best meet the needs of the customers and employees of the Authority, and the constituents of the City of Chester, Chester County, and Delaware County. We will contact you to determine a mutually convenient date for a discussion on this matter.

Sincerely,

Christopher H. Franklin
President and CEO

cc:     Paul Andriole
        Wendell Butler, Jr.
        Thomas Chiomento, III
        Joseph McGinn
        William Riley
        Leonard Rivera
        John Shelton, Sr.
        Livia Smith
        Robert Judge, Executive Manager
        Chester County Commissioners
        City of Chester – Mayor and Council
        Delaware County Council

EXHIBIT 2

**To:**      Sheaf, Andrew[asheaf@pa.gov]; Martin, Theodore[theomartin@pa.gov]
**From:**    Bracey, C Kim[/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP
             (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=A38B741DE1B941CE87980D3417693E9F-CBRACEY]
**Sent:**    Thur 10/1/2020 4:12:35 PM (UTC-04:00)
**Subject:** RE: ███████████████████████

Thank you very much for this!
I will keep you posted.
Kim
**C. Kim Bracey | Executive Director**
PA Department of Community & Economic Development
Governor's Center for Local Government Services
Commonwealth Keystone Building
400 North Street, 4th Floor | Harrisburg, PA 17120-0225
Phone: 717-787-4140 | ckbracey@pa.gov
dced.pa.gov | www.visitPA.com

**From:** Sheaf, Andrew <asheaf@pa.gov>
**Sent:** Thursday, October 1, 2020 4:03 PM
**To:** Bracey, C Kim <ckbracey@pa.gov>; Martin, Theodore <theomartin@pa.gov>
**Subject:** RE: ███████████████████████
Kim,
Please see attached.
Lower Frederick Township and Penn Hills Township seem to fit. Penn Hills Township owns two plants, and is the sole user at one of them.
Two quick notes on them:
  • Both of those municipalities saw improvement in their pensions since we last ran the numbers (LF went from 72% to 76%, PH went from 57% to 86%)
  • Both municipalities are still showing signs of distress in their debt load

Andrew

**From:** Bracey, C Kim <ckbracey@pa.gov>
**Sent:** Thursday, October 1, 2020 2:27 PM
**To:** Sheaf, Andrew <asheaf@pa.gov>; Martin, Theodore <theomartin@pa.gov>
**Subject:** Re: ███████████████
Andrew:
Rick is also trying through his connections too. Please ask Brandyn to maybe check a couple of these or again as you stated a Policy Specialist to assist. If we don't have anything tomorrow morning, I will report we are working to obtain the information.
Please get me posted.
Thank you kindly.
Kim
Get Outlook for iOS

**From:** Sheaf, Andrew <asheaf@pa.gov>
**Sent:** Thursday, October 1, 2020 1:37 PM
**To:** Bracey, C Kim; Martin, Theodore
**Subject:** RE: ███████████████████████
Kim,
Brandyn, or Policy Specialists in the region, could help call these municipalities and ask if they solely own their water and sewer systems and if they are the sole user on that system. █████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████

Andrew

**From:** Bracey, C Kim <ckbracey@pa.gov>
**Sent:** Thursday, October 1, 2020 1:06 PM
**To:** Sheaf, Andrew <asheaf@pa.gov>; Martin, Theodore <theomartin@pa.gov>
**Subject:** FW: █████████████████████
**Importance:** High
Hi Andrew:
█████████████████████████████████████████.

010771

If possible asap. We have an 8:30a.m. meeting with Neil tomorrow.

It might mean calling the municipality, or perhaps DEP.

Let me ask Rick if he has a contact at DEP that can give us either the answer or a contact at these municipalities.

Sorry, I am thinking as I am typing this…we just got off a call with Elena and others from the Governor's office who are still trying to make this work.

Thanks.

Kim

**C. Kim Bracey |** Executive Director
PA Department of Community & Economic Development
Governor's Center for Local Government Services
Commonwealth Keystone Building
400 North Street, 4th Floor | Harrisburg, PA 17120-0225
Phone: 717-787-4140 | ckbracey@pa.gov
dced.pa.gov | www.visitPA.com

**From:** Sheaf, Andrew <asheaf@pa.gov>
**Sent:** Wednesday, September 16, 2020 4:15 PM
**To:** Bracey, C Kim <ckbracey@pa.gov>; Martin, Theodore <theomartin@pa.gov>
**Subject:** RE: ██████████████

Kim,

My biggest concern about this is ████████████████████████████████████████

Attached is analysis I did this past February for this question. All of these municipalities:

1. Showed signs of distress in their pension (below 73% funded)
2. Showed signs of distress in one of their debt indicators (liquidity, debt over revenue)
3. Reported Wastewater / Sewage revenues on their Annual Financial Report (our best guess if they owned water / sewer)

You'll see that we ruled out West Chester and Easton, although they met the criteria. This was done with 2017 audit data. ████████. While all reported wastewater / sewer revenues in their audit, I can't guarantee it's revenue from owning a plant.

Andrew

**From:** Bracey, C Kim <ckbracey@pa.gov>
**Sent:** Wednesday, September 16, 2020 2:30 PM
**To:** Martin, Theodore <theomartin@pa.gov>; Sheaf, Andrew <asheaf@pa.gov>
**Subject:** FW: ██████████████

Ted & Andrew:

Please see the below and attached.

████████████████████████████████████████████ Let me know your thoughts perhaps by noon tomorrow.

Thanks.

