IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | Chapter 9 |
| | : | |
| CITY OF CHESTER, PENNSYLVANIA | : | Case No. 22-13032 |
| | : | |
| Debtor | : | |
| | : | |

**ANSWER OF THE STORMWATER AUTHORITY OF THE CITY OF
CHESTER TO DEBTOR, CITY OF CHESTER'S MOTION TO PRODUCE
<u>DOCUMENTS PURSUANT TO BANKRUPTCY RULE 2004</u>**

The Stormwater Authority of the City of Chester ("Respondent," "SAC," or the "Authority") hereby responds to the Motion of Debtor, City of Chester, ("Debtor," "Movant," or "City") for Entry of an Order Requiring the Stormwater Authority of the City of Chester to Produce Documents pursuant to Bankruptcy Rule 2004, stating as follows:

**I.      <u>Preliminary Statement</u>**

The scope of examination under Rule 2004 is characterized universally by courts as broad. *See*, *In re Philadelphia Orchestra Assn*., No. 11-13098-ELF (Bankr. E.D. Pa. July 25, 2011) citing *In re Drexel Burnham Lambert Group, Inc*., 123 B.R. 702, 711 (Bankr. S.D.N.Y. 1991) ("analogizing Rule 2004 examination to an authorized 'fishing expedition' that may 'net the dolphins as well as the tuna'."). A bankruptcy court must strike a balance between the parties' competing interests and is accorded broad discretion to consider the totality of the circumstances in determining the permissible scope of a Rule 2004 examination. *Id.* citing *In re Countrywide Home Loans, Inc*., 384 B.R. 373, 393 (Bankr. W.D. Pa. 2008), appeal dismissed, 2008 WL 2388285 (W.D. Pa. Jun 11, 2008) (court should employ a "sliding scale" comparing a creditor's need for the requested information with the level of potential intrusiveness involved). The relevancy of the requested documents does not alone demonstrate good cause for

production. *In re Drexel Burnham Lambert Group, Inc*., 123 B.R. 702, 711 (Bankr. S.D.N.Y. 1991). In this matter, the Debtor's Motion to Produce pursuant to Bankr. Rule 2004 should be denied because the Commonwealth Court is expecting to address the Stormwater Authority-related matters, at which time these documents can properly be requested. While Debtor's requests may be tangentially relevant to the pending bankruptcy proceeding, the totality of the circumstances require the Bankruptcy Court to allow the Commonwealth Court to continue in its statutory role.

The instant Bankruptcy Court proceedings for the Debtor, City of Chester, do not exist in a vacuum. In 1995, the City of Chester ("Debtor," "Chester," or the "City") was designated as a distressed municipality under the Financially Distressed Municipalities Act ("Act 47" or the "Act"), which is administered by the Commonwealth of Pennsylvania's Department of Community and Economic Development (the "Department" or "DCED"). *See,* 53 P.S. §11701.121. Pursuant to the Act, among other things, the Department is tasked with appointing coordinators, which may be DCED employees or private consultants, to formulate plans to address the financial problems of distressed municipalities such as the City of Chester. *See id.* §11701.221(a), (b). All proposed recovery plans, including modified plans, must first be approved and confirmed by the Commonwealth Court of Pennsylvania (the "Commonwealth Court") before they may be implemented. *See,* id. § 11701.703(e).

From 1995 to 2020, the City operated under numerous fiscal recover plans. In June 2020, pursuant to then-Governor Wolf's Declaration of Fiscal Emergency under Act 47, the City was placed under receivership, and Mr. Michael Doweary was approved as Receiver. Several plans have been presented to the Commonwealth Court by Debtor's Receiver and, most recently, on November 8, 2022, the Receiver presented the Commonwealth Court with a "Second Amended

2

Recovery Plan".[1]  The Receiver's proposed Second Amended Recovery Plan contained thirty-three (33) initiatives, including categories specific to the attempted monetization of the Stormwater Authority of the City of Chester.  On or about December 2, 2022, the Authority filed its Response and Objections to the "Second Amended Recovery Plan" with the Commonwealth Court, a copy of which is attached hereto as Exhibit 1.

