# EXHIBIT 1

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Neil R. Weaver, in his capacity as Acting Secretary of the Department Of Community and Economic Development,<br>                Petitioner<br><br>   v.<br><br>City of Chester,<br>                Respondent | :<br>:<br>:<br>:<br>:<br>:   No. 336 M.D. 2020<br>:<br>:<br>:<br>:<br>: |

**STORMWATER AUTHORITY OF THE CITY OF CHESTER'S
RESPONSE AND OBJECTIONS
TO PETITIONER'S MODIFICATION OF AMENDED RECOVERY PLAN**

The Stormwater Authority of the City of Chester (hereinafter "SAC") is a municipal authority, which received the Petitioner's Modification of Amended Recovery Plan (hereinafter "Plan Modification") dated November 8, 2022. SAC is not a named respondent in this matter but files this Response pursuant to this Honorable Court's Order dated November 23, 2022 and in so doing, avers the following objections:

1. The Receiver alleges that "SAC is an 'authority' as defined by Section 701 of Act 47 and is subject to the Receiver's jurisdiction as further set forth in Act 47." *Plan Modification*, pg. 54.

2. The Receiver purportedly "wants to do his due diligence to ensure that the taxes and fees residents and business pay are set at the appropriate levels necessary to provide the services or whether some can be reduced through more efficient management or operations." *Id*. at 56.

3.  Lastly, the Receiver states "given the City's grave financial condition, every option must be on the table including monetization of City assets. As the Receiver is pursuing the monetization of the Chester Water Authority, he also needs the ability to monetize the assets of SAC is necessary." *Id*.

4.  For the reasons articulated below and in the accompanying Memorandum of Law, the Receiver's Plan Modification should not be confirmed because the initiatives relating to SAC are arbitrary, capricious and wholly inadequate to relieve the City's financial emergency. 53 P.S. § 11701.703(e).

I.  **The Plan Modification Violates Pennsylvania's Municipality Authorities Act**

5.  The Plan Modification is arbitrary and capricious because its initiatives violate the Pennsylvania Municipality Authorities Act, 53 Pa.C.S.A. § 5601, *et. seq* (hereinafter "Authorities Act").

   A.  **SAC is a corporate entity governed by its board, separate and distinct from the City.**

6.  Having been incorporated pursuant to the Authorities Act on October 12, 2016, SAC is a corporate entity separate and distinct from the City, created for the purpose of and with the power to acquire, hold, construct, finance, improve, maintain and operate projects related to stormwater planning and management within the City of Chester and for the benefits of the citizenry. *See* 53 Pa.C.S.A. § 5607.

7.  Under Pennsylvania law, the administrative powers and duties of authorities such as SAC "shall be exercised by a board," which albeit *appointed* by the municipality nevertheless *acts wholly independently* from the municipality. *See* 53 Pa.C.S.A. § 5610(a)(1).

8.  Critically, Section 5610(e) provides, in relevant part, that:

2

> The board shall have full authority to manage the properties and business of the authority and to prescribe, amend and repeal bylaws, rules and regulations governing the manner in which the business of the authority may be conducted and the powers granted to it may be exercised and embodied.

53 Pa.C.S. § 5610(e).

9. Nowhere in the Authorities Act is there any indication that the General Assembly intended for an incorporating municipality to stand in the shoes of a municipal authority board regarding the operation of the authority. Thus, by operation of the Authorities Act, it is an authority's board, and not an authority's incorporating municipality, that has the power to "manage the properties and business of the authority" and govern "the manner in which the business of the authority may be conducted and the powers granted to it may be exercised and embodied." *Id*.

10. Moreover, Pennsylvania law provides: "[m]oney of the authority may not be used for any grant, loan or other expenditure for any purpose other than a service or project directly related to the mission or purpose of the authority…." 56 Pa.C.S.A. § 5612(a.1)(1).

