# EXHIBIT 3

p

No *Shepard's* Signal™
As of: May 22, 2024 5:35 PM Z

# Appeal of Best Homes DDJ, LLC

Commonwealth Court of Pennsylvania

November 15, 2021, Argued; December 23, 2021, Decided; December 23, 2021, Filed

No. 239 C.D. 2020, No. 240 C.D. 2020

**Reporter**
2021 Pa. Commw. Unpub. LEXIS 667 *; 271 A.3d 545; 2021 WL 6068248

Appeal of Best Homes DDJ, LLC, et al., From the Order of the Court of Common Pleas of Delaware County Dated February 5, 2020. Appeal of: Best Homes DDJ, LLC,[1] Chester First Partnership,[2] VVP Partnership, MeKenney Property Management Inc., Robert Bradshaw, Mark Hall, Peter O'Konski, Patricia R. Martin, Steven Smerechenski, Derrell Wells, David Wiechecki, Steven Wiechecki, Cedar Ridge Group LLC, Murphy Management Co. Inc., P&P Properties Enterprises LLC, Ravens Towing, Patricia Smerechenski, Philp Tappenden, Twinbrook Realty Partnership, Nancy MeKenney, Nancy Smerechenski, David Sykes, Lawrence Wiechecki, Jr., Donald J. Weiss, Dr. James Bonner, Was Realty, Mark Elliott, Michael Carbonetti, Lawrence Irvin, Health Mats, Sykes Group LLC, Sykes Property Management LLC, Michael MeKenney, Catherine Fenza,[3] Robert Smerechenski, Aspen Enterprises, Inc., Community Light and Sound, Inc., Domann Enterprises, LLC, Spec Industries, Inc., T. Frank McCall's Inc., T.I.B.C. Bay Partners, T.I.B.C. Partners, LP, T.I.B.C. Depot Partners, LP, TKP Holdings, LP, Wellspring Homes, LLC, James Bockius, Lydia Pastuszek, Laran Bronze, Inc.

**Notice:** An unreported opinion of the Commonwealth Court may be cited and relied upon when it is relevant under the doctrine of law of the case, res judicata or collateral estoppel. Parties may also cite an unreported panel decision of the Commonwealth Court issued after January 15, 2008 for its persuasive value, but not as binding precedent. A single-judge opinion of the Commonwealth Court, even if reported, shall be cited only for its persuasive value, not as a binding precedent.

PUBLISHED IN TABLE FORMAT IN THE ATLANTIC REPORTER.

## Core Terms

trial court, stormwater, projects, inlets, administrative remedy, injunction, abused, questions, exhaust, pipe, combined, sewer, administrative costs, official action, infrastructure, Budget, open meeting, municipality, Enterprises, duplicate, rejoins, repair

**Judges:** [*1] BEFORE: HONORABLE PATRICIA A. McCULLOUGH, Judge, HONORABLE ANNE E. COVEY, Judge, HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge. Judge Fizzano Cannon did not participate in the decision in this case.

**Opinion by:** ANNE E. COVEY

## Opinion

MEMORANDUM OPINION BY JUDGE COVEY

VVP Partnership, MeKenney Property Management Inc., Robert Bradshaw, Mark Hall, Peter O'Konski, Patricia R. Martin, Steven Smerechenski, Derrell Wells, David Wiechecki, Steven Wiechecki, Cedar Ridge Group LLC, Murphy Management Co. Inc., P&P Properties Enterprises LLC, Ravens Towing, Patricia Smerechenski, Philp Tappenden, Twinbrook Realty

---

[1] On February 13, 2019, Appellants filed a praecipe to settle, discontinue and end this action, without prejudice, as to Best Homes DDJ, LLC.

[2] On June 12, 2020, Chester First Partnership filed a praecipe to discontinue and end this action as to Chester First Partnership.

[3] On February 13, 2019, Appellants filed a praecipe to settle, discontinue and end this action, without prejudice, as to Catherine Fenza.

