IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | Chapter 9 |
| CITY OF CHESTER, PENNSYLVANIA, | Case No. 22-13032 |
| Debtor. | Judge Ashely M. Chan |

**REPLY OF CITY OF CHESTER TO OBJECTION OF THE STORMWATER AUTHORITY OF THE CITY OF CHESTER TO MOTION TO PRODUCE DOCUMENTS PURSUANT TO BANKRUPTCY RULE 2004**

The City of Chester ("Chester" or the "City"), as the debtor in the above-captioned chapter 9 case, submits this reply (the "Reply") to the answer and memorandum of law (together, the "Objection") filed by the Stormwater Authority of the City of Chester ("SAC") in opposition to the City's motion seeking production of documents from SAC pursuant to Rule 2004 (the "Motion"),[1] and in support hereof, respectfully represents as follows:

### I. Preliminary Statement

SAC has presented this Court with a thirty-page Objection to the Motion that either confirms or fails to address disturbing facts alleged by the City in its Motion, identifies red herring legal issues around jurisdiction, and attempts to obfuscate the burden of proof required of a routine 2004 request. The strategy and tone of the Objection bring to mind the Elected Officials' objections to the City's eligibility to file bankruptcy[2] and other core bankruptcy motions in a blatant effort to challenge the Receiver's authority and ability to take legitimate steps to address

---

[1] Capitalized terms used but not otherwise defined in this Reply shall have the meaning given to them in the Motion.

[2] The appeal of the City's eligibility as a chapter 9 debtor brought by certain Elected Officials was recently dismissed *with prejudice* on April 30, 2024. *See* Stipulation to Dismiss Appeal, *Kirkland, et al. v. City of Chester, Pennsylvania*, Docket No. 12, Case No. 2:23-cv-01196-MRP (E.D. Pa. 2024).

the City's myriad problems.³ What is most disconcerting in the instant situation is that SAC attempts to prevent the turnover of information relevant to the payment of significant compensation to which SAC board members may not be entitled.

Through its Motion, the City seeks financial records and other information that may impact its *plan of adjustment* to be filed in this chapter 9 bankruptcy case, not the Recovery Plans that have already been approved by the Commonwealth Court. While the Receiver was appointed under and the Recovery Plans were approved pursuant to Act 47, this Court has the exclusive authority to consider and approve a plan of adjustment and all other rights and remedies conferred pursuant to Section 901 of the Bankruptcy Code. Contrary to the assertions of SAC, the Commonwealth Court does not become the exclusive arbiter of issues over which it may have jurisdiction under Act 47. Act 47 itself acknowledges the supremacy of the bankruptcy plan of adjustment. Even if Act 47 was not clear on its face, bankruptcy courts in chapter 9 cases hold that once a state has authorized a chapter 9 filing, the state cannot limit the scope of federal bankruptcy powers.

## II.  Argument

**A.  Neither Act 47 Nor the Commonwealth Court Can Deprive the Bankruptcy Court of its Jurisdiction or Authority under Chapter 9 of the Bankruptcy Code.**

1. In its Objection, SAC stridently argues that the means for obtaining financial records from SAC are limited to either Pennsylvania's Right-to-Know law or consideration by the

---

³ Similarities drawn between the Elected Officials and SAC should not come as a surprise as every purported current SAC board member was appointed by the previous Mayor and City Council, some on the eve of their last days in office. Indeed, of the purported nine SAC board members—two are current City Council members, one is a former City Council member who lost reelection last year, and one is the City's elected Controller.

2

Commonwealth Court in conjunction with the City's Recovery Plans. Based on applicable state statutes and the Bankruptcy Code, this premise is patently false.[4]

2. Section 706(a)(9) of Pennsylvania's Act 47 states:

> Notwithstanding any other provision of law, the receiver shall have the following powers and duties…To file a municipal debt adjustment action under the Bankruptcy Code (11 U.S.C. § 101 *et seq*.) and to act on the municipality's behalf in the proceeding. The power under this paragraph shall only be exercised upon the written authorization of the secretary. ***The filing of a municipal debt adjustment action under this paragraph and any plan of the receiver accepted by the Federal court shall be considered a modification of the recovery plan, except that the modification shall not be subject to judicial review under section 709. A recovery plan submitted to and approved by the Federal court under a Federal municipal debt adjustment action may include Federal remedies not otherwise available under this chapter.***

