**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: | : | Chapter 9 |
| | : | |
| CITY OF CHESTER, PENNSYLVANIA | : | Case No. 22-13032 |
| | : | |
| Debtor | : | |
| | : | |

**OBJECTIONS OF STORMWATER AUTHORITY OF THE CITY OF CHESTER TO THE CITY OF CHESTER'S NOTICES OF SUBPOENA TO DEPOSE EXECUTIVE MANAGER DOCTOR HORACE STRAND AND CHAIRPERSON LIVIA SMITH, AND REQEUST THAT THE COURT QUASH THE SUBPOENAS**

I.   **PRELIMINARY STATEMENT OF RELEVANT FACTS**

The Stormwater Authority of the City of Chester herein objects to the Notices of Subpoena of the City of Chester for the depositions of its Executive Manager Dr. Horace Strand and Chairperson Livia Smith. The Stormwater Authority of the City of Chester ("SAC") is a municipal authority created under Pennsylvania's Municipality Authorities Act, pursuant to 53 Pa.C.S. §§ 5601 *et seq.,* and specifically § 5603(a).[1] The City of Chester organized the SAC pursuant to the requirements of the Municipality Authorities Act, and specifically by way of an

---

[1] The statue provides: "***Resolution of intent.*** — Whenever the municipal authorities of any municipality singly or of two or more municipalities jointly desire to organize an authority under this chapter, they shall adopt a resolution or <u>ordinance</u> signifying their intention to do so. No such resolution or ordinance shall be adopted until after a public hearing has been held, the notice of which shall be given at least 30 days before the hearing and in the same manner as provided in subsection (b) for the giving of notice of the adoption of the resolution or ordinance." 53 Pa.C.S. §§ 5603(a) (emphasis added).

1

ordinance, dated October 12, 2016.  (*See* City of Chester Ordinance Number 17, 2016 attached hereto as Exhibit A.)  Having been incorporated pursuant to the Pennsylvania Municipality Authorities Act, the SAC is a corporate entity separate and distinct from the City of Chester. Pursuant to the provisions and requirements of Municipality Authorities Act (hereinafter the "Act") and the specific terms of City of Chester Ordinance No. 17, 2016, SAC was created for the purpose of, and with the power to acquire, hold, construct, finance, improve, maintain and operate projects related to stormwater planning and management within the City of Chester, and for the benefits of the citizenry.  *See* 53 Pa.C.S. § 5607 generally.

Under Pennsylvania law, the administrative powers and duties of authorities such as SAC "shall be exercised by a board," which acts wholly independently from the municipality. *See* 53 Pa.C.S. § 5610(a)(1).  Further, Section 5610(e) provides, in relevant part, that the "board shall have full authority to manage the properties and business of the authority and to prescribe, amend and repeal bylaws, rules and regulations governing the manner in which the business of the authority may be conducted and the powers granted to it may be exercised and embodied." 53 Pa.C.S. § 5610(e).

On or about July 16, 2024 the City served on SAC two Subpoenas for Depositions seeking to depose SAC Chairperson Livia Smith and Executive Manager Dr. Horace Strand.  The City proposes the depositions to take place on August 13, 2024.  (A copy of the Subpoenas are attached hereto as Exhibit B.)  Attached to and incorporated into each Subpoena is an "Exhibit 1" which proposes to outline the "topics" to be covered in the deposition.  As the Court will note, the topics are broad to the point of being unlimited as they include "all matters described, identified in or derived from" the list of pleadings and document discovery responses thereafter identified.

Petitioner, SAC, objects to the Subpoenas, and for the reasons argued and outlined below, requests that the Court quash the two Subpoenas until the City of Chester files a legally sufficient ordinance or resolution for the conveyance of SAC property and/or projects which meets the conditions outlined in 53 Pa.C.S. § 5622.  If no resolution or conveyance is filed (and successfully meets the conditions of § 5622), respectfully, no present asset, property or project of SAC could be considered by this Court as property of the City of Chester, let alone property of the bankruptcy estate.

