**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: | : | |
| | : | Chapter 9 |
| CITY OF CHESTER, PENNSYLVANIA, | : | |
| | : | Case No. 22-13032-amc |
| Debtor. | : | |
| | : | Related to Dkt. No. 1013 |
| | : | |
| | : | Chief Judge Ashely M. Chan |

**SUPPLEMENT TO CHESTER WATER AUTHORITY'S MOTION TO (A) STRIKE THE PROPOSED TREATMENT OF THE CHESTER WATER AUTHORITY AND ITS ASSETS FROM THE DEBTOR'S PLAN OF ADJUSTMENT [DKT. NO. 583]; (B) VACATE THE ORDERS (1) REQUIRING THE PRODUCTION OF DOCUMENTS AND INFORMATION PURSUANT TO BANKRUPTCY RULE 2004 [DKT. NO. 688]; (2) AUTHORIZING THE USE OF SUCH DOCUMENTS AND INFORMATION IN CONNECTION WITH THE RFP PROCESS [DKT. NO. 782]; (3) PERMITTING PHYSICAL ACCESS TO THE CHESTER WATER AUTHORITY'S PROPERTY [DKT. NO. 859]; AND (4) PROHIBITING THE ISSUANCE OF RIGHT-TO-KNOW LAW REQUESTS THAT REFER OR RELATE TO THE RFP PROCESS [DKT. NOS. 692 & 713]; (C) MODIFY THE MEDIATION ORDER [DKT. NO. 139] TO RELEASE THE CHESTER WATER AUTHORITY FROM ANY MANDATORY PARTICIPATION OBLIGATION; AND (D) COMPEL THE DEBTOR TO RETURN ALL DOCUMENTS AND INFORMATION PRODUCED BY THE CHESTER WATER AUTHORITY PURSUANT TO BANKRUPTCY RULE 2004 OR IN MEDIATION**

The Chester Water Authority (the "CWA"), a non-debtor and non-creditor governmental unit of the Commonwealth of Pennsylvania, files this supplement (the "Supplement") to the *Chester Water Authority's Motion to (a) Strike the Proposed Treatment of the Chester Water Authority and Its Assets from the Debtor's Plan of Adjustment [Dkt. No. 583]; (b) Vacate the Orders (1) Requiring the Production of Documents and Information Pursuant to Bankruptcy Rule 2004 [Dkt. No. 688]; (2) Authorizing the Use of Such Documents and Information in Connection with the RFP Process [Dkt. No. 782]; (3) Permitting Physical Access to the Chester Water Authority's Property [Dkt No. 859]; and (4) Prohibiting the Issuance of Right-to-Know Law Requests That Refer or Relate to the RFP Process [Dkt. Nos. 692 & 713]; (c) Modify the Mediation Order [Dkt. No. 139] to Release the Chester Water Authority from Any Mandatory Participation*

*Obligation; and (d) Compel the Debtor to Return All Documents and Information Produced by the Chester Water Authority Pursuant to Bankruptcy Rule 2004 or in Mediation* [Dkt. No. 1013] ("the Motion"[1]) to alert the Court to certain intervening developments in District Court appeals relevant to the relief requested therein.

In support of this Supplement, the CWA represents as follows:

### I.      INTRODUCTION

The CWA requested in its Motion relief including, *inter alia*, vacatur of (a) the Production Order compelling the CWA to produce to the Debtor various documents and information pursuant to Bankruptcy Rule 2004 and (b) the Usage Order allowing the Debtor to utilize such productions in furtherance of the RFP Process described in the Plan by disseminating them to prospective third-party bidders.  As further described in the Motion, (a) on February 27, 2025, the CWA filed a motion for leave to appeal the interlocutory Production Order [Dkt. No. 722], which motion remained pending before the District Court in *Chester Water Auth. v. City of Chester, Pa.*, No. 25-cv-1115 (E.D. Pa.) (the "Production Order Appeal"), when the CWA filed its Motion; and (b) on April 25, 2025, the CWA filed a motion for leave to appeal the interlocutory Usage Order [Dkt. No. 791], which motion remained pending before the District Court in *Chester Water Auth. v. City of Chester, Pa.*, No. 25-2136 (E.D. Pa.) (the "Usage Order Appeal"), when the CWA filed its Motion.  The CWA asserted in its Motion that this Court could vacate the Production Order and the Usage Order because the District Court had not yet adjudicated either motion for leave to appeal.

