**EXHIBIT A**

**IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re: | Chapter 9 |
| CITY OF CHESTER, PENNSYLVANIA, | Bankr. Court Case No. 22-13032-amc |
| Debtor. | |
| CHESTER WATER AUTHORITY, | CIVIL ACTION |
| Appellant, | No. 25-1115-MRP |
| | No. 25-2136-MRP |
| v. | |
| CITY OF CHESTER, PENNSYLVANIA, | |
| Appellee. | |

**<u>MEMORANDUM</u>**

**Perez, J.**                                                                                   **March 3, 2026**

These two related interlocutory appeals arise from the City of Chester's pending Chapter 9 bankruptcy and its ongoing dispute with the Chester Water Authority ("CWA") concerning the City's asserted authority, under Pennsylvania's Municipality Authorities Act ("MAA"), to reclaim or otherwise control assets associated with CWA. The appeals challenge two interlocutory orders entered by the Bankruptcy Court in 2025 addressing compelled discovery and the authorized use of materials obtained through that discovery in connection with the City's restructuring efforts.

In Civil Action No. 25-1115, the Chester Water Authority ("CWA") seeks leave to appeal an order compelling examination and production under Federal Rule of Bankruptcy Procedure 2004 (the "Rule 2004 Examination Order"). In Civil Action No. 25-2136, CWA seeks leave to appeal a separate order authorizing disclosure and third-party use of materials obtained through

1

that Rule 2004 process (the "Disclosure Order"). In both cases, CWA also requests a stay pending appeal.

CWA contends that the challenged orders present controlling legal questions concerning the scope of the Bankruptcy Court's authority in a Chapter 9 case, including the application of Chapter 9's federalism constraints and whether the City possesses a sufficient state-law "property" interest to justify the compelled discovery and subsequent authorization of its dissemination. The City and other appellees oppose leave and oppose a stay, characterizing the orders as routine exercises of discovery management discretion and warning that interlocutory review will delay the Chapter 9 proceedings.

For the reasons that follow, the Court will grant leave to appeal in both matters and will grant a stay pending appeal as to enforcement of the challenged relief, subject to an expedited merits-briefing schedule. Although interlocutory review is disfavored, these appeals present disputed and potentially controlling legal questions at the intersection of Chapter 9, federalism, and state-law governance of public assets. Applying the standards governing stays pending appeal, the Court further concludes that preserving the status quo pending expedited review is warranted, particularly because the consequences of compelled examination and third-party dissemination may be difficult to unwind if the appeals ultimately succeed.

## I.  BACKGROUND

### A. Chapter 9 in Context

Chapter 9 of the Bankruptcy Code occupies a narrow and infrequently invoked corner of federal bankruptcy law. Since Congress first enacted municipal bankruptcy legislation in the 1930s, only a relatively small number of entities have sought relief under Chapter 9. *See* Fed.

2

Judicial Ctr., *Navigating Chapter 9 of the Bankruptcy Code* 1–3 (2017) (noting the limited historical use of Chapter 9 compared to other bankruptcy chapters). By contrast, commercial Chapter 11 filings routinely number in the thousands each year, underscoring that Chapter 9 remains an exceptional and comparatively rare mechanism reserved for financially distressed municipalities rather than the routine reorganization tool it is in the corporate context. *See* Admin. Office of the U.S. Courts, *Bankruptcy Statistics* (annual reports). Municipal filings have been particularly sparse in recent years, with only a handful of Chapter 9 petitions filed nationwide since the City of Detroit's 2013 case. *See* Fed. Judicial Ctr., *Navigating Chapter 9*, supra, at 2–3. Most Chapter 9 cases involve special-purpose entities—such as hospital districts, utility authorities, or other public instrumentalities—rather than general-purpose cities or counties. *Id.* at 3–4. The City of Chester filed its Chapter 9 petition in 2022, after a prolonged period of fiscal distress, and remains in bankruptcy. *See* Bankr. Ct. Docket, *In re City of Chester*, No. 22-13032 (Bankr. E.D. Pa.).

The relative infrequency of Chapter 9 filings has resulted in a comparatively modest body of reported case law interpreting the chapter. *See* 6 Collier on Bankruptcy ¶ 900.01 (16th ed.) (observing that Chapter 9 cases are rare relative to other bankruptcy proceedings). At the same time, Chapter 9 is structurally distinct from the rest of the Bankruptcy Code. Unlike Chapters 7 and 11—where federal courts exercise broad supervisory authority over a debtor's assets and operations—Chapter 9 was crafted to avoid federal judicial control over municipal governance.

