**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| In re: | : | Chapter 9 |
|  | : |  |
| CITY OF CHESTER, PENNSYLVANIA, | : | Case No. 22-13032-AMC |
|  | : |  |
| Debtor. | : | **Re: Dkt. No. 1013** |
|  | : |  |

**OBJECTION AND RESPONSE OF CITY OF CHESTER TO CHESTER WATER
AUTHORITY'S MOTION TO (A) STRIKE THE PROPOSED TREATMENT OF THE
CHESTER WATER AUTHORITY AND ITS ASSETS FROM THE DEBTOR'S PLAN
OF ADJUSTMENT [DKT. NO. 583]; (B) VACATE THE ORDERS (1) REQUIRING THE
PRODUCTION OF DOCUMENTS AND INFORMATION PURSUANT TO
BANKRUPTCY RULE 2004 [DKT. NO. 688]; (2) AUTHORIZING THE USE OF SUCH
DOCUMENTS AND INFORMATION IN CONNECTION WITH THE RFP PROCESS
[DKT. NO. 782]; (3) PERMITTING PHYSICAL ACCESS TO THE CHESTER WATER
AUTHORITY'S PROPERTY [DKT. NO. 859]; AND (4) PROHIBITING THE ISSUANCE
OF RIGHT-TO-KNOW LAW REQUESTS THAT REFER OR RELATE TO THE RFP
PROCESS [DKT. NOS. 692 & 713]; (C) MODIFY THE MEDIATION ORDER [DKT. NO.
139] TO RELEASE THE CHESTER WATER AUTHORITY FROM ANY MANDATORY
PARTICIPATION OBLIGATION; AND (D) COMPEL THE DEBTOR TO RETURN
ALL DOCUMENTS AND INFORMATION PRODUCED BY THE CHESTER WATER
AUTHORITY PURSUANT TO BANKRUPTCY RULE 2004 OR IN MEDIATION**

The City of Chester, Pennsylvania (the "City"), the debtor in the above-captioned chapter

9 proceeding, through undersigned counsel, objects in part and responds to *Chester Water*

*Authority's Motion to (a) Strike the Proposed Treatment of the Chester Water Authority and Its*

*Assets from the Debtor's Plan of Adjustment [Dkt. No. 583]; (b) Vacate the Orders (1) Requiring*

*the Production of Documents and Information Pursuant to Bankruptcy Rule 2004 [Dkt. No. 688];*

*(2) Authorizing the Use of Such Documents and Information in Connection with the RFP Process*

*[Dkt. No. 782]; (3) Permitting Physical Access to the Chester Water Authority's Property [Dkt No.*

*859]; and (4) Prohibiting the Issuance of Right-to-Know Law Requests That Refer or Relate to the*

*RFP Process [Dkt. Nos. 692 & 713]; (c) Modify the Mediation Order [Dkt. No. 139] to Release*

*the Chester Water Authority from Any Mandatory Participation Obligation; and (d) Compel the*

*Debtor to Return All Documents and Information Produced by the Chester Water Authority Pursuant to Bankruptcy Rule 2004 or in Mediation* [Dkt. No. 1013] (the "Motion") and the supplement to the Motion [Dkt. No. 1019] (the "Supplement") filed by Chester Water Authority ("CWA").

### PRELIMINARY STATEMENT

1.      The City agrees that certain of this Court's orders relating to CWA should be vacated in light of the decision of the Pennsylvania Supreme Court in *In re Chester Water Authority Trust*, 349 A.3d 892 (Pa. 2026) (the "PA Appeal Decision") and that other actions can and should be taken in light of that decision.  However, not everything CWA seeks in the Motion is appropriate, CWA now concedes that this Court lacks jurisdiction over two orders CWA wants vacated due to CWA's own appeals, and the Court should take care not to grant CWA relief that CWA will abuse in the future, as is its wont.

2.      Specifically responding to each item raised in the Motion:

a.      The City will withdraw the *Plan for the Adjustment of Debts of the City of Chester* [Bk. Dkt. No. 583] (the "Plan").  However, to the extent the Court takes any action on the relief requested in the Motion regarding the Plan, the Court should reject the premise that parties who claim not to be parties in interest have standing to blue pencil a chapter 9 plan, particularly in light of the City's exclusive right to file and seek approval of a chapter 9 plan.

b.      The City is willing to agree to the vacatur of this Court's orders requiring CWA to produce documents to the City and allowing the City to share those documents with certain third parties.  *See* Bk. Dkt. Nos. 688 ("Production Order") and 782 ("Use Order").  However, due to CWA's appeals to the United States District Court for the

Eastern District of Pennsylvania ("District Court"), this Court lacks jurisdiction to vacate those orders, as CWA acknowledges in the Supplement.

