**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: | : | Chapter 9 |
| | : | |
| CITY OF CHESTER, PENNSYLVANIA, | : | Case No. 22-13032 |
| | : | |
| Debtor. | : | Judge Ashely M. Chan |
| | : | |
| | : | **Re: Docket No. 1010** |

**OBJECTION OF CITY OF CHESTER TO CHESTER WATER AUTHORITY'S
MOTION TO PROCEED PURSUANT TO THE PENNSYLVANIA SUPREME
COURT'S REMAND ORDER AND FOR A DECLARATION THAT THE
AUTOMATIC STAY DOES NOT APPLY, OR, IN THE ALTERNATIVE, TO LIFT
THE AUTOMATIC STAY FOR CAUSE**

The City of Chester (the "City" or "Debtor"), as the debtor in the above-captioned chapter

9 case (the "Chapter 9 Case"), through undersigned counsel, objects (this "Objection") to the

*Chester Water Authority's Motion to Proceed Pursuant to the Pennsylvania Supreme Court's*

*Remand Order and for a Declaration that the Automatic Stay Does Not Apply, or in the*

*Alternative, to Lift the Stay For Cause* [Docket No. 1010] (the "Stay Relief Motion") filed by the

Chester Water Authority ("CWA") on March 2, 2026.

## I.   Preliminary Statement[1]

1.      The legal landscape has unquestionably changed in light of the Pennsylvania

Supreme Court's recent decision.  While the City no longer possesses the *unilateral* right to

dissolve the CWA under current Pennsylvania law—which was the contingent interest this Court

had previously found to be property of the Debtor protected by the automatic stay—the

Pennsylvania Supreme Court held that the City, Delaware County, and Chester County hold the

right to dissolve CWA without the input of CWA's board.  The City has also filed a lawsuit

---

[1] Capitalized terms used but not defined in this Preliminary Statement have the meaning ascribed to them below.

challenging the constitutionality of Act 73, the legislation that stripped the City of its control of CWA, the authority the City created and unquestionably controlled for more than 70 years. If successful, the invalidation of Act 73 will return to the City the unilateral power to dissolve CWA. Thus, based on both the present state of Pennsylvania law and the law once aligned with the Pennsylvania Constitution, the City still holds a contingent right that is property of the Debtor and remains subject to the protection of the automatic stay under Section 362(a)(3).

2.      Additionally, the Trust Petition, which CWA seeks authority to resume, is an action against the Debtor stayed by Section 362(a)(1). CWA's reliance on the *in rem* nature and lack of a named defendant in the Trust Petition to conclude it is not subject to Section 362(a)(1) ignores the broad interpretation of what is a "claim" against a debtor for purposes of the automatic stay. And CWA asks this Court to ignore the true nature of that action: an unabashed attempt to move the Water Assets into a trust to eviscerate the City's existing statutory right (along with Delaware County and Chester County) to dissolve CWA and convey the Water Assets.

3.      CWA has not—and cannot—make a *prima facie* case that cause exists to lift the stay as the balance of hardships weigh decidedly in the City's favor. CWA has failed to articulate any harm that will arise if the Trust Petition cannot immediately proceed, whereas if the stay is lifted and CWA diverts its assets into a Trust, the City's rights, as recently determined by the Pennsylvania Supreme Court or as may be restored based on pending litigation regarding Act 73, will be rendered worthless.

4.      For all of these reasons, the Stay Relief Motion should be denied.

2

## II.      Factual Background

**A.  The Trust Proceeding—CWA's Efforts to Ring-Fence the Water Assets.**

5.      In May 2017, Aqua Pennsylvania, Inc. ("Aqua") presented CWA with an unsolicited offer to purchase the assets managed by CWA (the "Water Assets") for $320 million, which was rejected.

6.      After Aqua made its offer, the City informed CWA that—given the City's statutory right to repossess the Water Assets and dissolve CWA pursuant to the Pennsylvania Municipal Authorities Act, 53 Pa. C.S. §§ 5601 *et seq.* (the "MAA")—the City was exploring monetizing the Water Assets as a means to resolve its thirty-year tenure under the Pennsylvania Municipalities Financial Recovery Act, Act of 1987, P.L. 246, No. 47, 53 P.S. §§ 11701 *et seq.* ("Act 47").

7.      In March 2018, the City and CWA entered into a standstill agreement as they attempted to reach a consensual resolution regarding the Water Assets.  *See Declaration of Vijay Kapoor in Support of the City of Chester, Pennsylvania's Statement of Qualifications Pursuant to Section 109(c) of the Bankruptcy Code and First Day Pleadings* ("Kapoor Decl."), Docket No. 6, ¶ 36.

8.      In January 2019, before the expiration of this standstill agreement, CWA proposed a settlement consisting of a $60 million payment to the City and transfer of the Water Assets to a trust for 40 years, during which time the Water Assets would be held in trust and unable to be sold.  The City rejected CWA's proposed settlement.  *Id.* at ¶ 37.

9.      Following the City's rejection of this proposal, in March 2019, CWA filed a petition (the "Trust Petition") in the Orphan's Court Division ("Orphan's Court") of the Delaware

County Court of Common Pleas ("CCP") nevertheless seeking approval of the transfer of virtually all Water Assets to a trust for 40 years with no compensation to the City (the "Trust Litigation").

10.     The Trust Litigation was CWA's attempt to insulate the Water Assets so the City could not exercise its rights under the MAA—the same result that CWA sought under its rejected settlement, though now under the guise of the Environmental Rights Amendment to the Pennsylvania Constitution. *See Brief of Appellee Chester Water Authority*, *In re: Chester Water Authority Trust*, 489 CD 2020 *et al.*, 2020 WL 12309632 at *24 (Pa. Commw. Ct. Oct. 5. 2020) (describing CWA's board's vote in support of the Trust Petition, "[n]ot only has this board failed to support the City's efforts to swoop in and attempt to 'maintain' or 'operate' the project, it has voted *unanimously* to continue the Authority's operations and, in preservation thereof, transfer the Authority's assets into trust").  Notably, the Commonwealth of Pennsylvania, Department of Environmental Protection, has stated before this Court that CWA's infrastructure assets are ***not*** public natural resources protected by the Pennsylvania Constitution's Environmental Rights Amendment (Article I, Section 27) and are "not subject to private public trust principles." *See* Docket No. 611, ¶¶26, 29.  The Environmental Rights Amendment was the theory CWA concocted to veil its real motivation for seeking the Trust Petition—to deprive the City of its rights in the Water Assets.  Only now, in this most recent Stay Relief Motion does CWA finally admit its true motivation for pursuing the Trust Litigation: "[a]bsent stay relief, the Debtor will be free to attempt further legal challenges to the MAA [or] lobby to amend the statute."  Stay Relief Motion at ¶ 93.  In other words, because the City still has rights, CWA needs to proceed with the Trust Litigation, which seeks to eviscerate the City's rights under the MAA—and is therefore an action against the City's property interests under Section 362(a).