Kim

**C. Kim Bracey |** Executive Director
PA Department of Community & Economic Development
Governor's Center for Local Government Services
Commonwealth Keystone Building
400 North Street, 4th Floor | Harrisburg, PA 17120-0225
Phone: 717-787-4140 | ckbracey@pa.gov
dced.pa.gov | www.visitPA.com

**From:** Weaver, Neil
**Sent:** Wednesday, September 16, 2020 2:15 PM
**To:** Vilello, Richard <rvilello@pa.gov>; Doweary, Michael <mdoweary@pa.gov>; Bracey, C Kim <ckbracey@pa.gov>; Adams Jr., J. Michael (Mike) <jeroadams@pa.gov>
**Subject:** FW: ██████████████

**Neil R. Weaver |** Executive Deputy Secretary
PA Department of Community & Economic Development
Commonwealth Keystone Building
400 North Street, 4th Floor | Harrisburg, PA 17120-0225
Phone: 717-720-1370 | neweaver@pa.gov

010772

**From:** Smith, Erin
**Sent:** Wednesday, September 16, 2020 2:13 PM
**To:** Cross, Elena <elecross@pa.gov>; Weaver, Neil <neweaver@pa.gov>; Perez, Theron (GC) <tperez@pa.gov>; Akers, Rodney (GC) <roakers@pa.gov>; Adams Jr., J. Michael (Mike) <jeroadams@pa.gov>; Swails, Jen <jswails@pa.gov>; Thall, Gregory <gthall@pa.gov>; Snead, Meg <msnead@pa.gov>
**Subject:** RE: ███████████

Attached is the memo I did last year. We had determined that the ongoing litigation specifically related to who owns the water authority didn't make it a good fit for a pilot program. ████████████████████████████████.

**From:** Cross, Elena <elecross@pa.gov>
**Sent:** Wednesday, September 16, 2020 1:59 PM
**To:** Weaver, Neil <neweaver@pa.gov>; Perez, Theron (GC) <tperez@pa.gov>; Akers, Rodney (GC) <roakers@pa.gov>; Adams Jr., J. Michael (Mike) <jeroadams@pa.gov>; Swails, Jen <jswails@pa.gov>; Thall, Gregory <gthall@pa.gov>; Snead, Meg <msnead@pa.gov>; Smith, Erin <serin@pa.gov>
**Subject:** RE: ███████████

Thanks – having Rick and Kim's thoughts would be helpful, as well as Mike/OGC's.
████████████████████████████████████████
█████████████████████████████████████████████.

Thanks Neil.

**From:** Weaver, Neil <neweaver@pa.gov>
**Sent:** Wednesday, September 16, 2020 1:53 PM
**To:** Cross, Elena <elecross@pa.gov>; Perez, Theron (GC) <tperez@pa.gov>; Akers, Rodney (GC) <roakers@pa.gov>; Adams Jr., J. Michael (Mike) <jeroadams@pa.gov>; Swails, Jen <jswails@pa.gov>; Thall, Gregory <gthall@pa.gov>; Snead, Meg <msnead@pa.gov>; Smith, Erin <serin@pa.gov>
**Subject:** RE: ███████████████

I can ask Rick V/Kim B where we are and their reaction to the questions below.
For the legal side of things…will defer to Mike A and OGC.
Thanks

**Neil R. Weaver |** Executive Deputy Secretary
PA Department of Community & Economic Development
Commonwealth Keystone Building
400 North Street, 4th Floor | Harrisburg, PA 17120-0225
Phone: 717-720-1370 | neweaver@pa.gov
dced.pa.gov | www.visitPA.com

**From:** Cross, Elena
**Sent:** Wednesday, September 16, 2020 1:52 PM
**To:** Perez, Theron (GC) <tperez@pa.gov>; Akers, Rodney (GC) <roakers@pa.gov>; Weaver, Neil <neweaver@pa.gov>; Adams Jr., J. Michael (Mike) <jeroadams@pa.gov>; Swails, Jen <jswails@pa.gov>; Thall, Gregory <gthall@pa.gov>; Snead, Meg <msnead@pa.gov>; Smith, Erin <serin@pa.gov>
**Subject:** ███████████

████████████████████████████████████
████████████████████████████████████████████
███████████████████████████████████████████████
██████████████████████████████████████████
████████████████████████████████████████████████

Thanks.

**Elena Cross** | Deputy Chief of Staff
Office of Governor Tom Wolf
Room 225 Main Capitol | Harrisburg PA 17120
Phone: 717.787.2500 | Fax 717.772.3155
Email: elecross@pa.gov
**www.pa.gov**

# EXHIBIT 3

**To:** Phillips, Betsy
**Cc:** Brunelle, Michael
**From:** Kralle, David M
**Sent:** Thur 4/23/2020 11:09:28 AM (UTC-04:00)
**Subject:** Call Request

Betsy,

I hope this note finds you well. I just spoke with Mike Brunelle who recommended that I reach out to you. Aqua/Essential Utilities CEO Chris Franklin was hoping to have 10 minutes of the Governor's time for a phone call over the next few days if possible.

We apologize for the short notice but the subject of the call is about outreach that the Chester Water Authority has been doing to your administration on a somewhat immediate issue.

Chris can be flexible as we know the Governor's schedule is so hectic.

Thank you!

Dave





**David M. Kralle**
**Government Affairs**
**Aqua America, Inc. an Essential Utilities Company**
762 W. Lancaster Ave., Bryn Mawr, PA 19010
O: ▮▮▮▮▮▮▮▮    M: ▮▮▮▮▮▮▮▮