The Commonwealth Court did not consider or rule upon the City's proposed Authority-related initiatives or the Authority's objections.  Rather, the Commonwealth Court stated that it "bifurcated the Stormwater Authority matter[]… <u>due to the complex factual and legal issues involved, which the Court determined necessitated separate hearing</u>.  Thus, the Court does not address the Stormwater Authority initiatives [proposed by the Receiver]… in this Opinion." *See,* Memorandum and Opinion of the Commonwealth Court of Pennsylvania in *Neil R. Weaver, in his capacity as Acting Secretary of the Department of Community and Economic Development v. City of Chester,* at FN.9 at pp- 9-10, a copy of which is attached hereto as Exhibit 2 (emphasis added).

In the ensuing sixteen (16) months between the day the Commonwealth Court bifurcated the issues raised by the City regarding the Stormwater Authority, and the date on which the City filed the instant Motion in this Court, the Receiver did nothing to re-present to the Commonwealth Court "the complex factual and legal issues, involved which the [Commonwealth] Court determined necessitated separate hearing."  The Receiver did not request

---

[1] Two days later, on November 10, 2022, the Receiver initiated the instant Bankruptcy Court matter, and this Court subsequently lifted the automatic stay so that the Commonwealth Court could address the Plan Modification. On November 22, 2022, this Court entered an Order clarifying that the automatic stay was not in effect with respect to proceedings in the Commonwealth Court relating to the Receiver's proposed Modified Recovery Plan.  *See,* Docket No. 80, Automatic Stay Order.

3

another hearing on the initiatives as presented in the Second Amended Recovery Plan. On the contrary, after having reviewed and considered the Commonwealth Court's February 2023 Opinion and Memorandum, the City seems to have taken the legally unfounded position that it can avoid the required review and approval of the Commonwealth Court, and, instead, litigate "*the complex factual and legal issues involved*" with the Stormwater Authority in this Court.

Had the City properly brought its action seeking to monetize of the Stormwater Authority of the City of Chester in Commonwealth Court, the parties could conduct their discovery in the normal course. Using this Court to avoid bringing such an action and extend the proverbial fishing net is especially troubling when considering the fact that the parties are regularly subject to document productions similar in scope. In addition to being subject to 65 P.S. §67.101 et seq., the "Right-to-Know Law," the Authority is subject to an annual audit conducted by the same office from which the Receiver operates. Pursuant to 53 Pa.C.S.A. § 5612(b), in pertinent part:

> a required annual report shall be published in accordance with the following: (1) Every authority shall file, on or before 180 days following the end of its fiscal year, an annual report of its fiscal affairs covering the preceding fiscal year with the Department of Community and Economic Development and with the municipality or municipalities creating the authority on forms prepared and distributed by the Department of Community and Economic Development. The reports shall also be provided, and may be provided electronically, to any other municipality that has residents served by the authority. (2) Every authority shall have its books, accounts and records audited annually by a certified public accountant, and a copy of the audit report shall be filed in the same manner and within the same time period as the annual report… (3) A concise financial statement shall be published annually at least once in a newspaper of general circulation in the municipality where the principal office of the authority is located. If the publication is not made by the authority, the municipality shall publish such statement at the expense of the authority. (4) If the authority fails to make such an audit or if the municipality determines that there is a need for a review, then the controller, auditor or accountant designated by the municipality is hereby authorized and empowered from time to time to examine the accounts and books of it, including its receipts, billing systems, disbursements, transparency of contracts and how the contracts are awarded, leases, sinking funds, investments, compliance with relevant Federal and State statutes, conflicts of interest by the authority and its board members, staff and contractors and any other matters relating to its finances, operation and affairs. The review by the municipality shall be conducted within a year of an authority's annual audit…

The Authority's audit for fiscal year 2023 is due on or before June 30, 2024. The Authority's audit for fiscal year 2022 remains subject to further review by the Debtor. Information beyond that period is left to the exclusive jurisdiction of the Attorney General. See id at 5612 (c), stating "The Attorney General of the Commonwealth shall have the right to examine the books, accounts and records of any authority." The Authority maintains that the bulk, if not all of the Debtor's requests for information are either already public record and/or have already been provided.