11. In the event the Receiver violates the aforementioned section of the Authorities Act, as the Plan Modification may require, then any ratepayer would have a private cause of action against the recipient – which in this case could include the Receiver and the City - to seek return of the money. 56 Pa.C.S.A. § 5612(a.1)(2).

12. Although Act 47, which was passed after the Authorities Act, provides certain powers for the Receiver with regards to "distressed municipalities and authorities," Act 47 does not specifically pre-empt the explicit language provided for in sections 5610 and 5612 of the Authorities Act.

    **B.**    **<u>SAC is not economically distressed and its fees are reasonably set</u>**

13. Here, SAC is not only governed by an independent and autonomous board, but the Receiver has presented no evidence that SAC is economically distressed or otherwise failing to operate as viable and effective municipal authority.

14. Because the Receiver can produce no such evidence, he instead implies that the rates set by SAC are somehow unreasonable. *Plan Modification*, pg. 55-56.

15. However, the rates set by SAC's board have already been the subject of judicial review from this Court and been found to be reasonable and lawful. *See Appeal of Best Homes DDJ, LLC, et al*, No. 239 C.D. 2020.

16. In the *Best Homes* case, various SAC rate payers asserted: (i) SAC's services were duplicative, unnecessary, and unreasonable; (ii) SAC's fee scheme was not reasonably related to the services provided; (iii) SAC's fee was an illegally imposed tax; and (iv) SAC's fee scheme was unreasonable and arbitrary.

17. However, after hearing evidence on the issue, including testimony concerning the formulations of SAC's budget, the trial court ruled against the rate payers and determined SAC's rates were reasonably set.

18. In a nineteen page non-reported opinion dated December 23, 2021, this Honorable Court upheld the trial court's determination. A true and correct copy of this Court's December 23, 2021 opinion is incorporated herein and attached hereto as Exhibit "A."

19. Therefore, the very basis for the Receiver's requested relief lacks merit and would arguably be barred by the doctrine of *res judicata* and collateral estoppel.

    **C.**    **The City does not have the power to maintain or operate stormwater management**

20.    The Authorities Act allows a municipality to take over an authority's project (such as stormwater management) but only if the project is "is of a character which the municipality has power to establish, maintain or operate…" 53 Pa.C.S.A. § 5622(a).

21.    SAC, as a municipal authority, has the specific power to set "rates based in whole or in part on property characteristics." 53 Pa.C.S.A. § 5607(d)(34).

22.    Here, the Receiver has presented no evidence that the City can maintain or operate the stormwater management in the same fashion as SAC as required by section 5622(a) of the Authorities Act.

23.    Therefore, the Plan Modification's initiatives are arbitrary, capricious and wholly inadequate to rectify the City's fiscal emergency.

**II.**    **The Plan Modification's Initiatives Are Wholly Inadequate to Alleviate the City's Fiscal Emergency.**

24.    If the Receiver does have the power to circumvent SAC's board and force the monetization of SAC's assets, then such actions will only serve to further frustrate the economic condition of the City. [1]

25.    First, before any of its projects may transferred to the City, the Authorities Act requires SAC's financial obligations and debts to be assumed by the City, which would only further exacerbate the City's financial crisis.

---

[1] Notably, the Plan Modification lists amongst its initiatives: "The Receiver shall have the <u>sole authority and discretion</u> to monetize any authority…including but not limited to the…Stormwater Authority." *Plan Modification*, pg. 56 (emphasis added). However, nowhere in the Plan Modification nor in its supporting memorandum of law does the Receiver offer any legal authority for <u>his</u> power to monetize the assets of SAC. While Act 47 provides that a recovery plan may include "the sale lease conveyance, assignment or other use of disposition of the assets of the distressed municipality or authority," it does not provide the Receiver with "sole authority and discretion to monetize" SAC.

26. Second, if the City were to take over stormwater management, then the Receiver would be statutorily prohibited from using either the financial reserves from SAC or proceeds from financing for any purpose other than providing the exact same service SAC is currently delivering to the City's residents.