EXHIBIT 3

Appeal of Best Homes DDJ, LLC, 2021 Pa. Commw. Unpub. LEXIS 667

Partnership, Nancy McKenney, Nancy Smerechenski, David Sykes, Lawrence Wiechecki, Jr., Donald J. Weiss, Dr. James Bonner, Was Realty, Mark Elliott, Michael Carbonetti, Lawrence Irvin, Health Mats, Sykes Group LLC, Sykes Property Management LLC, Michael McKenney, Robert Smerechenski, Aspen Enterprises, Inc., Community Light and Sound, Inc., Domann Enterprises, LLC, Spec Industries, Inc., T. Frank McCall's Inc., T.I.B.C. Bay Partners, T.I.B.C. Partners, LP, T.I.B.C. Depot Partners, LP, TKP Holdings, LP, Wellspring Homes, LLC, James Bockius, Lydia Pastuszek, and Laran Bronze, Inc. (collectively, Appellants) **[*2]** appeal from the Delaware County Common Pleas Court's (trial court) December 13, 2019 order that denied Appellants' Petition for Preliminary Injunction and Equitable Relief (Petition), and the trial court's February 5, 2020 order that denied Appellants' Post-Trial Motion.[4] Appellants present five issues for this Court's review: (1) whether the trial court erred or abused its discretion by denying Appellants' Post-Trial Motion; (2) whether the trial court erred or abused its discretion by denying Appellants' Petition; (3) whether the trial court erred or abused its discretion by concluding that the City of Chester (Chester) Stormwater Authority (Authority) did not violate Sections 5601, and 5607(b)(2), and (d)(9) of the Municipality Authorities Act (MAA);[5] (4) whether the trial court erred or abused its discretion by basing its determination solely on the finding that the Authority did not violate the MAA; and (5) whether the trial court erred or abused its discretion by failing to enter any findings of fact or conclusions of law regarding the additional issues of law and fact on which Appellants' case was predicated. After review, this Court affirms.

On January 17, 2018, Appellants filed a Complaint in the trial court **[*3]** seeking injunctive relief from the Authority. In their Complaint, Appellants claimed that the Authority was assessing Appellants an illegal tax for stormwater management, repairs, and maintenance. Specifically, Appellants alleged: (a) the Authority was improperly formed; (b) the Authority was improperly run; (c) the services for which the Authority are charging are duplicative of the services performed by the Delaware County Regional Water Authority (DELCORA); and (d) the monies the Authority is assessing Chester property owners are an illegal tax. Also on January 17, 2018, Appellants filed the Petition.

On February 2, 2018, Appellants filed a First Amended Complaint seeking a preliminary injunction, a permanent injunction, and attorneys' fees. In the First Amended Complaint, Appellants asserted: (1) the Authority's services are duplicative, unnecessary, and unreasonable; (2) the Authority's fee scheme is not reasonably related to the services provided; (3) the fee is an illegally imposed tax; and (4) the fee scheme is unreasonable and arbitrary. On February 23, 2018, the Authority filed an answer and new matter. On March 2, 2018, the trial court held an emergency injunction hearing. **[*4]** On May 7, 2018, the trial court denied the Petition. On August 27, 2018, the Authority filed a motion for summary judgment (Motion). On November 1, 2018, the trial court denied the Motion.

The trial court held a trial on September 9 and September 10, 2019. On December 13, 2019, the trial court denied Appellants' request for permanent injunctive relief. On December 23, 2019, Appellants filed their Post-Trial Motion. Specifically, Appellants filed a motion for reconsideration of the trial court's December 13, 2019 order. On February 5, 2020, the trial court denied the Post-Trial Motion. On February 27, 2020, Appellants appealed to this Court.[6],[7] On March 2, 2020,

---

[4] By June 4, 2020 Order, this Court consolidated the two appeals.

[5] 53 Pa.C.S. §§ 5601 (MAA title), 5607(b)(2) ("[N]one of the powers granted by [the MAA] shall be exercised in the construction, financing, improvement, maintenance, extension or operation of any project . . . which in whole or in part shall duplicate . . . existing enterprises serving substantially the same purposes."), (d)(9) (an authority has the power "[t]o fix, alter, charge and collect rates and other charges in the area served by its facilities at reasonable and uniform rates to be determined exclusively by it for the purpose of providing for the payment of the expenses of the authority, the construction, improvement, repair, maintenance and operation of its facilities and properties [] [.]").

[6]

In reviewing a grant or denial of a permanent injunction, which "will turn on whether the lower court properly found that the party seeking the injunction established a clear right to relief as a matter of law," our standard of review of a question of law is *de novo*, and our scope **[*5]** of review is plenary. Penn Square Gen[.] Corp[.] v. [Cnty.] of Lancaster, 936 A.2d 158, 167 n.7 (Pa. Cmwlth. 2007) (quotation omitted).