53 P.S. § 11701.706(a)(9)(emphasis added).

3. As such, in accordance with Pennsylvania law, both the commencement of this chapter 9 case and the primary purpose of this bankruptcy, to promulgate and confirm a viable Plan of adjustment for the City, take clear precedence over the Recovery Plans—so much so that the confirmed bankruptcy plan will be deemed a modification of the Commonwealth Court's Recovery Plans. Moreover, per the Pennsylvania statute, the Commonwealth Court will have absolutely no jurisdiction over or ability to review a confirmed plan of adjustment. Thus, by its own provisions, Act 47 recognizes the supremacy of federal bankruptcy laws and the powers conferred upon the Bankruptcy Court in furtherance of confirmation of a plan of adjustment.

---

[4] In the Objection, SAC makes a claim that neither the Initial Production nor the Supplemental Production were made in response to Rule 2004, despite the fact that the correspondence from bankruptcy counsel for the City clearly states that the documents are needed in order to "formulate a viable plan of adjustment" for the City. *See* Exhibit E to the Motion. The fact that the Initial Request does not refer to Rule 2004 is a distinction without a difference. Parties need only rely on Rule 2004 after they confer and cannot agree on production of documents or other discovery. *See* Local Rule 2004-1 and Exhibit H to the Motion in which counsel to the City actually references Rule 2004. Arguably, by producing responsive documents to bankruptcy counsel on two occasions, SAC has now waived any argument that the City cannot obtain documents without first going to the Commonwealth Court. (Bankruptcy counsel does not represent the City in the receivership proceedings before the Commonwealth Court.)

3

4.  SAC's argument that the Commonwealth Court has carved out or retains exclusive jurisdiction over every initiative proposed under the Recovery Plans is both factually and legally incorrect. As explained in the City's Motion, prior to the evidentiary hearing on the Second Amended Recovery Plan, the Commonwealth Court severed initiatives relating to SAC for separate consideration and the parties stipulated to remove references to SAC in the initiatives set forth in the Approved Plan Modifications.[5] No one, including the Commonwealth Court, agreed that the Commonwealth Court retained jurisdiction over issues related to SAC *to the exclusion of* the Bankruptcy Court. Moreover, in light of Section 706(a)(9) of Act 47, no one, including the Commonwealth Court, has the ability or the authority to deprive the Bankruptcy Court of the jurisdiction conferred upon it by the Bankruptcy Code.[6]  53 P.S. § 11701.706(a)(9); s*ee also Mesabi Metallics Co., LLC v. B. Riley FBR, Inc. (In re Essar Steel Minn., LLC)*, 47 F.4th 193, 197-98 (3d Cir. 2022) (discussing bankruptcy jurisdiction, and explaining "The aim of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, is to sort out, as much as possible, a debtor's financial affairs in one place. That place is a bankruptcy court.") (citations omitted).

5.  Act 47 also makes it clear that the plan of adjustment may incorporate remedies not otherwise allowed under applicable state law. The same must be true of the Bankruptcy Court's

---

[5] SAC makes much of the fact that the City argued (and this Court agreed) that Section 362 did not operate as a stay of the Receiver's efforts to obtain approval of the Second Amended Plan in Commonwealth Court. This Court may recall that the Commonwealth Court proceeding focused on the Elected Officials concerted efforts to impede the implementation of prior court-approved Recovery Plans. Indeed, the Receiver agreed not to pursue SAC related initiatives at that time in order to focus on the dysfunction in the day-to-day operations of the City (many of which have been addressed or continue to be addressed). This Court should not draw any conclusions from the decision of the Commonwealth Court to exclude the SAC initiatives from the evidentiary hearing other than the fact that the Commonwealth Court has not yet heard or considered any substantive argument relative to SAC and the City.