SAC is neither an affiliate or entity controlled by the City.  Further, SAC is not a creditor of the City.  Without such a relationship to the City so as to be part of the bankruptcy estate, the depositions of Dr. Strand and Ms. Smith could serve no purpose other than political harassment.  Their testimony would be for naught with regard to the resolution of the bankruptcy matter.  Further, the Municipality Authorities Act does not provide for the deposition of authority board members (or for any person) prior to the conveyance of property pursuant to 53 Pa.C.S. § 5622 or as part of any pre-ordinance/pre-resolution inquiry in support of the conveyance of an authority's property.

## II.     LEGAL ARGUMENTS

### A. Stormwater Authority of the City of Chester Is An Entity Separate From The City of Chester; and, the Authority's Property is Not the Property of The City of Chester or the Bankruptcy Estate

As outlined in the Statement of Relevant Facts above, SAC is an independent entity that exists separate and apart from the City of Chester.  As a separate corporate entity created by way of the 2016 City of Chester Ordinance attached as Exhibit A, SAC can purchase and own its own property.  *See e.g.,* 53 Pa.C.S. § 5607(b)(3)(d)(4) and (5).  Also, SAC has sole authority to invest its own funds, within the fiduciary obligations outlined in 53 Pa.C.S. § 5611.  Further, pursuant

3

to 53 Pa.C.S. § 5612, the actual use of SAC's property is restricted.  Section 5612, titled "**Money of Authority**", specifically provides and proscribes, in relevant part, as follows (and which includes a provision whereby any customer/rates-payer of SAC could sue for violations of Section a.1(1)).

>   **(a)** *Treasurer.* — The treasurer of an authority, or other designated recipient, shall receive the money due the authority and deposit the money in an account with a designated depository. The money shall be remitted in the name of the authority or designated recipient and may not include the name of an individual.
>
>   **(a.1)** *Prohibition.*
>   **(1)** <u>Money of the authority may not be used for any grant, loan or other expenditure for any purpose other than a service or project directly related to the mission or purpose of the authority as set forth in the articles of incorporation or in the resolution or ordinance establishing the authority under section 5603</u> (relating to method of incorporation).
>   **(2)** <u>A ratepayer to an authority shall have a cause of action in the court of common pleas where the authority is located to seek the return of money expended in violation of paragraph (1) from the recipient</u>.
>   **(3)** Paragraph (1) shall not apply to the following:
>   **(i)** A monetary contribution to a nonprofit community organization or activity that does not exceed $ 1,000.
>   **(ii)** An in-kind service, including the provision of water or other resources to a nonprofit community organization or activity, the value of which does not exceed $ 1,000.
>   **(iii)** An agreement for the joint purchase and use of equipment.
>   **(iv)** An agreement for the sharing of equipment during emergency situations.

53 Pa.C.S. § 5612 (emphasis added).

      The present circumstance is that the City of Chester has made no move to dissolve SAC or otherwise legally demand the conveyance of SAC's projects, property or assets to the City. Under present circumstances, and as long as SAC exists and its projects and assets are not conveyed to the City, SAC's monies cannot be used to pay off the City of Chester's creditors or otherwise made part of the bankruptcy estate without simultaneously violating 53 Pa.C.S. § 5612.  Further, violation of § 5612 by placing SAC funds in the City of Chester's bankruptcy

estate before a legal conveyance by way of resolution or ordinance would elevate all rate payers/customers to the status of possible creditors under § 5612(a.1)(2) because the statute negates any sovereign immunity SAC (or the City of Chester) might have with regard to the City "taking" the monies for purposes in violation of § 5612.