One day after the CWA filed the Motion, on March 3, 2026, the District Court entered a

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Motion.

2

memorandum opinion, *In re City of Chester, Pa.*, Nos. 25-1115 and 25-2136, 2026 WL 607528 (E.D. Pa. Mar. 3, 2026) (the "Memorandum Opinion"), and order [POA Dkt. No. 33[2]; UOA Dkt. No. 33[3]] (the "Memorandum Order") granting leave to appeal in both matters and staying enforcement of the Production Order and Usage Order.  The CWA respectfully submits this Supplement to alert the Court to these intervening developments and in further support of the CWA's request for the return of documents and information produced to and/or disseminated by the Debtor.

In the Motion, the CWA additionally advised the Court that it was not therein seeking vacatur of the Status Quo Denial Order, which denied the CWA relief from the automatic stay to seek modification of a state court Status Quo Order then in effect, because the CWA's direct appeal of the Status Quo Denial Order to the District Court on October 23, 2025 [Dkt. No. 928], *Chester Water Authority v. City of Chester, Pennsylvania*, No. 25-cv-6085 (E.D. Pa.) (the "Status Quo Denial Order Appeal"), divested this Court of any jurisdiction.  The CWA further respectfully submits this Supplement to alert the Court to the District Court's entry of an order in such appeal [SQDOA Dkt. No. 18[4]] (the "Vacatur/Dismissal Order") on March 10, 2026, (a) dismissing the appeal and (b) vacating the Status Quo Denial Order.

## II.      RELEVANT FACTS

### A.      Prior Facts Incorporated

1.      The CWA incorporates the facts alleged in paragraphs 1–88 of its Motion by

---

[2] References to the District Court's docket in the Production Order Appeal are denoted herein as "POA Dkt. No. X."

[3] References to the District Court's docket in the Usage Order Appeal are denoted herein as "UOA Dkt. No. X."

[4] References to the District Court's docket in the Status Quo Denial Order Appeal are denoted herein as "SQDOA Dkt. No. X."

CLARKHILL\L5215\455064\286924486.v1-3/14/26

reference as if fully set forth herein.

**B.      Intervening District Court Developments**

     **1.      Production Order Appeal and Usage Order Appeal**

     2.      As described in the Motion, the CWA commenced the Production Order Appeal on February 27, 2025, by filing a motion for leave to appeal the interlocutory Production Order [Dkt. No. 722] with this Court for transmittal to the District Court.

     3.      On March 10, 2025, the CWA filed a motion to stay the Production Order [Dkt. No. 734] in the Chapter 9 Case pending the disposition of its appeal.  The Debtor filed an objection on March 24, 2025 [Dkt. No. 746].  On April 4, 2025, the Court denied the CWA's stay request [Dkt. No. 772].

     4.      The CWA commenced the Usage Order Appeal on April 25, 2025, by filing a motion for leave to appeal the interlocutory Usage Order [Dkt. No. 791] with this Court for transmittal to the District Court.

     5.      On July 8, 2025, the CWA filed motions to stay the Production Order in the Production Order Appeal (the "POA Stay Motion") [POA Dkt. No. 17] and the Usage Order in the Usage Order Appeal (the "UOA Stay Motion") [UOA Dkt. No. 14].

     6.      On July 29, 2025, the Debtor filed responses in opposition to the POA Stay Motion [POA Dkt. No. 29] and the UOA Stay Motion [UOA Dkt. No. 27].

     7.      On March 3, 2026—one day after the CWA filed the Motion in this Court—the District Court issued the Memorandum Opinion and entered the accompanying Memorandum Order in the Production Order Appeal and the Usage Order Appeal.  A true and correct copy of the Memorandum Opinion is attached hereto as **Exhibit A**.  A true and correct copy of the Memorandum Order is attached hereto as **Exhibit B**.