Congress "tailored" municipal bankruptcy legislation to preserve states' reserved powers. *Puerto Rico v. Franklin Cal. Tax–Free Tr.*, 579 U.S. 115, 121 (2016). The Supreme Court upheld the constitutionality of municipal bankruptcy legislation on the understanding that it did not authorize federal interference with a municipality's political or governmental powers. *United*

3

*States v. Bekins*, 304 U.S. 27, 51–52 (1938). That structural limitation is reflected in the statute itself. *See* 11 U.S.C. §§ 903–904; *see also* 6 Collier on Bankruptcy ¶ 903.01 (16th ed.) (describing § 903 as preserving state control over municipalities) and ¶ 904.01 (explaining that § 904 limits the court's power to interfere with a municipal debtor's political or governmental powers, property, or revenues absent consent). Courts therefore consistently describe Chapter 9 as uniquely constrained by federalism principles. *See In re City of Harrisburg*, 465 B.R. 744, 753–54 (Bankr. M.D. Pa. 2011); *In re N.Y.C. Off-Track Betting Corp.*, 434 B.R. 131, 149 (Bankr. S.D.N.Y. 2010). As one court observed, "respect for State law is more paramount" in municipal bankruptcy than in other chapters. *In re N.Y.C. Off-Track Betting Corp.*, 434 B.R. at 149.

Those structural features do not eliminate the availability of ordinary bankruptcy procedures, but they frame the context in which such procedures operate when deployed in a municipal case—particularly where the exercise of federal bankruptcy power intersects with state-law questions concerning governance, ownership, or control of public assets.

### B. The Chester Water Authority and the Municipality Authorities Act

CWA is a municipal authority created under Pennsylvania's MAA, 53 Pa. Cons. Stat. § 5601 et seq. Under Pennsylvania law, municipal authorities are state-created entities that operate independently from the municipalities that organize them. *See, e.g., Commonwealth v. Erie Metro. Transit Auth.*, 281 A.2d 882, 884 (Pa. 1971). CWA owns and operates water infrastructure and holds title to its assets.

The City has asserted that under § 5622(a) of the MAA it possesses a statutory right to reclaim or acquire assets associated with CWA under certain conditions. That asserted right has been the subject of litigation in Pennsylvania state courts. An intermediate appellate decision

addressed aspects of the City's claimed authority, and further state-court proceedings have followed. The City's Chapter 9 plan strategy, as reflected in the record before the Bankruptcy Court, contemplates monetizing "Water Assets" through a request-for-proposals ("RFP") process and relies in part on its interpretation of the MAA and related state-court rulings.

CWA disputes the City's characterization of its rights under § 5622(a) and maintains that the City lacks unilateral authority to dissolve CWA or seize its assets absent further state-law determinations. That disagreement forms part of the broader backdrop to the present interlocutory appeals.

### C. The Bankruptcy Proceedings and the Challenged Orders

After filing its Chapter 9 petition in 2022, the City pursued a restructuring strategy that includes evaluating and potentially monetizing assets associated with CWA. In furtherance of that strategy, the City sought relief under Federal Rule of Bankruptcy Procedure 2004, which permits examination of an entity concerning the debtor's acts, conduct, property, liabilities, financial condition, and other matters affecting case administration.

The Bankruptcy Court entered the Rule 2004 Examination Order in 2025, compelling CWA to submit to examination and produce materials under Rule 2004. CWA objected, arguing among other things that Chapter 9's federalism protections limit the Bankruptcy Court's authority to compel intrusive discovery from a separate state-created public authority and that the City lacks a sufficient property interest under applicable state law to justify the scope of inquiry authorized.

The Bankruptcy Court later entered the Disclosure Order, authorizing the City to disclose and use certain materials produced under Rule 2004 in connection with its RFP process and broader restructuring efforts. CWA contends that this order permits dissemination of sensitive or statutorily

5

protected materials beyond the confines of the bankruptcy proceeding and raises additional questions concerning the scope of the Bankruptcy Court's authority in a Chapter 9 case.

CWA now seeks leave to appeal both interlocutory orders under 28 U.S.C. § 158(a)(3) and requests a stay pending appeal in each case.