c.      The City agrees that the Court's orders regarding CWA's effort to harass participants in the now-suspended request for proposal process ("RFP Process") should be vacated.  *See* Bk. Dkt. Nos. 692 and 713 ("Stay Enforcement Orders").  This Court now has jurisdiction over those orders due to the dismissal of CWA's appeal from those orders and can vacate the Stay Enforcement Orders.

d.      The City has already told CWA that it does not intend to pursue access to CWA's facilities under the *Order (I) Compelling Chester Water Authority's Compliance With the Order Entered February 13, 2025, (II) Permitting Certain Access to CWA Property, and (III) Setting Further Deadlines With Respect to Compliance With the 2004 Order and the City's Request for Sanctions* [Bk. Dkt. No. 859] (the "Access Order"), thus there is no need to vacate that order.

e.      The City defers to this Court on whether CWA should be removed from the *Order (I) Appointing a Judicial Mediator, (II) Referring Certain Matters to Mandatory Mediation, and (III) Granting Related Relief* [Bk. Dkt. No. 139] (the "Mediation Order"). However, once let out, CWA should be barred from seeking reentry into any mediation regarding its fate that might occur among other parties and the City in the future.

f.      The District Court has imposed a stay pending appeal regarding the Production Order and Usage Order at CWA's behest.  *See Chester Water Auth. v. City of Chester, Pa. (In re City of Chester, Pa.)*, No. 25-1115-MRP, 2026 WL 607528, at *10 (E.D. Pa. Mar. 3, 2026).  That stay does not apply retroactively and cannot serve as a basis to require the City to return or destroy CWA's documents.

3

g.      The City is willing to return the documents produced by CWA to the City, without prejudice to the City's right to seek the same documents at a later date.  However, given CWA's propensity toward vindictive and harassing behavior, the City should not be required to disclose the identity of the parties who participated in the City's now-suspended request for proposal process.

**PRELIMINARY STATEMENT**

3.      This Court is familiar with the procedural background concerning the various motions and orders at issue in the Motion.  In lieu of repeating much of what is in the Motion, the City will instead respond to certain factual assertions made by CWA that require clarification or refutation.

**A. Act 73**

4.      As discussed in detail in the *Response of City of Chester to Motion by Chester Water Authority for Declaration That Automatic Stay Does Not Apply, or Alternatively, to Lift the Stay Relating to Pending State Court Appeal* [Bk. Dkt. No. 609], the CWA began its existence by the City and its residents being fleeced by political operatives.  *See* Bk. Dkt. No. 609 ¶¶ 4-6. History repeated itself in 2012, when the former Mayor of the City, then a Pennsylvania State Senator, surreptitiously guided legislation through the General Assembly that stole the City's control over the Board of CWA from the City for no compensation whatsoever to entrench his political party on the Board of CWA.  *See id.* ¶¶ 9-14.

5.      That legislation, known as "Act 73," increased the size of CWA's board of directors (the "Board") from five to nine members and divided the appointment of three members each among the City, Delaware County, and Chester County through an amendment to the Pennsylvania Municipal Authorities Act, 53 Pa. C.S. §§ 5601 *et seq.* (the "MAA").  *See id.* ¶ 11; *see also* 53 Pa.

C.S. § 5610(a.1). However, Act 73 was written in such a manner that it applied—and 14 years later continues to apply—to only one entity within the Commonwealth of Pennsylvania: CWA.

**B. The PA Appeal Decision**

6. In the PA Appeal Decision, the Pennsylvania Supreme Court held that the City does not have the unilateral right to dissolve CWA under section 5622 of the MAA due to the adoption of section 5610(a.1) of the MAA through Act 73. *See* 349 A.3d at 927.

7. Importantly, however, the Pennsylvania Supreme Court rejected CWA's oft-repeated theory that CWA's Board had to approve the dissolution of CWA under section 5622 of the MAA. *See id*. Rather, the City, Chester County and Delaware County have the authority to dissolve CWA under the MAA without CWA's consent. *See id.*

8. The Pennsylvania Supreme Court stated, in *dicta*, that the City does not have any ownership interest in the assets of CWA through its statutory right to join Chester County and Delaware County in dissolving CWA. *Id.* at 915. The City has never taken the position before this Court that it has any direct or indirect interest in the assets of CWA. Rather, the City asserted that its statutory rights under the MAA give rise to a contingent property interest that is, among other things, protected by the automatic stay. *See, e.g.*, Bk. Dkt. No. 609 at ¶ 49; Bk. Dkt. No. 679 at ¶ 47; Bk. Dkt. No. 633 at ¶¶ 18-19. The PA Appeal Decision does not address the City's actual position.

**C. Suspension of the RFP Process**

9. The Receiver has statutory authority to direct the sale of the City's assets. *See* 53 P.S. § 11701.706(a)(5). The Receiver also has the authority to require the City to implement a recovery plan, which includes a chapter 9 plan. *See id.* § 11701.706(a)(1) and (9), which contemplates the City undertaking a process to monetize the City's interest in CWA, among other

assets of the City (the "RFP Process"). The Pennsylvania General Assembly has vested the Receiver with the statutory authority to act on behalf of the City in this Chapter 9 Case and to direct the sale of the City's assets. *Id.* at § 11701.706(a)(9).