11.    On June 19, 2019, the City appeared in the Trust Litigation and filed preliminary objections to the Trust Petition and commenced a new matter that sought declaratory relief.

12.    On June 12, 2019, while the Trust Litigation proceeded, the City authorized a request for proposals for acquisition of the Water Assets (the "2019 RFP").  The 2019 RFP resulted in three proposals from Aqua America, Pennsylvania American Water, and CWA itself.

13.    In response to the 2019 RFP, in June 2019, CWA filed a complaint in the CCP against the City and Aqua to preclude the City from pursuing a sale the Water Assets.

14.    In July 2019, the City commenced an action against CWA seeking (a) a declaratory judgment that the City may reclaim and sell the Water Assets, and (b) an injunction preventing CWA from interfering with any sale of the Water Assets (the "Declaratory Judgment Action").

15.    In February 2020, the City and CWA reached a stipulation that was entered as the Status Quo Order by the CCP, Orphan's Court Division, on February 3, 2020 (the "Status Quo Order").

16.    The Status Quo Order precludes the City from:

> taking any ***final action***, purportedly under the Municipality Authorities Act, the Pa. Public Utility Code, the Pa. Safe Drinking Water Act, or any other law or regulation to terminate, sell, transfer, operate, dissolve, or dispose of [CWA] or its assets, including but not limited to any actions under 53 Pa. C.S. §§ 5607, 5619 or 5622. By way of example, the City may not: (1) by resolution, ordinance, or other formal act, signify its desire to acquire [CWA], or any projects or assets thereof in a manner that triggers 53 Pa. C.S. § 5622, (2) direct [CWA] to transfer any projects or assets, (3) direct [CWA] to discharge any bonds or debt, (4) direct [CWA] to terminate or dissolve, or (5) file for Public Utility Committee approval of rates or transactions.

Status Quo Order, at ¶ 1 (emphasis added).

17.     However, the Status Quo Order contains a carve-out expressly stating it did not prohibit the City from "engaging in a bid process" or "taking such other actions consistent with the restrictions set forth [in the Status Quo Order] relating to causing a transfer of [the Water Assets]." *Id.*, at ¶ 4.

18.     In accordance with the terms of the mutually agreed Status Quo Order, the City issued another request for proposals on February 12, 2020 (the "2020 RFP").  Just one month after agreeing to an order permitting such a bid process, on March 13, 2020, the CWA filed a new action in CCP seeking an injunction to preclude the City from pursuing a sale.  *Chester Water Authority v. City of Chester*, CV-2020-002566 (Del. Cty. C.C.P.).

19.     On April 24, 2020, the CCP issued orders in both the Trust Litigation and Declaratory Judgment Action, holding that the City could not repossess and sell the Water Assets without the agreement of Chester and Delaware Counties, and requiring a factual hearing to determine whether CWA could place the Water Assets into a trust.  It also certified the following question for immediate appeal to the Commonwealth Court: "Whether the 2012 amendments to the MAA, establishing the City of Chester, Chester County and Delaware County as the governing body of the (Authority), require that any conveyance of the Authority's assets pursuant to the MAA be conducted and authorized by the governing body rather than solely by the City of Chester?"  The City and Aqua appealed to the Commonwealth Court of Pennsylvania (the "Commonwealth Court").

20.     The City and CWA have eight appeals pending in the Commonwealth Court (in addition to those that were further appealed to the Pennsylvania Supreme Court), all of which are stayed by the Status Quo Order.  Status Quo Order, at ¶ 7.  The Commonwealth Court also directed that "[a]ll proceedings in this matter before the Delaware CCP are stayed pending

resolution of [these] appeals" in its June 24, 2020 *per curiam* Order—staying an additional five CCP actions.

**B.  The MAA and the Right to Dissolve the CWA.**

21.     The MAA's provisions are at the center of the litigation storm between the City and CWA—including those sections that were surreptitiously added to the MAA in 2012 to wrest control over CWA's board from the City.

22.     From its creation by the City until 2012, CWA was governed by a board appointed entirely by the City. *See In re Chester Water Auth. Tr.*, 263 A.3d 689, 692 (Pa. Commw. Ct. 2021) [*Chester Water*].  In 2012, the Pennsylvania General Assembly amended section 5610 of the MAA to expand CWA's board and to allow each of the City, Delaware County, and Chester County to appoint three members to the board. *Id.*  Under section 5622(a) of the MAA, the City had the right to dissolve CWA and take possession of its assets, provided the City assumes CWA's liabilities. *See id.* (quoting 53 Pa. C.S. § 5622(a)).

23.     As described herein (and extensively briefed elsewhere), the City and CWA have been litigating the City's right to dissolve CWA under the MAA since 2019. *See, e.g.*, Bankr. ECF 4 at ¶¶ 9-12; No. 2:25-CV-01114-MRP, ECF 31 at 5-8.  That litigation culminated in the Commonwealth Court's *Chester Water* decision that reaffirmed 50 years of precedent holding that the City has the exclusive right to dissolve CWA under the MAA. *See generally Chester Water*, 263 A.3d at 695-703.  CWA appealed the *Chester Water* decision to the Pennsylvania Supreme Court.

24.     On November 20, 2024, this Court entered an order approving a consensual stipulation between the City and CWA lifting the automatic stay solely to the extent necessary to allow the appeal of the *Chester Water* decision to proceed.  *See* Docket No. 629.   The

7

Pennsylvania Supreme Court heard oral argument in the Appeal on May 14, 2025. Additionally, the order provided that "no party shall commence, litigate, or prosecute any further court proceedings related to the . . . [a]ppeal, including but not limited to remand proceedings." *Id.*

25.     On January 21, 2026, the Pennsylvania Supreme Court issued its ruling. *In re Chester Water Auth. Tr.*, 349 A.3d 892 (Pa. 2026) (the "PA Opinion"). First, the Pennsylvania Supreme Court soundly rejected CWA's argument that the 2012 amendment to the MAA and the Pennsylvania Supreme Court's prior ruling in *Burke v. N. Huntingdon Twp. Mun. Auth.* vested the CWA's board with the sole power to authorize a transfer of the CWA's projects, holding that "an authority does not itself play a role in the decision to initiate a Section 5622(a) conveyance." PA Opinion at 922. The Court also rejected the Commonwealth Court's holding that Section 5622(1) of the MAA, giving the City the unilateral right as the incorporating municipality to dissolve the CWA and convey its projects, was not impacted by Act 73's addition of Section 5610(a.1). *Id.* at 923, 926. Instead, the Pennsylvania Supreme Court held that following the 2012 amendment to the MAA, the "City, Chester County, and Delaware County are now the 'proper authorities' that 'may by appropriate resolution or ordinance' wield Section 5622(a)'s conveyance power." *Id.* at 927.