## RESPONSE TO MOTION

### II. Jurisdiction and Venue

1. Admitted in part; denied in part. It is admitted that this Court has jurisdiction to hear the instant Rule 2004 Motion. It is denied that the Court has jurisdiction to consider and resolve any issues under the Financially Distressed Municipalities Act.

2. Denied as stated. Respondent incorporates herein its answer at Paragraph 1 above, as though set forth herein at length.

3. Denied as stated. Respondent incorporates herein its answer at Paragraph 1 above, as though set forth herein at length.

4. Denied as stated. Respondent incorporates herein its answer at Paragraph 1 above, as though set forth herein at length.

### III. Background

#### A. The Bankruptcy

5. Denied. Paragraph 5 presents conclusions of law to which no response is required, and they are denied. In response to footnote 4 that is incorporated into Paragraph 5, the

Declaration is a document which speaks for itself, and any characterization and/or mischaracterization is denied.

6. Denied. The Declaration is a document that speaks for itself, and any characterization and/or mischaracterization is denied. It is specifically denied that the instant Motion was filed to effectuate a financial restructuring of the City's obligations, as stated. On the contrary, the instant Motion was filed in order to secure documents and information in support of the City's anticipated misuse of the bankruptcy process to avoid having to address the Commonwealth Court's bifurcation of its February 14, 2023 decision with regard to the City's Second Amended Recovery Plan as it relates to the Stormwater Authority of the City of Chester.

7. Denied. After reasonable investigation, Respondent is without sufficient information to either admit or deny the averments regarding the City's process of detailing and analyzing all of its rights, interests, assets and liabilities, therefore, they are denied. Further, Respondent asserts that these averments are immaterial to the instant Motion.

    **B.**    **SAC and the Receiver's Recovery Plans**

8. Denied. To the extent that Paragraph 8, and its footnotes 5 and 6, present conclusions of law, no response is required, and they are denied. By way of further answer, the Stormwater Authority of the City of Chester was incorporated on October 12, 2016, and has been lawfully operating pursuant to Pennsylvania's Municipality Authorities Act, 53 Pa.C.S.A. § 5601, *et seq*. (hereinafter "Authorities Act"). Having been incorporated pursuant to the Authorities Act, the Stormwater Authority is a corporate entity, separate and distinct from the City, created for the purpose of and with the power to acquire, hold, construct, finance, improve, maintain and operate projects related to stormwater planning and management within the City of Chester and for the benefits of the citizenry. *See,* 53 Pa.C.S.A. § 5607(a). Under Pennsylvania

law, the administrative powers and duties of authorities such as the Stormwater Authority "shall be exercised by a board," which, albeit appointed by the municipality, nevertheless acts wholly independently from the municipality. *See,* 53 Pa.C.S.A. § 5610(a)(1). Indeed, Section 5610(e) provides, in relevant part:

> The board shall have full authority to manage the properties and business of the authority and to prescribe, amend and repeal bylaws, rules and regulations governing the manner in which the business of the authority may be conducted and the powers granted to it may be exercised and embodied.

53 Pa.C.S. § 5610(e).

9. Denied. The Emergency Action Plan is a document that speaks for itself, and any characterization and/or mischaracterization is denied.

10. Denied. The Recovery Plan and the Doweary Declaration are documents that speak for themselves, and any characterizations and/or mischaracterizations are denied. By way of further answer, Respondent incorporates herein by reference the several Pennsylvania Supreme Court opinions, concurrences and dissents attached as Exhibits to the City's Motion, which, considered collectively, indicate that Pennsylvania law regarding Act 47 is far from clear, including what a recovery plan may or may not provide under the law. By way of further answer, federal courts, among other things, must look to how a state's highest court would resolve questions of law. *See e.g., Amato v. KPMG LLP*, 433 F. Supp. 2d 460, 474 (M.D. Pa. 2006) and *Fulton Bank, N.A. v. UBS Sec., Inc.,* 2011 U.S. Dist. LEXIS 128820**,** 2011 WL 5386376 (E.D.Pa. Nov. 7, 2011). As the Pennsylvania Supreme Court itself noted in January 2024, in the City's state court matter, "because the Justices are unable to reach a consensus regarding the disposition of the Commonwealth Court's order, the order of the Commonwealth Court is **AFFIRMED** by operation of law." (*See,* Exhibit D to the instant Motion, pg. 3) (emphasis in original).