27. The Authorities Act provides that if a municipality desires to take over an authority's project – such as SAC's management of the City's stormwater – then the municipality may do so, but only "upon the assumption by the municipality of all the obligations incurred by the authorit[y] with respect to that project." 53 Pa.C.S.A. § 5622(a).

28. Here, as admitted by the Plan Modification, "total funding presently provided by Pennvest is $33,084,941." *Plan Modification*, pg. 55.

29. Therefore, before the Receiver can implement his Plan Modification, he must first address the immense financial burden such action would place on the City by assuming tens of millions of dollars in obligations and debts.

30. Assuming, *arguendo,* the City could assume all of SAC's debts and obligations, then such efforts would be all for naught because the City would realize absolutely no benefit from such action.

31. Under Pennsylvania law, an Act 47 Recovery Plan may not "[a]uthorize the use of the proceeds of the sale, lease, conveyance, assignment or other use or disposition of the assets of the distressed municipality or authority in a manner contrary to section 707." 53 P.S. § 11701.703.

32. Section 707 of Act 47 provides:

> The proceeds from any sale, lease, conveyance, assignment or other use or disposition of assets of the distressed municipality or authority shall be applied to the payment of outstanding debt obligations owed by the distressed municipality or authority, <u>subject to any lien, charge,</u>

> covenant, restriction, contract, law, rule or regulation that encumbers or is otherwise applicable to the assets.

53 P.S. § 11701.707(a) (emphasis added).

33. Therefore, the Receiver would be bound to follow the Authorities Act and the limitations it places on such proceeds.

34. Section 5622(d) of the Authorities Act provides in relevant part:

> Following transfer of a project pursuant to this section, the municipality…,which has acquired the project shall retain the reserves received from the authority which have been derived from operations in a separate fund, and the reserves shall only be used for the purposes of operating, maintaining, repairing, improving and extending the project. Money received from the authority which represents the proceeds of financing shall be retained by the municipality in a separate fund which shall only be used for improving or extending the project or other capital purposes related to it.

53 Pa.C.S.A. § 5622(d) (emphasis added).

35. This restriction will directly impair the Receiver's ability to apply SAC's reserves and proceeds from financing towards the payment of outstanding debt obligations owed by the City.

36. Instead, such money would have to be allocated specifically and exclusively for the purposes of operating, maintaining, repairing, improving and extending the City's stormwater management needs – a role which is already being fulfilled by SAC.

37. Distilled, the relief requested in the Plan Modification will only further impair the City's financial growth and is wholly inadequate to alleviate the City's fiscal emergency.

## III.  Conclusion

38. For the foregoing reasons, the Plan Modification's initiatives related to SAC should not be confirmed.

39. The initiatives are arbitrary and capricious to the extent they violate the Authorities Act.

40. The initiatives are wholly inadequate to alleviate the City's fiscal emergency because such undertakings would require the City to assume tens of millions of dollars in debt and because the City would then be statutorily prohibited from using the reserves or loan proceeds to pay down any other obligations.

                              Respectfully submitted,

                              HAMBURG, RUBIN, MULLIN,
                                MAXWELL & LUPIN

By: _____
     STEVEN A. HANN
     William G. Roark, Esquire
     Attorneys for SAC
     375 Morris Road
     P. O. Box 1479
     Lansdale, PA 19446-0773

Date: <u>December 2, 2022</u>

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Neil R. Weaver, in his capacity as Acting Secretary of the Department Of Community and Economic Development,<br>　　　　　Petitioner<br><br>　　v.<br><br>City of Chester,<br>　　　　　Respondent | :<br>:<br>:<br>:<br>:<br>:　No. 336 M.D. 2020<br>:<br>:<br>:<br>: |

**STORMWATER AUTHORITY OF THE CITY OF CHESTER'S
MEMORANDUM OF LAW IN OPPOSITION
TO PETITIONER'S MODIFICATION OF AMENDED RECOVERY PLAN**

　　The Stormwater Authority of the City of Chester (hereinafter "SAC") hereby files this Memorandum of Law in opposition to the Petitioner's Modification of Amended Recovery Plan (hereinafter "Plan Modification") dated November 8, 2022. SAC is not a named respondent in this matter but files this Memorandum of Law pursuant to this Honorable Court's Order dated November 23, 2022.