Eagleview Corp. Ctr. Ass'n v. Citadel Fed. Credit Union, 243 A.3d 764, 770 n.1 (Pa. Cmwlth. 2020).

[7] Judgment was entered on November 29, 2021, at which time the appeal was perfected. *See* McGoldrick v. Murphy, 2020

EXHIBIT 3

Appeal of Best Homes DDJ, LLC, 2021 Pa. Commw. Unpub. LEXIS 667

the trial court ordered Appellants to file a Concise Statement of Errors Complained of on Appeal pursuant to *Pennsylvania Rule of Appellate Procedure (Rule) 1925(b)* (*Rule 1925(b)* Statement). On March 17, 2020, Appellants filed their *Rule 1925(b)* Statement. On June 28, 2020, the trial court filed its opinion pursuant to *Rule 1925(a)* (*Rule 1925(a)* Opinion).

Initially, this Court observes that, in their "Statement of the Question[s] Involved," Appellants present the issues as whether the trial court erred or abused its discretion by denying Appellants' Post-Trial Motion, and whether the trial court erred or abused its discretion by denying Appellants' Petition. Appellants' Br. at 5. However, Appellants do not address those issues anywhere in their brief. This Court has explained:

> Rule 2111 . . . requires that an appellant's brief include, among other components, a statement of questions involved, a statement of the case, a summary of argument, and an argument. Pursuant to Rule 2116 . . . , the statement of questions involved "must state concisely the issues to be resolved," and the rule specifically instructs the parties that "[n]o question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby." [Pa.R.A.P. 2116.] Thus, **where issues are raised in the statement of questions involved, but not addressed in the argument section of the brief, courts find waiver**. See Harvilla v. Delcamp, . . . 521 Pa. 21, 555 A.2d 763, 764 n.1 [(Pa.] 1989). . . . Pursuant to Rule 2118 . . . , the summary of argument "shall be a concise, but accurate, summary of the [*6] arguments presented." [Pa.R.A.P. 2118.] Furthermore, *Rule 2119(a)* . . . requires that the argument section of the brief "be divided into as many parts as there are questions to be argued," and shall include "such discussion and citation of authorities as are deemed pertinent." [Pa.R.A.P. 2119(a).] **A party's failure to develop an issue in the argument section of its brief constitutes waiver of the issue**. See City of Phila[.] v. Berman, 863 A.2d 156, 161 n.11 (Pa. Cmwlth. 2004).

In re Tax Claim Bureau of Lehigh Cnty. 2012 Judicial Tax Sale, 107 A.3d 853, 857 n.5 (Pa. Cmwlth. 2015)

PA Super 24, 228 A.3d 272 (Pa. Super. 2020); see also Pa.R.A.P. 905(a)(5) ("A notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof.").

(emphasis added).

Here,

> [Appellants] fail[] to include any facts or references to the record in the statement of the case portion of [their] brief relating to the [above-stated] issues set forth on page[] [five] of [their] brief. These issues, other than being listed in [the Statement of Questions Involved] section of the brief, are not developed in the summary of argument or argument portions of [Appellants'] brief.[8] **Under these circumstances, th[is] Court must conclude that [Appellants] waived [the above-quoted] issues that [they] attempted to raise on appeal**[.]

*Id.* (emphasis added). Accordingly, Appellants waived the first two issues presented for this Court's review.

Regarding their remaining issues, Appellants argue that the Authority was not properly formed and continues to be improperly formed. Specifically, Appellants [*7] contend that the Authority failed to comply with Section 704 of the Sunshine Act[9] and Section 5607(b)(2) and (d)(9) of the MAA. The Authority rejoins that Appellants failed to exhaust their administrative remedies. In particular, the Authority retorts that Appellants should have contacted the Authority to request a hearing. Because they did not, the Authority maintains that Appellants never exhausted their administrative remedies before filing this action in the trial court and, thus, their First Amended Complaint should have been dismissed.

Relative to the Authority's claim that Appellants failed to exhaust their administrative remedies, this Court recognizes: "The failure to exhaust administrative remedies is jurisdictional in nature and may be raised by the parties or by a court *sua sponte*." Md. Cas. Co. v. Odyssey Contracting Corp., 2006 PA Super 25, 894 A.2d 750, 756 (Pa. Super. 2006); see also Provision of Grace World Mission Church v. City of Phila., 215 A.3d 100, 2019 Pa. Commw. Unpub. LEXIS 357 (Pa. Cmwlth. No. 1453 C.D. 2018, filed June 28, 2019)[10]

---

[8] Indeed, neither the standard of review for the denial of the Post-Trial Motion, nor the standard of review for a denial of, and/or the elements required for, a preliminary injunction are included in Appellants' brief.