[6] SAC's argument that the Attorney General of the Commonwealth maintains exclusive jurisdiction to examine its books and records is untrue and the statutory authority cited by SAC for its proposition proves the point. Section 5612(c) of the MAA merely grants the Attorney General the right to review, but does not suggest any exclusivity. Clearly, and as SAC even notes later in its Objection, the City has separate rights to receive and review financial reports, but that right does not limit the City's rights to receive only those financial reports or request and receive other information.

ability to utilize supporting provisions of the Bankruptcy Code and Bankruptcy Rules, like Rule 2004, in furtherance of the ultimate goal of confirming a plan of adjustment. It defies logic to assume that the Pennsylvania distressed municipality statute would acknowledge the supremacy of the bankruptcy plan of adjustment and then engage in an effort to strip the Bankruptcy Court of the tools available under the Bankruptcy Code to get to a confirmed plan. Until a plan can be proposed and confirmed in this bankruptcy case, it is in the best interests of the estate, the residents of the City and ratepayers to preserve the City's property interests. The financial records and governance documents sought in the Motion will assist the City in determining whether the value of SAC (and its assets) is eroding.

6. SAC also argues that the City is utilizing the 2004 Motion for an improper purpose and is seeking this Court's decision on whether the City has the ability to dissolve the authority and recover its assets. To be clear, it is the City's position that it has the statutory authority to dissolve SAC, recover and ultimately sell SAC and/or its assets, however, the City is not seeking such relief at this time.[7] The Motion cites to the relevant provisions of the MAA and Act 47 to provide evidence of the City's continuing interests in SAC which property interests constitute a legitimate basis for the discovery requested under Rule 2004. When the plan of adjustment or

---

[7] SAC's repeated citation to Section 5622(d) of the MAA presents a red herring argument that is intended to distract and detract from the longstanding principle that the incorporating municipality may dissolve and recoup the assets of an authority. While subsection (d) requires municipalities to address the debt obligations of an authority, it lives in harmony with subsection (a) which allows the municipality to acquire the assets of the authority at its own election so long as it satisfies or assumes the debt obligation:

> If a project established under this chapter by a board appointed by a municipality is of a character which the municipality has power to establish, maintain or operate and the municipality desires to acquire the project, it may by appropriate resolution or ordinance adopted by the proper authorities signify its desire to do so, ***and the authorities shall*** convey by appropriate instrument the project to the municipality upon the assumption by the municipality of all the obligations incurred by the authorities with respect to that project.

53 Pa. C.S. § 5622(a)(emphasis added).

5

some future motion proposed by the City requests a dissolution and/or sale of SAC, this Court will have jurisdiction and the ability decide the issue at that time.

    B.    **In the Context of Chapter 9, Bankruptcy Courts Hold that Bankruptcy Principles Take Precedence.**

    7.    In the context of chapter 9, federal law gives deference to states in deciding whether their municipalities have the legal authority to avail themselves of the protections of the Bankruptcy Code. However, once a chapter 9 case is commenced, neither the state nor any other party can argue that the debtor may only avail itself of certain provisions of the Bankruptcy Code or claim that certain state laws should take precedence or have priority over those provisions of the Bankruptcy Code made applicable to chapter 9 pursuant to Section 901.[8] As set forth more fully above, SAC cannot argue that exclusive jurisdiction lies with the Commonwealth Court to consider a discovery issue, nor is the City limited to the use of Pennsylvania's Right-to-Know law.

    8.    While chapter 9 cases may be rare, especially in the Commonwealth of Pennsylvania, the leading municipal cases have denied attempts by state governmental authorities and other creditors or parties in interest to limit or restrict bankruptcy court powers or the applicable provisions of the Bankruptcy Code.

    9.    *See In re City of Detroit*, 504 B.R. 191, 255 (Bankr. E.D. Mich. 2013) (determining the eligibility of the City of Detroit as a chapter 9 debtor and explaining, "It follows that if a state consents to a municipal bankruptcy, no state law can protect contractual pension rights from impairment in bankruptcy, just as no law could protect any other types of contract rights. . . . Stated another way, state law cannot reorder the distributional priorities of the bankruptcy code. If the

---

[8] Chapter 1 of the Bankruptcy Code also applies in chapter 9, including the abrogation of sovereign immunity provisions enumerated in Section 106 of the Bankruptcy Code. *See* 11 U.S.C. § 103(f). In addition, the Bankruptcy Rules apply in all cases under title 11. *See* Rule 1001.