By way of further argument, even placing the monies in a bankruptcy matter *after* an allegedly legal conveyance would violate § 5612(a.1)(2). Section 5612 does not state that the obligations to put the monies aside for their original purpose ends at a conveyance. Further, while the Pennsylvania Superior Court in *In re Chester Water Authority,* 263 A.3 389 (Pa.Cmmwlth. 2021) did not address what satisfies the requirements of Section § 5622 of the Municipality Authorities Act (regarding a legally sufficient conveyance via resolution/ordinance), nonetheless, the Court did opine that legal sufficiency of the conveyance must be satisfied. *Id.* at 705-706. If the resolution/ordinance conveying property violates § 5612(a.1)(2) by failing to secure the relevant assets in separate accounts, and for the original purposes, the Section 5622 conveyance itself would not be legal or binding.

> B. **The City of Chester Has Not Engaged In Any Section 5622 Effort To Convey SAC's Assets and Projects to the City By Way of Resolution or Ordinance; And, The City of Chester Has Not Yet Consented to Taking on SAC's Debts, All Prerequisite To The City of Chester Possibly Having Any Claim of Ownership Of or Legal Interest In SAC's Property.**

The City of Chester could only secure the assets and property of SAC if it meets the requirements of 53 Pa.C.S. § 5622. The threshold conduct is that the City must demand conveyance of SAC's assets and/or projects by way of an ordinance or resolution. Thereafter, the City must also satisfy the other conditions of § 5622. Section 5622 provides, in relevant part, as follows:

> **(a) *Project.*** — If a project established under this chapter by a board appointed by a municipality is of a character which the municipality has power to establish,

5

maintain or operate and the municipality desires to acquire the project, it <u>may by appropriate resolution or ordinance</u> adopted by the proper authorities signify its desire to do so, and the authorities shall convey by appropriate instrument the project to the municipality <u>upon the assumption by the municipality</u> of all the <u>obligations incurred by the authorities</u> with respect to that project. . . .

**(d)** *Reserves.* — Following transfer of a project pursuant to this section, the municipality, including an incorporated town or home rule municipality, which has acquired the project <u>shall retain the reserves received from the authority</u> which have been derived from operations <u>in a separate fund</u>, and the reserves shall <u>only be used for the purposes</u> of operating, maintaining, repairing, improving and extending the project. Money received from the authority which represents the proceeds of financing <u>shall</u> be retained by the municipality in a <u>separate fund</u> which shall <u>only be used for</u> improving or extending the project or other capital purposes related to it.

53 Pa.C.S. § 5622 (emphasis added).

The City of Chester has not enacted any ordinance or resolution demanding that SAC convey any asset or project to the City. Were it to enact any such ordinance or resolution, it would also have to assume all of the obligations (and possible legal liabilities) of SAC. Any and all reserves would have to be placed in a separate account, and any monies used only for "operating, maintaining, repairing, improving and extending" any conveyed project. Likewise, it bears repeating that any monies representing proceeds of financing "shall" (not may) "be retained by the municipality in a separate fund", and which could only be used for the given project.

C. **Even If, At Some Future Date, The City Successfully Conveys Property of the Authority to The City, It Was Not The Property of the City At the Time It Filed the Instant Bankruptcy Claim, And any City Property Cannot Be Included In the Bankruptcy Estate of the City**

Section 541(a)(1) of the Bankruptcy Code defines "property of the estate" to include "all legal or equitable interests of the debtor <u>in property as of the commencement of the case</u>." *Westmoreland Human Opportunities, Inc. v. Walsh*, 246 F.3d 233, 241 (3d Cir. 2001) quoting 11 U.SC. Section 541(a)(1) of the Bankruptcy Code (emphasis added). As outlined herein

6

throughout, the City has never filed any resolution or ordinance to even attempt the conveyance of SAC property to the City. At this time the property of SAC is not the property of the City. Therefore, SAC's property was not the City's property "as of the commencement of the case". By definition, SAC's property is not, and cannot be property of the City's bankruptcy estate.