8. Pursuant to the Memorandum Order, the District Court granted leave to appeal both the Production Order and the Usage Order. Mem. Order ¶ 1. It also granted the POA Stay Motion and the UOA Stay Motion as follows:

> Pending resolution of these appeals (or further order of this [District] Court), the challenged Bankruptcy Court orders are STAYED to the extent they:
>
> i) require [the CWA] to submit to examination under Bankruptcy Rule 2004 **and/or to produce documents or other materials pursuant to such examination**; and/or
>
> ii) authorize disclosure, dissemination, or use (including third-party disclosure or use) of materials produced through the [Bankruptcy] Rule 2004 process **outside the confines of the bankruptcy proceeding.**

*Id.* ¶ 2 (emphasis added).

9. In the Memorandum Opinion, the District Court observed:

> Although interlocutory review is disfavored, these appeals present **disputed and potentially controlling legal questions at the intersection of Chapter 9, federalism, and state-law governance of public assets.** Applying the standards governing stays pending appeal, the Court further concludes that preserving the status quo pending expedited review is warranted, **particularly because the consequences of compelled examination and third-party dissemination may be difficult to unwind if the appeals ultimately succeed.**

*Chester*, 2026 WL 607528, at *1 (emphasis added).

### 1. Leave to appeal.

10. The District Court explained that "Chapter 9 is structurally distinct from the rest of the Bankruptcy Code. Unlike Chapters 7 and 11—where federal courts exercise broad supervisory authority over a debtor's assets and operations—Chapter 9 was crafted **to avoid federal judicial control over municipal governance.**" *Id.* at *2 (emphasis added). As the District Court recognized:

5

Congress 'tailored' municipal bankruptcy legislation to preserve states' reserved powers. The Supreme Court upheld the constitutionality of municipal bankruptcy legislation **on the understanding that it did not authorize federal interference with a municipality's political or governmental powers.** That structural limitation is reflected in the statute itself. Courts therefore consistently describe Chapter 9 as **uniquely constrained by federalism principles.**

*Id.* (emphasis added and internal citations omitted).

11.    Accordingly, the District Court explained that "[t]hose structural features do not eliminate the availability of ordinary bankruptcy procedures, but they frame the context in which such procedures operate when deployed in a municipal case—*particularly where the exercise of federal bankruptcy power intersects with state-law questions concerning governance, ownership, or control of public assets.*" *Id.* (emphasis added).

12.    In granting leave to appeal both the Production Order and the Usage Order, the District Court explained that "[a]lthough discovery-related interlocutory appeals are generally disfavored, *these cases are not ordinary bankruptcy discovery disputes.* They arise in a Chapter 9 municipal bankruptcy, in which *Congress structured bankruptcy relief to respect state sovereignty and avoid federal court interference with municipal governance.*" *Id.* at *4 (emphasis added).

13.    The District Court determined that the appeal of the Production Order presented controlling questions of law as follows:

> If Chapter 9 imposes a jurisdictional or structural limitation on the Bankruptcy Court's authority or requires heightened constraints before compelling discovery from another governmental entity, then the Rule 2004 Order *cannot stand as issued.* Likewise, if the [Debtor] lacks a cognizable property interest under applicable state law sufficient to justify the scope of inquiry authorized, the order would *require reversal or significant narrowing.* In either scenario, the legal determination would *materially alter the permissible scope of discovery* and, by extension, the course of the [Debtor's] plan-

6

related strategy.

*Id.* at *4 (emphasis added).

14.     The District Court determined that the appeal of the Usage Order similarly presented a controlling question of "whether, and under what legal constraints, the Bankruptcy Court may authorize third-party disclosure and use of materials obtained through [Bankruptcy] Rule 2004 in furtherance of an RFP process that is central to the [Debtor's] proposed Chapter 9 plan," explaining that "[i]f the court lacks authority to permit such dissemination, or if Chapter 9's structural protections require heightened limits on the use of compelled materials, *the [Usage] Order cannot stand as entered.*"  *Id.* (emphasis added).

15.     The District Court observed that "[t]he relative absence of Chapter 9 specific precedent reflects the rarity of such cases *rather than the insignificance of the structural federalism concerns they may present*," determining that the issues on appeal "present a threshold question about the scope of the Bankruptcy Court's authority in a Chapter 9 case—specifically, whether the court may compel discovery from, and authorize dissemination of materials belonging to, a separate governmental entity *in furtherance of a restructuring strategy that depends on unresolved questions of state-law governance and control of public assets.*"  *Id.* at *5 (emphasis added).  Accordingly, "[t]hat inquiry implicates *structural limits on federal judicial power in the municipal bankruptcy context*, not simply discretionary case management."  *Id.* (emphasis added).