## II. LEAVE TO APPEAL

### A. Legal standard

District courts have jurisdiction over appeals from bankruptcy court orders under 28 U.S.C. § 158(a). Appeals from "final judgments, orders, and decrees" are available as of right, § 158(a)(1), and certain interlocutory orders are appealable as of right, § 158(a)(2). All other interlocutory orders are appealable only "with leave of the court." § 158(a)(3). Because the orders challenged here are interlocutory orders regulating discovery and related use of discovery materials, appellate jurisdiction exists only if the Court grants leave under § 158(a)(3). *See, e.g.*, *In re Jeanette Corp.*, 832 F.2d 43, 46 (3d Cir. 1987) (discovery orders in bankruptcy, like civil cases, are generally non-appealable absent leave).

Section 158(a)(3) does not itself supply criteria for granting leave. Courts in this Circuit therefore typically borrow the familiar framework from 28 U.S.C. § 1292(b) as a guide. *See In re Powell*, No. 06-4085, 2006 WL 3208843, at *2 (E.D. Pa. Nov. 3, 2006); *In re Flintkote Co.*, 471 B.R. 95, 102 (D. Del. 2012). Under that standard, leave may be granted when the movant shows: (1) a controlling question of law; (2) substantial ground for difference of opinion; and (3) that immediate appeal may materially advance the ultimate termination of the litigation. *See Powell*, 2006 WL 3208843, at *2; *Miranda v. C.H. Robinson Co.*, No. 18-553, 2020 WL 1643694, at *1 (E.D. Pa. Apr. 2, 2020). Even if those factors are satisfied, interlocutory review remains

6

discretionary and is ordinarily reserved for "exceptional circumstances" because piecemeal appellate review is disfavored. *See Powell*, 2006 WL 3208843, at \*2; *In re AE Liquid., Inc.*, 451 B.R. 343, 346 (D. Del. 2011).

Finally, Rule 8004 supplies the procedural vehicle for seeking leave, requiring a statement of the necessary facts, the questions presented, the reasons leave should be granted, and the relief sought. Fed. R. Bankr. P. 8004(b).

### B.  Application

Although discovery-related interlocutory appeals are generally disfavored, these cases are not ordinary bankruptcy discovery disputes. They arise in a Chapter 9 municipal bankruptcy, in which Congress structured bankruptcy relief to respect state sovereignty and avoid federal court interference with municipal governance. The record reflects that the City's Chapter 9 plan contemplates dissolving the CWA and monetizing "Water Assets" through an RFP process, relying on the Municipality Authorities Act and a Commonwealth Court decision presently subject to further state-court review.  The City sought Rule 2004 relief from the Bankruptcy Court to obtain information from the CWA to value and implement that plan. CWA's motion for leave in No. 25-1115 characterizes the Rule 2004 Examination Order as authorizing compelled examination and production in service of that contested dissolution-and-transfer theory. The Disclosure Order challenged in No. 25-2136 then addresses whether, and on what terms, the City may disclose and use materials produced under that process in connection with third parties and the RFP process.

Against that backdrop, the Court considers the § 1292(b) factors.

### 1. Controlling questions of law

A question is "controlling" if its resolution could materially affect the outcome of the case or if it is "serious to the conduct of the litigation," even if it does not terminate the litigation outright. *Patrick v. Dell Fin. Servs*., 366 B.R. 378, 385–86 (M.D. Pa. 2007). And while discovery rulings are usually case-management matters committed to trial-court discretion, the issues CWA identifies are framed as threshold legal constraints on the Bankruptcy Court's authority in a Chapter 9 case.

In No. 25-1115, CWA frames two questions as predominantly legal. First, whether Chapter 9's federalism constraints—rooted in the Tenth Amendment and codified in §§ 903 and 904—limit the Bankruptcy Court's power to compel Rule 2004 examination of a separate state-created municipal authority (or at least limit the permissible scope of such an examination). CWA characterizes this as a "purely" constitutional question concerning whether the 2004 Order is valid at all under Chapter 9's structural limits.

Second, CWA argues that the Bankruptcy Court committed legal error in concluding that the City possesses a sufficient "property" interest under Pennsylvania law, specifically under § 5622(a) of the MAA, to justify the Rule 2004 inquiry into CWA's assets and operations. CWA frames this as a "purely" bankruptcy-law question concerning whether the court may treat the City's asserted statutory right as "property of the debtor" for Chapter 9 purposes.