10. After filing the Plan, which described the RFP Process as a means of implementing the Plan, as required by section 1123(a)(5) of the Bankruptcy Code, the City issued a Request for Qualifications on November 20, 2024.

11. On May 2, 2025, the City issued a Request for Proposals for the Purchase, Lease, or Concession of Certain Water, Wastewater, and/or Stormwater Systems Assets.

12. Following the PA Opinion, the Receiver suspended the RFP Process. On January 23, 2026, the City terminated qualified bidders' access to the confidential data room and posted a notice on the Receiver's RFP website reflecting the suspension of the RFP Process. *See* https://www.chesterreceivership.com/water (last accessed March 13, 2026). The City has not yet determined whether it will utilize the RFP Process to dispose of its interests in the Wastewater and Stormwater Assets (as such terms are defined in the Plan).

### D. The Act 73 Litigation

13. The Receiver has concluded that Act 73 violates Article III, Section 32 of Pennsylvania's Constitution, which prohibits special legislation. *See* Pa. Const. art. III, § 32. Consequently, on March 13, 2026, the Receiver, on behalf of the City, commenced an action in the Commonwealth Court of Pennsylvania seeking to have Act 73 nullified. *See Kapoor* et al. *v. Delaware Cnty.* et al., No. 104 MD 2026 (Pa. Commw. Ct. Mar. 13, 2026) (the "Act 73 Litigation"). If the Act 73 Litigation is successful, the City will be restored to exclusive control over the Board of CWA and regain the exclusive power to dissolve CWA.

**E. The Stay Enforcement Orders**

14.     CWA appealed the Stay Enforcement Orders to the District Court.  *See Chester Water Auth. v. City of Chester, Pa. (In re City of Chester, Pa.)*, No. 25-CV-01114-MRP (E.D. Pa.). The District Court dismissed that appeal.  *See id.* at ECF 48-49.  CWA then appealed to the Third Circuit.  *Chester Water Auth. v. City of Chester, Pa. (In re City of Chester, Pa.)*, No. 25-2783 (3d Cir.).

15.     CWA argued that the Third Circuit should vacate the Stay Enforcement Orders on several grounds: (i) they violated the Tenth Amendment and Chapter 9 of the Bankruptcy Code; (ii) they violated section 541 of the Bankruptcy Code; (iii) they violated the First Amendment to the United States Constitution; and (iv) the Third Circuit should exercise mandamus jurisdiction to vacate the Stay Enforcement Orders.  *See* No. 25-2783 at 3d. Cir. ECF 27 pp. 31-50.

16.     Following the Appeal Decision, the City agreed that the Stay Enforcement Orders should be vacated and filed a motion with the Third Circuit seeking an order to that effect.  *See id.* at 3d. Cir. ECF 38-1.  Despite the City offering CWA precisely what it asked for, in its typical vexatious manner, CWA ***opposed*** the City's motion to vacate the Stay Enforcement Orders, seeking to obtain an advisory opinion from the Third Circuit on CWA's various constitutional and statutory theories.  *See id.* at 3d. Cir. ECF 42.

17.     On February 17, 2026, the Third Circuit dismissed CWA's appeal from the Stay Enforcement Orders and the District Court noted the same on its docket.  *See* No. 25-2783 at 3d. Cir. ECF 45; No. 25-1114 at Dist. Ct. ECF 53.   Thus, jurisdiction over the Stay Enforcement Orders is revested in this Court.

18.     On January 23, 2026, the City filed in this Court the *Debtor's Motion to Withdraw the Emergency Motion of Debtor, The City of Chester, for Order Enforcing the Automatic Stay*

7

*and Imposing Sanctions Against Chester Water Authority* [Bk. Dkt. No. 1002], seeking to withdraw the motion giving rise to the Stay Enforcement Orders.  Incredibly, CWA objected to that as well.  Bk. Dkt. No. 1005.  In the Motion, CWA purports to withdraw that objection, but has not done so on this Court's docket.  *See* Motion, ¶ 68.

19.     During a hearing before this Court on February 11, 2026, at which CWA's counsel was present, counsel for the City told this Court that the City agreed that the Stay Enforcement Orders should be vacated.  *See* Bk. Dkt. No. 1009 (Feb. 11, 2026 Hrg. Tr. 5:15-18).

20.     In short, there is no dispute that the Stay Enforcement Orders should be vacated and that this Court has jurisdiction to do so.  CWA could have simply asked the City to join it in requesting that this Court vacate the Stay Enforcement Orders.