26.     Based upon this ruling, the Pennsylvania Supreme Court noted that, although the PA Opinion resolved all issues in the City's Declaratory Judgment Action, it did not answer all remaining issues in the Trust Litigation, so the PA Opinion remanded the matter to Orphan's Court for further proceedings with respect to the Trust Petition. *Id.* The PA Opinion makes no mention of the automatic stay, nor does it include any findings or conclusions as to whether the automatic stay would apply to the Trust Litigation. *See generally id.* Nor did the PA Opinion

8

require CWA to take any action in the Trust Litigation, and the Orphan's Court has similarly failed to compel any action by CWA in the nearly two months since the PA Opinion.

27.    CWA relies heavily upon a line of dicta excerpted from the PA Opinion, without context, to persuade this Court that "the Debtor holds no property interest in the CWA or its assets under the MAA." Stay Relief Motion at 3.  The Pennsylvania Supreme Court's actual statement, was far more narrow:

> Consequently, we firmly reject arguments suggesting directly or by analogy that City has vested property rights associated with its relationship with CWA.  Under Section 5622(a), City either has, or does not have, the power to force the conveyance of CWA's projects.[21]
>
> [21] Even when a municipality is empowered to force the conveyance of an authority's projects, significant limitations are placed upon the municipality's use of the assets associated with those projects.  See 53 Pa.C.S. § 5622(d).  Such limitations are incongruent with ownership.

*Id.* at 915.

28.    The City has never argued, and this Court has never found, that the City has a vested ownership interest in CWA's projects.  Instead, the City has maintained, and continues to maintain, that it has a contingent property interest based on its statutory right to dissolve CWA— a right it now shares with Delaware and Chester counties.

**C.  Suspension of the RFP Process.**

29.    Under Act 47, the Receiver has statutory authority to direct the sale of the City's assets.  *See* 53 P.S. § 11701.706(a)(5).  And the Receiver has the authority to require the City to implement the recovery plan (*see id.* § 11701.706(a)(1)), which contemplates the City undertaking a process to monetize the Water assets, among other assets of the City (the "RFP Process").  *See* First Amended Recovery Plan at ASM01.  The Pennsylvania General Assembly

9

has vested the Receiver with the statutory authority to act on behalf of the City in this Chapter 9

Case and to direct the sale of the City's assets.

30.     After filing the *Plan for the Adjustment of Debts of the City of Chester* on August

26, 2024 (the "Plan"), which described the RFP Process as a means of implementing the Plan, as

required Section 1123(a)(5), the City issued a Request for Qualifications on November 20, 2024.

31.     On May 2, 2025, the City issued a Request for Proposals for the Purchase, Lease,

or Concession of Certain Water, Wastewater, and/or Stormwater Systems Assets.

32.     The RFP Process operated separately from the Plan and was not tied to approval

of the Plan—regarding which the City has not filed a disclosure statement or solicited votes.  *See*

11 U.S.C. §§ 901(a) and 1125.

33.     Following the PA Opinion, the Receiver suspended the RFP Process.  On January

23, 2026, the City terminated qualified bidders' access to the confidential data room and posted

a notice on the Receiver's RFP website reflecting the suspension of the RFP Process.  *See*

https://www.chesterreceivership.com/water (last accessed March 13, 2026).  The City has not yet

determined whether it will utilize the RFP Process to dispose of its interests in the Wastewater

and Stormwater Assets (as such terms are defined in the Plan).

**D.  Act 73 Litigation.**

34.     As discussed in detail in the *Response of City of Chester to Motion by Chester*

*Water Authority for Declaration That Automatic Stay Does Not Apply, or Alternatively, to Lift the*

*Stay Relating to Pending State Court Appeal* [Bankr. ECF 609], the CWA began its existence with

the City and its residents being fleeced by political operatives.  *See* Bankr. ECF 609 ¶¶ 4-6.  History

repeated itself in 2012, when the former Mayor of the City, then a Pennsylvania State Senator,

surreptitiously guided legislation through the General Assembly that stole the City's control over

the Board of CWA from the City for no compensation whatsoever to entrench his political party on the Board of CWA. *See id.* ¶¶ 9-14.

35. That legislation, known as "Act 73," increased the size of CWA's board of directors (the "Board") from five to nine members and divided the appointment of three members each among the City, Delaware County, and Chester County through an amendment to the MAA. *See id.* ¶ 11; *see also* 53 Pa. C.S. § 5610(a.1). However, Act 73 was written in such a manner that it applied—and 14 years later continues to apply—to only one entity within the Commonwealth of Pennsylvania: CWA.

36. The Receiver has concluded that Act 73 violates Article III, Section 32 of Pennsylvania's Constitution, which prohibits special legislation. *See* Pa. Const. art. III, § 32. Consequently, on March 13, 2026, the Receiver, on behalf of the City, commenced an action in the Commonwealth Court of Pennsylvania seeking to have Act 73 nullified. *See Kapoor* et al. *v. Delaware Cnty.* et al., No. 104 MD 2026 (Pa. Commw. Ct. Mar. 13, 2026) (the "Act 73 Litigation"). If the Act 73 Litigation is successful, the City will be restored to exclusive control over the Board of CWA and all rights under the MAA as the sole forming authority of the CWA to unilaterally control its dissolution and conveyance of its projects.

### III.    Argument

**A. The City Maintains a Property Interest Protected by the Automatic Stay Under Section 362(a)(3).**

37. Section 362(a)(3) stays "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Further, Section 902 provides that "'property of the estate,' when used in a section that is made applicable [in a chapter 9 case], means property of the debtor." 11 U.S.C. § 902(1); *see also In re Jefferson Cnty.*, 484 B.R. 427, 446 n.9 (Bankr. N.D. Ala. 2012). There are two

11

bases for the City's protectible property interest: (i) the City's existing role in the ability to convey CWA's projects under the current version of the MAA, and (ii) the preservation of the City's unilateral rights to control CWA during pending litigation.

38.     Based on the Commonwealth Court's decision in *Chester Water*, this Court had previously held that the City's unilateral right to dissolve CWA and convey its assets constituted a contingent property interest of the City.  *See* Bankr. ECF 688 ("Rule 2004 Order"), at ¶ 26; *see also* 4/2/2025 Hrg. Tr. at 21:15-25.  The PA Opinion makes clear that under the current version of the MAA, the City does not possess that unilateral right.  PA Opinion at 923, 926.  However, the Pennsylvania Supreme Court *did not* hold that the City has *no* right or *no* role or *no* interest in the decision to dissolve the CWA and convey its projects.  In fact, the PA Opinion firmly rejected CWA's assertion that CWA's board alone controls its fate.  *Id.* at 922.  Instead, the Pennsylvania Supreme Court held that the City, together with Delaware County and Chester County, "wield Section 5622(a)'s conveyance power." *Id.* at 927.