7

11. Admitted. The documents and the record speak for themselves.

12. Denied. Respondent is unable to either admit or deny the reasons the Receiver sought a writ of mandamus, and the averments are therefore denied.

13. Denied. The "Second Amended Recovery Plan" is a document that speaks for itself, and any characterizations and/or mischaracterizations are denied.

14. Admitted in part; denied as stated. It is admitted only that the Commonwealth Court held a three-day hearing, and that prior to the hearing the Court bifurcated the proposed initiatives regarding the Respondent and regarding the Chester Parking Authority. Any characterization of the Receiver's or the Authority's motives to enter into the said Stipulation are denied.

15. Denied as stated. The document and the record speak for themselves.

16. Denied as stated. The document and the record speak for themselves.

17. Denied as stated. The document and the record speak for themselves.

18. Denied. The Stipulation is a document that speaks for itself, and any characterizations and/or mischaracterizations are denied. By way of further answer, Respondent is unable to either admit nor deny whether the Stipulation had any or no impact on other authorities, therefore, the averment is denied.

19. Denied as stated. It is denied that the Pennsylvania Supreme Court entered an opinion affirming the Commonwealth Court's order. On the contrary, the Supreme Court's Order stated, "… because the Justices are unable to reach a consensus regarding the disposition of the Commonwealth Court's order, the order of the Commonwealth Court is **AFFIRMED** <u>by operation of law</u>." (*See* Exhibit D to the instant Motion at p. 3 of 94) (bold emphasis in the original; underscore emphasis added).

8

20. Denied. The referenced Opinion is a document that speaks for itself, and any characterization and/or mischaracterization is denied. Movant's conclusions of law are denied. The Pennsylvania Supreme Court entered its Order stating, "… because the Justices are unable to reach a consensus regarding the disposition of the Commonwealth Court's order, the order of the Commonwealth Court is **AFFIRMED** <u>by operation of law</u>." (*See* Exhibit D to the instant Motion at pg. 3) (bold emphasis in the original; underscore emphasis added). By way of further answer, the several opinions as expressed within the Opinion (an Opinion, a Concurrence that does not necessarily agree with the Opinion, and a Dissent) indicate that there is no clarity of with regard to Act 47 in the Pennsylvania Supreme Court.

21. Denied. To the extent Paragraph 21 presents conclusions of law regarding Act 47 no response is required, and they are denied. By way of further answer, Respondent incorporates herein its answer to Paragraph 20 as though set forth fully herein at length.

22. Denied. To the extent Paragraph 22 presents conclusions of law regarding Act 47 no response is required, and they are denied. By way of further answer, Respondent incorporates herein its answer at Paragraph 20 as though set forth fully herein at length.

23. Denied. To the extent Paragraph 23 presents conclusions of law regarding Section LEG09 of the Receiver's Amended Recovery Plan, no response is required, and they are denied. By way of further answer, the fact that Paragraph 23 points to the Commonwealth Court suggests that the instant motion was filed, and the information and documents requested, in support of the enforcement of an underlying state court Recovery Plan, wherein the Commonwealth Court – and not the Bankruptcy Court – is the ultimate arbiter of the law and enforcement.

24. Denied. To the extent Paragraph 24 presents conclusions of law regarding the state court Emergency Action Plan, the Recovery Plan and the Second Amended Recovery Plan

9

no response is required, and they are denied. By way of further answer, the fact that Paragraph 23 points to the Commonwealth Court suggests that the instant motion was filed, and the information and documents requested, in support of the enforcement of an underlying state court Recovery Plan, wherein the Commonwealth Court – and not the Bankruptcy Court – is the ultimate arbiter of the law and enforcement.

25. Denied. To the extent that Paragraph 25 presents conclusions of law regarding Act 47, no response is required, and they are denied. By way of further answer, to the extent it is material to any bankruptcy-related issue, it is denied that the assets of the Respondent can be monetized under the Act or under any Plan submitted by the City or the Receiver to the Commonwealth Court for consideration and approval. On the contrary, the Commonwealth Court bifurcated the Second Amended Recovery Plan, and never considered the Receiver's proposed initiatives regarding Respondent, much less ruled on them. Movant cannot now present any valid averments regarding the initiatives because they have not been resolved. The assets cannot be monetized until and unless a plan is presented (or re-presented) to the Commonwealth Court for its consideration, and the Respondent provided an opportunity to respond and object.