　　In the Plan Modification, the Receiver seeks to, *inter alia*, include SAC under the seemingly ever-growing orbit of his purported jurisdiction. However, the Receiver provides absolutely zero legal justification or support for such actions and, in fact, fails to even mention SAC in his Memorandum of Law. Distilled, this Honorable Court should not approve the Plan Modification as it relates to SAC because the proposed initiatives are arbitrary, capricious and wholly inadequate to alleviate the fiscal emergency facing the city of Chester.

1

{03457519;v1 }

EXHIBIT 1

I. **Applicable standard**

Pursuant to Act 47, this Honorable Court is to confirm the Plan Modification only after a showing by clear and convincing evidence that the modification is not "arbitrary capricious or wholly inadequate to alleviate the fiscal emergency in the distressed municipality." 53 P.S. § 11701.703(d) and (e).

II. **The Plan Modification is arbitrary and capricious because it violates the Pennsylvania Municipality Authorities Act**

   A. **SAC is a corporate entity governed by its board, separate and distinct from the City**

SAC is a municipal authority, incorporated on October 12, 2016 and lawfully operating pursuant to Pennsylvania's Municipality Authorities Act, 53 Pa.C.S.A. § 5601, *et seq*. (hereinafter "Authorities Act"). Having been incorporated pursuant to the Authorities Act, SAC is a corporate entity, separate and distinct from the City, created for the purpose of and with the power to acquire, hold, construct, finance, improve, maintain and operate projects related to stormwater planning and management within the City of Chester and for the benefits of the citizenry. *See* 53 Pa.C.S.A. § 5607(a); s*ee also Bristol Township Water Authority v. Lower Bucks County Joint Municipal Authority*, 567 A.2d 1110, 1113 (Pa. Commw. Ct. 1989) ("an authority which has been incorporated under the [Municipality Authorities] Act becomes an independent Commonwealth agency and not subject to the control of the incorporating township").

Under Pennsylvania law, the administrative powers and duties of authorities such as SAC "shall be exercised by a board," which albeit *appointed* by the municipality nevertheless *acts wholly independently* from the municipality. *See* 53 Pa.C.S.A. § 5610(a)(1). Critically, Section 5610(e) provides, in relevant part, that:

> The board shall have full authority to manage the properties and business of the authority and to prescribe, amend and repeal bylaws, rules and regulations governing the manner in which the business of the authority may be conducted and the powers granted to it may be exercised and embodied.

53 Pa.C.S. § 5610(e).  Nowhere in the Authorities Act is there any indication that the General Assembly intended for an incorporating municipality to stand in the shoes of a municipal authority board regarding the operation of the authority.  Thus, by operation of the Authorities Act, it is an authority's board, and not an authority's incorporating municipality, that has to power to "manage the properties and business of the authority" and govern "the manner in which the business of the authority may be conducted and the powers granted to it may be exercised and embodied." *Id*.

Moreover, Pennsylvania law provides: "[m]oney of the authority may not be used for any grant, loan or other expenditure for any purpose other than a service or project directly related to the mission or purpose of the authority…." 56 Pa.C.S.A. § 5612(a.1)(1).  In the event the Receiver violates the aforementioned section of the Authorities Act, as the Plan Modification may require, then any ratepayer would have a private cause of action against the recipient – which in this case could include the Receiver and the City - to seek return of the money.  56 Pa.C.S.A. § 5612(a.1)(2).

Importantly, although Act 47, which was passed after the Authorities Act, provides certain powers for the Receiver with regards to distressed municipalities and authorities, Act 47 does not specifically pre-empt the explicit language provided for in sections 5610 and 5612 of the Authorities Act.