[9] 65 Pa.C.S. § 704 (relating to open meetings).

[10] Pursuant to Section 414(a) of this Court's Internal Operating

EXHIBIT 3

Appeal of Best Homes DDJ, LLC, 2021 Pa. Commw. Unpub. LEXIS 667

("the failure to exhaust administrative remedies is jurisdictional in nature and, therefore, can be raised at any time either by the parties or by the court *sua sponte*"), slip op. at 6 n.3.

The doctrine of exhaustion of administrative remedies is intended to prevent the premature interruption of the administrative process, which would restrict the agency's opportunity to develop an adequate factual record, limit the agency in the [*8] exercise of its expertise and impede the development of a cohesive body of law in that area. Shenango Valley Osteopathic Hosp[.] v. Dep['t] of Health, . . . 499 Pa. 39, 451 A.2d 434 ([Pa.] 1982). It is appropriate to defer judicial review when the question presented is within the agency's specialization and when the administrative remedy is as likely as the judicial remedy to provide the desired result. Indep[.] Oil [&] Gas Ass['n] of [Pa.] v. [Pa.] Pub[.] Util[.] Comm['n], 789 A.2d 851 (Pa. Cmwlth. 2002); Rouse & Assoc[s.] Ship [Rd.] Land [Ltd.] P[']ship v. [Pa.] Env['t] Quality [Bd.], . . . 642 A.2d 642, 164 Pa. Commw. 326 ([Pa. Cmwlth.] 1994). **However, the exhaustion doctrine is not so inflexible as to bar legal or equitable jurisdiction where, as here, the remedy afforded through the administrative process is inadequate**. Indep[.] Oil; Shenango.

Hoke v. Elizabethtown Area Sch. Dist., 833 A.2d 304, 309 (Pa. Cmwlth. 2003) (emphasis added).

Here, Appellants are seeking to enjoin the Authority from collecting its fee. The Authority rejoins: "Appellants have all admitted that have [sic] never utilized the appeals process set forth on the [Authority's] website. Therefore, their claims should be dismissed with prejudice as they waived their right to sue under the Commonwealth [sic] as they have failed to exhaust their administrative remedies." Authority Br. at 9-10. The Authority's appeal process, as set forth on its website, provides:

If a rate payer feels that the assessed fee is in error or improper in any way, you have the right to appeal the assessment, if the property status has changed since the original assessment, [*9] which means:

(a) Significant corrections have been made to improve stormwater run-off;

(b) Buildings that were previously situated on property are no longer in existence, therefore you may want to appeal the assessment.

In order to appeal, you must have at least paid one month's payments prior to the appeal.

Stormwater Authority of the City of Chester, *Steps to File an Appeal with the Stormwater Authority of the City of Chester*, https://www.chesterstormwaterauthority.com/_files/ugd/fcf170_d9d521346e61452d96d695e8c1055f32.pdf (last visited December 21, 2021).[11]

The Authority contends that it is authorized to determine whether it is properly formed and operated, i.e., that an adequate administrative remedy exists. However, it appears that the Authority's appeal process can result only in a finding of what Appellants may *owe* on their assessments following a hearing; the procedure is not adequate to determine whether the Authority's formation and operation are MAA compliant.

First, to avail one's self of the remedy in [the appeals process], i.e., [to receive a proper assessment,] the party must first pay the assessment. This is obviously not the remedy sought by [Appellants] nor can a "pay and [*10] appeal" remedy be considered the equivalent of not having to pay at all. . . . [Second,] and more importantly, even if [Appellants] were required to submit to [the appeals process] to avoid assessments . . . , there is no [] authority in [the appeals process] to grant prospective relief to Appellants so that [Chester property owners] would not be assessed in the future.

Ind. Oil, 789 A.2d at 856 (italics omitted). Accordingly, because "the remedy afforded through the administrative process is inadequate," Hoke, 833 A.2d at 309, the First Amended Complaint did not warrant dismissal.

Concerning the formation of the Authority, Section 704 of the Sunshine Act requires:

---

Procedures, 210 Pa. Code § 69.414(a), an unreported panel decision of this Court issued after January 15, 2008, may be cited for its persuasive value, but not as binding precedent. The unreported decisions cited herein are cited for their persuasive value.