state consents to a municipal bankruptcy, it consents to the application of chapter 9 of the bankruptcy code."); *see also*, *Assoc. of Retired Emples. v. City of Stockton (In re City of Stockton)*, 478 B.R. 8, 17 (Bankr. E.D. Cal. 2012) ("While a state may control prerequisites for consenting to permit one of its municipalities (which is an arm of the state cloaked in the state's sovereignty) to file a chapter 9 case, it cannot revise chapter 9."); *In re City of Vallejo*, 403 B.R. 72, 76 (Bankr. E.D. Cal. 2009) ("Section 903, together with 11 U.S.C. § 109(c)(2), allows states to act as gatekeepers to their municipalities' access to relief under the Bankruptcy Code. When a state authorizes its municipalities to file a chapter 9 petition it declares that the benefits of chapter 9 are more important than state control over its municipalities."); *County of Orange v. Merrill Lynch & Co. (In re County of Orange)*, 191 B.R. 1005, 1021 (Bankr. C.D. Cal. 1996) ("By authorizing the use of chapter 9 by its municipalities, California must accept chapter 9 in its totality; it cannot cherry pick what it likes while disregarding the rest. The right to discharge is not a benefit without burdens.").

10.   The guiding principles espoused in the foregoing cases, *Detroit*, *Stockton*, *Vallejo* and *Orange County*, together represent the lodestar for cases filed under chapter 9. Based on the above-referenced holdings, once the Commonwealth authorized the City's chapter 9 filing, all provisions of chapter 9 apply. Whether the Commonwealth Court maintains concurrent jurisdiction under Act 47 with regard to the Recovery Plans is of no moment because the Bankruptcy Court has the exclusive authority to preside over the chapter 9 case and determine the rights and remedies applicable under Section 901 of the Bankruptcy Code. One such remedy arises under Rule 2004 which will further the City's efforts to achieve the central goal of this case—confirmation of a plan of adjustment. Pennsylvania's Right-to-Know law is no longer the

7

exclusive method to obtain records from public authorities like SAC.[9] Again, the more efficient mechanism for the City to obtain these public records, records that correlate to or otherwise impact the property interests of the City, is Rule 2004.

    **C.    Ongoing Investigations into the Formation, Governance and Management of SAC Continue to Uncover Issues of Concern.**

    11.    As of the filing of the Motion, known facts gave rise to legitimate concerns about the financial condition, operation, management and governance of SAC including: (i) the significant rate increase implemented by SAC in October 2023 at amounts that were nearly double the original rates charged and whether such rate increases were properly authorized under the MAA;[10] (ii) SAC's disclosure in its board minutes of the existence of an insider loan from SAC's Executive Manager and his church to allow SAC to make payroll in contravention of the MAA's restrictions on borrowings by municipal authorities; and (iii) the continued service of two (2) Chester City Council members as compensated members of the SAC board in violation of the City's charter. Since the filing of the Motion, however, investigations into additional facts and circumstances surrounding SAC have lead the Mayor and the Receiver to identify issues of even greater concern.

    12.    On October 18, 2016, the City filed with the Commonwealth of Pennsylvania the SAC Articles of Incorporation (the "<u>Articles</u>") expressly stating that the entity was formed under

---

[9] Ironically, the fact that the information is considered public did not dissuade SAC from objecting to the Motion and refusing to turn over records to the municipality that authorized its formation and continues to maintain certain powers and control over the authority under the MAA. In the City's experience, local public authorities can and do resist the turnover of public records that should be available to all with the intended effect of depriving requestors of the documents or information that they seek. Time is of the essence in all bankruptcy cases, and especially in this matter, where the City faces (along with all other state, county, and local governments) a December 31, 2024 deadline on its ability to utilize federal dollars appropriated under the American Rescue Plan Act (ARPA).