By way of further argument, even if the City could successfully convey SAC's property to itself post-petition and have it considered property of the bankruptcy estate, the City of Chester would also have to assume all of the debts and liabilities of SAC. 53 Pa.C.S. § 5622(a). As argued (and quoted above), a successful conveyance under Section 5622(a) would also require the City of Chester to first (as an *a priori* event) assume "all the obligations incurred by the authorities with respect to that project." *Id.* That is to say, before SAC property could be conveyed to the City, the City of Chester would have to assume all of the debts and other obligations associated with all the projects and assets and property it takes. Respectfully, the feasibility of such an endeavor would have to be considered by this Court.

### D. **It Is Appropriate To Quash The Subpoenas Until The City Successfully Meets The Requirements of Section 5622.**

The City's political reasons for not yet (if ever) filing any ordinance or resolution are irrelevant to the Court's instant consideration of SAC's objections to the two Subpoenas, and its request that the Court quash the subpoenas until the City files a relevant resolution or ordinance. However, the failure or refusal to file a resolution or ordinance regarding and outlining the assets/projects the City wishes conveyed to it is relevant. Until and unless the City successfully files a resolution or conveyance, and assets/property actually are conveyed to the City (possibly after consideration and resolution of the matter by the Pennsylvania Courts), any testimony by Board members or officers of SAC is irrelevant to the consideration and resolution of the instant bankruptcy matter. If the purpose is not the consideration or resolution of the instant bankruptcy

7

matter the depositions are a waste of the resources of this Court, the parties to the bankruptcy matter and certainly SAC and the proposed witnesses.

Movant has produced documents by agreement and is willing to work with the City regarding questions it may have regarding those documents. Alternatives include written interrogatories or an informal meeting with the relevant parties. If the purposes of the depositions are truly to clarify and support the document production already completed, then these alternatives should be deemed sufficient.

### III.   CONCLUSION

The proposed depositions are, at best, premature; at worst they represent harassment of the proposed witnesses, for political purposes of the City of Chester. Until and unless property is successfully conveyed to the City of Chester by way of an ordinance or resolution, SAC's property could not be part of the bankruptcy estate, or its assets otherwise considered by this Court. Further, any proposed conveyance, by any method, would be subject to the scrutiny of the Pennsylvania Courts with regard to the legality of the conveyance.

It is a waste of the resources of the Court, all parties to the bankruptcy and to all the third parties (including SAC and the proposed witnesses) for the proposed August 13, 2024 depositions to take place because any and all testimony would be irrelevant to the consideration and resolution of the bankruptcy matter.

If and when the City successfully files a legally sufficient resolution or ordinance for the conveyance of SAC projects, this Court will know the nature and extent of the SAC property subject to the bankruptcy estate, if any. At that time the Court could address the issue of whether former SAC property meets the requirements of 11 U.SC. Section 541(a)(1) of the Bankruptcy Code as property "owned by" the City at the time of the commencement of this bankruptcy

matter.  Further, at that time this Court, the parties and SAC could more properly and sufficiently consider the deposition of SAC agents and/or officers.  Likewise, SAC and its agents could better prepare for the production of testimony relevant to this Court's consideration and resolution of the bankruptcy issues and proceedings.

    WHEREFORE, Stormwater Authority of the City of Chester respectfully presents these objections and requests that the Court quash the two Subpoenas pending the City of Chester successfully filing a resolution or ordinance outlining the projects and assets and property at issue, and after the City also ensures that it has met its requirements regarding any such projects, assets or property under the Municipality Authorities Act.

Dated: July 22, 2024                   Signed: /s/ John A. Gagliardi
                                            By:    John A. Gagliardi
                                                      Wetzel Gagliardi Fetter & Lavin LLC
                                                      122 South Church Street
                                                      West Chester, PA 19382
                                                      (484) 887-0779
                                                      Fax (484) 887-8763
                                                      jgagliardi@wgflaw.com