16.     The District Court further determined that both appeals concern substantial grounds for difference of opinion given that "Chapter 9 is structurally different from other bankruptcy chapters because the debtor is a municipality and *the statute is built to avoid federal-court control over governmental powers and public assets*," and that "[c]ourts repeatedly emphasize that federalism concerns 'resonate loudly' in Chapter 9 and that *the intersection of bankruptcy power*

7

*with state control over municipalities triggers dual sovereignty and Tenth Amendment sensitivities.*" *Id.* (emphasis added).  As a result, "[t]he issue is not whether [Bankruptcy] Rule 2004 is categorically unavailable in Chapter 9; *it is whether Chapter 9's federalism structure supplies a limiting principle* (or requires heightened scrutiny, narrower scope, or special protections) when the discovery mechanism is *deployed in an intergovernmental contest embedded in unresolved state-law governance questions.*"  *Id.* (emphasis added).

17.    The District Court also determined that "[w]hether a disputed, contingent, or appeal pending state law dissolution or transfer theory qualifies as 'property of the debtor' within the framework of Chapter 9 presents [a further] substantial legal question."  *Id.*  It explained that "[t]his issue concerns the legal characterization of state law rights in a statutory regime that is *deliberately structured to limit federal intrusion into municipal governance.* . . . . It raises a threshold question regarding the legal predicate for invoking [Bankruptcy] Rule 2004 in a Chapter 9 case."  *Id.* (emphasis added).

18.    With respect to the Usage Order, the District Court explained:

> The dispute . . . concerns whether and under what constraints the Bankruptcy Court may authorize dissemination of materials obtained through compelled [Bankruptcy] Rule 2004 discovery to third parties outside the bankruptcy proceeding. . . . . The consequences of disclosure are also materially different from ordinary discovery disputes.  Once sensitive information is disseminated to third parties, it cannot be meaningfully recalled. *The potential irreversibility of disclosure heightens the importance of resolving the governing legal standards correctly.*

*Id.* at *7 (emphasis added).

19.    Finally, the District Court determined that both appeals would materially advance the underlying litigation because "the discovery and disclosure rulings are tethered to the [Debtor's] plan strategy for monetizing the Water Assets through the RFP process and, relatedly,

8

to the [Debtor's] asserted ability under state law to dissolve CWA and obtain its assets." *Id.* The District Court explained that "[i]f CWA's legal objections have merit, allowing discovery and third-party disclosure to proceed . . . ***would risk entangling the federal court in an*** ***intergovernmental dispute that state appellate courts may ultimately resolve differently***. Immediate review, therefore, may materially advance the Chapter 9 process by clarifying the legal ground rules for how (and whether) the [Debtor] may use bankruptcy tools to obtain and disseminate information from CWA in service of its plan." *Id.* (emphasis added).

### 2. Stay pending appeal.

20. The District Court also held that a stay of enforcement of both orders pending the disposition of the appeals was warranted. First, it determined that the requirement to establish a substantial likelihood of success on the merits was satisfied because:

> CWA has raised serious and non-frivolous legal questions about (i) ***how Chapter 9's federalism constraints bear on compelled*** ***discovery directed at another governmental entity***; (ii) whether the [Debtor] has demonstrated a sufficient state-law property interest to justify the scope of [Bankruptcy] Rule 2004 inquiry; and (iii) whether, and under what safeguards, the Bankruptcy Court may authorize third-party dissemination of compelled materials in service of the RFP process central to the [Debtor's] plan. These issues are not merely factual disputes about the volume or timing of production.

*Id.* at *8 (emphasis added).

21. Second, the District Court determined that the requirement to establish irreparable harm absent a stay was met with respect to the Usage Order because "[t]he harm alleged is not merely the cost or inconvenience of litigation. ***It is the irreversible dissemination of information*** ***that CWA contends is protected by statute or is otherwise sensitive in the context of a public-*** ***asset restructuring process.***" *Id.* at *9 (emphasis added).