Those questions are "controlling" because their resolution would directly determine whether the challenged discovery may proceed in its current form. If Chapter 9 imposes a jurisdictional or structural limitation on the Bankruptcy Court's authority or requires heightened constraints before compelling discovery from another governmental entity, then the Rule 2004

8

Order cannot stand as issued. Likewise, if the City lacks a cognizable property interest under applicable state law sufficient to justify the scope of inquiry authorized, the order would require reversal or significant narrowing. In either scenario, the legal determination would materially alter the permissible scope of discovery and, by extension, the course of the City's plan-related strategy.

In No. 25-2136, the challenged Disclosure Order presents a closely related controlling legal question. The issue is whether, and under what legal constraints, the Bankruptcy Court may authorize third-party disclosure and use of materials obtained through Rule 2004 in furtherance of an RFP process that is central to the City's proposed Chapter 9 plan. This inquiry is not merely procedural. The materials at issue may include sensitive or statutorily protected information, and the authorization permits dissemination beyond the confines of the bankruptcy proceeding itself. CWA contends that this question concerns the outer bounds of the Bankruptcy Court's authority rather than routine protective-order administration. If the court lacks authority to permit such dissemination, or if Chapter 9's structural protections require heightened limits on the use of compelled materials, the Disclosure Order cannot stand as entered. Resolution of that legal issue would directly affect whether and how the City may use those materials in implementing its restructuring strategy and would therefore materially shape the course of the Chapter 9 proceedings.

The City urges the Court to treat these disputes as matters of case management, emphasizing that interlocutory review of discovery orders is generally disfavored. That proposition is correct as a baseline. In bankruptcy, as elsewhere, discovery orders are ordinarily non-final and reviewed, if at all, only through discretionary interlocutory mechanisms. *See*, *e.g.*, *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 108–13 (2009) (holding that discovery orders, including privilege-related rulings, generally do not qualify for immediate appeal under the collateral-order doctrine);

9

*Bullard v. Blue Hills Bank*, 575 U.S. 496, 501–06 (2015) (explaining that bankruptcy finality turns on whether an order conclusively resolves a discrete proceeding, not on its practical importance). Reported decisions granting leave to pursue interlocutory review of bankruptcy discovery orders are limited, and the body of authority is particularly sparse in the Chapter 9 context, where municipal bankruptcies are relatively infrequent. Accordingly, courts considering discretionary review under 28 U.S.C. § 158(a)(3) have typically applied the § 1292(b) framework and emphasized that such review is to be exercised sparingly. *See*, *e.g.*, *In re Maxus Energy Corp.*, 611 B.R. 382, 392–94 (D. Del. 2019). The relative absence of Chapter 9 specific precedent reflects the rarity of such cases rather than the insignificance of the structural federalism concerns they may present.

However, the orders challenged here do not concern routine matters such as the timing of production, the adequacy of responses, or the management of privilege logs. They instead present a threshold question about the scope of the Bankruptcy Court's authority in a Chapter 9 case— specifically, whether the court may compel discovery from, and authorize dissemination of, materials belonging to, a separate governmental entity in furtherance of a restructuring strategy that depends on unresolved questions of state-law governance and control of public assets. That inquiry implicates structural limits on federal judicial power in the municipal bankruptcy context, not simply discretionary case management. Because resolution of those legal issues will determine whether the challenged mechanisms may proceed at all, and in what form, they qualify as "controlling" under the § 1292(b) framework incorporated through § 158(a)(3). *See Patrick*, 366 B.R. at 385–86; *In re Maxus Energy Corp.*, 611 B.R. 382, 392–94 (D. Del. 2019).

10

**2. Substantial ground for difference of opinion**

A "substantial ground for difference of opinion" exists when the legal issue is difficult and of first impression, when there is conflicting authority, or when there is genuine doubt about the correct legal standard. *See Patrick*, 366 B.R. at 386. The Court concludes that this factor is satisfied in both cases.