**F.   The Production Order and Usage Order**

21.     CWA filed interlocutory appeals from the Production Order and Usage Order to the District Court.  *See Chester Water Auth. v. City of Chester, Pa. (In re City of Chester, Pa.)*, No. 25-01115-MRP (E.D. Pa.) (Production Order appeal) and *Chester Water Auth. v. City of Chester, Pa. (In re City of Chester, Pa.)*, No. 25-02136-MRP (E.D. Pa.) (Usage Order appeal).

22.     On March 3, 2026—the day after the Motion was filed—the District Court entered an order allowing CWA's interlocutory appeals from the Production Order and Usage Order and staying both orders pending appeal.  *See Chester Water Auth.*, 2026 WL 607528 at *10. The District Court will entertain briefing on CWA's spurious theories that the Tenth Amendment provides wholesale immunity against the application of the Bankruptcy Code to CWA and that sections 903 and 904 of the Bankruptcy Code apply to non-debtors, finding those theories "non-frivolous." *See id.* at *6.  However, this Court has rejected those theories [*see* Bk. Dkt. No. 688, ¶¶27-29; Bk. Dkt. No. 779 at 9:20-11:16], and those decisions remain the law of this bankruptcy

8

case unless and until they are reversed. *See, e.g.*, *Shovlin v. Klaas (In re Klaas)*, 548 B.R. 414, 421 (Bankr. W.D. Pa. 2016) ("The law of the case doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case.") (quoting *Pepper v. United States*, 562 U.S. 476, 507 (2011)). "A ruling remains law of the case until reversed on appeal." *Id.* (citing *Cowgill v. Raymark Indus., Inc.*, 832 F.2d 798, 802 (3d Cir. 1987)).[1]

23.     On March 13, 2026, counsel for the City asked counsel for CWA whether CWA intended to proceed with the appeals from the Production Order and Usage Order in light of its request to vacate those orders before this Court. *See* Exhibit 1. CWA's response was threefold.

  a. *First*, on March 14, 2026, counsel for CWA sent a letter insisting that the District Court's order allowing CWA's appeals from the Production Order and Usage Order to proceed is an adjudication on the merits of those appeals and that entry of a stay pending appeal has retroactive effect and requires the City to return the documents produced by CWA to the City. *See* Exhibit 2.

  b. *Second*, counsel for CWA confirmed that CWA intends to prosecute the appeals. *See* Exhibit 1.

  c. *Third*, CWA filed the Supplement, in which CWA again argues that the District Court's decision allowing CWA's appeal from the Production Order and Usage Order to proceed to merits briefing is an adjudication on the merits of those appeals, that this Court lacks jurisdiction to vacate either of those orders, but that this Court may nevertheless order the City to return CWA's documents despite lacking

---

[1] The City has consistently refuted CWA's Tenth Amendment and Bankruptcy Code Sections 903 and 904 arguments, which are contrary to controlling United States Supreme Court precedent and the plain language of the Bankruptcy Code. *See, e.g.,* Bankr. Dkt. No. 746 at ¶¶ 28-30; Bankr. Dkt. No. 747 at ¶¶ 52-58; No. 25-01114-MRP, Dist. Ct. ECF 31 at 19-26.

jurisdiction over the orders by which the City obtained those documents and the imposition of the stay pending appeal CWA asked for. *See generally* Supplement.

**G. The Reason CWA's Debt Was Downgraded and It Struggled to Refinance its Bonds**

24.     CWA once again regales this Court with its narrative regarding the impact of Moody's Ratings ("Moody's") downgrading CWA's debt. Motion ¶¶ 70-76. As it turns out, what CWA has repeatedly represented to this Court is false.

25.     On June 3, 2025, Moody's issued a rating action downgrading CWA's bond rating. The reason given for that action by Moody's was:

> The downgrade is driven by two broad factors: first is the decline in debt service coverage and liquidity caused by a contraction in usage by a major wholesale customer; it will require several years of rate increases for the authority to build its cash position to a level more comparable with peers. Second is the ongoing uncertainty surrounding the bankrupt City of Chester, PA's attempt to seize and monetize the authority's assets, as reference[d] in the City's filed Plan of Adjustment.

Bk. Dkt. No. 905-4 at 1.

26.     CWA consistently ignores the first factor identified by Moody's for its downgrade—CWA's debt service coverage and liquidity. Debt service coverage is the ratio of net operating income to total debt. As CWA repeats *ad nauseum* in every paper it files, the City has no involvement in managing CWA's revenue or debt. *See, e.g.*, Motion at ¶¶4-6. Thus, if CWA's coverage ratio is too low, that is a problem of CWA's own making.

27.     Furthermore, CWA has repeatedly told this Court that it struggled to refinance its "current bonds" in 2024 and 2025, and referenced the bonds it issued in 2014 as its "current bonds," suggesting that CWA's 2014 bonds ("2014 Bonds") are the "current" bonds CWA struggled to refinance. *See* Motion at ¶¶6 and 71; Bk. Dkt. No. 905 at ¶¶8 and 38 (same). That is not true.