39.     In the chapter 9 case of *In re Jefferson County*, the court denied a motion for relief from the automatic stay brought by various non-debtor municipal entities who argued that a dispute around the provision of inpatient and emergency medical care for indigent residents of the debtor county should be heard in state court.  484 B.R. at 433.  The court held that the lawsuit was stayed pursuant to Section 362(a)(3) as an attempt to exercise control over the debtor's property and that the lawsuit was "nothing more than an attempt to impose the [municipal entities'] desired operation [of the debtor's hospital property] in lieu of that chosen by the [debtor]."  *Id.* at 447.  Likewise, CWA intends to use the Orphan's Court to execute an impermissible attempt to exercise control over the City's statutory right to convey CWA's assets, in concert with Delaware County and Chester County.

40.     The litigation surrounding the Water Assets reflects an attempt by multiple parties to either control or deprive the City of its property interests.  In *In re Manley Toys Ltd.*, the United States Bankruptcy Court for the District of New Jersey held that the automatic stay also applied to property that was only "arguably property" of the estate including property that was the subject of ongoing litigation to determine the debtor's ownership interest.  No. 16-15374 (JNP), 2018 WL 1033426, at *13 (Bankr. D.N.J. Feb. 14, 2018).

41.     The PA Opinion clearly decided that the City does not presently have the unilateral right to convey CWA's projects under the MAA.  But the PA Opinion just as clearly said CWA does not have the right to convey its assets under Section 5622(a), and instead, it is the City, Chester County, and Delaware County that possess the rights embodied in Section 5622(a) of the MAA.  PA Opinion at 927.

42.     CWA's repeated assertion that the City has no property interest hinges entirely upon its intentional misreading of a single sentence in the PA Opinion.  The Pennsylvania Supreme Court stated in *dicta* that the City does not have "vested property rights associated with its relationship with CWA."  *Id.* at 915.  However, when read in context with the following sentence and footnote, it is clear that the Pennsylvania Supreme Court was discussing "ownership" of CWA's assets, which the City has never professed to have:

> Consequently, we firmly reject arguments suggesting directly or by analogy that City has **vested property rights** associated with its relationship with CWA.  Under Section 5622(a), City either has, or does not have, the power to force the conveyance of CWA's projects.[21]
>
> [21] Even when a municipality is empowered to force the conveyance of an authority's projects, significant limitations are placed upon the municipality's use of the assets associated with those projects.  *See* 53 Pa.C.S. § 5622(d).  Such limitations are incongruent with **ownership**.

*Id.* at 915 (emphasis supplied). Instead, the City's position—and this Court's ruling prior to the PA Opinion—has been that the City's statutory rights under the MAA with respect to the dissolution and conveyance of CWA's assets constitute a *contingent* property interest of the City. Although the City does not presently hold the *unilateral* right to convey CWA's assets under Section 5622(a) of the MAA as amended by Act 73, the City does still have a right to do so, in conjunction with Delaware County and Chester County, which is a contingent property interest of the City. *Id.* at 927.

43.     Additionally, although the PA Opinion answered the question of who holds the power to convey CWA's projects under the current iteration of the statute, the validity of Act 73—the amendment to the MAA that wrested control of CWA from the City—was not before the Pennsylvania Supreme Court. On March 13, 2026, the City filed a complaint (the "Act 73 Complaint") in the Commonwealth Court against CWA, Delaware County, and Chester County, challenging the constitutionality of Act 73 on numerous grounds related to the improper process used to pass the legislation on the eve of a crucial shift of political control from the Republicans to the Democrats. *See* Complaint, attached hereto as Exhibit A.[2]

44.     If successful, the Act 73 Complaint will result in the invalidation of Act 73, restoring the City's ability to select the entirety of CWA's board and the City's rights as the sole forming authority of the CWA to unilaterally control its dissolution and conveyance of its projects.

---

[2] On October 28, 2025, the Receiver sought similar relief from the Commonwealth Court in the receivership action through an amendment to the Receiver's Amended Recovery Plan under Act 47. *Siger v. City of Chester*, No. 336 M.D. 2020. On December 23, 2025, the Commonwealth Court denied the requested plan modification without prejudice because it determined that Delaware County and Chester County were necessary parties to such an action. *Id.*

45.     The PA Opinion, however, is abundantly clear that CWA, acting through its Board, has no rights under Section 5622(a) of the MAA. *Id.* at 922.  As a result, CWA must seek judicial relief in order to limit the rights granted by Section 5622(a).  CWA makes no attempt to hide its intentions here, plainly stating that if the Stay Relief Motion is granted, it intends to resume the Trust Litigation to "approve the transfer of [its] assets into a trust." Stay Relief Motion at ¶ 43.  This Court's reasoning when it denied CWA's last stay relief motion seeking to return to Orphan's Court remains true:

> The trust action, by seeking to transfer the water assets into a trust beyond the City's reach, necessarily attempts to exercise control over the City's contingent interest in reclaiming the water assets, which Section 362(a)(3) expressly prohibits. As such, Section 362(a)(3) applies to prevent the trust action from proceeding and, more specifically, to prevent the CWA from attempting to modify the status quo order to stay the RFP process in an attempt to exercise control over the City's contingent interest in the reclaiming and disposing of the water assets.

10/8/25 Hrg. Transcript, Bankr. ECF 915 at 24:13-22.

46.     On March 14, 2026, CWA filed a procedurally-improper "supplement" [Bankr. ECF 1019] (the "Supplement") to its motion seeking various forms of relief from this Court [Bankr. ECF 1013] that was filed at the same time as the Stay Relief Motion.  While most of the Supplement is irrelevant to the Stay Relief Motion, CWA attempts one attack upon the City's property interest which the City must address.  In interpreting the District Court's two page order (the "Vacatur/Dismissal Order") granting the City's motion to dismiss CWA's appeal from its last attempt to obtain relief from the automatic stay and return to Orphan's Court, CWA states: "[t]he District Court's explanatory footnote in the Vacatur/Dismissal Order further supports an inference that because the Pennsylvania Supreme Court ruled that the Debtor lacks a unilateral dissolution right under the MAA, the Debtor holds no contingent property interest under the MAA

15

subject to the stay." Supplement at ¶ 34. The relevant portion of the only footnote reads as follows:

> This appeal challenges the Bankruptcy Court's order denying Chester Water Authority relief from the automatic stay to return to Orphans' Court and seek modification of the 2020 Status Quo Order to stop the City's request-for-proposals process concerning Chester Water Authority's assets. The Bankruptcy Court denied that request based on its conclusion that the City's asserted unilateral dissolution right under the Municipal Authorities Act was a contingent property interest protected by the stay. ***After the appeal was filed, the Pennsylvania Supreme Court held that the City lacks such a unilateral dissolution right, and the City suspended the request-for-proposals process***. *See In re Chester Water Auth. Tr.*, No. 46 MAP 2022 et seq., 2026 WL 168066 (Pa. Jan. 21, 2026).

Vacatur/Dismissal Order, No. 25-cv-06085-MRP, ECF No. 18, at 1 n.1 (Mar. 10, 2026) (emphasis supplied). It is unclear precisely what about this clear summary of a portion of the PA Opinion CWA believes "further supports the inference" it so desperately wants this Court to make, but as this Court can determine for itself, the Pennsylvania Supreme Court never opined on whether the City has a contingent property interest triggering the automatic stay under its interpretation of the MAA.