    **C.    The Requests Directed to SAC**

26. Denied. The referenced document speaks for itself. Respondent specifically denies Movant's characterization of its initial requests as "Initial 2004 Request" because the requests were not presented to the Authority pursuant to Bankruptcy Rule 2004. Respondent denies that the requests for information and documents were served or presented to further any bankruptcy proceedings or goals. On the contrary, and as stated in the Receiver's letter of April

1, 2024, "This request is made under the following [Recovery] Plan initiatives…." *See*, Exhibit N to the instant Motion.

27. Denied as stated. The referenced document speaks for itself.

28. Denied. Respondent is unable to either admit or deny what the City did with documents or information between June 30 and October 27, 2023, therefore, the averments are denied. The referenced document speaks for itself.

29. Denied. The email attached as Exhibit H to the instant Motion is a document that speaks for itself, and any mischaracterization is denied. By way of further answer, it is denied that any requests for information or documents were served or otherwise presented to further any bankruptcy proceedings or goals, or that any of the referenced requests should legitimately be considered a "Rule 2004 request." On the contrary, and as specifically stated in the Receiver's letter of April 1, 2024, the information and documents were requested with regard to, and based upon the Second Amended Recovery Plan. *See*, response to Paragraph 26, above.

30. Denied as stated. It is denied that any information or documents produced were necessarily in response to any specific communication (none of which is memorialized or otherwise identified except by dates). On the contrary, and as specifically stated in the Receiver's letter of April 1, 2024, the information and documents were requested with regard to, and based upon the Second Amended Recovery Plan.

31. Denied. Movant provides no basis for its implication that there are "basic" documents that would be responsive to its requests. Further, the "basic" documents referenced either have been turned over to the Receiver through the required annual audits pursuant to 53 Pa.C.S.A. s. 5612(b), or, if not already provided, can be requested in the normal course through applicable right to know processes.

11

32. Admitted in part; denied in part. The referenced document speaks for itself. It is denied that any requests for information or documents were served or otherwise presented to further any bankruptcy proceedings or goals, or that any of Movant's requests should legitimately be considered a "Rule 2004 request." On the contrary, and as specifically stated in the Receiver's letter of April 1, 2024, the information and documents were requested with regard to, and based upon the Second Amended Recovery Plan. By way of further answer, it is denied that Respondent is obliged to respond to requests presented with regard to and/or based upon any Plan submitted by Movant to the Commonwealth Court. On the contrary, the Commonwealth Court bifurcated the Second Amended Recovery Plan, and has not yet considered or ruled on the Receiver's proposed initiatives regarding Respondent.

**D.     SAC Financial and Governance Issues**

33. Denied. Movant's Exhibit J is a document that speaks for itself, and any mischaracterizations are denied. By way of further argument, neither Respondent's financial status nor the Minutes of any of Respondent's Board Meetings are relevant to the bankruptcy proceeding. As outlined herein throughout, the Commonwealth Court bifurcated the Movant's proposed initiatives regarding Respondent, and any such issues cannot be considered, much less resolved in Movant's bankruptcy proceedings. On the contrary, the initiatives proposed in the Receiver's Second Amended Recovery Plan, and the obligations between Respondent and Movant under Act 47, can only be considered and resolved by the Commonwealth Court. *See, 53 P.S. 11701.703* (requiring that any recovery plan or modification thereto "shall" be considered by the Commonwealth Court). By way of additional response, the rates to which the City refers have already been subject to judicial review and determined to be reasonable and lawful by the Commonwealth Court. *See, Appeal of Best Homes DDJ, LLC, et al, No. 239 C.D. 2020*

(unpublished opinion issued on December 23, 2021 in which the Commonwealth Court affirmed the trial court's determination that the Authority's fees were reasonably set), a copy of which is attached hereto as Exhibit 3.