In his Plan Modification, the Receiver looks to completely circumvent the Authorities Act.  The Receiver purportedly "wants to do his due diligence to ensure that the taxes and fees residents and business pay are set at the appropriate levels necessary to provide the services or whether some can be reduced through more efficient management or operations." *Id*. at 56.  The Receiver states

3

{03457519;v1 }

EXHIBIT 1

"given the City's grave financial condition, every option must be on the table including monetization of City assets. As the Receiver is pursuing the monetization of the Chester Water Authority, he also needs the ability to monetize the assets of SAC is necessary." *Id.* Simply stated – taking over SAC in direct violation of the Authorities Act – as the Plan Modification's initiatives would require – is arbitrary and capricious.

      **B.**    **SAC is not economically distressed and its fees are reasonably set**

SAC is not only governed by an independent and autonomous board – the powers and duties of which are protected by the Authorities Act - but the Receiver has presented no evidence that SAC is economically distressed or otherwise failing to operate as a viable and effective municipal authority. Instead, the Receiver implies that the rates set by SAC are somehow unreasonable. *Plan Modification*, pg. 54-56. The Receiver complains he "does not have clarity as to how SAC determines the specific rates charged to the[ ] residents and businesses;…" *Id*. at 54. The Receiver then states he is:

> concerned about what appear to be the very high number of SAC municipal liens on residents, business and non-profits. While he understands that individuals must pay their bills, it raises the question in his mind as to whether the fees that are being charged are appropriate.

*Id*.

The rates set by SAC's board have already been the subject of judicial review from this Court and been found to be reasonable and lawful. *See Appeal of Best Homes DDJ, LLC, et al*, *No. 239 C.D. 2020*. In the *Best Homes* case, various SAC rate payers asserted: (i) SAC's services were duplicative, unnecessary, and unreasonable; (ii) SAC's fee scheme was not reasonably related to the services provided; (iii) SAC's fee was an illegally imposed tax; and (iv) SAC's fee scheme was unreasonable and arbitrary. After hearing evidence on the issue, including testimony

4

concerning the formulations of SAC's budget, the trial court ruled against the rate payers and determined SAC's rates were reasonably set. In a nineteen page non-reported opinion dated December 23, 2021, this Honorable Court upheld the trial court's determination. Therefore, the very basis for the Receiver's requested relief lacks merit and would be barred by the doctrine of *res judicata* or collateral estoppel.

    **C.    The Receiver has presented no evidence that the City has the power to maintain or operate stormwater management**

The Authorities Act allows a municipality to take over an authority's project (such as stormwater management) but only if the project is "is of a character which the municipality has power to establish, maintain or operate…" SAC, as a municipal authority, has the specific power to set "rates based in whole or in part on property characteristics." 53 Pa.C.S.A. § 5607(d)(34).

Here, the Receiver has presented no evidence that the City can maintain or operate the stormwater management in the same fashion as SAC.

**III.    <u>The Plan Modification is wholly inadequate to alleviate the City's fiscal emergency</u>**

Alternatively, if the Receiver does have the power to circumvent SAC's board and force the monetization of SAC's assets, then such actions will only serve to further frustrate the economic condition of the City.[1] Before any of its projects may be transferred to the City, the Authorities Act requires SAC's financial obligations and debts to be assumed by the City, which would only further exacerbate the City's financial crisis. Moreover, any of SAC's reserves or

---

[1] Notably, the Plan Modification lists amongst its initiatives: "The Receiver shall have the <u>sole authority and discretion</u> to monetize any authority…including but not limited to the…Stormwater Authority." *Plan Modification*, pg. 56 (emphasis added). However, nowhere in the Plan Modification nor in its supporting memorandum of law does the Receiver offer any legal authority for <u>his</u> power to monetize the assets of SAC. While Act 47 provides that a recovery plan may include "the sale lease conveyance, assignment or other use of disposition of the assets of the distressed municipality or authority," it does not provide the Receiver with "sole authority and discretion to monetize" SAC.