[11] The appeals process is set forth under the tab marked "Public Notices/Announcements." https://www.chesterstormwaterauthority.com (last visited Dec. 2, 2021).

EXHIBIT 3

Appeal of Best Homes DDJ, LLC, 2021 Pa. Commw. Unpub. LEXIS 667

Official action and deliberations by a quorum of the members of an agency shall take place at a meeting open to the public unless closed under [S]ection[s] 707 (relating to exceptions to open meetings), 708 (relating to executive sessions)[,] or 712 (relating to General Assembly meetings covered) [of the Sunshine Act, 65 Pa.C.S. §§ 707, 708, 712].

65 Pa.C.S. § 704. Appellants assert that, because the Authority was created in October 2016, and the first public meeting was not held until February 2017, approximately four months passed before the Authority even attempted to comply with Section 704 of the Sunshine Act.

Section 713 of the Sunshine [*11] Act provides:

**A legal challenge under this chapter shall be filed within 30 days from the date of a meeting which is open, or within 30 days from the discovery of any action that occurred at a meeting which was not open at which this chapter was violated, provided that, in the case of a meeting which was not open, no legal challenge may be commenced more than one year from the date of said meeting**. The court may enjoin any challenged action until a judicial determination of the legality of the meeting at which the action was adopted is reached. Should the court determine that the meeting did not meet the requirements of this chapter, it **may** in its discretion find that any or all official action taken at the meeting shall be invalid.[12] Should the court determine that the meeting met the requirements of this chapter, all official action taken at the meeting shall be fully effective.

65 Pa.C.S. § 713.

The Authority's Executive Manager Reverend Dr. Horrace Strand (Strand) testified: "[Chester] went through the process to establish the [] Authority. [It] held 12 public hearings and [] formulated a Board and that was the extent of that." Reproduced Record (R.R.) at 394.[13] Strand did not recall the reason for the [*12] delay between the filing of the Authority's letters of incorporation and its first public meeting.

[T]his Court has repeatedly held that official action taken at a later, open meeting cures a prior violation of the Sunshine Act. See League of Women Voters of [Pa.] v. Commonwealth, 683 A.2d 685 (Pa. Cmwlth. 1996) (violation of the Sunshine Act was cured by a subsequent open meeting at which the official action was taken); Moore v. [Twp.] of Raccoon, . . . 155 Pa. Commw. 529, 625 A.2d 737 ([Pa. Cmwlth.] 1993) (violation of Sunshine Act was cured when commissioners held open meeting afterwards).

Ass'n of Cmty. Orgs. for Reform Now (ACORN) v. Se. Pa. Transp. Auth. (SEPTA), 789 A.2d 811, 813 (Pa. Cmwlth. 2002). Here, there is no record evidence establishing the existence of closed Authority meetings, let alone whether official action was taken, and/or whether the action was cured by later open meetings. Notwithstanding, because Appellants allege that the private meetings occurred before October 2016, i.e., the date the letters of incorporation were received, and Appellants did not file the Complaint until January 17, 2018, their claims as to the Authority's Sunshine Act violations are beyond the required one-year filing period, and thus, untimely.

Section 5607(d) of the MAA provides, in relative part:

Every authority may exercise all powers necessary or convenient for the carrying out of the purposes set forth in this section, including, but without limiting the generality of the foregoing, [*13] the following rights and powers:

. . . .

(9) **To fix, alter, charge and collect rates** and other charges in the area served by its facilities **at reasonable and uniform rates** to be determined exclusively by it for the purpose of providing **for the payment of the expenses of the authority, the construction, improvement, repair, maintenance and operation of its facilities and properties** . . . . Any person questioning the reasonableness or uniformity of a rate fixed by an authority or the

---

[12] "A court's decision to invalidate an agency's action is discretionary, not obligatory[.]" Borough of E. McKeesport v. Special/Temporary Civ. Serv. Comm'n of Borough of E. McKeesport, 942 A.2d 274, 280 (Pa. Cmwlth. 2008).

[13] Appellants' Reproduced Record fails to comply with the Pennsylvania Rules of Appellate Procedure. See Pa.R.A.P. 2173 ("[T]he pages of . . . the reproduced record . . . shall be numbered separately in Arabic figures . . . thus 1, 2, 3, etc., followed in the reproduced record by a small a, thus 1a, 2a, 3a, etc."). However, for consistency of reference, the citations herein are as reflected in the Reproduced Record.