[10] SAC's reliance on the unpublished decision from December 23, 2021 that is attached as Exhibit 3 to the Objection remains suspect since it clearly predates the rate increase at issue that became effective in October 2022.

the provisions of the MAA. The Articles authorize five (5) board members. Pursuant to the MAA, only the incorporating municipality, in this case the City, may determine the compensation (if any) for the authority's board of directors. *See* MAA section 5610(d). Based on the admissions of Dr. Strand, SAC board members are currently paid between $24,000 (for the chair) and $12,000 annually to serve.[11]

13. At the request of both the Mayor and the Receiver, the City's solicitor was asked to retrieve any ordinance, resolution or other act of City Council authorizing compensation to SAC board members. To date, the solicitor has been unable to find such authorization. Moreover, on information and belief, SAC has as many as nine (9) members that currently serve on its board which is not only in direct violation of its Articles, but would increase the annual aggregate compensation paid to board members to at least $108,000. This figure is astounding for a single municipal authority formed by a City with 35,000 residents that significantly increased its stormwater rates and was so financially strapped last year that it was unable to meet payroll.

14. Upon learning the foregoing, the City concluded that it needed to expand its request for the production of documents and information under the Motion (the "Expanded 2004 Request," and together with the March and April Requests and the Second 2004 Request, the "SAC 2004 Requests"). *See* correspondence from bankruptcy counsel from the City to SAC's solicitor dated May 20, 2024 attached hereto as **Exhibit B.** The response received from the office of SAC's solicitor was that bankruptcy counsel would be "entering their appearance on behalf of the Storm Water Authority and will have their answer filed shortly." *See* electronic mail also included in **Exhibit B.**

---

[11] *See* Anthony Wood, *8 years of payments to bankrupt Chester's 'rain tax' board members may have been illegal, receiver says,* Philadelphia Inquirer, (May 28, 2024), https://www.inquirer.com/news/chester-rain-tax-stormwater-authority-bankruptcy-20240528.html?query=chester, attached here as **Exhibit A.**

9

15. The discovery of these additional issues highlight the need for the City to obtain the documents and information and ensure that the value of its interests in SAC will not be negatively impacted. Moreover, any unauthorized payments made by SAC to its board members may constitute avoidable transfers that are recoverable pursuant to applicable provisions of chapter 5 of the Bankruptcy Code on behalf of the bankruptcy estate, including SAC ratepayers and the residents of the City.

### III.     Conclusion

16. Simply put, the City has met the standard of proof under Rule 2004 and Local Rule 2004-1 with regard to its entitlement to discovery from SAC based on: (a) the City's continuing property interest in SAC and its assets based on the provisions of the MAA, Act 47 and applicable Pennsylvania case law; (b) issues of concern around the operation, management and governance of SAC that could have a material impact on the value of the City's property interests; and (c) the need to investigate and value potential claims and causes of action constituting assets of the bankruptcy estate that should be addressed in a plan of adjustment.

17. Contrary to SAC's assertions, the City's Motion is not only a legitimate use of Rule 2004, but its prosecution is required here because of the dubious actions and discomforting circumstances surrounding SAC and its board. The City is compelled by its fiduciary duty as a chapter 9 debtor to investigate these matters and their potential impact on the estate in connection with its promulgation and presentment of a plan of adjustment.

WHEREFORE, the City respectfully requests the entry of a revised form of order substantially in the form attached hereto as **Exhibit C**, (i) compelling SAC to provide documents responsive to the City's Requests within seven (7) days of the entry of the order; (ii) directing that any representative of SAC identified by the City for deposition appear within seven (7) days of receipt of any notice of deposition at a mutually agreed time and place included in such notice; and (iii) granting such other and further relief the Court may deem just and proper.

Dated: June 3, 2024                                Respectfully submitted,

*/s/ Tobey M. Daluz*
Tobey M. Daluz (PA Bar No. 60685)
Margaret A. Vesper (PA Bar No. 329793)
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Tel: (215) 864-8148
Email: daluzt@ballardspahr.com
          vesperm@ballardspahr.com

-and-

Matthew G. Summers*
Laurel D. Roglen*
Nicholas J. Brannick*
Ballard Spahr LLP
919 N. Market Street, 11th Floor
Wilmington, DE 19801
Tel: (302) 252-4465
Email: summersm@ballardspahr.com
          roglenl@ballardspahr.com
          brannickn@ballardspahr.com

(*Admitted *pro hac vice*)

*Attorneys for the City of Chester*