22. With respect to the Production Order, the District Court held that "compelled

9

production and examination can inflict irreparable injury where compliance requires disclosure of sensitive governmental information or forces participation in intrusive inquiry that cannot later be undone. ***Once information is produced and examined, the confidentiality and strategic posture that existed before production cannot be fully restored.***" *Id.* (emphasis added). Because the Production Order "is directed at a separate state-created public authority in the context of an ongoing dispute concerning governance and asset control[, t]he compelled discovery is tied to a restructuring strategy premised on contested state-law dissolution and transfer theories. In that setting, ***the discovery process itself may materially affect the parties' leverage and strategic positions in ways that are not readily reversible.***" *Id.* (emphasis added).

23.     Finally, the District Court determined that "the public interest in a Chapter 9 case includes both the [Debtor's] interest in efficient restructuring ***and the public interest in respecting the federalism limits that Congress embedded in Chapter 9.***  When the dispute involves potential interference with public asset governance and intergovernmental authority under state law, ***the public interest weighs in favor of careful appellate review before irreversible steps are taken.***" *Id.* (emphasis added).

24.     In light of the District Court's ruling, the CWA's counsel again requested the return of its documents and information from the Debtor, the identification of any third parties who received access thereto, and the termination of the electronic data room containing the CWA's documents and information established in connection with the RFP Process for all parties— including the Debtor's and the Retiree Committee's professionals—by letter dated March 14, 2026, directed to the Debtor's counsel (the "3/14/26 Letter").[5]  A true and correct copy of the

---

[5] As described in the Motion, the CWA previously made such requests pursuant to the 1/31/26 Letter.

10

3/14/26 Letter is attached hereto as **Exhibit C**.

      **B.**        **Status Quo Denial Order Appeal**

      25.      As described in the Motion, the CWA commenced the Status Quo Denial Order

Appeal on October 23, 2025, by filing a notice of appeal [Dkt. No. 928] in the Chapter 9 Case.

Such direct appeal divested this Court of jurisdiction over the Status Quo Denial Order.

      26.      On February 23, 2026, the Debtor filed a motion to dismiss the Status Quo Denial

Order Appeal in the District Court [SQDOA Dkt. No. 14] (the "SQDOA Motion to Dismiss").

The Debtor articulated the basis for dismissal as follows:

> There is no longer a legal controversy in this Appeal that is real and not hypothetical. Through the Stay Relief Motion, CWA sought relief from the automatic stay in order to return to Orphan's Court and seek to modify the Status Quo [O]rder to halt the RFP Process. The Bankruptcy Court denied the Stay Relief Motion based upon the finding that the [Debtor's] unilateral right to dissolve the CWA under the MAA was a property interest protected by the automatic stay and CWA's failure to articulate cause for relief from the stay.
>
> After the Bankruptcy Court's entry of the [Status Quo] Denial Order, the Pennsylvania Supreme Court held that the [Debtor] does not have the unilateral right to dissolve CWA under the MAA as currently written. . . . . ***The legal framework upon which the Bankruptcy Court relied in entering the [Status Quo] Denial Order has changed***, and the basis for CWA's requested relief from the automatic stay—to return to Orphan's Court to attempt to halt the RFP Process it alleged was the source of its harm—is no longer necessary, as the RFP Process has been suspended.

SQDOA Mot. to Dismiss ¶¶ 29–30 (emphasis added).

      27.      On March 2, 2026, the CWA filed a response [SQDOA Dkt. No. 17] (the "SQDOA

Motion to Dismiss Response") asserting that the proper course of action would be for the District

Court to dismiss the Status Quo Denial Order Appeal and vacate the Status Quo Denial Order.

SQDOA Mot. to Dismiss Resp. at 3–4.

      28.      On March 10, 2026—eight days after the CWA filed its Motion in the Chapter 9

CLARKHILL\L5215\455064\286924486.v1-3/14/26

Case—the District Court entered the Vacatur/Dismissal Order dismissing the Status Quo Denial Order Appeal and vacating the Status Quo Denial Order.  A true and correct copy of the Vacatur/Dismissal Order is attached hereto as **Exhibit D**.  The District Court explained:

> This appeal challenges the Bankruptcy Court's order denying [the CWA] relief from the automatic stay to return to Orphans' Court and seek modification of the 2020 Status Quo Order to stop the [Debtor's] request-for-proposals process concerning [the CWA's] assets. The Bankruptcy Court denied that request based on its conclusion that the [Debtor's] asserted unilateral dissolution right under the Municipal Authorities Act ***was a contingent property interest protected by the stay. After the appeal was filed, the Pennsylvania Supreme Court held that the [Debtor] lacks such a unilateral dissolution right***, and the [Debtor] suspended the request-for-proposals process.