**a. Chapter 9 federalism constraints and compelled discovery from another governmental entity**

Chapter 9 is structurally different from other bankruptcy chapters because the debtor is a municipality and the statute is built to avoid federal-court control over governmental powers and public assets. Courts repeatedly emphasize that federalism concerns "resonate loudly" in Chapter 9 and that the intersection of bankruptcy power with state control over municipalities triggers dual sovereignty and Tenth Amendment sensitivities. *See, e.g.*, *In re City of Harrisburg*, 465 B.R. 744, 753 (Bankr. M.D. Pa. 2011) (noting the centrality of dual sovereignty and Tenth Amendment concerns where federal bankruptcy intersects with state control of municipalities); *In re N.Y.C. Off-Track Betting Corp.,* 434 B.R. 131, 149 (Bankr. S.D.N.Y. 2010) (describing federalism concerns as especially salient in municipal bankruptcy).

Congress reflected those concerns in Chapter 9's text. Section 903 preserves state control over municipalities' political and governmental powers, and § 904 restricts the bankruptcy court's power, absent consent, to interfere with a municipality debtor's political or governmental powers and with its property or revenues. In relevant part, Section 903 of the Bankruptcy Code provides that Chapter 9 "does not limit or impair the power of a State to control, by legislation or otherwise, a municipality of or in such State in the exercise of the political or governmental powers of such municipality, including expenditures for such exercise . . . ." 11 U.S.C. § 903. Section 904 further

11

provides that, absent the debtor's consent or a provision in a confirmed plan, "the court may not, by any stay, order, or decree, in the case or otherwise, interfere with—(1) any of the political or governmental powers of the debtor; (2) any of the property or revenues of the debtor; or (3) the debtor's use or enjoyment of any income-producing property." 11 U.S.C. § 904.

Those provisions do not speak directly to the precise posture here (a Rule 2004 examination directed to a non-debtor municipal authority and a disclosure authorization affecting third parties). The City's position, as reflected in its opposition papers in related disputes, is that § 903 is not an "independent substantive limit" wielded by non-debtors to defeat bankruptcy tools and that Chapter 9's federalism provisions must be read in harmony with otherwise applicable bankruptcy procedures. But CWA's argument—that the Bankruptcy Court must consider Chapter 9's federalism architecture when asked to compel intrusive discovery from another governmental entity in service of a plan strategy affecting state-law control and public assets—also has non-frivolous force. The issue is not whether Rule 2004 is categorically unavailable in Chapter 9; it is whether Chapter 9's federalism structure supplies a limiting principle (or requires heightened scrutiny, narrower scope, or special protections) when the discovery mechanism is deployed in an intergovernmental contest embedded in unresolved state-law governance questions.

That dispute about the correct framework is enough to create "genuine doubt" about the governing standard in this context—especially because most Rule 2004 precedent arises in Chapters 7 and 11 and assumes a private-party target rather than a separate state-created authority.

### b. "Property of the debtor" in Chapter 9 and reliance on disputed state-law dissolution rights

There is also substantial ground for difference of opinion as to whether the City's asserted interests under the MAA constitute "property of the debtor" sufficient to justify examination of the CWA's assets under Rule 2004. CWA argues that the Bankruptcy Court's analysis improperly relied on concepts associated with "property of the estate" under 11 U.S.C. § 541, an expansive definition that Congress did not incorporate into Chapter 9 through § 901. *See* 11 U.S.C. §§ 901–902; 6 Collier on Bankruptcy ¶ 902.01 (16th ed.) (explaining that Chapter 9 substitutes "property of the debtor" for "property of the estate" and does not incorporate § 541). In Chapter 9, the relevant inquiry concerns "property of the debtor," which is not separately defined in the Code. Accordingly, property interests must be determined by reference to applicable state law, consistent with the Supreme Court's instruction that "[p]roperty interests are created and defined by state law" unless Congress clearly provides otherwise. *Butner v. United States*, 440 U.S. 48, 55 (1979).

The City's asserted right under § 5622(a) of the MAA—a claimed authority to dissolve CWA and obtain its assets upon satisfaction of statutory conditions—is the subject of ongoing state court litigation and competing interpretations under Pennsylvania law. CWA contends that treating that asserted right as a settled and cognizable property interest for Chapter 9 purposes presupposes the outcome of unresolved state-law disputes. The record reflects that the City's proposed restructuring strategy expressly depends upon its interpretation of § 5622(a) of the MAA and on an intermediate appellate decision that remains subject to further review. The property characterization question is therefore directly intertwined with the plan strategy and the contemplated monetization of the Water Assets.