28.    In fact, the 2014 Bonds are long-term bonds that mature over a period of 25 years. *See* Bk. Dkt. No. 608-1 at p. 3 of 61.  The interest rate on the 2014 Bonds was 3% for those maturing in 2015 and 5% for those maturing thereafter.  *Id.*  CWA was not attempting to refinance the 2014 Bonds in 2024.

29.    Rather, in 2019, CWA issued $28 million in bonds (the "2019 Bonds") with a maturity date of December 1, 2024.  *See* Chester Water Authority, Resolution, 4 (Apr. 24, 2025) [the "Resolution"].[2]  CWA then issued $42,820,000 in 2022 Water Revenue Bonds ("2022 Bonds") to refinance the 2019 Bonds (and avoid paying the $24,845,000 balloon payment due December 1, 2024 thereunder), and to fund CWA's capital improvement program, with a maturity date of December 1, 2026.  *Id.* at 5.  The 2022 Bonds, issued March 17, 2022, were again short-term debt with an interest rate of 3% and a balloon payment of $40,140,000 due December 1, 2026. *See* Chester Water Authority, Financial Statements, December 31, 2024 and 2023, at 34;[3] Resolution at 5.  The 2019 Bonds and the 2022 Bonds were issued prior to the commencement of this bankruptcy case.

30.    It is the 2022 Bonds that CWA struggled to refinance in 2024, even prior to the Moody's downgrade.  Resolution at 5-6.  While the Moody's downgrade impacted CWA's ability to refinance its debt, it was CWA's decision to obtain short term debt that led to CWA having to refinance $42.82 million in debt in the first place.  Had CWA issued long-term debt to fund its maintenance and capital improvements—as any responsible municipal water authority would have

---

[2] *Available at* https://chesterwater.com/cwa-financing-resolution-adopted-at-the-april-242025-board-meeting/.  *See also* Liz Farmer, The price of a water fight (Dec. 21, 2025), *available at* https://lizfarmer.substack.com/p/the-price-of-a-water-fight;  Liz  Farmer,  *Borrow  now,  pay  later* (Dec.  30,  2025),  *available  at* https://lizfarmer.substack.com/p/borrow-now-pay-later.

[3] *Available* at https://emma.msrb.org/P21929626.pdf.

done—it would not have needed to refinance its short-term debt in the middle of the protracted litigation CWA initiated.

31.     Finally, the interest rate environment in 2022, when CWA issued the 2022 Bonds, was not the same as in 2025, when CWA had to refinance those bonds.  The federal discount rate on March 17, 2022 was 0.50%; it was 4.50% when CWA refinanced the 2022 Bonds.[4]  The fact that the risk-free interest rate was nine times higher in 2025 than it was in 2022 likely has as much to do with CWA's interest rate doubling as the Moody's downgrade.

32.     In short, CWA has not been candid with this Court on multiple occasions (or in its public relations campaign) regarding the reasons Moody's downgraded its debt, why CWA had to refinance its debt, or the debt being refinanced.

**H.  The Mediation Process.**

33.     The City and CWA engaged in mediation under the Mediation Order between December of 2022 and November of 2024, when CWA unilaterally terminated its participation in Court-ordered mediation.  Mediation with CWA proved to be a colossal waste of the City's time and resources, largely because CWA had no intention of engaging in the process in good faith.

34.     The Mediation Order encompasses certain "Mediation Issues," including "Monetization of the Water Assets," referring to, among other things, CWA's assets.  *See* Bk. Dkt. No. 16 at ¶18(a).  It is possible that the City will engage in mediation with parties other than CWA regarding the monetization of CWA's assets under the Mediation Order.

---

[4]     *See* Forbes, Federal Funds Rate History 1990 to 2026 (Dec. 10, 2025), *available at* https://www.forbes.com/advisor/investing/fed-funds-rate-history/ (discount rate for period from between 12/18/2024 through 9/17/25).

### I.   The City Does Not Intend to Pursue Access to CWA's Property

35.     As CWA acknowledges in the Motion, the City does not intend to pursue access to CWA's property under the Access Order.  Motion ¶¶ 87 and 99.  There is no reason to vacate the Access Order.

### ARGUMENT

## I.  The Court Cannot Revise the Plan at the Behest of CWA.

36.     Although the City's intended withdrawal of the Plan renders CWA's request that this Court strike any reference to CWA from the Plan moot, the City must point out the impropriety of that request.