47. The continuation of the Trust Litigation, and CWA's stated desire to shield its assets from the City's rights under the MAA, either in conjunction with Delaware County and Chester County as the statute presently stands or as restored once Act 73 is invalidated as unconstitutional, constitutes an act to obtain possession of property of the City or control over property of the City by seeking to prevent the City exercising its rights under the MAA the Water Assets and are properly stayed under Section 362(a)(3).

**B. The Orphan's Court Action Is a Claim Against the City Subject to Section 362(a)(1).**

48. Section 362(a)(1) stays "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding

against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(1).

49.     The scope of the automatic stay is broad. *Assoc. of St. Croix Condo. Owners v. St. Croix Hotel Corp.*, 682 F.2d 446, 448 (3d Cir. 1982). "Under Section 362(a)(1), "claim" is defined broadly as it is defined in Section 101(5).  3 Collier on Bankruptcy ¶ 362.03 (16th ed. 2025) (citing *Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991); *Kelly v. Robinson*, 479 U.S. 36, 56 (1986) (Marshall, J., dissenting) ("The legislative history of the Code indicates that 'claim' was to be 'given the broadest possible definition.'")); *see also In re Mallinckrodt PLC*, 99 F.4th 617, 620 (3d Cir. 2024) ("We give the term 'claim' in the Bankruptcy Code 'the broadest available definition.'" (quoting *Johnson*, 501 U.S. at 83)).

50.     CWA's attempt to recast the Trust Petition as not involving an action to recover a claim against the debtor is intentionally misleading and overly simplistic.  The City was served with the Trust Petition, appeared in the Trust Litigation, answered the Trust Petition, and is an involved party in the Trust Litigation.  The entire purpose of the Trust Litigation was to put the Water Assets in a trust to prevent the City from exercising its statutory rights regarding the Water Assets under the MAA.

51.     Even assuming *arguendo* that the Trust Litigation was not an action to assert a claim against the City—the automatic stay would still apply.  Although Section 362(a)(1) generally applies only to certain actions taken against a debtor, courts have recognized that there are "unusual circumstances" that may warrant broader application. *In re Jefferson Cnty.*, 491 B.R. 277, 284 (Bankr. N.D. Ala. 2013) ("[U]nusual circumstances have been found (1) when an indemnification or contribution relationship creates an identity of interests between the debtor

and non-debtor defendant; (2) when the proceeding imposes a substantial burden of discovery on the debtor; or (3) *when the proceeding would have a potential preclusive effect that forces the debtor to participate in the proceeding as if the debtor were a party*." (emphasis added)); *see also McCartney v. Integra Nat'l Bank N.*, 106 F.3d 506, 510 (3d Cir. 1996) (same).

52.     In Jefferson County's chapter 9 case, the court determined that the automatic stay applied where a party filed a lawsuit initially against the debtor and later filed a second lawsuit involving virtually identical claims, but did not include the debtor as a defendant in "an attempt to avoid the shield afforded debtors by the automatic stay" *Jefferson Cnty*, 491 B.R. at 280.  The court found that the second litigation effort to make an end-run around the automatic stay by not naming the debtor as a defendant was "simply not controlling." *Id.* at 287.  The *Jefferson County* Court also discussed in detail how an action, though it does not name the debtor as a party, is nonetheless subject to the automatic stay when what it seeks may have the effect of collaterally estopping the estate's claims. *Id.* at 294-95.  The Court recognized that other courts have "stayed proceedings against non-debtor defendants when the proceedings would have a potential preclusive effect that would force the debtors to participate in the proceedings as if they were a party." *Id.* at 293.  Specifically, the Court considered the realities of the ligation and reasoned that "[a]s a practical matter" the debtor could not "be a bystander to a suit which may have a preclusive effect on claims for hundreds of millions of dollars against it by a prepetition creditor." *Id.* at 295.

53.     In *ACandS, Inc. v. Travelers Cas. & Sur. Co.*, 435 F.3d 252 (3d Cir. 2006), the Third Circuit considered the applicability of Section 362(a) to an arbitration panel's resolution of an insurance dispute and ultimately determined that the arbitration was subject to the automatic stay because the relief sought "could negatively impact the bankruptcy estate." *ACandS*, 435

18

F.3d at 255 & 259.  The court also explained that "[t]o avoid interfering with the broad purposes served by the automatic stay, it was necessary for the arbitration proceeding to halt as soon as the scope of the parties' submissions supported an award that could diminish [the debtor's] estate." *Id.* at 260 .

54.    In *Kaiser Group Int'l, Inc. v. Kaiser Aluminum & Chem. Corp. (In re Kaiser Aluminum Corp.)*, 315 B.R. 655 (D. Del. 2004), the Delaware District Court affirmed the Bankruptcy Court's decision that an action against an insurance company that sought a declaratory judgment regarding the creditor's interest in insurance proceedings in which the debtor claimed a right violated Section 362(a)(1).  *Kaiser Aluminum*, 315 B.R. at 658-60.  The District Court explained that the automatic stay "extends to any action or proceeding against an interest of the debtor" and that the scope of the automatic stay "is not determined solely by whom a party chose to name in the proceeding, but rather, by who is the party with a real interest in the litigation."  *Id.* at 658 (citing *Maaco Enters., Inc. v. Corrao*, No. 91-3325, 1991 WL 255132, *2 (E.D. Pa. Nov. 25, 1991) (stating that "the automatic stay provision applies to suits against non-debtor defendants who are related to the debtor and to suits the resolution of which may have a significant impact on the debtor" and finding that suit against Corrao individually was sufficient to invoke protection of § 362 where company was formed by individual debtor who would be impacted by resolution)).

55.    The cases CWA cites for the proposition that an *in rem* proceeding is "against no party" regardless of whether a debtor is a required participant to protect its right to that property are unsurprisingly inapposite.  Stay Relief Motion at ¶ 44.  *In re Popple* involved a debtor's assertion that unspecified discovery requests against a non-debtor co-defendant in state court legislation violated the automatic stay, which the bankruptcy court determined did not apply to

19

discovery requests against non-debtor third parties. 532 B.R. 581 (Bankr. M.D. Pa. 2015). The non-bankruptcy litigation in *Popple* was not even an *in rem* proceeding, so it does not support the premises for which CWA cites it. Further, CWA cites *Endover Palisades, LLC v. Stuart (In re Stuart)* for the proposition that "an *in rem* proceeding against property . . . is not protected by the automatic stay of Section 362(a)(1)." 594 B.R. 834, 841 (Bankr. N.D. Ga. 2018). However, CWA omits a crucial fact: the real property at issue had been transferred to a non-debtor third party prior to the bankruptcy case and thus the debtor in *Stuart* no longer had an asserted right or interest in the property in the *in rem* proceeding. *Id.* at 836, 841. That is not applicable to the facts and circumstances here, where the Pennsylvania Supreme Court just determined the City has a right to convey CWA's projects, along with Delaware County and Chester County, giving the City an interest in the purported *in rem* action.