34. Denied. It is denied that Respondent has done anything unreasonable or otherwise improper as averred. The issues and averments presented in Paragraph 34 are outside the scope of Debtor's bankruptcy proceedings. By way of additional response, the rates to which the City refers have already been subject to judicial review and determined to be reasonable and lawful by the Commonwealth Court. *See Appeal of Best Homes DDJ, LLC, et al, No. 239 C.D. 2020* (unpublished opinion issued on December 23, 2021 in which the Commonwealth Court affirmed the trial court's determination that the Authority's fees were reasonably set), Exhibit 3 hereto.

35. Denied. It is specifically denied that any financial or management issues have "arisen" with respect to Respondent, and/or that, if they had, such issues would be subject to oversight by this Court in Debtor's bankruptcy proceedings. Further, Respondent denies that there is a basis for the Receiver's alleged "concerns regarding the corporate governance of SAC." With respect to the identity of the Authority's Board members, the Authority's publicly available website information speaks for itself. As outlined in the several Supreme Court Opinions attached as Exhibits to the Motion, the removal or movement of Board members could only be accomplished by way of a Plan presented to, and approved by, the Commonwealth Court. This Court should not permit Movant to misuse Rule 2004 to engage in pre-Plan discovery for arguments it intends to present in a future amended Plan in Commonwealth Court.

36. Denied as stated. The identities of the City's elected and compensated officials are publicly available information that speaks for itself.

13

37. Denied. The City's Charter is a publicly available document that speaks for itself; the email thread attached to the Motion as Exhibit L is a document that speaks for itself. To the extent that Paragraph 37 presents conclusions of law regarding Article II of the City's Charter, no response is required, and they are denied. It is specifically denied that any such issues would be subject to oversight by this Court, but rather can only be properly addressed by the Commonwealth Court pursuant to Act 47. Further, the City Solicitor's email acknowledges that there are differing legal opinions as to whether City Councilmembers may serve on the Authority's Board, and the Authority maintains that the Councilmembers are properly serving on its board.

38. Denied as stated. By way of further answer with regard to allegations against Council and Board Members, Respondent incorporates herein its answer at Paragraph 37, above, as though set forth herein at length.

39. Denied. The Mayor's and/or the Receiver's "concerns" are their own, and Respondent is without information to either admit or deny the validity thereof. Respondent denies that the Mayor's request for information or documents are properly requested within the instant bankruptcy proceedings for the reasons set forth hereinabove.

40. Denied as stated. The email thread attached to the Motion as Exhibit M is a document that speaks for itself. By way of further response, see response to Paragraph 31, above, which is incorporated herein as though fully set forth at length.

41. Denied as stated. The email thread attached to the Motion as Exhibit M is a document that speaks for itself. By way of further answer, it is denied that Dr. Strand and the Authority made no reply; they replied through counsel.

14

42. Denied as stated. It is admitted that the April 1, 2024 letter is a document that speaks for itself. By way of further response, it is denied that any requests for information or documents were served or otherwise presented under the purview of a Bankruptcy Rule 2004 request. On the contrary, and as specifically stated in the Receiver's letter of April 1, 2024, the information and documents were requested with regard to, and based upon the Second Amended Recovery Plan pending in Commonwealth Court.

43. Denied. The April 8, 2024 letter speaks for itself, and any mischaracterization is denied. By way of further response, it is denied that any requests for information or documents were served or otherwise presented under the purview of a Bankruptcy Rule 2004 request. On the contrary, and as specifically stated in the Receiver's letter of April 1, 2024, the information and documents were requested with regard to, and based upon the Second Amended Recovery Plan, and issues related thereto should be litigated in the Commonwealth Court.

**IV.    Relief Requested and Basis for Relief**

44. Paragraph 44 presents a request for relief based upon legal conclusions to which no response is required. For the reasons outlined above, the requested relief should be denied.

45. Denied. Paragraph 45 presents conclusions of law regarding Rule 2004 to which no response is required, the conclusions of law are denied.

46. Denied. Paragraph 46 presents conclusions of law to which no response is required, and the conclusions of law are denied.