5

{03457519;v1 }

EXHIBIT 1

proceeds from financing would be statutorily prohibited from serving any purpose other than providing the exact same service SAC is currently delivering to the City's residents. Because the Plan Modification's initiatives are wholly inadequate to alleviate the City's fiscal emergency, this Court should not confirm the initiatives related to SAC.

The Authorities Act provides that if a municipality desires to take over an authority's project – such as SAC's management of the City's stormwater – then the municipality may do so, but only "upon the assumption by the municipality of all the obligations incurred by the authorit[y] with respect to that project." 53 Pa.C.S.A. § 5622(a). Here, as admitted by the Plan Modification, "total funding presently provided by Pennvest is $33,084,941." *Plan Modification*, pg. 55, *see also Plan Modification, Exhibit "L."* Therefore, before the Receiver can implement his Plan Modification and monetize the assets of SAC, he must first address the immense financial burden such action would place on the City by assuming tens of millions of dollars in obligations and debts.

Assuming, *arguendo,* the City could assume all of SAC's debts and obligations, then such efforts would be all for naught because the City would realize absolutely no benefit from the monetization of SAC's assets. Under Pennsylvania law, an Act 47 Recovery Plan may not "[a]uthorize the use of the proceeds of the sale, lease, conveyance, assignment or other use or disposition of the assets of the distressed municipality or authority in a manner contrary to section 707." 53 P.S. § 11701.703. Section 707 of Act 47 provides:

> The proceeds from any sale, lease, conveyance, assignment or other use or disposition of assets of the distressed municipality or authority shall be applied to the payment of outstanding debt obligations owed by the distressed municipality or authority, <u>subject to any lien, charge, covenant, restriction, contract, law, rule or regulation, that encumbers or is otherwise applicable to the assets</u>.

6

{03457519;v1 }

EXHIBIT 1

53 P.S. § 11701.707(a) (emphasis added).  Therefore, the Receiver would be bound to follow the Authorities Act and the limitations it places on such proceeds.

Section 5622(d) of the Authorities Act provides in relevant part:

> Following transfer of a project pursuant to this section, the municipality…,which has acquired the project shall retain the reserves received from the authority which have been derived from operations in a separate fund, <u>and the reserves shall only be used for the purposes of operating, maintaining, repairing, improving and extending the project. Money received from the authority which represents the proceeds of financing shall be retained by the municipality in a separate fund which shall only be used for improving or extending the project or other capital purposes related to it.</u>

53 Pa.C.S.A. § 5622(d) (emphasis added). This restriction will directly impair the Receiver's ability to use SAC's reserves or proceeds from financing towards the payment of outstanding debt obligations owed by the City.  Instead, the proceeds from such monetization must be allocated specifically and exclusively for the purposes of operating, maintaining, repairing, improving and extending the City's stormwater management needs – a role which is already being fulfilled by SAC.

Distilled, the relief requested in the Plan Modification will only further impair the City's financial growth by requiring the City to assume SAC's financial obligations while providing absolutely no financial benefit to the City.

## IV. <u>Conclusion</u>

SAC is a separate corporate entity – economically viable and operating under a fee system, which was reviewed by this Court less than a year ago.  Its assets are not the City's assets.  The Plan Modification is arbitrary and capricious because it is in direct conflict with the Authorities

Act. And because it is wholly inadequate at relieving the City's financial emergency, this Honorable Court should not confirm the Plan Modification.

Respectfully submitted,

HAMBURG, RUBIN, MULLIN,<br>
MAXWELL & LUPIN

By: _____<br>
STEVEN A. HANN<br>
William G. Roark, Esquire<br>
Attorneys for SAC<br>
375 Morris Road<br>
P. O. Box 1479<br>
Lansdale, PA 19446-0773

Date: December 2, 2022