EXHIBIT 3

Appeal of Best Homes DDJ, LLC, 2021 Pa. Commw. Unpub. LEXIS 667

adequacy, safety and reasonableness of the authority's services, including extensions thereof, may bring suit against the authority in the court of common pleas of the county where the project is located . . . . The court of common pleas shall have exclusive jurisdiction to determine questions involving rates or service.

53 Pa.C.S. § 5607(d) (emphasis added).

Appellants also argue that the Authority failed to adopt a proper budget. Specifically, Appellants contend that the record does not reveal the analytical process or computation which supports the Authority's final rate determination. The Authority rejoins that Appellants have failed to offer any material fact to show that the Authority's fees are not related to its budget. **[*14]** The Authority asserts that its expert with respect to stormwater and sanitary and public water, Howard Neukrug's (Neukrug), testimony supports its fee determination.

> [W]here the reasonableness of a fee is challenged, the party challenging the fee bears the burden of proving it is unreasonable. M & D Prop[s.], Inc. v. Borough of Port Vue, 893 A.2d 858, 862 (Pa. Cmwlth. [2006]) . . . .
>
> "[T]he burden does not shift to a municipality to prove that a challenged fee is reasonable; it always remains the burden of the challenger to show that the fees are unreasonable." Id.

Ziegler v. City of Reading, 216 A.3d 1192, 1201 (Pa. Cmwlth. 2019).

Neukrug opined that Chester's stormwater impact fees, also known as user fees, are reasonably related to services or projects that the Authority will produce and execute. Specifically, Neukrug testified:
> Q. All right. Did you happen to see a document entitled "Stormwater Authority 5-Year Projection Budget"?
> A. Yes, I did.
> Q. Okay. Did you happen to see a document "Capital Project List" for the [Authority]?
> A. Yes, I did.
> Q. Did you happen to see a document which is a map produced by DELCORA in which it shows the various stormwater areas, including the [Municipal Separate Storm Sewer System (]MS4[)] areas, the combined system areas, and the other areas of the Chester []service area?
> A. Yes, I did do that.

. . . **[*15]** .
> Q. Okay. After reviewing these documents, do you have an opinion today within a reasonable degree of professional certainty as to whether or not the Chester stormwater impact fees are reasonably related to services or projects that the [Authority] will produce and execute?
> . . . .
> A. Yes. From the materials I reviewed, I was quite impressed with how the [] Authority is starting off and the number of projects it has and how it's moving forward to forming a new organization.

R.R. at 1204.

Neukrug explained how an authority initiates the implementation of user fees:
> A. User fees are handled by conducting some form of cost of service. Of course, for a system like this where cost of service is difficult to project backwards because this hasn't been done before, you need some foundation on which to project forward and take those and then find a fair and equitable way to divide those costs amongst the different customer classes.
> Q. What would be some of those factors? When you have a new authority that is looking to establish cost of services, what factors would [it] use typically in order to come up with a plan or an idea of what those future costs would be?
>
> A. Well, basically you need two documents. **[*16]** One is an operations and maintenance operating budget, which has been done in the [] Authority 5-Year Projection Budget; and you also need a capital improvement program, which looks like they have [sic] I don't know how many projects here, but it looks like maybe in the range of about 40, 50 projects listed here.
> Q. Looking at the [] Authority 5-Year Projection Budget, in the heading that says "Expenses," there are 5-year categories of administration costs. Is that typical, that a stormwater authority or any authority would have sizable administration costs?
> A. Yes. And I don't know if I would refer to these as sizable, but this administrative cost of $600,000[.00] probably relates to five or six employees.
> Q. Okay. And the administrative costs related to "Total Collected Revenue," if you look above that line, there's a category that says "Revenue," and then there is a line that says "Total Billed Revenue" and then "5-Year Cost Analysis," considering the first year total billed revenue of $3,662,604[.00], the administrative cost figure, is that a reasonable

EXHIBIT 3

Appeal of Best Homes DDJ, LLC, 2021 Pa. Commw. Unpub. LEXIS 667

administrative cost related to the total billed revenue that is expected?

A. I have no reason to doubt it.

Q. And then debt service, **[*17]** if you see that under "Expenses," in the first year the [] Authority projects that [its] debt service will be $283,372[.00]. From your experience and knowledge, carrying that amount of debt, is that considered excessive or not?
A. That's a first year and that is not an excessive amount. Of course, excessive depends on the amount of revenue you have behind it; and given this table that I'm looking at, it seems reasonable.