Vacatur/Dismissal Order at 1 n.1 (citing *In re Chester Water Auth. Tr.*, Nos. 46–53 MAP 2022, __ A.3d __, 2026 WL 168066 (Pa. Jan. 21, 2026)).

## III.    ARGUMENT

29.    The CWA files this Supplement to alert the Court to these intervening developments in the District Court because they materially impact the relief requested in its pending Motion.

30.    This Court does not have jurisdiction to vacate the Production Order or the Usage Order following the District Court's decision to grant leave to appeal both orders after the Motion was filed, which brought them within its exclusive jurisdiction under the divestiture doctrine.

31.    However, the District Court's ruling supports the CWA's request to order the return of all documents and information produced or disseminated pursuant to such orders.  Not only are these orders stayed pending the disposition of the appeals, the District Court expressly recognized the ***unique harm*** imposed on the CWA by the relief granted therein absent appellate review.

32.    As to the Usage Order, the District Court articulated such harm as, *inter alia*, "the irreversible dissemination of information that CWA contends is protected by statute or is otherwise

12

sensitive in the context of a public-asset restructuring process." *Chester*, 2026 WL 607528, at \*9. As to the Production Order, the District Court recognized that harm to the CWA includes, *inter alia*, the risk that "[o]nce information is produced and examined, the confidentiality and strategic posture that existed before production cannot be fully restored," such that "the discovery process itself may materially affect the parties' leverage and strategic positions in ways that are not readily reversible." *Id.*

33.    Accordingly, even if the Production Order and the Usage Order cannot be vacated by this Court while they remain in the exclusive jurisdiction of the District Court on appeal, ordering the return of all documents and information produced thereunder is the only way to mitigate the harms identified by the District Court and comply with the spirit of its decision, which stayed enforcement of such orders in light of such articulated harms.

34.    Finally, the CWA notes that although it did not seek to vacate the Status Quo Denial Order in its Motion in light of the Status Quo Denial Order Appeal, the District Court has itself vacated such order in an intervening ruling. The District Court's explanatory footnote in the Vacatur/Dismissal Order further supports an inference that because the Pennsylvania Supreme Court ruled that the Debtor lacks a unilateral dissolution right under the MAA, the Debtor holds no contingent property interest under the MAA subject to the stay.

## IV.    CONCLUSION

For the foregoing reasons, the CWA respectfully submits this Supplement to its pending Motion.

*[Rest of page intentionally blank; signatures follow]*

13

Dated: March 14, 2026

**CLARK HILL PLC**

*/s/ Jennifer K. Green*
Jennifer K. Green (MI Bar No. P69019)
220 Park St., Ste. 200
Birmingham, MI 48009
Telephone: (248) 988-2315
Facsimile: (248) 642-2174
jgreen@clarkhill.com
(*Pro Hac Vice*)

Kevin Dooley Kent (Pa. I.D. No. 85962)
2001 Market St., Ste. 2620
Philadelphia, PA 19103
Telephone: (215) 640-8531
Facsimile: (215) 640-8501
kkent@clarkhill.com

William C. Price (Pa. I.D. No. 90871)
301 Grant St., Fl. 14
Pittsburgh, PA 15219
Telephone: (412) 394-7776
Facsimile:  (412) 394-2555
wprice@clarkhill.com

Megan A. Guernsey (Pa. I.D. No. 202065)
2001 Market St., Ste. 2620
Philadelphia, PA 19103
Telephone: (215) 640-8522
Facsimile: (215) 640-8501
mguernsey@clarkhill.com

Ronald A. King (MI Bar No. P45088)
215 South Washington Sq., Ste. 200
Lansing, MI 48933
Telephone: (517) 318-3015
Facsimile: (517) 318-3099
rking@clarkhill.com
(*Pro Hac Vice*)

*Counsel for Chester Water Authority*