Whether a disputed, contingent, or appeal pending state law dissolution or transfer theory qualifies as "property of the debtor" within the framework of Chapter 9 presents a substantial legal

13

question. Because Chapter 9 does not incorporate § 541's broad definition of estate property, the analysis turns on the nature, certainty, and present enforceability of the debtor's asserted rights under state law. Where those asserted rights are contingent, actively litigated, or subject to appellate review, reasonable jurists could disagree as to whether they amount to a sufficiently concrete property interest to support compelled discovery into the assets of a separate state-created authority.

This issue concerns the legal characterization of state law rights in a statutory regime that is deliberately structured to limit federal intrusion into municipal governance. It therefore presents more than a routine dispute about discovery scope. It raises a threshold question regarding the legal predicate for invoking Rule 2004 in a Chapter 9 case. That question satisfies the "substantial ground for difference of opinion" prong of the § 1292(b) framework incorporated through § 158(a)(3).

### c. Disclosure of Rule 2004 materials to third parties and irreversibility concerns

In No. 25-2136, the Disclosure Order presents a distinct but related legal dispute. The City argues that CWA waived or forfeited certain statutory protection arguments in the Bankruptcy Court, including arguments grounded in Critical Infrastructure Security provisions. The City also characterizes the Disclosure Order as a practical and necessary step in advancing the RFP process central to its restructuring strategy.

The dispute, however, is not limited to procedural waiver. Instead, it concerns whether and under what constraints the Bankruptcy Court may authorize dissemination of materials obtained through compelled Rule 2004 discovery to third parties outside the bankruptcy proceeding. Resolution of that question requires legal determinations regarding the scope of statutory

14

protections, the sufficiency of CWA's presentation of those protections below, and the permissible bounds of disclosure authority in a Chapter 9 case.

The consequences of disclosure are also materially different from ordinary discovery disputes. Once sensitive information is disseminated to third parties, it cannot be meaningfully recalled. The potential irreversibility of disclosure heightens the importance of resolving the governing legal standards correctly. For that reason, the parties' disagreement over the legal framework and safeguards applicable to third-party dissemination presents more than a routine disagreement about case management. It supports the conclusion that there is substantial ground for difference of opinion as to the scope of the Bankruptcy Court's authority and the limits that must govern disclosure in this context.

### 3. Material advancement and exceptional circumstances

The third § 1292(b) factor asks whether immediate appeal may "materially advance" the litigation's ultimate termination. In a Chapter 9 context, that inquiry is not limited to whether the appeal will end the bankruptcy case; rather, it can include whether resolving a controlling legal question will streamline plan-related disputes, avoid costly and potentially unnecessary proceedings, and prevent the case from progressing under a legal premise that may later be rejected.

Here, the discovery and disclosure rulings are tethered to the City's plan strategy for monetizing the Water Assets through the RFP process and, relatedly, to the City's asserted ability under state law to dissolve CWA and obtain its assets. If CWA's legal objections have merit, allowing discovery and third-party disclosure to proceed would create more than ordinary litigation burden; it would risk entangling the federal court in an intergovernmental dispute that

state appellate courts may ultimately resolve differently. Immediate review, therefore, may materially advance the Chapter 9 process by clarifying the legal ground rules for how (and whether) the City may use bankruptcy tools to obtain and disseminate information from CWA in service of its plan.

The Court also finds the "exceptional circumstances" requirement satisfied. Interlocutory appeals should not become routine. These matters, however, present a convergence of features that is unusual: a municipal bankruptcy; discovery directed at a separate state-created public authority; discovery sought in service of a restructuring strategy premised on contested state-law dissolution/control issues; and a separate order authorizing third-party dissemination of compelled materials. That combination elevates these issues beyond ordinary discovery management and supports discretionary interlocutory review notwithstanding the general policy against piecemeal appeals.

### C. Relation to the Court's prior interlocutory-appeal decision in No. 25-1114

The Court's conclusion here is not inconsistent with its prior decision denying leave for discretionary appeal in a related Chapter 9 matter. In *In re City of Chester*, No. 25-1114 (E.D. Pa. September 20, 2025), this Court denied leave where the challenged order was interlocutory and an immediate appeal would not "materially advance" the relevant proceeding. The Court also found no "exceptional circumstance" overcoming the presumption against piecemeal litigation. The posture here differs. The orders in these consolidated matters are directly connected to the plan-implementation mechanisms for the City's proposed monetization strategy, and their effects—especially with respect to compelled examination and dissemination of materials—risk consequences that are difficult to unwind. The Court, therefore, exercises its discretion to grant leave under § 158(a)(3) in both cases.