37.     Under chapter 9 of the Bankruptcy Code, the City has the exclusive authority to propose a chapter 9 plan. *See* 11 U.S.C. § 941; *In re City of Stockton, Cal.*, 478 B.R. 8, 20 (Bankr. E.D. Cal. 2012) ("only the municipality can propose a plan of adjustment").  Indeed, section 1121 of the Bankruptcy Code, which permits parties other than the debtor to file a chapter 11 plan under certain circumstances, is not incorporated into chapter 9 of the Bankruptcy Code. *See* 11 U.S.C. §§ 901(a) and 1121(c).  CWA's attempt to have this Court blue pencil the Plan at its behest is a flagrant violation of the City's exclusive right to propose a plan.

38.     Moreover, section 942 of the Bankruptcy Code provides that "***the debtor*** may modify the plan at any time before confirmation."  11 U.S.C. § 942 (emphasis supplied).  There is no room in that statutory provision for CWA to seek to have the Plan modified.  Nor can this Court exercise its authority under section 105(a) of the Bankruptcy Code in a manner inconsistent with express provisions of the Bankruptcy Code, such as section 942. *See In re Bora Bora, Inc.*, 424 B.R. 17, 25 (Bankr. D.P.R. 2010) ("§ 105(a) may not be invoked 'where the result of its application would be inconsistent with any other Code provision or it would alter other substantive rights set

13

forth in the Code.'") (quoting *In re Nosek*, 544 F.3d 34, 43 (1st Cir. 2008)); *In re VII Holdings Co.*, 362 B.R. 663, 668-69 (Bankr. D. Del. 2007) (rejecting request for fees by non-petitioning creditors under section 105(a) of the Bankruptcy Code as inconsistent with section 303(i) of the Bankruptcy Code).

39. Even in the chapter 11 context, bankruptcy courts recognize that they do not have authority to blue pencil a debtor's proposed plan due to the exclusivity afforded chapter 11 debtors under section 1121 of the Bankruptcy Code. *See, e.g.*, *In re AIO US, Inc.*, No. 24-11836 (CTG), 2025 WL 2426380, at *23 (Bankr. D. Del. Aug. 21, 2025) ("[T]he Court notes that it does not believe it is entitled to pick up its own pen to mark up the plan so that it reads the way the Court might prefer. Section 1121 of the Bankruptcy Code identifies who may file a plan, and the bankruptcy judge is not among the listed parties."). The same rationale applies under chapter 9 of the Bankruptcy Code due to section 942.

## II. CWA Deprived This Court of Jurisdiction Over the Production Order and Usage Order, Including Ordering the City to Return CWA's Documents.

40. As CWA now concedes in the Supplement, this Court lacks jurisdiction to vacate either the Usage Order or the Production Order. *See* Supplement ¶ 30.

41. The divestment doctrine applies with equal force to interlocutory appeals. *See Coinbase, Inc. v. Bielski*, 599 U.S. 736, 741 (2023) ("An appeal, including an interlocutory appeal, 'divests the district court of its control over those aspects of the case involved in the appeal.'") (quoting *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982)). "Ordinarily, filing a notice of appeal divests a lower court of jurisdiction over the subject matter of the appeal in order to avoid confusion and maintain the integrity of the appeal process." *Lynch v. Rivera (In re Rivera)*, 580 B.R. 432, 438 (Bankr. E.D. Pa. 2017) (citing *Claridge Associates, LLC v. Schepis (In re Pursuit Cap. Mgmt.*, 2017 WL 2537234, at *7 (Bankr. D. Del. June 9, 2017); *Pines at Edgewood*

14

*Ctr. v. Flash Island, Inc. (In re Whispering Pines Estates, Inc.)*, 369 B.R. 752, 757 (1st Cir. BAP 2007) (citing *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58, 103 S. Ct. 400, 74 L.Ed.2d 225 (1982)); *Liscinki v. Cambridge Mgmt. Grp. (In re Trimble)*, 2008 WL 782581, at *2 (Bankr. D.N.J. Mar. 18, 2008)). "Subject matter of the appeal includes all matters that can directly affect the outcome of an appeal." *Id.* (citation omitted). "[A] bankruptcy court must not exercise jurisdiction over issues which would 'so impact the appeal as to circumvent the appeal process.'" *Id.* (citation omitted). "For example, a bankruptcy court cannot alter or modify its prior order while that order is pending on appeal." *Id.* (citation omitted). "[T]he test is a functional one: 'once an appeal is pending, it is imperative that a lower court not exercise jurisdiction over those issues which, although not themselves expressly on appeal, nevertheless so impact the appeal so as to interfere with or effectively circumvent the appeal process.'" *G-I Holdings*, 568 B.R. at 763 (quoting *Bank of N.Y. Tr. Co. v. Pac. Lumber Co. (In re Scopac)*, 624 F.3d 274, 280 (5th Cir. 2011)).