56.     In this case, CWA has been transparent about its self-interest in preventing the City's exercise of its rights with respect to the Water Assets. CWA cites *Stockton* for the proposition that there is no "claim" asserted against the City in the Trust Litigation. *See* Stay Relief Motion, ¶40 (citing *In re City of Stockton, Cal.*, 499 B.R. 802, 805–06 (Bankr. E.D. Cal. 2013)). However, that case is easily distinguished, as the movant who was pursuing limited litigation regarding ballot statements promised not to attempt to obtain any monetary award from the debtor. *Stockton*, 499 B.R. at 808. The court noted that "based on the condition agreed by the movant foreswearing all monetary relief, § 922(a)(1) does not operate to stay the ballot statement litigation." *Id.* In contrast, here CWA specifically intends to eviscerate the City's rights with respect to one of the City's most valuable assets.

57.     CWA's argument that the underlying state court litigation "merely sought approval from the Orphan's Court of its declaration of trust" and therefore does not involve an

20

action to recover a claim against the City is mendacious nonsense.  Stay Relief Motion at ¶ 41.

The City filed an opposition to the Trust Petition asserting its legal rights to the Water Assets

CWA proposed to shield via trust premised upon the very legal issue certified first to the

Commonwealth Court and then to the Pennsylvania Supreme Court, and which forms the

foundation of numerous pending actions involving CWA, the City, Aqua, and multiple other

parties.  The complicated morass of the state court litigation clearly constitutes the type of

"unusual circumstances" warranting a finding that the automatic stay applies.

58.    Moreover, the suggestion that the City "*voluntarily* joined the fray as an

'interested party'" in the Trust Litigation is too cute by half.  Stay Relief Motion at ¶ 39 (emphasis

in original).  Surely, if successful in the Trust Litigation, CWA would consider the declaration of

trust binding upon the City and preclusive of the City's exercise of its rights of conveyance under

the MAA, either together with Delaware County and Chester County or alone once the City's

rights are restored in the Act 73 Litigation.  The City had no choice but to actively litigate in the

Trust Litigation to preserve and protect its rights from CWA's interference.

59.    CWA's Stay Relief Motion seeks to reopen prepetition litigation to forestall one

of the City's most critical legal rights—its ability to repossess the Water Assets—which would

disrupt the City's bankruptcy proceeding and have untold consequences on the many other stayed

litigations, dragging the City back into countless state court proceedings.  The automatic stay

prevents precisely that. *St. Croix Hotel Corp.*, 682 F.2d at 448-49 ("The potential disruption of

the administration of the bankruptcy estate that would be caused by the [movant's] success in its

cross-appeal is precisely the result section 362 was designed to prevent.  Since it would be unwise

in the circumstances of this case, to stay only one of the two appeals before us, we thus stay

both.").

21

60.     Notwithstanding CWA's efforts to nominally exclude the City from the Trust Petition, the City is a necessary participant in that action, and the Trust Litigation is central to the preservation of the City's rights under the MAA.  The Trust Petition is undisputably a claim against the City and therefore, the automatic stay applies to the Trust Litigation.

## C.  The *Princess Lida* Doctrine Is Irrelevant.

61.     CWA spends pages of the Stay Relief Motion expounding on the Orphan's Court purported exclusive jurisdiction to determine the Trust Litigation and how the "*Princess Lida* Doctrine" prohibits this Court from "asserting jurisdiction" over property that is subject to a prepetition *in rem* proceeding.  Stay Relief Motion ¶¶ 71-90.  The City has *never asked* this Court to determine the Trust Petition.  To the contrary, the City's position is, and has always been, that the Trust Litigation is stayed by operation of the automatic stay pursuant to Sections 362(a)(1) and (3).

62.     CWA's exposition on the *Princess Lida* Doctrine is irrelevant to this bankruptcy case.  Although 87 years have passed since the Supreme Court's decision in *Princess Lida*, CWA *does not cite a single case* where it was applied to hold that the automatic stay did not apply to property of a debtor just because that property was subject to a pre-existing state *in rem* proceeding.

63.     To the contrary, both the Fifth and Sixth Circuits have held precisely the opposite. CWA acknowledges the Sixth Circuit's ruling in *In re White*, but urges this Court to simply ignore it, just as CWA seems to have ignored similar rulings by the Fifth Circuit in *Slay Warehouse, Co., Inc. v. Modern Boats, Inc. (In re Modern Boats, Inc.)*, 775 F.2d 619, 620 (5th Cir. 1985) and *In re Louisiana Ship Management, Inc.*, 761 F.2d 1025 (5th Cir. 1985).  As CWA noted, the *White* Court held that:

22

> Despite the federalism interests served by [the *Princess Lida* Doctrine], we agree with debtor's argument that the 1978 and 1984 changes to the Bankruptcy Code were primarily aimed at getting away from the kind of *in rem* jurisdiction set out in *Princess Lida* and *In re Washington.*  The jurisdiction granted in 28 U.S.C. § 1334(d) indicates a conscious effort by Congress to grant the bankruptcy court special jurisdiction and to preclude the type of jurisdictional disputes evidenced in those cases.

*In re White*, 851 F.2d 170, 172–73 (6th Cir. 1988).  *See also In re Murray*, 350 B.R. 408, 416 (Bankr. S.D. Ohio 2006) ("The combined effect of these statutory provisions [28 U.S.C. § 1334 and 28 U.S.C. § 1575] is to place exclusive jurisdiction in the bankruptcy court for all actions involving property of the Debtor's estate.").  In both *Modern Boats* and *Louisiana Ship*, the Fifth Circuit held that, although admiralty courts had obtained *in rem* jurisdiction over ships, the subsequent filing of bankruptcy cases stripped the admiralty court of jurisdiction and it became the exclusive province of the bankruptcy court.  *Mod. Boats*, 775 F.2d at 620 ("The admiralty court's previous acquisition of *in rem* jurisdiction thus did not defeat the bankruptcy court's jurisdiction in this case.  On the contrary, the petition for reorganization withdrew jurisdiction from the admiralty court and lodged it exclusively in the district court – 'the court where the Title 11 proceeding was pending.'  The bankruptcy court inherited that jurisdiction when the district court referred the case to it under 28 U.S.C.A. § 157(a)."); *La. Ship*, 761 F.2d at 1026 ("The vessel was seized and its sale was set. . . .  Filing of the petition under Chapter 11 automatically stayed the proposed sale to enforce the maritime lien.  11 U.S.C. § 362(a)(5).  In addition, it vested exclusive jurisdiction over the vessel in the court where the Title 11 proceeding was pending, depriving the admiralty court of jurisdiction over it.").