47. Denied. Paragraph 47 presents conclusions of law to which no response is required, and the conclusions of law are denied. By way of further answer, it is denied that Movant has a unilateral right to re-acquire Respondent's assets. On the contrary, the Movant already presented to the Commonwealth Court, pursuant to Act 47, its Second Amended

15

Recovery Plan regarding "monetizing" the Authority and/or its assets. In its Response and Opposition, the Stormwater Authority argued that the Receiver would be bound to follow the Authorities Act and the limitations it places on proceeds of the Authority. Section 5622(d) of the Authorities Act provides in relevant part:

> Following transfer of a project pursuant to this section, the municipality…, which has acquired the project shall retain the reserves received from the authority which have been derived from operations in a separate fund, and the reserves shall only be used for the purposes of operating, maintaining, repairing, improving and extending the project. Money received from the authority which represents the proceeds of financing shall be retained by the municipality in a separate fund which shall only be used for improving or extending the project or other capital purposes related to it.

53 Pa.C.S.A. § 5622(d) (emphasis added). The Authority argued that this restriction would directly impair the Receiver's ability to use Authority reserves or proceeds from financing towards the payment of outstanding debt obligations owed by the City. Instead, the proceeds from such monetization would have to be allocated specifically and exclusively for the purposes of operating, maintaining, repairing, improving and extending the City's stormwater management needs. As outlined above, the Stormwater Authority-related issues were bifurcated. Movant now seeks to do an end-run around the authority of the Commonwealth Court through the bankruptcy proceeding. Movant should not be permitted to do so.

48. Denied. Paragraph 48 presents conclusions of law to which no response is required, and the conclusions of law are denied. By way of further answer, the Receiver cannot dissolve the Stormwater Authority without first presenting the proposal in a Plan presented to the Commonwealth Court, and only if the Commonwealth Court so permits the dissolution. Further, to the extent that Movant argues otherwise, it is the Commonwealth Court who would consider and decide the legal issue of what the Commonwealth Court can determine.

49. Denied. To the extent Paragraph 49 presents conclusions of law, no response is required, and the conclusions of law are denied. By way of further answer, the Respondent incorporates herein its answers to Paragraphs 1 through 48 above as though set forth herein at length. Additionally, if the City has any interest in the Authority's assets, such interest can only be that which existed as of the Petition date. To now state that the information and documents being requested directly "relate to the City's property interests in SAC and its assets" is a bridge too far. The City and Receiver argue that they have a right to reacquire and/or dissolve the Authority pursuant to Act 47 and the MAA, but – even assuming, *arguendo,* that this is true – as of the Petition date, the City had not yet done so. The Authority remains independent of the City, and its assets remain its own; they are not property of Debtor's bankruptcy estate. Proceedings to reacquire and dissolve the Authority pursuant to Act 47 and the MAA would have had to have been completed pre-Petition in order to make such a claim. Such proceedings are the exclusive jurisdiction of the Commonwealth Court, and this Court has already granted limited stay relief for Debtor to do so.

50. Denied. It is denied that Debtor's Motion should be granted.

### III. [sic]    Local Rule 2004-1(a) Certification

51. Denied as stated. Respondent admits that further efforts would be futile, and, for all of the foregoing reasons, and the Motion should be denied.

### IV. [sic]    Reservation of Rights

52. Denied. The averments of this paragraph are conclusions of law to which no response is required, and they are denied.

17

**V. [sic]**     <u>Notice</u>

53.     Denied.  The averments of this paragraph are conclusions of law to which no response is required, and they are denied.

**VI. [sic]**     <u>No Prior Request</u>

54.     Denied as stated.  Requests for the documents that are the subject of this pending Motion can and should be requested through the Commonwealth Court proceedings.  *See,* Memorandum and Opinion of the Commonwealth Court of Pennsylvania in *Neil R. Weaver, in his capacity as Acting Secretary of the Department of Community and Economic Development v. City of Chester,* at FN.9 at pp- 9-10.

**VII. [sic]**     **Conclusion**

WHEREFORE, the Stormwater Authority of the City of Chester respectfully requests that this Court deny Debtor's Motion.

                                                      WETZEL GAGLIARDI FETTER & LAVIN LLC

Date: May 23, 2024          By:    /s/ John A. Gagliardi
                                                      John A. Gagliardi
                                                      122 South Church Street
                                                      West Chester, PA 19382
                                                      484-887-0779 x102
                                                      jgagliardi@wgflaw.com
                                                      Counsel for Stormwater Authority of
                                                      the City of Chester