R.R. at 1204-05. The trial court determined that Neukrug's testimony was credible, and the Authority's fees were reasonable. In view of the foregoing evidence, this Court concludes that the trial court did not err by ruling that the Authority did not violate Section 5607(d)(9) of the MAA.

Section 5607(b) of the MAA provides, in relevant part:

**Limitations.--**This section is subject to the following limitations:

. . . .

(2) The purpose and intent of this chapter being to benefit the people of the Commonwealth by, among other things, increasing their commerce, health, safety and prosperity and not to unnecessarily burden or interfere with existing business by the establishment of competitive enterprises, **none of the powers granted by this chapter shall be exercised in the construction, financing, improvement, maintenance, extension [*18] or operation of any project or projects or providing financing for insurance reserves which in whole or in part shall duplicate** or compete with **existing enterprises serving substantially the same purposes**. . . .

53 Pa.C.S. § 5607(b) (text emphasis added).

Appellants argue that the Authority's services duplicate and compete with DELCORA's services in violation of Section 5607(b)(2) of the MAA. The Authority rejoins that Appellants have failed to offer any material fact to show that DELCORA is the "actual" stormwater authority of Chester. The Authority asserts that the Director of Operations and Maintenance for DELCORA, Michael DiSantis (DiSantis), testified that DELCORA has absolutely no control over Chester's stormwater inlets and pipes into the combined sewer system, and further that DELCORA has absolutely no control over any MS4 stormwater infrastructure whatsoever.

At the preliminary injunction hearing, DiSantis testified:[14]

Q All right. There's a lot of infrastructure in the combine[d] system between DELCORA and [Chester]. Correct?
A Yes.
Q All right. And we talked about connection, right? At some point, there's a connection point where [Chester] stormwater infrastructure comes in to DELCORA, DELCORA's waste[-]water line.
. . . .
A Absolutely. **[*19]**

Q Okay. And at no time did DELCORA ever maintain the infrastructure of [Chester's] inlets or piping into DELCORA.
A It's not part of our system.
Q [Chester] is responsible for that?
A Correct.
Q And that amount - there's a lot of infrastructure [Chester] has in terms of inlets and piping into the DELCORA system.
A That's a very good assumption, that's true.

R.R. at 1104-05.

At the September 9, 2019 hearing, DiSantis clarified:

Q Okay. And, again, just one question, one more. I believe it was your prior testimony back in [sic] March 23 of 2018, and [sic] [] DELCORA has no authority related to the maintenance and/or construction or repair of any of the combined sewer inlets and piping that goes into the combined sewer system?
A I would -- if you phrase it differently, and your question, because they're not combined sewer inlets. They are stormwater inlets.
Q I'm -- excuse me, stormwater inlets.
A Okay.

Q That DELCORA has no control, maintenance related to the stormwater inlets that go into the combined sewer system?
A That is correct.
Q All right. And you are aware that approximately a

---

[14] Counsel stipulated to and introduced the Notes of Testimony from the preliminary injunction hearing into evidence.

EXHIBIT 3

Appeal of Best Homes DDJ, LLC, 2021 Pa. Commw. Unpub. LEXIS 667

> year ago, [Chester] sold all of the stormwater inlets to the combined sewer system to the [Authority]?
> A Yes.
>
> . . . **[*20]** .
> THE COURT: Just very briefly, Mr. DiSantis. If an inlet collapsed, would DELCORA fix it?
>
> THE WITNESS: No.
> THE COURT: If a stormwater pipe broke, would DELCORA fix it?
>
> THE WITNESS: Stormwater only pipe, no.
> THE COURT: Okay. Would a stormwater pipe that was leading into the DELCORA sanitary line, if that broke, who would fix it?
> THE WITNESS: If it's before it gets to our line, it has to be fixed by, in this case, [the Authority].
> THE COURT: Okay.
> THE WITNESS: Previously, [Chester].

R.R. at 344-46. The trial court determined that the Authority's services do not duplicate or interfere with DELCORA's services. Based on the foregoing, this Court concludes that the trial court did not err by ruling that the Authority did not violate *Section 5607(b)(2) of the MAA*.