16

### III. MOTIONS TO STAY

#### A. Legal standard

A stay pending appeal in a bankruptcy appeal is governed procedurally by Fed. R. Bankr. P. 8007. As a general rule, a party must first seek a stay from the bankruptcy court; a motion may be made in the district court in the first instance only if seeking relief below was impracticable, or if the bankruptcy court has denied relief, failed to afford the requested relief, or otherwise made district-court review appropriate. Fed. R. Bankr. P. 8007(a), (b).

Substantively, courts apply the traditional four-factor stay test. *Nken v. Holder*, 556 U.S. 418, 434 (2009). The movant must show: (1) a strong likelihood of success on the merits; (2) irreparable injury absent a stay; (3) that issuance of the stay will not substantially injure other interested parties; and (4) that the stay is in the public interest. *Id.* The first two factors—likelihood of success and irreparable harm—are the most critical. *In re Revel AC*, *Inc.*, 802 F.3d 558 (3d Cir. 2015).

#### B. Rule 8007 prior presentment considerations

The City argues that CWA failed to seek a stay pending appeal in the Bankruptcy Court as to the Disclosure Order, and it presses that failure as an independent basis to deny stay relief. The City further contends that CWA's stated reason—that the Bankruptcy Court previously ruled against it on key issues—is not enough to show "impracticability."

The Court agrees that Rule 8007 embodies an important principle of orderly procedure: the bankruptcy court should ordinarily have the first opportunity to consider whether and on what terms its orders should be stayed. But Rule 8007 does not impose a jurisdictional bar, and district courts retain discretion to consider stay motions where circumstances make prior presentation

17

impracticable, where the record shows an imminent risk of irreparable harm, or where prompt district-court action is necessary to preserve meaningful appellate review. Here, the challenged orders relate to compelled examination and potential dissemination of sensitive information. The Court will, therefore, proceed to the *Nken/Revel* factors—while taking into account the procedural posture, including that any stay entered here should be carefully limited to preserving the status quo pending an expedited appeal.

### C. Application

#### 1. Likelihood of success on the merits

At the stay stage, the Court does not resolve the appeals. The question is whether the movant has made a sufficiently strong showing that it is likely to prevail or, at minimum, that it has raised serious legal questions warranting preservation of the status quo. *Revel AC*, 802 F.3d at 568–71 (explaining that where irreparable harm is strong, the required showing on the merits may be correspondingly less demanding, but the movant must still show more than a negligible chance of success).

For reasons discussed above in the leave to appeal analysis, CWA has raised serious and non-frivolous legal questions about (i) how Chapter 9's federalism constraints bear on compelled discovery directed at another governmental entity; (ii) whether the City has demonstrated a sufficient state-law property interest to justify the scope of Rule 2004 inquiry; and (iii) whether, and under what safeguards, the Bankruptcy Court may authorize third-party dissemination of compelled materials in service of the RFP process central to the City's plan. These issues are not merely factual disputes about the volume or timing of production. They are legal disputes about

18

the scope of bankruptcy court authority and the legal predicates for deploying bankruptcy tools in a municipal-governance contest. That suffices to support the first factor at the stay stage.

### 2. Irreparable harm

To warrant a stay pending appeal, the movant must demonstrate a concrete and imminent injury that cannot be adequately remedied by money damages or corrected after final judgment. *Nken*, 556 U.S. at 434–35. In the bankruptcy context, courts routinely hold that ordinary litigation expense, compliance costs, and discovery burdens do not constitute irreparable harm. *See, e.g.*, *id.*; *Revel AC*, 802 F.3d at 568–69. However, compelled disclosure of confidential, proprietary, or statutorily protected information presents a different category of injury. Once sensitive information is disclosed, it cannot be effectively retrieved, and the resulting consequences cannot be fully undone on appeal.

### d. No. 25-2136 (Disclosure Order)

The showing of irreparable harm is strongest with respect to the Disclosure Order. That order authorizes third-party dissemination and use of materials obtained through compelled Rule 2004 discovery. If dissemination occurs and CWA ultimately prevails on appeal, the Court will be unable to restore the status quo ante. The information will already have been shared beyond the confines of the bankruptcy proceeding, potentially affecting negotiations, competitive dynamics, governmental decision-making, and third-party conduct. Appellate reversal at that stage would not eliminate the practical consequences of disclosure.