42.     The entire point of CWA's appeal from the Production Order and Usage Order is to recover the documents CWA has produced to the City and the City has provided to certain third parties. Ordering the City to return those documents would moot CWA's appeal from both of those orders, and therefore this Court cannot do so under the divestment doctrine. *See, e.g.*, *In re Nobilis Health Corp.*, No. 19-12264 (CTG), 2025 WL 1936671, at *1 (Bankr. D. Del. Jul. 14, 2025) (bankruptcy court could not approve settlements under Bankruptcy Rule 9019 where doing so would moot appeals pending before district court). CWA has chosen the District Court as the forum in which it intends to address the Production Order, Usage Order, and their consequences. It cannot play both sides of the jurisdictional fence.

### III. The District Court's Decision Allowing CWA's Interlocutory Appeals from the Usage Order and Production Order Is Not an Adjudication on the Merits.

43.     CWA apparently believes that the District Court's decision allowing its interlocutory appeal from the Production Order and Usage Order to proceed to briefing is of some precedential value.  *See* Exhibit 2 ("Judge Perez's decision was more than procedural . . . ."); Supplement at ¶¶ 7-23.  The District Court itself stated that it was not resolving the appeals.  *See In re City of Chester*, 2026 WL 607528, at *8 ("At the stay stage, the Court does not resolve the appeals.").  The District Court simply applied the standard for deciding whether to allow an interlocutory appeal, through which it found that CWA had presented a controlling issue of law as to which there is substantial ground for a difference of opinion, the resolution of which could materially advance the underlying litigation. *See id.* at *3-8.  CWA conveniently ignores language in the District Court's decision contradicting CWA's narrative, such as "[i]f CWA's legal objections have merit . . . ." *Id.* at *7.  The District Court has agreed to hear an interlocutory appeal; CWA's victory lap is wildly premature.

### IV. The District Court's Stay Pending Appeal Applies from When It Was Entered.

44.     CWA also seems to believe that the District Court's entry of a stay pending appeal regarding the Production Order and Usage Order has retroactive effect and requires the City to return the documents produced by CWA or shared by the City with third parties.  *See* Exhibit 2 (insisting that City must return documents to CWA due to stay pending appeal).  Again, CWA is wrong.  A stay pending appeal applies from when it is entered, not retroactively, and does not invalidate acts undertaken in compliance with the order prior to entry of the stay.  *See, e.g., In re Ziebarth*, No. 88–05027, 1996 WL 33367058, at *2 (Bankr. D.N.D. Oct. 11, 1996) (stay pending appeal does not apply retroactively).  *See also In re Verges*, No. CIV. A. 92-80, 1992 WL 77791, at *7 (E.D. La. Apr. 8, 1992) ("a stay is not retroactive and does not invalidate what was lawfully

16

done before the stay"); *Hardwick v. Clarke*, No. CIV. S-06-672 LKK, 2010 WL 5437196, at *3 n.1 (E.D. Cal. Dec. 27, 2010) ("A stay pending appeal should preserve the status quo. However, a stay generally does not apply retroactively to undo any execution of an order that has occurred before the stay is granted."). Nothing in the District Court's memorandum opinion or order renders the stay pending appeal retroactive.

## V.   The City Has Already Agreed to the Stay Enforcement Orders Being Vacated.

45.    The City argued to the Third Circuit, and acknowledged before this Court, that the Stay Enforcement Orders should be vacated. There was no reason for CWA to spend multiple paragraphs constructing a legal argument in support of vacating orders that the City agrees should be vacated. *See* Motion ¶¶ 100-06. Unlike the CWA before the Third Circuit, the City will not advocate for vacating the Stay Enforcement Orders and then say "never mind" so it can fish for an advisory opinion from this or any other court.

## VI.   There Is No Reason to Vacate the Access Order.

46.    In light of the fact that the City has agreed that it will not seek access to CWA's property under the Access Order, there is no reason to vacate that order. If the Court does so, CWA will inevitably argue that this Court vacating the Access Order in some way absolves CWA's attorneys, Clark Hill, from the sanctions imposed by this Court due to CWA's willful and bad faith refusal to comply with the Production Order. *See* Bankr. D.I. 927 (the "Sanctions Order"). Such an argument would be entirely in keeping with the arguments Clark Hill has already made before the District Court that the Appeal Decision and the District Court's decision granting leave to appeal the interlocutory Production Order and Usage Order justify reversing the Sanctions Order. *See Clark Hill, P.C. v. City of Chester, Pa. (In re City of Chester, Pa.)*, No. 25-06339-MRP (E.D.

17

Pa.) at ECF 9, pp. 47-48 and ECF 10.  In other words, CWA's request to vacate the Access Order appears to be a setup.