64.     In its effort to hand-wave away all Circuit-level precedent, CWA carefully states that *White* has not been cited by "the Third Circuit or any district court located within."  Stay Relief Motion ¶ 87.  That may be true, but it has been cited by numerous bankruptcy courts within

the Third Circuit, including this Court, and all agreed with *White*'s exceedingly narrow application of the *Princess Lida* Doctrine solely in the context of family law matters, to avoid having "bankruptcy courts [] function as a federal domestic relations court." *In re Wilson*, 85 B.R. 722, 727 (Bankr. E.D. Pa. 1988); *see, e.g.*, *In re Woods*, No. 15-12063REF, 2016 WL 1238781, at *2 (Bankr. E.D. Pa. Mar. 29, 2016) ("I agree with the well-established principle that '[i]t is appropriate for bankruptcy courts to avoid invasions into family law matters out of consideration of court economy, judicial restraint, and deference to our state court brethren and their established expertise in such matters.'" (quoting *In re Moses*, 194 B.R. 777, 779-80 (Bankr. E.D. Pa. 1996)).

65. In the years since the passage of the 1979 and 1984 amendments to the Bankruptcy Code, there have been several subsequent Supreme Court decisions which, without mentioning the *Princess Lida* Doctrine per se, appear to reaffirm the bankruptcy court's jurisdiction conferred in 28 U.S.C. § 1334. *See Marshall v. Marshall*, 547 U.S. 293 (reversing the Court of Appeals' recognition of the probate exception limiting federal jurisdiction); *Ankenbrandt v. Richards*, 504 U.S. 689 (1992) (limiting the domestic relations exception); *Central Virginia Community College v. Katz*, 546 U.S. 356 (2006). "The combined effect of the statutory provisions and the subsequent case law has the effect of placing exclusive jurisdiction in the bankruptcy court for all actions involving property of [the] Debtor's estate . . . . Here, 28 U.S.C. § 1334 grants this Court broad and comprehensive jurisdiction to administer [the debtor's] estate and [a creditor's] ancillary desire to continue with collection proceedings should not abrogate from that broad and comprehensive grant of jurisdiction." *In re Allen*, No. 13-14348 (GMB), 2013 WL 1952338 at *12 n.4 (Bankr. D.N.J. May 10, 2013).

66.     Instead, CWA urges this Court to eschew all case law regarding the interplay of the *Princess Lida* Doctrine and bankruptcy law, and follow the Third Circuit's holding in *Dailey v. National Hockey League*, 987 F.2d 172 (3d. Cir. 1993).   But of course, *Dailey* does not implicate the Bankruptcy Code, bankruptcy law, or a bankruptcy court's jurisdiction at all.   In *Dailey*, the Third Circuit recognized the existence and application of the *Princess Lida* Doctrine, but the "frontier issue" addressed by the court was whether an entirely different federal statute, ERISA, overcame that doctrine.   987 F.2d at 177.   However, the source of federal courts' exclusive jurisdiction over ERISA claims is entirely different than bankruptcy courts' jurisdiction in bankruptcy cases. *See Browning v. Levy*, 283 F.3d 761, 778 (6th Cir. 2002) ("Indeed, the statutory grant of exclusive jurisdiction over ERISA claims in federal district courts divests other courts of the power to adjudicate them. . . .   But the exclusive jurisdiction of the district courts over certain ERISA claims does not preclude such claims from being brought in bankruptcy proceedings.").   While CWA would prefer to ignore those differences, this Court should not, and *Dailey* is not controlling or applicable in this matter.

67.     Even if the *Princess Lida* Doctrine were applicable in this situation, its requirements are not satisfied.   As another district court has explained, one of the requirements of the doctrine is that both courts must be of competent jurisdiction and that requirement is not met when a bankruptcy court is involved and the matter is a core proceeding.  *In re Wagabaza*, No. 5:18-CV-00406-JLS, 2019 WL 3717794, at *5 (C.D. Cal. Aug. 7, 2019) ("In this instance, the state court is not 'a court of competent jurisdiction' because this is a core proceeding and bankruptcy courts have exclusive jurisdiction over core proceedings.").   The application determination, and enforcement of the automatic stay is a core proceeding.  *See* 11 U.S.C. § 157(b)(2)(G). *See LTL Mgmt., LLC v. Those Parties Listed on Appendix A to Complaint*, No.

25

CV 21-20252 (FLW), 2022 WL 190673, at *4 (D.N.J. Jan. 21, 2022) ("The non-exclusive examples of 'core' proceedings listed in section 157 include 'motions to terminate, annul, or modify the automatic stay.'  28 U.S.C. § 157(b)(2)(G).  By extension, 'motions to *enforce* the automatic stay are [also] core proceedings.'  *See In re James*, 120 B.R. 802, 809 (E.D. Pa. 1990), *rev'd on other grounds*, 940 F.2d 46 (3d Cir. 1991) (emphasis in original); *In re Healthcare Real Estate Partners, Inc.*, 941 F.3d 64, 70 (3d Cir. 2019) (noting that 'a bankruptcy court [may] adjudicate' claims to enforce an automatic stay pursuant to '§ 362(k) . . . . as core proceedings'). And while the Third Circuit has not addressed this precise issue, other courts have concluded that motions to extend an automatic stay and injunction to non-debtor third parties pursuant to sections 362 and 105 qualify as 'core' proceedings.").  Thus, even if it applied, and even if both the Trust Litigation and this proceeding were determined to be *in rem* or *quasi in rem* proceedings, the *Princess Lida* Doctrine fails to eliminate this Court's jurisdiction over the City's property interest in its rights under the MAA and the imposition of the automatic stay.

68.    Finally, CWA states that "[i]n this Bankruptcy Court, the City has sought to liquidate most if not all of the same assets that the CWA placed under the Orphan's Court's control in 2019." Stay Relief Motion ¶ 85.  It is hard to interpret such persistent misstatement of the City's process here as anything but intentional on the part of CWA.  As has been clarified by the City and this Court many times, the process by which the City pursued the sale of the Water Assets was conducted pursuant to state law, outside of this bankruptcy case.  The City never asked this court to approve or oversee a sale process, nor did the City consent to this Court's jurisdiction to do so pursuant to Section 904.[3]

---

[3] CWA also attempts to resuscitate its arguments that it is somehow protected by Sections 903 and 904 of the Bankruptcy Code, despite not being a debtor.  Stay Relief Motion at ¶¶ 91-92; *see See* Bankr. ECF 145 at pp. 2-3; Bankr. ECF 276 p. 5-6 n.6; Bankr. ECF 563 at p. 3; Bankr.

**D. Cause Does Not Exist to Grant Relief From the Stay.**

69.    The automatic stay unquestionably applies to the Trust Litigation pursuant to Sections 362(a)(1) and (3). Section 362(d)(1) provides that "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying or conditioning such stay (1) for cause . . . ." 11 U.S.C. § 362(d)(1). The Bankruptcy Code does not define "cause" and there "is no rigid test for determining whether sufficient cause exits to modify an automatic stay*." In re W.R. Grace & Co.*, No. 01-01139 (JFK), 2007 WL 1129170, at *6-7 (Bankr. D. Del. Apr. 13, 2007). But it is axiomatic that the movant requesting relief under Section 362(d) of the Bankruptcy Code must "establish a prima facie case that cause exists to lift the stay," and to meet that burden "the moving party must introduce some evidence to establish that the balance of hardships tips in his favor." *In re Mixson*, No. 98-18569 SR, 2002 WL 34561635, *6-7 (Bankr. E.D. Pa. Sept. 27, 2002).