Appellants further declare that the Authority's assessed fee is an impermissible tax. Specifically, Appellants contend that the charges are a tax because they generate revenue and are a burden placed upon property owners to raise money for public purposes. Appellants assert that the Authority has raised and used revenue for projects unrelated to stormwater. The Authority rejoins that Appellants have failed to offer any material fact to show that the fees charged by **[*21]** the Authority constitute a tax on the residents. To the contrary, the Authority proclaims that the fees are charged for the sole purpose of performing projects that relate to the repair of Chester inlets and pipes and the maintenance of Chester's infrastructure, as well as projects that deal with the control of stormwater.

This Court has held:

> [I]n determining whether a levy under a municipal ordinance is a tax or a true [] fee, "[t]he common distinction is that taxes are revenue-producing measures authorized under the taxing power of government; while [] fees are regulatory measures intended to cover the cost of administering a regulatory scheme authorized under the police power of government."

*Rizzo v. City of Phila., 668 A.2d 236, 237 (Pa. Cmwlth. 1995)* (quoting *City of Phila. v. Se. Pa. Transp. Auth., 8 Pa. Commw. 280, 303 A.2d 247, 251 (Pa. Cmwlth. 1973)*).

Further,

> whether the [Authority's] [s]tormwater [c]harge constitutes a tax or a fee depends upon whether the [s]tormwater [s]ystem provides a discrete benefit to [Appellants], as opposed to generally aiding the environment and the public at large; whether the value of the [s]tormwater [s]ystem to [Appellants] is reasonably proportional to the amount of the stormwater charge; and, apart from general operation, maintenance and repair of the [s]tormwater [s]ystem, how exactly [] the [Authority] **[*22]** utilize[s] the funds generated by the [s]tormwater [c]harge.

*Borough of W. Chester v. Pa. State Sys. of Higher Educ., 215 A.3d 1082, 2019 Pa. Commw. Unpub. LEXIS 402 (Pa. Cmwlth. No. 260 M.D. 2018, filed July 15, 2019), slip op. at 11*. "[T]he party challenging a [] fee on the ground that it constitutes an unlawful tax bears the initial burden of establishing that the fees were not in fact used to reimburse the municipality for . . . providing a service." *Rizzo, 668 A.2d at 237*.

Here, there is no record evidence that the Authority's collected fees, which are based to a large extent upon the costs of providing the service, are unrelated to stormwater. Nor did Appellants establish that the Authority does not provide a discrete benefit to Appellants or that the value of the Authority to Appellants is not reasonably proportional to the amount of the fees. Accordingly, Appellants have failed to meet their burden of proving that the Authority's fees are, in actuality, revenue-raising taxes rather than valid fees. Thus, this Court concludes that the trial court did not err by determining that the Authority's assessed fee was not an impermissible tax.

Finally, Appellants argue that the trial court erred or abused its discretion by basing its determination solely on the finding that the Authority did not violate the MAA, and that the trial court erred or abused its discretion by failing **[*23]** to enter any findings of fact or conclusions of law regarding the additional issues of law and fact on which Appellants' case was predicated. *Pennsylvania Rule of Civil Procedure 1038(b)* provides: "The decision of the trial judge may consist only of general findings as to all parties but **shall dispose of all claims for relief**. The trial judge **may include** as part of the decision

EXHIBIT 3

Appeal of Best Homes DDJ, LLC, 2021 Pa. Commw. Unpub. LEXIS 667

**specific findings of fact and conclusions of law** with appropriate discussion." *Pa.R.Civ.P. 1038(b)* (emphasis added). In addition, "[u]ltimately, the grant or denial of a permanent injunction will turn on whether the [trial] court properly found that the party seeking the injunction established a clear right to relief as a matter of law." *Buffalo Twp. v. Jones, 571 Pa. 637, 813 A.2d 659, 664 n.4 (Pa. 2002)*. Here, the trial court concluded that Appellants did not establish a clear right to relief because they failed to meet their burden of proving the allegations set forth in their First Amended Complaint. Given that the trial court clearly explained the reasons for its conclusion in its *Rule 1925(a)* Opinion, there was no reason for the trial court to enter any findings of fact or conclusions of law regarding the additional issues.

For all of the above reasons, the trial court's order is affirmed.

ANNE E. COVEY, Judge

Judge Fizzano Cannon did not participate **[*24]** in the decision in this case.

ORDER

AND NOW, this 23rd day of December, 2021, the Delaware County Common Pleas Court's December 13, 2019 and February 5, 2020 orders are affirmed.

ANNE E. COVEY, Judge

**End of Document**

EXHIBIT 3