The City's opposition confirms that the dispute centers on alleged statutory protections and confidentiality concerns and contests whether the Bankruptcy Court adequately addressed those issues. That framing underscores the nature of the asserted injury. The harm alleged is not merely the cost or inconvenience of litigation. It is the irreversible dissemination of information that CWA

19

contends is protected by statute or is otherwise sensitive in the context of a public-asset restructuring process. Courts routinely recognize that such disclosure-based harms satisfy the irreparable injury requirement because they cannot be meaningfully remedied after the fact.

### e.   No. 25-1115 (Rule 2004 Examination Order)

The irreparable harm showing is perhaps less immediate with respect to the Rule 2004 Examination Order, which compels participation in an examination and production process rather than authorizing immediate third-party dissemination. Nonetheless, compelled production and examination can inflict irreparable injury where compliance requires disclosure of sensitive governmental information or forces participation in intrusive inquiry that cannot later be undone. Once information is produced and examined, the confidentiality and strategic posture that existed before production cannot be fully restored.

In addition, the Rule 2004 Order is directed at a separate state-created public authority in the context of an ongoing dispute concerning governance and asset control. The compelled discovery is tied to a restructuring strategy premised on contested state-law dissolution and transfer theories. In that setting, the discovery process itself may materially affect the parties' leverage and strategic positions in ways that are not readily reversible. Although the irreparable harm here is less acute than with the Disclosure Order, it is sufficient to justify preservation of the status quo pending expedited appellate review.

### 3. Harm to other parties and the public interest

The City argues that stays will delay its Chapter 9 progress and impair the RFP process that the City contends is essential to restructuring. The Court takes those concerns seriously, but two considerations mitigate them. First, the stays contemplated here are tailored to preserve the status

20

quo pending appeal and are coupled with an expedited merits briefing schedule. A stay tied to prompt appellate review reduces the risk that the Chapter 9 case will be meaningfully derailed.

Second, the public interest in a Chapter 9 case includes both the City's interest in efficient restructuring and the public interest in respecting the federalism limits that Congress embedded in Chapter 9. When the dispute involves potential interference with public asset governance and intergovernmental authority under state law, the public interest weighs in favor of careful appellate review before irreversible steps are taken. On balance, the limited, expedited stays entered here protect the integrity of the appellate process without imposing undue prejudice.

### IV. CONCLUSION

For the foregoing reasons, the Court exercises its discretion under 28 U.S.C. § 158(a)(3) to permit interlocutory review in both matters. Appellant has identified controlling legal questions that bear directly on the permissible use of Bankruptcy Rule 2004 and the dissemination of materials obtained through that process in the Chapter 9 context, and it has shown substantial grounds for difference of opinion on those issues. Immediate review will materially advance the administration of these proceedings by clarifying the governing legal framework before the parties and the Bankruptcy Court proceed further on a disputed premise that could require reversal or substantial modification on later review.

The Court will also grant a stay pending appeal under Federal Rule of Bankruptcy Procedure 8007. With respect to Civil Action No. 25-2136, the risk of irreparable harm is pronounced because dissemination of Rule 2004 materials to third parties cannot be effectively undone once it occurs. With respect to Civil Action No. 25-1115, although the asserted harm flows primarily from compelled examination and production rather than an immediate disclosure event,

the Court concludes that a limited stay is warranted to preserve meaningful appellate review and maintain the status quo while the controlling legal issues are resolved on an expedited basis. Any prejudice to the City from temporarily pausing these aspects of plan-related discovery and use of discovery materials is mitigated by an expedited merits briefing schedule described in the Orders that follow.

Accordingly, the Court will enter orders in each civil action: (1) granting leave to appeal; (2) staying enforcement of the Bankruptcy Court's February 13, 2025 and April 11, 2025 orders to the extent they require CWA to submit to examination, produce documents, or permit third-party disclosure of materials produced pursuant to Bankruptcy Rule 2004; (3) requiring no bond as a condition of the stay (or, in the alternative, reserving bond-related issues for prompt motion practice); and (4) setting an expedited merits briefing schedule under Federal Rule of Bankruptcy Procedure 8018(a). An appropriate Order follows in each case.