47.     If this Court does vacate the Access Order, it should make clear that in doing so the Court does not intend to impair the Sanctions Order and that the Sanctions Order was compensatory in nature, not corrective or coercive.  *See, e.g.*, *Petroleos Mexicanos v. Crawford Enters., Inc.*, 826 F.2d 392, 400 (5th Cir. 1987) ("If the civil contempt proceeding is coercive in nature, the general rule is that it is mooted when the proceeding out of which it arises is terminated. If, however, the civil contempt proceeding is compensatory in nature, the termination of the underlying action out of which the contempt hearing arose does not moot the contempt proceeding.").  *See also Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395-96 (1990) (court may impose sanctions under Federal Rule 11 even after a stipulation of dismissal is filed under Federal Rule 41).  *Cf. United States v. Harris*, 582 F.3d 512, 516 (3d Cir. 2009) (recognizing that even coercive contempt order can survive dismissal of underlying proceeding under appropriate circumstances).   Otherwise, Clark Hill will proclaim absolution for aiding and abetting CWA in flouting the Production Order for five months through the vacatur of the Access Order.

**VII.  The City Defers to this Court Regarding Removal of CWA from the Mediation Order.**

48.     This Court has inherent authority to require parties to mediate disputes.  *See, e.g.*, *In re Sosa*, 443 B.R. 263, 267 (Bankr. D.R.I. 2011) (district courts have inherent powers to order non-consensual mediation) (citing *In re Atl. Pipe Corp.*, 304 F.3d 135, 143 (1st Cir. 2002) and *Link v. Wabash Railroad Co.*, 370 U.S. 626, 630–31 (1962)); *In re Navarro*, No. 23-90010-B-13, 2023 WL 5007998, at *5 (Bankr. E.D. Cal. Aug. 4, 2023) ("Federal courts have substantial authority and broad discretion under . . . their inherent authority to order a mandatory settlement conference.").  The Local Rules of this Court recognize this authority.  *See* LBR 9019-2.

49.     The City wasted nearly two years engaged in mediation with CWA and harbors no illusions that CWA will ever engage in mediation on any issue in good faith.  Any disputes between the City and CWA can only be resolved through litigation.  Moreover, under the PA Appeal Decision, the relevant parties in any negotiations regarding the future of CWA are Chester County and Delaware County, not the Board of CWA.

50.     Thus, the City defers to this Court's discretion as to whether CWA is removed from the Mediation Order.  However, if CWA's request is granted, any order granting that request should bar CWA from seeking to inject itself into any future mediation regarding CWA or its assets.

**VII. The City Will Return CWA's Documents, But Should Not Be Required to Disclose the Identities of Those Who Participated in the RFP Process.**

51.     Because the City has shut down the RFP Process and terminated third-party access to documents provided CWA, the City has decided to return the documents produced by CWA to the City or destroy them.  If the City needs documents from CWA in the future, it will file another motion under Bankruptcy Rule 2004.  The Official Committee of Retirees also has access to CWA's documents and should weigh in on its willingness to do the same.  However, as discussed above, CWA's appeal of the Production Order and Usage Order has deprived this Court of jurisdiction to order the City to return or destroy the documents produced by CWA.

52.     Additionally, requiring the City to disclose the identity of those recipients is an invitation to allow CWA to harass those entities as it attempted to do with the right to know requests that led to the Stay Enforcement Orders and as it has done with the Receiver, his predecessor, and professionals retained by the City through its phony public interest organization, SaveCWA.  *See* Bk. Dkt. No. 679-4.

19

### CONCLUSION

53.     In light of the foregoing, the City requests that:

a.  the Court vacate the Stay Enforcement Orders [Bk. Dkt. Nos. 692 and 713];

b.  the Court deny the Motion to vacate the Production Order [Bk. Dkt. No. 688] and Usage Order [Bk. Dkt. No. 782] because this Court lacks jurisdiction over those orders;

c.  the Court deny the Motion to vacate the Access Order [Bk. Dkt. No. 859];

d.  if the Court removes CWA from the Mediation Order, the Court prohibits CWA from seeking to participate in mediation in this Chapter 9 Case at any time in the future; and

e.  the Court deny CWA's request for an order compelling the City to return the documents produced by CWA or certify the destruction of documents received by third parties because doing so would moot CWA's appeals from the Production Order and Usage Order, in contravention of the divestment doctrine.

Dated: March 16, 2026                    Respectfully submitted,


                                         /s/ Tobey M. Daluz
                                         Tobey M. Daluz (PA Bar No. 60685)
                                         Margaret A. Vesper (PA Bar No. 329793)
                                         Ballard Spahr LLP
                                         1735 Market Street, 51st Floor
                                         Philadelphia, PA 19103
                                         Tel: (215) 864-8148
                                         Email:  daluzt@ballardspahr.com
                                                 vesperm@ballardspahr.com

                                             -and-

                                         Matthew G. Summers*
                                         Laurel D. Roglen*
                                         Nicholas J. Brannick*
                                         Ballard Spahr LLP

222 Delaware Avenue, 10th Floor
Wilmington, DE 19801-3034
Tel: (302) 252-4465
Email: summersm@ballardspahr.com
        roglenl@ballardspahr.com
        brannickn@ballardspahr.com

(*admitted *pro hac vice*)

*Attorneys for the City of Chester*