70.    The test to determine if cause exists is a "balancing of harms test," with the court often requiring "special circumstances" before stay relief is granted. *In re Chan*, 355 B.R. 494,

---

ECF 600, at ¶¶ 137-51; Bankr. ECF 643, at ¶¶ 72-74; Bankr. ECF 722, at pp. 2, 14-18; Bankr. ECF 734, at ¶¶ 23-37; Bankr. ECF 736, at ¶¶ 26-35. This Court has rejected those arguments. Rule 2004 Order, at. ¶¶ 27-29; 4/2/2025 Hrg. Tr., Bankr. ECF 779 at 9:20-11:16. This Court's rejection of CWA's assertions that it is protected by Sections 903 and 904—despite not having filed for bankruptcy protection—or that it is otherwise immunized by the Tenth Amendment from any and every action of this Court are law of this case. *See, e.g.*, *Shovlin v. Klaas (In re Klaas)*, 548 B.R. 414, 421 (Bankr. W.D. Pa. 2016) ("The law of the case doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case.") (quoting *Pepper v. United States*, 562 U.S. 476, 507 (2011)). "A ruling remains law of the case until reversed on appeal." *Id.* (citing *Cowgill v. Raymark Indus., Inc.*, 832 F.2d 798, 802 (3d Cir. 1987). This Court's decisions on these issues have not been reversed on appeal and simple repetition of the same arguments provides no basis for this Court to reverse itself. CWA likely raises these arguments in passing again in the Stay Relief Motion in order to obtain another order to appeal and try its hand for a fifth or sixth time in an appellate court.

27

499 (Bankr. E.D. Pa. 2006). As explained in *Chan,* courts "may consider the policies reflected in the bankruptcy code, and the interests of the debtor, other creditors and any other interested parties. Unsecured creditors are generally entitled to relief from an automatic stay only in extraordinary circumstances." *Id.* (quotations and citations omitted).

71. Here, this Court should not grant CWA relief from the automatic stay for the same reasons that the Court has previously denied that relief. CWA attempts to collaterally attack this Court's prior rulings through the Stay Relief Motion. *United States v. Braddy*, 837 F. App'x 112, 114 (3d Cir. 2020) (quoting Black's Law Dictionary 298 (9th ed. 2009)) ("By definition . . . [a] 'collateral attack' is '[a]n attack on a judgment in a proceeding other than a direct appeal.'"); *Off'l Comm. of Unsecured Creditors v. Bechtle (In re LaBrum & Doak, LLP)*, 237 B.R. 275, 289 (Bankr. E.D. Pa. 1999) (citing *Kurz v. Mairone*, No. 86-5587, 1987 WL 11926, *3 (E.D. Pa. May 29, 1987) ("A lawsuit constitutes a collateral attack on a previously entered judicial decree if it attempts to avoid, defeat, or evade, or otherwise attempts to deny the prior decree's force and effect; thus, a subsequent lawsuit attempts a collateral attack if it seeks in some manner to overrule a previous judgment."). A collateral attack on a judgment attempts "to impeach the judgment by matters [outside] the record . . . to avoid, defeat, or evade it or deny its force and effect, in some incidental proceeding not provided by law for the purpose of attacking it." *Agape Motorcoach Retreat, LLC v. Brintle*, 523 F. App'x 948, 955 (4th Cir. 2013) (quoting *Guinness, PLC v. Ward*, 955 F.2d 875, 895 (4th Cir. 1992)). Having failed to convince this Court that it is all but immune from the Bankruptcy Code and the jurisdiction of this Court, CWA should not be permitted relief from the stay to now expand its litigation strategy to yet another forum.

72. Crucially, CWA has utterly failed to articulate cause and make a prima facie showing that extraordinary circumstances exist that warrant relief from stay. The focus of CWA's

purported "harm" seems to be the fact that if CWA cannot immediately ringfence its assets into a trust, the City (and perhaps Delaware County and Chester County) will still have statutory rights with respect to those assets. The Pennsylvania Supreme Court just rejected CWA's assertion that it controlled the right to convey its assets under Section 5622(a) of the MAA, so now CWA wants to run to another forum and mechanism to try to accomplish the same end of eliminating the City's interest in its statutory rights. CWA protests that it is being "held hostage" in this bankruptcy case, apparently by the City having protectible rights that prevent CWA from hiding the Water Assets in a remote trust to eliminate all municipal rights under the MAA. *See* Stay Relief Motion at ¶ 93. That is not "harm" to CWA meriting relief from the automatic stay.

73. While a failure to immediately return to the Orphan's Court will not harm CWA in any way, pursuit of the Trust Petition would certainly create new harm to the City, which is CWA's true goal. If CWA is permitted to resume the Trust Litigation, the City would of course have no choice but to vigorously pursue its rights in Orphan's Court to preserve and protect the City's rights to the Water Assets. If CWA succeeds in convincing the Orphan's Court to permit it to squirrel its assets away in a trust, to the detriment of the City, Chester County, and Delaware County, and in contravention of the Pennsylvania Department of Environmental Protection's interpretation of the applicable law, the result would be a catastrophic evisceration of the City's statutory rights under the MAA. Even if CWA does not succeed in the Trust Litigation, the City will still be left litigating over the same assets and issues on multiple fronts, giving rise to the potential for conflicting rulings and orders. The fact the City has filed bankruptcy since CWA filed the Trust Petition is all the more reason to uphold the automatic stay. CWA claims that the City has no rights with respect to the Water Assets, but if that were the case, then why would CWA be so desperate to move its assets outside the reach of the MAA through the Trust Petition?

29

WHEREFORE, for the reasons stated herein, the City respectfully requests that the Court deny CWA's Stay Relief Motion in its entirety and grant such further relief the Court may deem just and proper.

Dated: March 16, 2026

Respectfully submitted,

*/s/ Tobey M. Daluz*
Tobey M. Daluz (PA Bar No. 60685)
Margaret A. Vesper (PA Bar No. 329793)
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Tel:  (215) 864-8148
Email:  daluzt@ballardspahr.com
          vesperm@ballardspahr.com

-and-

Matthew G. Summers*
Laurel D. Roglen*
Nicholas J. Brannick*
Ballard Spahr LLP
222 Delaware Avenue, 10th Floor
Wilmington, DE 19801
Tel: (302) 252-4465
Email:  summersm@ballardspahr.com
          roglenl@ballardspahr.com
          brannickn@ballardspahr.com

(*Admitted *pro hac vice*)

*Attorneys for the City of Chester*

30